IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

|  |  |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., RESOLUTE FP US, INC., RESOLUTE FP AUGUSTA, LLC, FIBREK GENERAL PARTNERSHIP, FIBREK U.S., INC., FIBREK INTERNATIONAL, INC., and RESOLUTE FP CANADA, INC. | CIVIL ACTION FILE<br><br>NO. 1:16-cv-0071-JRH-BKE |
| Plaintiffs, | |
| v. | |
| GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., GREENPEACE FUND, INC., FORESTETHICS, DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT, ROLF SKAR, TODD PAGLIA, and JOHN AND JANE DOES 1-20, | |
| Defendants. | |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS STAND AND PAGLIA FOR FAILURE TO STATE A CLAIM**

COME NOW Defendants Stand, formerly known as ForestEthics ("Stand"), and Todd
Paglia ("Mr. Paglia"), and submit this reply brief in further support of their motion to dismiss
Plaintiffs' complaint for failure to state a claim upon which relief can be granted pursuant to Rule
12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Consistent with their complaint, Plaintiffs' response brief repeatedly and indiscriminately
lumps Mr. Paglia and Stand together with the other named defendants.  Plaintiffs incorrectly
attribute to Mr. Paglia and Stand several arguments made by other defendants, asserting for

example that they "claim that California law governs the substantive claims here." (Doc. 75, p. 83 n.45). Similarly, Plaintiffs simply ignore several arguments raised in the initial briefing that are unique to Mr. Paglia and Stand and that were *not* made by the other defendants. For example, all but one of the statements Plaintiffs attribute to Mr. Paglia and Stand were made more than a year before this case was filed. Thus, the bulk of Plaintiffs' defamation claims against Mr. Paglia and Stand are time-barred. Plaintiffs ignore that defect in their claims against Mr. Paglia and Stand.

By frequently lumping Mr. Paglia and Stand in with the other defendants, Plaintiffs have not only failed to respond to some of the grounds cited for the dismissal of those claims; they have also highlighted the most glaring flaw in their claims against Mr. Paglia and Stand -- their failure to provide sufficient factual allegations to put Mr. Paglia and Stand on notice of the claims asserted against them. By repeatedly failing to distinguish between Mr. Paglia and Stand, on the one hand, and the other defendants, on the other, Plaintiffs have left Mr. Paglia and Stand to guess or speculate about the grounds for the claims against them, making it impossible for them to frame a responsive pleading to the complaint. That defect infects all of the claims asserted against Mr. Paglia and Stand and itself demands dismissal of the complaint in its entirety.

## ARGUMENT AND CITATION OF AUTHORITIES

### A.  The complaint fails to allege sufficient facts to describe what Mr. Paglia and Stand are accused of doing wrong.

Plaintiffs have failed properly to state any of their claims against Mr. Paglia and Stand. In addition to the substantive defects in Plaintiffs' claims described in Sections B through F, below, Plaintiffs have facially failed to allege sufficient factual detail in the substantive counts of their complaint to provide notice of what they are claiming *Mr. Paglia and Stand*, as distinguished from any of the other defendants, allegedly did wrong. Plaintiffs do not dispute that, to avoid dismissal, their claims must be more than merely "conceivable" and must allege "enough facts to state a

claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plaintiffs have an "obligation to provide the grounds for [their] entitlement to relief," which requires more than labels and conclusions. . . . [A] formulaic recitation of a cause of action's elements will not do." Id. at 545. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint in this case plainly runs afoul of all of those prohibitions, particularly when viewed from the perspective of each of the separate defendants

Despite the fact that the complaint contains page after page of allegations about statements that some of the defendants purportedly made at various times during the past decade, Plaintiffs have utterly failed to link the facts asserted in the first 200 paragraphs of their complaint with the conclusory legal assertions contained in the substantive counts that are supposed to describe the claims being asserted against each defendant. As Mr. Paglia and Stand explained in their initial brief, Plaintiffs' complaint constitutes a classic shotgun pleading because each of its counts incorporates all of the same previously-alleged factual allegations (the vast majority of which relate solely to other defendants) without making *any* effort to connect those alleged facts to the legal elements of the claims asserted. See Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001). Plaintiffs' only response to this argument appears in a single dismissive sentence buried in a footnote: "[T]he Complaint adequately links the specific allegations to the specific causes of action." (Doc. 75 p. 48 n.14). A cursory review of the complaint, however, quickly belies that conclusory assertion.

In Wagner v. First Horizon Pharmaceutical Corp., 464 F.3d 1273 (11th Cir. 2006), a case cited by Plaintiffs, the Eleventh Circuit condemned a complaint just like the one at bar.[1]  The court found that the elements of the legal claims asserted in counts of the Wagner complaint that themselves lacked supporting detail were "insufficiently linked to the large fact section that precede[ed] the counts." Id. at 1278-79.  The court observed, for example, that the first paragraph of the fraud count (contained in paragraph 199 of the complaint) incorporated by reference all of the prior factual allegations, but the paragraphs that followed failed to contain any further reference to the prior allegations, "leaving the reader to wonder which prior paragraphs support[ed] the elements of the fraud claim" that were alleged in only a general way. Id. 1279.  The court then identified the central problem with the "shotgun" complaint: "the factual particularity of the first 175 paragraphs is not connected to the otherwise generally pled claim in any meaningful way." Id.

The instant complaint takes the same impermissible approach as did the complaint that was condemned in Wagner.  Despite a lengthy and nebulous fact section, the portion of the complaint

---

[1] Plaintiffs cite to Wagner to support their argument that the Court is not permitted to dismiss their complaint without first giving them an opportunity to re-plead their claims.  But Wagner is unique because the district court had impermissibly conditioned leave to amend upon the payment of costs.  See 464 F.3d at 1276.  It is well settled in the Eleventh Circuit that when plaintiffs only vaguely request leave to amend their complaint in a response brief, as Plaintiffs have done in this case, the district court can properly deny that request, particularly when no detail is provided regarding the nature of the potential amendment.  Roseberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009).  "Filing a motion is the proper method to request leave to amend a complaint. . . . A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment."  Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999).  Accordingly, when a plaintiff submits in a response brief nothing more than a bare request for permission to amend its complaint in an unspecified manner, the district court's denial of that request is proper.  U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1362 (11th Cir. 2006) (affirming dismissal of the complaint with prejudice, even though the plaintiff had requested leave to amend in its brief opposing a motion to dismiss, because the plaintiff had not submitted a proposed amended complaint or set forth the allegations that such an amendment would contain); see also Detris v. Coats, 523 Fed. App'x 612, 618 (11th Cir. 2013) (district court properly denied the plaintiff's request, made in response to a motion to dismiss, that any dismissal be without prejudice).

that actually asserts substantive claims fails to link those previously-alleged facts with the required elements of the legal claims against each defendant.  Without that link, Mr. Paglia and Stand are forced to guess what Plaintiffs claim they have specifically done to violate the federal RICO statute or to subject themselves to the state law claims asserted against them.  For example, in each of their federal RICO counts, Plaintiffs allege that all of the defendants engaged in mail fraud, wire fraud, extortion, witness tampering, and money laundering.  (Compl., ¶¶ 223, 240, 247).  Mr. Paglia and Stand cannot tell which of the many statements referenced in the complaint allegedly constitute mail or wire fraud.  They likewise cannot discern what they purportedly did to extort property or money from Plaintiffs.  They also have no way of knowing how they supposedly engaged in witness tampering or money laundering.  For this reason alone, Plaintiffs' complaint should be dismissed.

A second distinct, but closely-related, fatal defect in the manner in which Plaintiffs have pleaded their claims is their penchant for lumping all of the defendants together and asserting that all of them engaged in all of the same allegedly-illegal conduct.  Plaintiffs do not dispute that "[c]ivil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity" as required by Federal Rule of Civil Procedure 9(b).  Ambrosia Coal & Constr. Co. v. Morales, 482 F.3d 1309, 1316 (11th Cir. 2007).  Thus, as the Eleventh Circuit held in Ambrosia, "[i]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud."[2]  Id. at 1317.

---

[2] As Mr. Paglia and Stand noted in their initial brief, this Court's local rules acknowledge this heightened pleading standard for civil RICO cases, and require a plaintiff asserting such claims to submit a civil RICO statement that, among many other things, "[l]ist[s] each defendant and state[s] the alleged misconduct and basis of liability *of each defendant*." LR 9.1. (emphasis added). Plaintiffs' civil RICO statement completely fails to comply with that requirement, as well as the other requirements, found in the local rule.  Plaintiffs do not state what *each* defendant allegedly did.  Rather, Plaintiffs simply lump all of the defendants together, just as they did in the complaint.

Blithely ignoring binding Supreme Court and Eleventh Circuit precedent, Plaintiffs incorrectly claim that they are free to engage in "group pleading." (Doc. 75, p. 48). Most of the cases cited by Plaintiffs in support of that proposition, however, were decided prior to the Supreme Court's decisions in Twombly and Iqbal. Moreover, those outdated cases still required the plaintiffs, at a minimum, to "alert[] the defendants to the precise misconduct with which they are charged." Hill v. Morehouse Med. Assocs., Inc., No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (cited at page 48 of Plaintiffs' response brief); accord Peters v. Amoco Oil Co., 57 F. Supp. 2d 1268 (M.D. Ala. 1999) (holding that the complaint must still "describe[] the acts and provide[] defendants with sufficient information to answer the allegations.") (cited at page 48 of Plaintiffs' response brief).

The lone post-Twombly/Iqbal case that Plaintiffs cite, Renasant Bank Inc.  v. Smithgall, Civ. Action No. 1:15-CV-0459-SCJ, 2016 WL 4502374 (N.D. Ga. June 13, 2016), is not even a federal RICO case; it is a Georgia-based fraudulent transfer case. The plaintiff in Smithgall alleged details regarding where and when some, but not all, of certain allegedly-fraudulent transfers took place. That was found sufficient to state a Georgia-based claim against the defendants, each of whom was alleged to have received a fraudulent transfer. Id. at *3-4. By contrast, Plaintiffs do not even mention Mr. Paglia or Stand specifically in connection with their claims that Mr. Paglia and Stand engaged in extortion, witness tampering, or money laundering. Accordingly, Mr. Paglia and Stand do not have sufficient notice of what Plaintiffs claim they did wrong.

Plaintiffs argue that they have alerted Mr. Paglia and Stand as to what each of them "is accused of doing wrong" by alleging that "ForestEthics has aggressively disseminated sensational

---

(See Doc. No. 3, pp. 2-3). Plaintiffs completely ignore this argument in their response brief for the simple reason that their failure to comply with this Court's rules is clear. That failure highlights the fatally defective manner in which the RICO claims were pleaded.

lies untethered to facts, to threaten, malign, and isolate large corporate targets and extort public concessions, endorsements, and other benefits, which it then touts to potential donors as success to extort additional financial support."  (Doc. No. 75, p. 49 [quoting paragraph 41(m) of the Complaint]).  Despite its colorful conclusions, the allegation is completely devoid of the detail necessary to allow Mr. Paglia and Stand to defend themselves.  Plaintiffs also identify three instances in which Mr. Paglia or Stand are alleged to have engaged in specific conduct in the complaint.  (Doc. No. 75, p. 49-50).  Leaving aside the fact that those three instances make up most of the specific allegations of conduct directed at Mr. Paglia and Stand, Plaintiffs make no effort in either their response brief or in the complaint to explain how that conduct supports their legal claims.  Accordingly, Mr. Paglia and Stand are left to guess what allegations Plaintiffs intend to use to support their claims.  This alone is a sufficient reason to dismiss the complaint.

Plaintiffs also attempt to avoid the consequences of their clear failure to assert sufficiently-specific claims by arguing that Mr. Paglia and Stand are responsible for all of the actions of every other defendant simply because they are alleged to have participated in a vague conspiracy.  In support this argument, Plaintiffs again cite to outdated cases decided prior to Iqbal and Twombly.[3] It is instructive, however, that Twombly itself was a case in which the plaintiffs alleged an antitrust conspiracy among the defendants.  The Supreme Court required more than vague allegations of "interdependence" and "parallel conduct," such as Plaintiffs have alleged here, to satisfy the pleading standards contemplated by the federal rules.  550 U.S. at 554.  Other cases that Plaintiffs cite had nothing to do with the sufficiency of civil pleadings and were not decided at the motion to dismiss stage.[4]  While it may be true that, at trial, a plaintiff can hold one defendant liable for

_____

[3] See Smith v. Berg, 247 F.3d 532 (3rd Cir. 2001) (cited at page 51 of Plaintiffs' response brief).

[4] See Salinas v. U.S., 522 U.S. 52 (1997); U.S. v. Clum, 607 Fed. App'x 922 (2015); U.S. v. Browne, 505 F.3d 1229 (11th Cir. 2007); U.S. v. Schlei, 122 F.3d 944, 968 (11th Cir. 1997) (all

the acts of another defendant in a RICO conspiracy if the plaintiff is able to submit sufficient evidence and convince the jury of each defendant's participation, that principle does not relieve a plaintiff of the burden to allege sufficient facts at the pleading stage to support a claim of a RICO conspiracy against every named defendant.  Otherwise, a plaintiff could evade the concept of notice pleading simply by asserting in conclusory fashion that a conspiracy existed.

That is why the rule requiring specific pleading of RICO claims applies to RICO conspiracy claims as well.  See Lawrie v. Ginn Dev. Co., 656 Fed. App'x 464 (11th Cir. 2016).  In Lawrie, the Eleventh Circuit dismissed federal RICO claims because the plaintiffs had not pleaded "the who, what, when, where, and how of specific misrepresentations that led them astray."  Id. at 474.  And even though the plaintiffs had asserted a RICO conspiracy claim, the claims were still subject to dismissal because the plaintiffs' "lack of specificity similarly condemn[ed] [their] conspiracy claims, which [were] ultimately premised on the same fraudulent conduct and therefore demand the same level of detail in pleading."  Id.; accord Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1269 (11th Cir. 2004) ("We have already found that the complaint failed to state a substantive RICO claim, and the RICO conspiracy [allegation] adds nothing.").[5]

---

cited at pages 50-51 of Plaintiff's response brief and all addressing issues arising after jury trials in criminal cases).

[5] Plaintiffs concede that, absent their insufficiently-pleaded RICO and conspiracy claims, there is no basis for personal jurisdiction over Mr. Paglia or Stand.  (See Doc. No. 75, p. 86 n. 50).  Additionally, because Plaintiffs have only alleged federal question jurisdiction based on their federal RICO claims (see Compl., ¶¶ 20-21), if the Court dismisses those claims, it can also dismiss the pendent state law claims that are included only by reason of "supplemental jurisdiction."  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004).  This is why it is particularly important for the Court to scrutinize Plaintiffs' RICO allegations.  They are the only basis for personal jurisdiction over Mr. Paglia and Stand and subject matter jurisdiction in this court.  See Courboin v. Scott, 596 Fed. App'x 729, 732 (11th Cir. 2014) (affirming dismissal of the complaint because the plaintiff had not alleged a viable RICO claim, thus preventing the plaintiff from using the RICO statute's nation-wide service of process provision to assert personal jurisdiction over the defendants).

Plaintiffs have failed to allege sufficient facts to support their asserted claims against Mr. Paglia and Stand as a matter of law.  Plaintiffs cannot avoid the fate of that failure by "group pleading" or by merely concluding that a conspiracy existed.

**B.      Plaintiffs have failed to plead the necessary elements of their federal RICO claims.**

Plaintiffs concede that, among the elements necessary to assert a cognizable federal RICO claim are the requirements that (1) the alleged RICO violation proximately caused the Plaintiffs' claimed injury and (2) the defendants conducted or participated in the affairs of a RICO enterprise. Plaintiffs' complaint fails to establish either of those essential elements.

**1.      Plaintiffs' federal RICO claims suffer from an inherent lack of proximate cause and standing.**

Plaintiffs concede, as they must, that to have standing to bring a civil RICO claim, they must allege that the claimed RICO violation proximately caused injury to their business or property.  See 18 U.S.C. § 1964(c); Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268 (1992).  Plaintiffs contend incorrectly that foreseeability is the touchstone of proximate cause. That is not how the Supreme Court or the Eleventh Circuit have defined proximate cause in the RICO context: "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led *directly* to the plaintiff's injuries."  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 463-64 (2007) (emphasis added).   A violation of the RICO statute is a proximate cause of the plaintiffs' injury only "if it is a *substantial factor* in the sequence of responsible causation."   Rock v. BAE Sys., Inc., 556 Fed. App'x 869, 872 (11th Cir. 2014) (emphasis added).  Accordingly, Plaintiffs must establish that their alleged damages were directly caused by the RICO violations that Mr. Paglia and Stand were alleged to have committed, and that those violations were a substantial factor in the sequence of causation.

In their initial brief, Mr. Paglia and Stand identified two independent reasons why proximate cause is lacking here.  First, Plaintiffs have not alleged that the sole reason Stand received donations was its alleged misrepresentations about Plaintiffs.  Second, Plaintiffs are not the victims of the implausible scheme alleged in the complaint; Stand's donors are.  In their response brief, Plaintiffs completely ignore the first reason and miscomprehend the second.

Plaintiffs' complaint makes clear that all of the defendants in this case advocate for many different causes of public interest, including (but certainly not limited to) nuclear waste, climate change, disappearing ice shelves, harmful commercial fishing tactics, and endangered animal species.  (Compl., ¶¶ 52-53, 57, 59, 65-66).  Indeed, Plaintiffs admit that Stand has engaged in many advocacy campaigns other than "the one directed at Resolute."  (Id., ¶ 41(m)).  Obviously, Stand's donors do not donate solely because of Stand's statements about Plaintiffs.  Accordingly, the donations allegedly funding the supposed RICO enterprise are not proximately caused by any of the alleged misrepresentations or other predicate acts.  The donations Stand receives and uses to pay expenses are not "attributable to the [alleged RICO violations], as distinct from other, independent, factors."  Holmes, 503 U.S. at 269.

Although Plaintiffs conveniently fail to mention it in their response, Plaintiffs repeatedly assert in their complaint that they are entitled to receive the "illicit proceeds" Stand has allegedly received from its donors.  (See Compl., ¶¶ 236, 244, 253).  It would, however, obviously be impossible to determine which donations were made as the proximate result of the RICO violations alleged in the complaint.  As the Holmes Court observed, the difficulty in "adopt[ing] complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts" militates against a finding of proximate cause.  Holmes, 503 U.S. at 269.  Because

Plaintiffs do not respond to this argument, they have effectively conceded its validity, and the Court should dismiss the complaint.

Plaintiffs' attempt to address Mr. Paglia and Stand's second argument regarding proximate cause reveals their fundamental misunderstanding of it.  Plaintiffs believe that Mr. Paglia and Stand have argued that because Plaintiffs were not the targets of the RICO predicate acts, Plaintiffs' RICO claims lack proximate causation.  Plaintiffs have overly simplified, and failed to grasp, the essential point:  proximate cause is lacking here because Stand's donors -- not Plaintiffs -- are the "directly injured" victims of the fantastical RICO violations asserted by Plaintiffs.  Accordingly, if Mr. Paglia and Stand had made false statements to induce donations, the donors "can generally be counted on to vindicate the law as private attorneys general."  Holmes, 503 U.S. at 269-70.  Because the donors induced by the supposed misrepresentations could sue Mr. Paglia and Stand (if what Plaintiffs allege is true), then allowing Plaintiffs to sue for the same injury would expose Mr. Paglia and Stand to potential double liability.[6]

Mr. Paglia and Stand rely, in part, on Kimberlin v. National Bloggers Club, No. GJH-13-3059, 2015 WL 1242763, at *13 (D. Md. March 17, 2015), to support the conclusion that proximate cause is absent here.  In Kimberlin, the plaintiff alleged that the defendants had formed a RICO enterprise to spread false and defamatory information about him "to raise money from people who believed and supported the [defendants'] false narrative."  Id. at *1.  The court found that the plaintiff had failed to establish proximate cause because "the direct victims of the mail

---

[6] Plaintiffs have not alleged in their complaint that any of Stand's donors actually relied on any of Stand's or Mr. Paglia's alleged statements about Plaintiffs.  To establish that their injuries were proximately caused by the alleged pattern of mail and wire fraud, Plaintiffs must allege that "*someone* relied on the defendant's misrepresentations."  Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 658 (2008) (emphasis in original).  For this additional reason, Plaintiffs have failed to allege proximate cause, and their RICO claims should be dismissed.

fraud, wire fraud, and money laundering are the individuals who were induced into making donations. If [the plaintiff's] allegations are true, these individuals may pursue their own remedies under the law." Id. at *13.

Plaintiffs insist that the plaintiff in Kimberlin was only seeking to redress harm to his reputation. But the Kimberlin court did not base its ruling regarding proximate cause on the *nature* of the damages alleged. Rather, it was concerned about the directness of the plaintiff's alleged injury. Id. at *13. In any event, Plaintiffs *are* seeking damages for harm to their reputation in this case, as they repeatedly assert in their complaint. (See, e.g., Compl., ¶¶ 192, 194, 213, 225, 232, 235, 243, 252, 259, 268, 269, 277). Accordingly, Kimberlin is directly on point.

Plaintiffs contend that their claims are more like those asserted in Feld Entertainment, Inc. v. American Society for the Prevention of Cruelty to Animals, 873 F. Supp. 2d 288 (D.D.C. 2012). Upon inspection, however, Feld actually supports dismissal of Plaintiffs' claims.

It is true that the Feld court allowed the plaintiff, a circus, to pursue federal RICO claims against animal advocacy groups that had allegedly misrepresented the circus's animal handling practices. But there are two key differences between what the advocacy groups were alleged to have done in Feld and what Plaintiffs allege in the present case. In Feld, the advocacy groups had filed a prior lawsuit against the circus, alleging that it had violated federal law by mistreating animals. One of the named plaintiffs in that prior case was a former employee of the circus. The circus ultimately prevailed in that prior case when it was discovered that the advocacy groups were secretly paying the former employee to participate in the action and that the former employee had not truly suffered any injury as a result of the alleged mistreatment of animals he claimed to have witnessed. While that prior lawsuit was pending, the advocacy groups ran a *targeted* fundraiser to raise money specifically to fund that tainted litigation against the circus and their illicit payments

to the former employee.  Id. at 303.  Thus, the allegedly ill-gotten donations in Feld were made **_exclusively and directly_** as the result of the misrepresentations about the circus.  In the present case, donations to Stand were made for a whole host of reasons -- not just because Mr. Paglia and Stand made statements about Plaintiff's destructive practices, and the complaint does not suggest otherwise.

Feld is also plainly distinguishable because the advocacy groups in that case used the money they raised to fund the sham litigation against the circus.  Thus, the circus was **_directly harmed_** by the funds that were raised from the misrepresentation alleged.  See id. at 321.  Here, Plaintiffs allege that defendants used the funds they have raised to pay general operating expenses (such as salaries), not to harm Plaintiffs directly.

Moreover, the Feld court actually dismissed portions of the RICO claims that were not **_directly related_** to the circus's defense of the sham litigation, including claims based on harm caused by the advocacy groups' efforts with various administrative and legislative entities.  The court found that alleged harm was "far too remote to satisfy proximate cause."  Id. at 320.  Thus, far from supporting Plaintiffs' tenuous assertion of proximate cause, Feld stands for the proposition that, unless an advocacy group obtains donations from a targeted fundraiser that are used to harm the defendant directly, proximate cause is not satisfied.

Recognizing the clear flaws in the manner in which they have alleged their claims for damages, Plaintiffs attempt to recast their claims in their response brief, contending that Mr. Paglia and Stand have mischaracterized their complaint and are attacking a "straw man."  But a simple reading of Plaintiffs' claims demonstrates otherwise.  The complaint repeatedly assert that Mr. Paglia and Stand induced donations from donors by lying about Plaintiffs' forestry practices to the public and to Plaintiffs' customers.  Plaintiffs repeatedly ask the Court to require Stand and Mr.

Paglia to "disgorge" those donations to Plaintiffs.  (Compl., ¶¶ 236, 244, 253).  In their response

brief, Plaintiffs focus on allegedly-lost customers and the resulting lost revenue, simply ignoring

their claim for "disgorgement" of donations.  Plaintiffs' impermissible attempt to morph the nature

of their claims in a brief responding to a motion to dismiss is both revealing and inadequate to save

the complaint from dismissal.[7]

But even Plaintiffs' newly-asserted focus on lost customers and lost revenue suffers from

the same causation defects.  As the Fifth Circuit held in a case cited in Plaintiffs' response brief, a

loss of sales as the alleged result of misrepresentations about the plaintiff does "not flow directly"

from those misrepresentations.  <u>Procter & Gamble Co. v. Amway Corp.</u>, 242 F.3d 539, 565 (5th

Cir. 2001).  In <u>Procter & Gamble</u>, the plaintiff asserted RICO claims against one of its competitors

alleging in part that the competitor's lies about the plaintiff induced individuals to buy less of the

plaintiff's products.  The Fifth Circuit rejected that theory of liability and affirmed the dismissal

of that portion of the plaintiff's RICO claims, holding that "there are too many intervening factors

for proximate causation to be proven here."  <u>Id.</u>

---

[7] In yet another instance of making an allegation in their response brief that cannot be found in the complaint, Plaintiffs claim that Mr. Paglia engaged in extortion when he "threatened that if [Plaintiffs] failed to publicly endorse the 'Resolute: Forest Destroyer campaign,' the Greenpeace Enterprise would 'destroy Resolute's image among its critical market constituents.'"  (Doc. No. 75, p. 60).  What Plaintiffs actually allege in their complaint, however, is that Mr. Paglia and Stand "attempted to coerce Resolute to 'collaborate' with [Stand] and others on setting aside large tracts of forest to create large new protected areas" and that Mr. Paglia "threatened a Resolute official that if Resolute failed to cede to [Stand's] demands, [Stand] would destroy Resolute's image."  (Compl., ¶ 193).  Plaintiffs say nothing in the complaint about Mr. Paglia demanding that Plaintiffs endorse the Resolute: Forest Destroyer campaign.  More importantly, Plaintiffs never explain how this allegation could possibly constitute extortion.  Plaintiffs allege in their complaint and in the brief that Resolute declined Mr. Paglia's request.  (Doc. No. 75, p. 60; Compl., ¶ 193).  In neither their brief or their complaint do they allege that they consented to give Mr. Paglia or Stand any money or property.  Accordingly, this allegation does not fit the statutory definition of extortion.  <u>See</u> 18 U.S.C. § 1951(b)(2) (defining extortion to be "obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear").

In summary, Plaintiffs' RICO claims are flawed because Plaintiffs have not claimed that they were directly harmed by the alleged RICO violations.  People make donations to Stand for a whole host of reasons.  Therefore, it would be impossible to isolate any donations that were made solely as the result of the statements that Stand and Mr. Paglia purportedly made about Plaintiffs. Additionally, Plaintiffs' claimed damages simply were not proximately caused by the RICO violations alleged.  If anyone were to have a direct claim against Stand and Mr. Paglia for the fantastical claims asserted here, it would be the donors who relied on the alleged statements -- not any of the Plaintiffs.  For these reasons, Plaintiffs' RICO claims fail as a matter of law.

**2.      Plaintiffs have failed to allege a RICO "enterprise."**

It is undisputed that the existence of a criminal "enterprise" is "a central element of a RICO claim" and "must be pled with specificity."  Almanza v. United Airlines, Inc., 162 F. Supp. 3d 1341, 1353 (S.D. Ga. 2016), appeal filed.  Plaintiffs' "enterprise" allegations are facially insufficient for two reasons.  First, Plaintiffs have failed to allege that Mr. Paglia and Stand actually engaged in the conduct of a racketeering enterprise, relying instead on insufficient circumstantial allegations such as parallel conduct with the other defendants.   Second, Plaintiffs have not alleged that the participation by Mr. Paglia and Stand in the alleged enterprise is distinct from the pattern of racketeering activity of which they are accused.  For the reasons described below, Plaintiffs' responses to both of those arguments are unavailing.

**a.      Plaintiffs have not alleged how Mr. Paglia or Stand participated in the purported enterprise.**

To assert a RICO enterprise, a plaintiff must allege something more than collective or parallel conduct.  Such allegations, by themselves, do not plausibly establish a RICO enterprise. See American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1292-93 (11th Cir. 2010); Almanza, 162 F. Supp. 3d at 1353-54.

In their response brief, Plaintiffs concede that they have not alleged an overt agreement by Mr. Paglia or Stand to join in the purported RICO enterprise.  Instead, Plaintiffs insist that engagement in the enterprise can be "inferred from the conduct of the alleged participants or from circumstantial evidence."  (Doc. 75, p. 62).  Dismissing the binding decision of the Eleventh Circuit in American Dental, Plaintiffs instead rely upon cases from other circuits or on cases that were decided prior to the Eleventh Circuit's decision in American Dental, most of which were not even decided in the motion to dismiss context.  The only decision of the Eleventh Circuit cited by Plaintiffs that was decided after American Dental addressed allegations of a RICO conspiracy, not a RICO enterprise.  See Rajput v. City Tading, LLC, 476 Fed. App'x 177, 180 (11th Cir. 2012).  Accordingly, the cases cited by Plaintiffs are simply inapposite.

Plaintiffs attempt to distinguish American Dental and Almanza by claiming that in both cases the complaints "were devoid of even circumstantial evidence that a RICO enterprise existed."  (Doc. 75, p. 63 n.26).  That characterization is incorrect.  The plaintiffs in both cases argued that they had satisfied the pleading requirements attendant to a RICO enterprise by alleging that the defendants had all engaged in parallel conduct -- just like Plaintiffs have done in the present case.  See 605 F.3d at 1292; 162 F. Supp. 3d at 1354.  Additionally, in Almanza the plaintiffs had even alleged in conclusory fashion that there was an explicit agreement among the defendants to engage in a RICO enterprise. But the Court still rejected that argument because the plaintiffs did not provide any factual detail other than a bald claim of parallel conduct to support such an agreement.  Id. at 1353-54.

In short, American Dental and Almanza are controlling.  To defend their thread-bare allegations of a RICO enterprise, Plaintiffs must do more than allege that the defendants engaged in parallel behavior.  Plaintiffs are forced to ignore binding Eleventh Circuit precedent to argue

otherwise.  Plaintiffs have failed adequately to allege that Mr. Paglia and Stand participated in a RICO enterprise.  Thus, the federal RICO claims against them should be dismissed.

> ### b.    Plaintiffs have not alleged how the purported RICO enterprise is distinct from the pattern of predicate acts Mr. Paglia and Stand supposedly committed.

Plaintiffs do not dispute that a RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages."  United States v. Turkette, 452 U.S. 576, 583 (1981).  Nor can Plaintiffs dispute that, to establish an enterprise, they must "show[] that the defendants conducted or participated in the enterprise's affairs, not just their *own* affairs."  Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) (emphasis in original).

Plaintiffs claim that they have satisfied these requirements by alleging that the defendants formed the "Greenpeace Enterprise" to "cast[] a wider net with respect to their attacks on customers, certification agencies and other critical market constituents."  (Doc. 75, p. 65-66).  But their complaint says no such thing.  The paragraph they cite to support that sentence spans several pages, but it does not contain the statements Plaintiffs include in their brief.  (See Compl., ¶ 41).  Plaintiffs also insist in their response that "the Complaint alleges that the impact of defendants' collaborative efforts against [Plaintiffs] . . . was far more effective than one single environmental group acting alone against [Plaintiffs] could have been."  (Doc. 75, p. 66).  But again, the paragraph Plaintiffs cite to support that claim says no such thing.  (See Compl., ¶ 166).

What Plaintiffs actually allege in their complaint is that Mr. Paglia and Stand lied about Plaintiffs to raise money to enrich themselves, ***not the alleged RICO enterprise***.  In other words, Plaintiffs have failed to allege that the purported RICO enterprise is distinct from the purported pattern of racketeering activity.  Mr. Paglia and Stand are being accused of conducting the affairs of a RICO enterprise, when in fact Mr. Paglia and Stand have merely been engaged in their own

"business" affairs of advocating for the protection and preservation of the environment. Accordingly, Plaintiffs have failed to allege a proper RICO enterprise.  See Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., 534 F. Supp. 2d 1326, 1337–38 (S.D. Fla. 2008).

Plaintiffs weakly attempt to distinguish Reves and Super Vision by claiming that those cases dealt with defendants who provided only "supplementary" services to an enterprise, whereas in the present case Mr. Paglia and Stand conducted the enterprise's affairs.  Pretermitting the issue of whether Plaintiffs have made sufficient allegations about the participation by Mr. Paglia and Stand in the purported enterprise, there are many cases in which courts have dismissed RICO claims because the plaintiffs alleged that the defendants' purported racketeering activity and the enterprises' racketeering activity were identical.  See, e.g., Ferguson v. Moeller, 2:16-cv-41, 2016 WL 1106609, at *7 (W.D. Pa. March 22, 2016) ("Plaintiffs concede in the RICO Case Statement that the 'enterprise's sole purpose is reflected by the racketeering activity, and all of the enterprise's actions are related to the racketeering activity' and admit that the 'activities of the enterprise and the pattern of racketeering are identical.'); Gross v. Waywell, 628 F. Supp. 2d 475, 499 (S.D.N.Y. 2009) ("[T]he alleged scheme Plaintiffs portray suggest individual acts of self-dealing by each of the Management Defendants, or at best separate parallel acts between [the defendants]— again each in furtherance of his or her own affairs rather than the affairs of the enterprise Plaintiffs allege under either of their enterprise theories.").  That is exactly what Plaintiffs have done in this case. Accordingly, their enterprise allegations are fatally deficient.

Plaintiffs have failed to allege a RICO enterprise that is distinct from the pattern of "racketeering" activity in which each defendant is alleged to have engaged.  The complaint alleges that Mr. Paglia and Stand lied about Plaintiffs to enrich themselves and not in furtherance of the

purported enterprise.  Accordingly, Plaintiffs have not properly alleged the existence of a RICO enterprise, and their federal RICO claims must be dismissed.[8]

## C.  Plaintiffs failed to address Mr. Paglia's and Stand's arguments regarding Plaintiffs' defective defamation claims.

In their initial brief, Mr. Paglia and Stand showed that Plaintiffs' defamation claims are defective for several reasons.  Plaintiffs ignored each of those arguments in its response.  First, as with all of their other claims, Plaintiffs have failed to link the facts alleged in the factual background section of their complaint with the substantive defamation count, making it impossible for Mr. Paglia and Stand to know which alleged statements form a basis for the claims against them and what defenses to raise.  Plaintiffs' only response is to assert, in a general and conclusory manner, that they have sufficiently alleged "dozens of false and defamatory statements."  But they still fail to reveal which of statements allegedly made by Mr. Paglia and Stand are defamatory.  In fact, Plaintiffs do not even mention Mr. Paglia or Stand in their entire argument regarding the defamation claims.  Indeed, the defamation count of the complaint similarly fails to mention Mr. Paglia or Stand.  These failures doom Plaintiffs' claims for defamation.  See Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016) (applying the "plausibility" pleading standard of Iqbal and Twombly to defamation claims).

Moreover, as Mr. Paglia and Stand explained in their initial brief, all but one of their statements referenced anywhere in the complaint are time barred.  See O.C.G.A. § 9-3-33; Koncul Enters., Inc. v. Fleet Fin., Inc., 279 Ga. App. 39, 42, 630 S.E.2d 567, 570 (2006). By ignoring this

---

[8] As Plaintiffs concede in their response brief, the same arguments that apply to Plaintiffs' federal RICO claims also apply to their Georgia RICO claims.  Accordingly, Plaintiffs' Georgia RICO claims should also be dismissed.

argument in their response, Plaintiffs concede that the claim as it relates to Mr. Paglia and Stand is solely based upon a single statement – an alleged tweet Mr. Paglia sent in December 2015.

The only statement that Plaintiffs allege Mr. Paglia or Stand made within a year of the filing of Plaintiffs' complaint is not defamatory, and Plaintiffs do not present any argument to the contrary in their response brief.  In the complaint (but not in their count for defamation), Plaintiffs allege that Mr. Paglia tweeted: "[Resolute Forest Products] shows collaboration is [a] foreign concept, rejects calls for mediation, go it alone or die?"  (Compl., p. 100 [Table B]).  Plaintiffs have failed to explain what is false about the statement.  Indeed, on its face, the statement is merely an expression of Mr. Paglia's opinion regarding Plaintiffs' motivations or intent, which are not defamatory as a matter of law.  See Collins v. Cox Enters., Inc., 215 Ga. App. 679, 679-80, 452 S.E.2d 226, 227 (1994) (affirming the trial court's dismissal of defamation claim because the statement at issue was merely "speculation as to [the plaintiff's] motives based on his behavior," was "a matter about which reasonable people might differ," and therefore nonactionable).

Apparently addressing other defendants' reliance on Collins in their own motions to dismiss, Plaintiffs attempt to distinguish that case on grounds that are not applicable to Plaintiffs' claims against Mr. Paglia and Stand.  Plaintiffs contend that Collins is distinguishable because it was discussing a statement that was "mere speculation" and did not contain "an objective fact that might be proved false."  (Doc. 75, p. 76 n.36).  But those grounds precisely describe the one alleged statement by Mr. Paglia or Stand that is not time-barred.  The subject tweet simply speculates about Plaintiffs' motives.  Collins expressly states that such speculation is non-defamatory because it cannot be proven false.   215 Ga. App. at 679-80, 452 S.E.2d at 227.  Accordingly, Collins is applicable to and bars any action based on the sole statement allegedly made by Mr. Paglia or Stand within the one-year limitations period.

Finally, Plaintiffs have not addressed Mr. Paglia's and Stand's argument that Plaintiffs omitted any specific facts to support their bare-bones allegation that Mr. Paglia and Stand acted with "actual malice."  In their response brief, Plaintiffs draw on facts from the first part of their complaint to support their contention that they have alleged "actual malice." (Doc. 75, p.71).  But in their complaint, Plaintiffs never actually link those facts with the elements of defamation alleged, including the allegation regarding actual malice, in Count VI of their complaint.  (See Compl., ¶¶ 282-83).  While it may be true that "actual malice" need not be pleaded with particularity under Federal Rule 9(b), Plaintiffs must do more than make conclusory assertions about the existence of actual malice.  See Michel, 816 F.3d at 702.  That failure also requires dismissal of Plaintiffs' defamation claims.

**D.    Plaintiffs have not sufficiently pleaded their tortious interference claims.**

Plaintiffs' tortious interference counts also lack specific allegations regarding Mr. Paglia and Stand.  Although there may be some factual assertions buried in the lengthy fact section of the complaint about purported interactions between Mr. Paglia and Stand and some of Plaintiffs' customers, the complaint makes no effort to explain what Mr. Paglia or Stand actually did to interfere with Plaintiffs' prospective business or contractual relations.  That failure to link the facts alleged in the first part of the complaint to the elements outlined in the complaint's counts is fatal to Plaintiffs' claims.  See Beckwith v. Bellsouth Telecomms., Inc., 146 Fed. App'x 368, 372 (11th Cir. 2005) (dismissing complaint that lumped all of the defendants together and did not specify what conduct supported the claims in the complaint).

In their response, Plaintiffs assert that their tortious interference claims are based on the actions of "defendants" or the "Enterprise," without specifying which defendants allegedly committed which acts.  Accordingly, even if Plaintiffs were allowed to amend their complaint in

their response brief,[9] Mr. Paglia and Stand are still left to guess at what conduct Plaintiffs allege actually supports their tortious interference claims.  For example, Plaintiffs summarily state in their response brief that the "Enterprise" interfered with Plaintiffs' contracts with 3M.  But the complaint discusses contacts that Mr. Paglia and Stand had with 3M in 2009, well before the 4-year limitations period for tortious interference claims.  See O.C.G.A. § 9-3-31.  Similarly, Plaintiffs allege that the "Enterprise" caused Best Buy to end its relationship with Plaintiffs, but they fail to explain what Mr. Paglia or Stand actually did wrong in their statements about Best Buy (which are alleged to have occurred *after* Best Buy terminated its relationship with Plaintiffs and which simply predicted that "Best Buy is just the beginning" and that other companies would follow suit).  (Compl., ¶ 175).  In short, Plaintiffs have utterly failed to allege what Mr. Paglia and Stand did to interfere with Plaintiffs prospective or existing business relations.  Those claims must be dismissed.

## E.     Plaintiffs have not properly pleaded the existence of a conspiracy.

Plaintiffs do not dispute that, when a plaintiff fails to allege an independent tort, there can be no claim for conspiracy to commit that tort.  See Brown Bark II, L.P. v. Dixie Mills, LLC, 732 F.Supp.2d 1353, 1359 (N.D. Ga. 2010).  Accordingly, because Plaintiffs have failed to state a claim for any tort against Mr. Paglia or Stand, their civil conspiracy claim should be dismissed.

But even if Plaintiffs had sufficiently stated a tort claim, their conspiracy claim is still deficient because it fails to plead enough factual detail to support the existence of a conspiracy among the defendants.  In their response, Plaintiffs insist that they are not required to make specific allegations about the existence of a conspiratorial agreement, and that they are instead permitted to rely on inferences and circumstantial evidence.  But the only support Plaintiffs offer in support

---

[9] And they are not.  See footnote 1 on page 4 of this brief.

of that proposition is a Georgia Supreme Court case decided decades ago, long before the U.S. Supreme Court set the standard for pleading plausible claims, including claims of conspiracy, in Iqbal and Twombly.   See Cook v. Robinson, 216 Ga. 328, 116 S.E.2d 742 (1960) (cited at page 82 of Plaintiffs' response brief).

A plaintiff asserting a federal civil conspiracy claim is required to support it with more than mere conclusory assertions of the existence of a conspiracy.  See Twombly, 550 U.S. at 554 (plaintiffs could not properly allege an antitrust conspiracy claim by alleging only "interdependence" and "parallel conduct" among the defendants); Walton v. Secretary of Veterans Affairs, Civ. Action No. 1:13-CV-00918-RWS, 2014 WL 5307577, at *4-5 (N.D. Ga. Oct. 15, 2014) (dismissing "conclusory" claim of civil conspiracy); Williams v. CitiMortgage, Inc., Civil Action No. 1:11-cv-03192-JEC, 2014 U.S. District LEXIS 100777, at *11-12 (N.D. Ga. July 23, 2014) (dismissing  civil conspiracy claim that was supported solely by an allegation of "defendants' unlawful combination and conspiracy" to engage in a "pattern and practice" of allegedly illegal behavior); Abulkhair v. U.S. Postal Serv., Civ. No. 2:13-7796(KM)(MAH), 2015 WL 858075, at *2 (D.N.J. February 27, 2015) ("Bare assertions of joint action or a conspiracy are not sufficient to survive dismissal at the pleading stage.  Rather, the plaintiff must demonstrate[] the existence of any concerted effort among the defendants.") (internal quotations and citations omitted).

Plaintiffs' civil conspiracy count merely asserts that the all of the defendants undertook actions "in concert" with a "conspiratorial objective." (Compl,. ¶ 306).  Plaintiffs wholly omit the particularities of any alleged conspiratorial agreement among the defendants.  Accordingly, Plaintiffs' count for civil conspiracy must be dismissed.

**F.      Plaintiffs have failed to state a claim for trademark dilution under Georgia law.**

In the final count of their complaint, Plaintiffs allege that defendants have tarnished their trademarked name and image by calling Plaintiffs "Resolute: Forest Destroyer" and critiquing Plaintiffs' forestry practices.  (Compl., ¶ 315).  Citing Georgia's trademark dilution statute, O.C.G.A. § 10-1-451(b), Plaintiffs seek an injunction preventing Mr. Paglia and Stand from using Plaintiffs' name in their critiques.  (Compl., ¶ 316).

The Georgia Supreme Court recently rejected just such a claim for trademark dilution.  In McHugh Fuller Law Group, PLLC v. PruittHealth, Inc., ___ Ga. ___, 794 S.E.2d 150 (2016),[10] a nursing home sued a law firm that had published an advertisement seeking clients whose loved ones had suffered injury or death at the facility.  The nursing home obtained an injunction against further publication of the ad, claiming that the ad tarnished its image by negatively associating it with the neglect of its patients.  On appeal, the Georgia Supreme Court reversed, holding that tarnishment of a trademark occurs "only if the defendant uses the designation as its own trademark for its own goods or services."  Id. at 156.  "[C]ases in which a defendant uses the plaintiff's mark to refer to the plaintiff in a context that harms the plaintiff's reputation are not properly treated as tarnishment."  Id.  "[T]rademark law does not impose a blanket prohibition on referencing a trademarked name in advertising" because "[m]uch useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark."  Id. at 156-57.  Because the advertisement promoted the firm's services and not the nursing home's services, it did not constitute trademark dilution as a matter of law.  Thus, the trial court erred in granting the injunction.  Id.

---

[10] The McHugh Fuller case has not yet been published in the Georgia Reporter.

Mr. Stand and Paglia have likewise never used Plaintiffs' marks to promote their own goods or services, and no such claim is made in the complaint.  To the contrary, Mr. Paglia and Stand are an advocacy group **_criticizing_** Plaintiffs' forestry practices.  No one reading the statements at issue would believe that Mr. Paglia or Stand were trying to sell goods or services under the Resolute name.[11]  Accordingly, Plaintiffs' trademark dilution claim fails as a matter of law.

Finally, Plaintiffs' assertion that they have registered their trademark with the U.S. Patent and Trademark Office does not satisfy the requirements of Georgia's trademark dilution statute, which mandate registry of the trademark with the Georgia Secretary of State.  See Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC, 605 F.3d 931, 935 (11th Cir. 2010). Plaintiffs' reliance on an unpublished opinion from the Northern District of Georgia to argue otherwise (see Doc. 75, p. 81 n.43), is unavailing in the face of binding Eleventh Circuit precedent on this issue.  Plaintiffs have not complied with the statute's registry requirement, and thus, their claim under the statute claim must fail.

## **CONCLUSION**

For all of the foregoing reasons and for the reasons stated in their initial brief, Defendants Stand and Mr. Paglia respectfully urge the Court to dismiss Plaintiffs' complaint in its entirety for failure to state a claim upon which relief can be granted.

[signature on following page]

---

[11] In the words of the Georgia Supreme Court, "[i]f [Plaintiffs] believe[] that [the alleged statements of Mr. Paglia and Stand] are untruthful or deceptive, [they] must seek relief under some other statutory or common-law cause of action."  McHugh, 794 S.E.2d at 157.

Respectfully submitted, this the 20th day of January, 2017.

/s/   Aaron P.M. Tady
Matthew S. Coles
Georgia Bar No. 178020
Application for admission pending
Thomas M. Barton
Georgia Bar No. 040821
Aaron P.M. Tady
Georgia Bar No. 696273

COLES BARTON LLP
150 South Perry Street, Suite 100
Lawrenceville, Georgia 30046
(770) 995-5552 (telephone)
(770) 995-5582 (fax)
mcoles@colesbarton.com
tbarton@colesbarton.com          Attorneys for Defendants Stand
atady@colesbarton.com            and Todd Paglia

## CERTIFICATE OF SERVICE

This is to certify that on this day, the 20th day of January, 2017, I electronically filed the foregoing document and have served all parties in this case using the CM/ECF System, which will automatically generate an e-mail notification of such filing to all the attorneys of record listed with the Clerk of Court.

/s/   Aaron P.M. Tady
Aaron P.M. Tady
Georgia Bar No. 696273

Attorney for Defendants Stand and
Todd Paglia