IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., RESOLUTE FP US, INC., RESOLUTE FP AUGUSTA, LLC, FIBREK GENERAL PARTNERSHIP, FIBREK U.S., INC., FIBREK INTERNATIONAL, INC., and RESOLUTE FP CANADA, INC.<br><br>　　　　Plaintiffs,<br><br>v.<br><br>GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., GREENPEACE FUND, INC., FORESTETHICS, DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT, ROLF SKAR, TODD PAGLIA, and JOHN AND JANE DOES 1-20,<br><br>　　　　Defendants. | CIVIL ACTION FILE<br><br>NO. 1:16-cv-0071-JRH-BKE |

**REPLY BRIEF OF DEFENDANTS PAGLIA AND STAND
IN SUPPORT OF THEIR MOTION TO STRIKE PURSUANT TO O.C.G.A. § 9-11-11.1**

COME NOW Defendants Todd Paglia ("Mr. Paglia") and Stand, formerly known as ForestEthics ("Stand"), and submit this reply brief in further support of their motion to strike Plaintiffs' complaint pursuant to O.C.G.A. § 9-11-11.1.

**INTRODUCTION**

Mr. Paglia and Stand have been sued by Plaintiffs and accused of criminal racketeering and other wrongdoing merely because they chose to engage in public advocacy regarding issues of significant public importance and intense debate: climate change and sustainable forestry practices. The purpose of this lawsuit is not even thinly-veiled -- it is patently clear: Plaintiffs,

-1-

which are on one side of the debate, seek to use the power of the Court to stifle those who advocate positions on the other side of the debate. That effort runs contrary to the concept of vigorous public discourse and debate that is essential to the evolution and exchange of ideas in a free society and that is embodied in the First Amendment. Notably, Plaintiffs do not dispute the existence of the debate -- their experts acknowledge it. Nevertheless, Plaintiffs contend that the Court should force Mr. Paglia and Stand to stop even using Plaintiffs' "Resolute" name in their critiques of Plaintiffs' forestry practices. Plaintiffs effectively seek to silence one side of the debate. But when there is a debate of public importance, with both sides claiming that the other side's arguments are wrong, or even damaging, "the remedy to be applied is more speech, not enforced silence." Romero v. Drummond Co., 480 F.3d 1234, 1247 (11th Cir. 2007) (quoting Whitney v. California, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)).

## ARGUMENT AND CITATION OF AUTHORITIES

In July 2016, shortly after this lawsuit was filed, but long before any defendants answered the complaint (something that has still not occurred), Georgia's anti-SLAPP statute was amended. The amendments expanded the scope of the statute to encompass any claim arising from an act in furtherance of the defendant's right of free speech in connection with an issue of public interest or concern. O.C.G.A. § 9-11-11.1(b)(1) (2016). There is no genuine dispute that Plaintiffs' claims arise from the exercise of the defendants' free speech rights in connection with issues of public interest and concern: Plaintiffs' unsustainable and destructive forestry practices. Accordingly, under the revised statute, Mr. Paglia and Stand were entitled to -- and did -- file a motion to strike Plaintiffs' claims against them. Id.

In response to that motion, Plaintiffs are required to establish that "there is a probability" that they will prevail on their claims against Mr. Paglia and Stand. Id. Plaintiffs have utterly failed

to discharge that burden. Instead, Plaintiffs devote the vast majority of their response to their argument that the anti-SLAPP statute does not apply to this action. Plaintiffs then feebly devote just a little more than a page to the substantive application of the statute to the facts of this case. Indeed, Plaintiffs' discussion of their attempt to provide evidentiary support for the claims they have brought is confined to a single paragraph that is most conspicuous for its complete failure to even mention Stand or Mr. Paglia. (Doc. No. 75, pp. 40-41).

The reason for Plaintiffs' desperation to convince the court to ignore Georgia's current anti-SLAPP statute is obvious; if the statute applies to Plaintiffs' claims, then they must be dismissed. As explained below, however, the current statute clearly does apply to Plaintiffs' claims, triggering the requirement that Plaintiffs establish a probability of success. Because they have plainly failed to carry that burden, the Court should grant Mr. Paglia and Stand's motion and strike Plaintiffs' claims against them.[1]

**A.      Georgia's anti-SLAPP statute applies to Plaintiffs' claims in this Court.**

Plaintiffs make several arguments in an effort to convince this Court that the recent amendments to Georgia's anti-SLAPP statute should not apply in this case. Those arguments are addressed below, and each of them is plainly unavailing.

---

[1] Plaintiffs incorrectly assert that Mr. Paglia and Stand rely on California's anti-SLAPP statute in support of their motion. (See Doc. No. 75, p. 30). Mr. Paglia and Stand based their motion to strike only on Georgia's anti-SLAPP statute, although some of the other defendants did rely, at least in part, on California's statute in support of their motions to strike. Plaintiffs' habitual practice of lumping Mr. Paglia and Stand together with the other defendants in this action occurs throughout their response brief, just as it did in the complaint. The reason for Plaintiffs' attempt to blur the lines between Mr. Paglia and Stand, on the one hand, and the other defendants, on the other, is simple: Plaintiffs do not have, and have not pleaded, sufficient factual allegations to support their claims against Mr. Paglia and Stand.

**1.    The Eleventh Circuit's decision in <u>Royalty Network</u> is no longer applicable to Georgia's anti-SLAPP statute.**

Citing <u>Royalty Network, Inc. v. Harris</u>, 756 F.3d 1351 (11th Cir. 2014), Plaintiffs insist that Georgia's anti-SLAPP statute does not apply to any of their claims in federal court because it conflicts with the Federal Rules of Civil Procedure. But the Eleventh Circuit's opinion in <u>Royalty Network</u> addressed the prior version of Georgia's anti-SLAPP statute, which contained a provision in conflict with Rule 11 of the Federal Rules of Civil Procedure. <u>See id.</u> at 1359-61. The recent amendments to the statute removed that provision (a verification requirement), and thus, the holding in <u>Royalty Network</u> is no longer apposite. Indeed, as the Eleventh Circuit explained in <u>Royalty Network</u>: when a state procedural rule does not "directly conflict" with the federal procedural rules, then the state rule should apply in federal court if "failure to apply the state law would lead to different outcomes in state and federal court and result in inequitable administration of the laws or forum shopping." <u>Id.</u> at 1358. The current version of the anti-SLAPP statute does not conflict with Rule 11 or with any of the other Federal Rules, and not applying the statute could lead to a different outcome here, in federal court, than if this case had been filed in state court, resulting in inequitable results and forum shopping. Accordingly, the Court should apply the recently-revised statute.

Plaintiffs incorrectly contend that, despite its recent revisions, Georgia's anti-SLAPP statute still conflicts with the Federal Rules of Civil Procedure. But the vast majority of circuit courts that have addressed anti-SLAPP statutes that are similar to Georgia's amended statute have held that those statutes do not conflict with the federal rules and have allowed defendants to rely upon them in federal court. See <u>Liberty Synergistics, Inc. v. Microflo, Ltd.</u>, 718 F.3d 138, 152-56 (2nd Cir. 2013); <u>Godin v. Schencks</u>, 629 F.3d 79, 85-92 (1st Cir. 2010); <u>Henry v. Lake Charles American Press, LLC</u>, 566 F.3d 164, 168-69 (5th Cir. 2009); <u>U.S. ex rel. Newsham v. Lockheed</u>

Missiles & Space Co., 190 F.3d 963, 971-73 (9th Cir. 1999).  Moreover, other courts in this Circuit have held that California's anti-SLAPP statute, upon which Georgia's statute was modeled, applies in federal court.  See Tobinick v. Novella, 108 F. Supp. 3d 1299, 1305 n.4 (S.D. Fla. 2015) (allowing the defendant to rely on California's anti-SLAPP statute to file a motion to strike the plaintiff's claims in federal court "[b]ecause the majority of circuit courts have found anti-SLAPP special motions to strike permissible").

Georgia's revised anti-SLAPP statute now requires that a plaintiff establish a probability of success as to any claim that arises out of the exercise of free-speech rights in connection with a matter of public concern or importance.  See O.C.G.A. § 9-11-11.1(b)(1) (2016).  Relying on a small handful of cases from other circuits,[2] Plaintiffs argue that a requirement that they establish a probability of success as to their claims against Mr. Paglia and Stand conflicts with Rules 12 and 56 of the Federal Rules of Civil Procedure.  However, the only circuit court of appeals case cited by plaintiffs is Abbas v. Foreign Policy Group, LLC, 783 F.3d 1328 (D.C. Cir. 2015).  In Abbas, the D.C. Circuit held that Rules 12 and 56 "answer the same question" as an anti-SLAPP statute because both of those rules establish the standards for granting pre-trial judgment to defendants in federal court.  Id. at 1333 (quoting Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393 (2010)).

But the more thoughtful analysis (and the analysis followed by the vast majority of other circuit courts) is found in the First Circuit's opinion in Godin.  Rules 12 and 56 facially do not purport to be the exclusive method for pre-trial adjudication of a plaintiff's claims, nor do they "answer the same question" or "address the same subject" as an anti-SLAPP statute.  629 F.3d at

---

[2] Plaintiffs' citation to the U.S. Supreme Court's decision in Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 35 (1988), is actually to the dissenting opinion of Justice Scalia in an 8-1 decision.  (See Doc. No. 75, p. 36).

88 (also quoting Shady Grove). As the First Circuit reasoned in Godin, an anti-SLAPP statute provides a procedure applicable to cases implicating the First Amendment, shifting a claimant's burden of proof to an earlier stage of a defamation case -- things that neither Rule 12 nor Rule 56 do. 629 F.3d at 89. Moreover, applying the anti-SLAPP statute in federal court "serve[s] the twin aims of the Erie rule: discouragement of forum shopping and inequitable administration of the laws." Id. at 91 (citations and quotation marks omitted).

Contrary to Plaintiffs' assertions in their response brief, Georgia's anti-SLAPP statute does not ask the Court to "test the sufficiency of plaintiffs' evidence." (Doc. No. 75, p. 37). Rather, the statute simply requires that Plaintiffs "establish[] that there is a probability that [they] will prevail on [their] claim[s]." O.C.G.A. § 9-11-11.1(b)(1). Accordingly, the statute does not conflict with the prohibitions found in Rules 12 and 56 against weighing evidence or resolving fact issues prior to trial.

For those reasons, Georgia's anti-SLAPP statute does not conflict with the Federal Rules of Civil Procedure and applies to this action.[3]

---

[3] Plaintiffs also contend that Georgia's anti-SLAPP statute cannot apply to their federal RICO claims. While the Supremacy Clause generally prohibits state law from interfering with properly-enacted and authorized federal law, Plaintiffs' federal RICO claims are defectively pleaded on their face (as explained in Mr. Paglia and Stand's initial and reply briefs in support of their motion to dismiss). Plaintiffs have attempted to utilize the federal RICO statute (and its provisions permitting nationwide service of process) to bring time-barred defamation claims in a district in which Mr. Paglia or Stand would clearly not otherwise be subject to personal jurisdiction. An anti-SLAPP motion may be based on "any defect in the plaintiff's action," including the failure to state a claim or failure to adduce evidence to support the claim. Rogers v. Home Shopping Network, 57 F. Supp. 2d 973, 976 (C.D. Cal. 1999) (cited at page 37 in Plaintiffs' response brief). Because Plaintiffs' federal RICO claims are facially-defective shams, the Court could dismiss them either under Federal Rule of Civil Procedure 12 or under Georgia's anti-SLAPP statute.

## 2. Georgia's current anti-SLAPP statute applies even though this case was filed shortly before the effective date of the amendments.

Plaintiffs incorrectly insist that the recent amendments to the anti-SLAPP statute should not apply because they did not take effect until July 1, 2016, shortly after this action was filed. It is well settled that procedural changes to Georgia law generally apply to pending cases and affect the proceedings that occur after the effective date of the change. See Studstill v. Aetna Cas. & Sur. Co., 101 Ga. App. 766, 767-68, 115 S.E.2d 374, 375 (1960). A law is procedural when it "prescribes the methods of enforcement of rights, duties, and obligations." Killearn Inc. v. Southern Structural, Inc., 308 Ga. App. 494, 496, 707 S.E.2d 882, 884 (2011). That is exactly what the revised anti-SLAPP statute does. It provides a mechanism to prevent a plaintiff from pursuing a baseless defamation claim against a defendant with the intent of silencing that defendant on an issue of public importance.[4] Plaintiffs' contention that the amendments were substantive merely because they create a new right for the recovery of attorneys' fees is without merit. The right to recover fees incurred in defending against baseless claims existed long before the effective date of the revisions to the anti-SLAPP statute. See O.C.G.A. § 9-15-14 (providing for the recovery of fees when a party pursues a claim or defense that is baseless); O.C.G.A. § 51-7-81 (providing for the recovery of fees for abusive litigation). The revisions to the anti-SLAPP statute simply provide an additional mechanism for the recovery of litigation expenses. O.C.G.A. § 9-11-11.1(b.1).

---

[4] Plaintiffs argue that, under an Erie analysis, the statute cannot apply in federal court if it is procedural and that, if the amendment to the statute is not procedural, it cannot apply retroactively. That argument is overly simplistic. Under Erie, a state's procedural law can be applied in federal court, even when under state law the statute is "procedural" and can be applied retroactively. See Tanker Management, Inc. v. Brunson, 918 F.2d 1524, 1529 n.3 (11th Cir. 1990) (holding that a Florida court's decision regarding a Florida statute's retroactive application was not determinative of whether that statute applied in a diversity case in federal court under an Erie analysis).

For this reason, Plaintiffs' reliance on the Georgia Supreme Court's decision in Fowler and the Georgia Court of Appeals' decision in Minter is misplaced. In Fowler, the Georgia Supreme Court held that Georgia's "offer of settlement" statute -- which requires a plaintiff who has declined a settlement offer that meets certain statutory requirements to pay the defendant's attorneys' fees if the defendant ultimately prevails -- did not apply to a lawsuit that was filed prior to the effective date of the statute. The Court reasoned that "by creating this new obligation, the statute operates as a substantive law," and substantive laws cannot be applied retroactively. Fowler Properties, Inc. v. Dowland, 282 Ga. 76, 78, 646 S.E.2d 197, 200 (2007).

Similarly, in Minter, the Georgia Court of Appeals held that a new statute providing for the recovery of a specified amount for attorneys' fees in a workers' compensation proceeding was substantive because "prior to the enactment of [the statute at issue,] Minter had no right to payment of litigation expenses." Minter v. Tyson Foods, Inc., 271 Ga. App. 185, 188, 609 S.E.2d 137, 141 (2004). In contrast, Mr. Paglia and Stand had the right to seek their fees and expenses for defending against Plaintiffs' baseless claims prior to the revisions to Georgia's anti-SLAPP statute. The amendments merely provide Mr. Paglia and Stand the opportunity to seek those fees at an earlier point in the case.

Plaintiffs also cite to a small number of cases from other jurisdictions to support their argument that other states' anti-SLAPP statutes have not been applied retroactively. But those cases are distinguishable because they all involved an attempt at retroactive application of an amendment to allegations of purely past wrongful conduct that were not ongoing. See Doe v. Brown, No. 62752, 2015 WL 3489404, at *1 (Sup. Ct. Nev., May 29, 2015) (motion to strike filed after the effective date of the anti-SLAPP statute at issue); Sherrod v. Breitbart, 843 F. Supp. 2d 83, 83-84 (D.D.C. 2012); Anderson Dev. Co. v. Tobias, 116 P.3d 323, 328-29 (Utah 2005)

(holding that the statute would not apply to past conduct but that it would apply to continued prosecution of baseless claims).

Here, none of the defendants has filed an answer, and issue has not yet been joined as to any of them. Moreover, Plaintiffs are seeking damages for what they claim is *ongoing* wrongful conduct.[5] (See Compl., ¶¶ 211, 220). Plaintiffs are even seeking an injunction to stifle future speech. (See Compl., ¶¶ 311-316). Accordingly, application of the revised anti-SLAPP statute to this case is not retroactive at all.

Additionally, there are many cases -- not cited or even acknowledged in Plaintiffs' brief -- in which courts have applied anti-SLAPP statutes to cases that were already pending when those statutes went into effect. See Nguyen v. County of Clark, 732 F. Supp. 2d 1190, 1193-94 (W.D. Wash. 2010) ("[T]he new Anti-SLAPP statute is procedural and does not affect a vested right, and therefore is remedial in nature and applies retroactively to [the defendants'] malicious prosecution claim."); Shoreline Towers Condo. Ass'n v. Gassman, 936 N.E.2d 1198, 1208 (Ill. Ct. App. 2010) ("[W]e find that the [Illinois anti-SLAPP statute] is procedural in nature and applies to the instant SLAPP lawsuit."); Ingels v. Westwood One Broadcasting Serv., Inc., 129 Cal. App. 4th 1050, 1065, 28 Cal Rptr. 3d 933, 942 (2005) ("The new [anti-SLAPP] statute applies to lawsuits brought before its effective date because it constituted a procedural change regulating the conduct of ongoing litigation and thus triggered no retroactivity concerns.").

Plaintiffs also contend that the anti-SLAPP statute is substantive because it contains "burden shifting provisions." That contention is simply false. Mr. Paglia and Stand do not have

---

[5] Indeed, in their reply brief in support of their motion to lift this Court's stay of discovery, Plaintiffs insist that the "misconduct alleged in the Complaint is ongoing." (citing a letter dated December 16, 2016, some six months after the effective date of the amendments to the anti-SLAPP statute). (Doc. No. 85, p. 4).

the burden of proving the absence of any claims against them.  Rather, plaintiffs have always had the burden of proving Georgia defamation claims.  See Bollea v. World Championship Wrestling, Inc., 271 Ga. App. 555, 557-58, 610 S.E.2d 92, 96-97 (2005) (affirming the grant of summary judgment on the plaintiff's defamation claim because the plaintiff could not prove some of the elements of that claim).  The anti-SLAPP statute merely advances the time when a plaintiff must meet its already-existing burden to support its claims with evidence:  under the anti-SLAPP statute, a plaintiff must show a *prima facie* case at the beginning of the lawsuit, rather than waiting until the time of trial or the filing of a summary judgment motion.  See O.C.G.A. § 9-11-11.1(b)(1).

Georgia's revised anti-SLAPP statute merely provides a new procedure for addressing baseless SLAPP lawsuits such as the one at bar.  Thus, the amendments are not substantive and clearly apply to this case, particularly given that issue has still not been joined and Plaintiffs seek to recover damages for conduct occurring after the complaint was filed and long after the effective date of the amendments.

### 3. Plaintiffs' claims are aimed at speech rather than conduct.

Finally, in an argument that concedes Georgia's revised anti-SLAPP statute would otherwise apply to this case, Plaintiffs contend with an apparently-straight face that their claims fall outside the *scope* of the statute because they are based on conduct rather than speech.  Plaintiffs then attempt to recast their complaint as one that addresses six categories of "conduct" on which they now claim to base their claims:

1) "harassing Resolute's customers with extortionate threats,"
2) "crippling boycotts,"
3) "wiring fraudulently obtained funds to sustain a racketeering campaign,"
4) "fabricating evidence,"

5) "soliciting fraudulent charitable donations from the public by means of false pretenses, representations or promises," and

6) "submitting materially false and misleading tax submissions and financial information."

(Doc. No. 75, p. 38).

As an initial matter, Plaintiffs' assertion is wholly belied by their own complaint, in which they list -- for pages and pages -- statements allegedly made by various defendants in an effort to support their claims. Beginning at page 94, the complaint lists over 60 *statements* that Plaintiffs allege defendants have made and that support their claims. Beginning on page 97, the complaint provides another list of *statements*, this one containing more than 50 allegedly made by defendants that Plaintiffs claim support their claims. Finally, Plaintiffs attach to their complaint Appendixes A through F, which span some 36 pages and contain more than 200 additional alleged *statements* made by the defendants that Plaintiffs claim support their claims. (See Compl., pp. 94-96 [Table A], pp. 97-101 [Table B], Doc. No. 1-1, pp. 1-36 [Appendixes A – F]). Plaintiffs cannot credibly claim that their claims are based purely on conduct. To the contrary, a simple review of the complaint reveals that Plaintiffs' claims are overwhelmingly based on statements that the defendants are alleged to have made.

But even to the extent that Plaintiffs' claims are based in part upon alleged "conduct" by Mr. Paglia and Stand, Georgia's anti-SLAPP statute expressly defines an "act in furtherance of the . . . right of petition or free speech" to include not only "[a]ny written or oral statement or writing," but also "[a]ny other ***conduct*** in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern." O.C.G.A. § 9-11-11.1(c)(2), (3) (emphasis added).

In any event, a review of the purported categories of conduct that Plaintiffs list in their response brief reveals that they either have nothing to do with Mr. Paglia or Stand or that they are actually based purely on statements -- not conduct -- that Mr. Paglia and Stand allegedly made in furtherance of their right to engage in public discourse on environmental issues. (See Doc. No. 75, p. 38). The first category of "conduct" that Plaintiffs list is "extortionate threats" made to Resolute's customers. (Id.). But the only mention of Mr. Paglia or Stand in the paragraphs in the complaint related to those "threats" are nothing more than Mr. Paglia exercising his free speech rights. For example, the assertion that Mr. Paglia made "extortionate threats" to Resolute customer 3M is based solely on the allegation that Mr. Paglia publicly stated 3M was "sourcing materials from endangered forests" and endangering caribou. (Compl., ¶ 165). Those statements facially do not constitute extortion, which is defined as "obtaining . . . property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Plaintiffs also allege that Stand stated that companies would stop using Plaintiffs as a source for their paper products as had Best Buy. (Id., ¶ 175). But even as alleged, this was simply a prediction about the effect of Stand's continued environmental advocacy. There is nothing extortionate about the statement on its face.

The second category of alleged conduct on which Plaintiffs now claim their complaint is based is "crippling boycotts." (Doc. No. 75, p. 38). But there is nothing illegal about Mr. Paglia and Stand stating that they would encourage Resolute's customers to find a different supplier. Moreover, the Georgia Court of Appeals has expressly stated that the anti-SLAPP statute was intended to apply to claims of "intentional interference with contractual rights." Browns Mill Dev. Co. v. Denton, 247 Ga. App. 232, 233, 543 S.E.2d 65, 68 (2000) (cited in Plaintiffs' response brief at pp. 37-38). Accordingly, even if the alleged "boycotts" could be used to support Plaintiffs' tort

claims, the statements made to further those boycotts clearly fall within the scope of Georgia's anti-SLAPP statute.

The third and fifth categories of "conduct" that Plaintiffs identify are actually based on the same paragraphs from the Complaint. (See Doc. No. 75, p. 38). Neither category describes "conduct" but instead is based on Plaintiffs' contention that "Greenpeace" obtained donations to fund its operations by making misrepresentations about Plaintiffs and about other environmental issues to the public. (Compl., ¶¶ 43, 51, 55-56). Mr. Paglia and Stand are not even mentioned in the cited paragraphs and, in any event, Mr. Paglia and Stand -- like any other citizen -- are allowed to engage in public discourse about environmental issues. Indeed, Georgia's anti-SLAPP statute is expressly intended to apply to claims based on precisely those types of statements. See O.C.G.A. § 9-11-11.1(a) ("The General Assembly of Georgia . . . finds and declares that the valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process.").

The allegations Plaintiffs cite to support their contention that defendants "fabricat[ed] evidence" are nothing more than bald conclusions that lack any useful detail. (See Compl., ¶¶ 56, 73, 78, 81). More significant to the present motion, however, is the fact that nowhere in the identified paragraphs -- or, indeed, anywhere in their complaint -- do Plaintiffs allege that Mr. Paglia or Stand engaged in the fabrication of evidence.

The final category of "conduct" cited by Plaintiffs is "submitting materially false and misleading tax submissions and financial information." (Doc. No. 75, p. 38). Plaintiffs cite to only two paragraphs from their complaint to support this contention, and one of those paragraphs (¶ 208) says nothing about tax or financial submissions. Moreover, Mr. Paglia and Stand are not mentioned in either cited paragraph, and nowhere in the complaint do Plaintiffs allege that either

Mr. Paglia or Stand submitted false tax or financial information. Plaintiffs also fail to allege how those supposedly false submissions harmed them in any way.

Accordingly, the "gravamen" of Plaintiffs' claims against Mr. Paglia and Stand is the exercise by Mr. Paglia and Stand of their constitutionally-protected right to engage in a debate regarding matters of public importance. Plaintiffs have wholly failed to allege any improper conduct by Mr. Paglia or Stand that does not fall within the scope of Georgia's anti-SLAPP statute.

In summary, Georgia's revised anti-SLAPP statute applies in federal court, as the vast majority of cases that have examined anti-SLAPP statutes like Georgia's have held. There is no Eleventh Circuit precedent that addresses the amended statute. Additionally, although this case was filed before the statute's recent amendments took effect, the statute is procedural and thus is applicable to this case as it proceeds. Finally, Plaintiffs' contention that their claims are based on conduct that falls outside the scope of the anti-SLAPP statute is simply not true. Plaintiffs' complaint is obviously based on defendants' speech, not their conduct.

**B.     Plaintiffs have not established a probability that they will prevail on their claims against Mr. Paglia or Stand.**

Because Georgia's anti-SLAPP statute applies to this case for the reasons described above, Plaintiffs were required to come forward with "supporting . . . affidavits" that show "there is a probability" that they "will prevail" on their claims *against Mr. Paglia and Stand*.[6] O.C.G.A. §

---

[6] Contrary to the anti-SLAPP statute, Plaintiffs claim that, because they have not had the opportunity to conduct any discovery, they are not required to provide any evidence to support their claims at this time. But the statute requires a plaintiff to provide "supporting . . . affidavits." O.C.G.A. § 9-11-11.1(b)(2). A plaintiff *may* seek discovery on the limited issue of actual malice, but Plaintiffs have not sought such discovery. See id. Presumably, Plaintiffs have not made such a request because doing so would acknowledge that the anti-SLAPP statute applies to this case. Thus, in a classic example of trying to have something both ways, Plaintiffs claimed in a recent filing that they *did* ask for discovery, citing pages 39-40 of their response brief. (See Doc. No. 85, p. 2 n.2). But those pages do not contain a request for discovery. Rather, they set forth Plaintiffs'

9-11-11.1(b)(1), (2). Plaintiffs have failed to meet that burden. Tellingly, Plaintiffs' arguments regarding the actual substance of their claims -- an analysis that goes to the heart of whether Plaintiffs' claims should be dismissed under the anti-SLAPP statute -- is presented in a little more than a page of their brief. If the Court finds that the statute applies to this case, the Court can find the entirety of Plaintiffs' substantive argument on pages 40 to 41 of Plaintiffs' brief.

To support their substantive argument, Plaintiffs rely exclusively upon declarations from two college professors. But those declarations not only fail to demonstrate a "probability" that Plaintiffs will prevail on their claims, they actually support the instant motion to strike and demonstrate clearly that this is a strategic lawsuit against public participation.

    **1.  Plaintiffs' declarations ignore Mr. Paglia and Stand.**

A review of the declarations submitted by Dr. Cubbage and Dr. Reich do not demonstrate that any alleged statement by Mr. Paglia or Stand was false. To the contrary, neither declaration even mentions Mr. Paglia or Stand or addresses any specific statement Mr. Paglia or Stand are alleged to have made. Dr. Cubbage's entire declaration is based on the assumption that the defendants have linked Plaintiffs' loss of certain forestry certifications with Plaintiffs' unsustainable forestry practices (Doc. 76, ¶ 4). But Plaintiffs have not identified any statements in which Mr. Paglia or Stand link those two concepts. Plaintiffs allege that Mr. Paglia and Stand have reported on Plaintiffs' *prior* loss of certifications, but the statements Mr. Paglia or Stand are alleged to have made about Plaintiffs' forestry certifications do not infer that Plaintiffs' poor sustainability practices are evidenced by the loss of those certifications.

---

erroneous and circular argument that, because they have not sought any discovery, they are not required to submit any evidence to support their claims.

Moreover, the declarations confirm what any mildly-informed citizens already knows: there is an ongoing and vigorous debate about environmental and sustainability issues. The declarations ***utterly fail*** to demonstrate that any statements attributed to Mr. Paglia or Stand are false. And as to statements by other defendants that they do address, they acknowledge purported evidence on both sides of the public discourse about the impact of forestry on sustainability, on the climate, and on caribou populations. Accordingly, the declarations fail to show a probability of success on Plaintiffs' claims, which necessarily require a demonstration of falsehood, as opposed to mere hyperbole or figurative rhetoric on a debated public issue.

### 2. Dr. Cubbage confirms the existence of a debate about the science at issue.

Dr. Cubbage's declaration does not prove that any statement on which Plaintiffs' claims are based is provably false. Rather, his declaration expressly admits that the science regarding many of those statements is conflicting. For example, Dr. Cubbage candidly asserts that "science provides ***major conflicting*** or ***indeterminate*** findings regarding different forest management practices' impacts on the environment, climate change, and social welfare." (Doc. 76, ¶ 42 [emphasis added]). He acknowledges that "[s]ustainability invokes competing values, uncertain ecological and social science, and crucial differences in the scale and measurement of sustainability." (Id., ¶ 14). He also confirms that "there is wide philosophical debate about utilitarian or biocentric values of forests." (Id., ¶ 16). Finally, Dr. Cubbage explains that:

> [i]t is difficult for scientists to agree on what scale sustainability should be measured: the forest tract, the region, the province, the country, or the world. Scientists are ***uncertain*** about what sustainable biodiversity is, what healthy forests are, and which communities should have a voice.

(Id., ¶ 43 [emphasis added]). Thus, Dr. Cubbage confirms that the science regarding environmental impact is the subject of conflicting interpretation and hot public debate.

### 3. Dr. Reich's analysis implies and infers that there are scientific studies contrary to his conclusions.

Dr. Reich is not as candid as Mr. Cubbage about the existence of scientific debate regarding environmental issues, but a careful review of his declaration reveals that there is science conflicting with his conclusions. For example, after acknowledging that the word "destroy" can be used figuratively, he explains that one of the ways a forest could be figuratively destroyed is through a decrease in the diversity of species and forest mix. (Doc. 77, ¶ 13). Dr. Reich then states that studies measuring "species diversity *usually* show very modest if any response to harvesting." (Id., ¶ 20 [emphasis added]). In other words, he implicitly acknowledges the existence of studies showing that forest harvesting has a negative impact on species diversity. Moreover, most of Mr. Reich's opinions are "[b]ased on information provided by Resolute," but he fails to provide the Court with that information. (Doc. 77, ¶¶ 5, 6, 12, 18, 42; see also id. ¶ 44). Finally, Mr. Reich expressly states that his analysis of the forestry industry's impact on Canada's caribou population is based on science that is "complex" and "uncertain." (Doc. 77, ¶¶ 43, 44).

### 4. The statements on which Dr. Cubbage and Dr. Reich focus are non-actionable rhetorical hyperbole.

Neither affidavit attributes specific statements to Mr. Paglia or Stand. Moreover, the statements on which the affidavits are focused are clearly non-actionable rhetorical hyperbole. As Dr. Reich admits in his declaration, occasionally people engaged in a debate of public importance utilize figurative language. For example, the statement that Plaintiffs have destroyed forests can be describing figurative, rather than literal, destruction. (Doc. 77, ¶¶ 76-77). The law has long protected such "rhetorical hyperbole" in speech regarding matters of public importance. Statements that "cannot reasonably be interpreted as stating actual facts" are not actionable, thus providing "assurance that public debate will not suffer for lack of imaginative expression or the

rhetorical hyperbole which has traditionally added much to the discourse of our Nation." Milkovich v. Lorain Journal Co., 497 U.S. 1, 20 (1990) (citations and internal quotations omitted). The protection that the First Amendment affords to figurative language used in debate about matters of public importance "reflects the reality that exaggeration and non-literal commentary have become an integral part of social discourse." Horsley v. Feldt, 304 F.3d 1125, 1131 (11th Cir. 2002) (citations and internal quotations omitted). Accordingly, even if Dr. Cubbage's and Dr. Reich's declarations could definitively prove that Plaintiffs are not "destroying" forests, such statements would be protected by the First Amendment and would not be actionable.

### 5. This case is a classic strategic lawsuit against public participation.

Plaintiffs have failed to establish a probability of success on their claims against Mr. Paglia or Stand. Indeed, the declarations Plaintiffs submitted to meet that burden do not even mention Mr. Paglia or Stand. Moreover, those declarations admit that there is conflicting science -- even a debate in the scientific community -- about environmental issues. And yet, Plaintiffs have filed this lawsuit to stifle Mr. Paglia and Stand from participating in the public discussion about what Plaintiffs' own expert calls "uncertain" and "major[ly] conflicting" science. (Doc. 76, ¶ 42, 43). Instead of trying to prevail in the public debate regarding environmental issues by supporting their positions with scientific evidence and sound policy arguments, Plaintiffs have filed this lawsuit to muzzle Mr. Paglia and Stand. Plaintiffs' position seems to be that, if they have some evidence or argument that supports their position, no matter how weak or flawed, no one is allowed to dispute that position in the marketplace of public ideas, regardless of how well supported the challenge is. If Plaintiffs had their way, no one would be allowed to voice an opinion about a debated issue without facing liability for civil damages. That approach that is exactly what Georgia's anti-SLAPP statute is intended to prevent.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Mr. Paglia and Stand's initial brief, the Court should grant their motion to strike under Georgia's anti-SLAPP statute.

Respectfully submitted, this the 20th day of January, 2017.

/s/ Aaron P.M. Tady
Matthew S. Coles
Georgia Bar No. 178020
Application for admission pending
Thomas M. Barton
Georgia Bar No. 040821
Aaron P.M. Tady
Georgia Bar No. 696273

COLES BARTON LLP
150 South Perry Street, Suite 100
Lawrenceville, Georgia 30046
(770) 995-5552 (telephone)
(770) 995-5582 (fax)
sdaughtery@colesbarton.com
mcoles@colesbarton.com
tbarton@colesbarton.com          Attorneys for Defendants Stand
atady@colesbarton.com            and Todd Paglia

## **CERTIFICATE OF SERVICE**

This is to certify that on this day, the 20th day of January, 2017, I electronically filed the foregoing document and have served all parties in this case using the CM/ECF System, which will automatically generate an e-mail notification of such filing to all the attorneys of record listed with the Clerk of Court.

/s/  Aaron P.M. Tady
Aaron P.M. Tady
Georgia Bar No. 696273

Attorney for Defendants Stand and Todd Paglia