**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | CIVIL ACTION FILE |
| ) | NO. CV116-071 |
| v. ) | |
| ) | |
| GREENPEACE INTERNATIONAL, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**DECLARATION OF LISA ZYCHERMAN**
**IN SUPPORT OF GREENPEACE DEFENDANTS'**
**MOTION TO STRIKE PURSUANT TO O.C.G.A. § 9-11-11.1**

**LISA ZYCHERMAN** declares as follows:

1.      I am an attorney with the law firm of Davis Wright Tremaine LLP, attorneys of record for the Defendants in the above-captioned matter.

2.      Attached hereto as Exhibit 1 is a true and correct copy of Greenpeace's Mission Statement (*available at* http://www.greenpeace.org/international/en/about/our-core-values/).

3.      Attached hereto as Exhibit 2 is a true and correct copy of Brief of Amici Curiae Georgia Press Association, Georgia First Amendment Foundation, The Atlanta Journal-Constitution, WAGA Fox 5 and The Motion Picture Association Of America, Inc. in Support of the Constitutionality Of O.C.G.A. § 9-11-11.1, its Applicability In Federal Court and Retroactivity, submitted on November 1, 2016 by Hull Barrett, PC in *Carbone v. Cable News Network, Inc.*, 16-CV-01720-ODE (N.D. Ga.)).

5.      I declare, certify, verify and state under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of January, 2017, in Washington, DC.

_____
Lisa Zycherman

# EXHIBIT A

# Our core values

**Greenpeace's work is based on a number of key principles. They are reflected in all our campaigns, and they guide whatever we do, wherever we do it.**

## Mission Statement

Greenpeace is an independent campaigning organisation, which uses non-violent, creative confrontation to expose global environmental problems, and to force the solutions which are essential to a green and peaceful future.

Greenpeace's goal is to ensure the ability of the earth to nurture life in all its diversity.

Therefore Greenpeace seeks to:

- protect biodiversity in all its forms
- prevent pollution and abuse of the earth's ocean, land, air and fresh water
- end all nuclear threats
- promote peace, global disarmament and non-violence

On this page

❭ Mission Statement
❭ Personal Responsibility and Nonviolence
❭ Independence
❭ Greenpeace has No Permanent Friends or Foes
❭ Promoting Solutions

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| Davide M. Carbone, | ) | |
| | ) | |
| *Plaintiff*, | ) | CIVIL ACTION NO. |
| | ) | 1:16-CV-01720-ODE |
| v. | ) | |
| | ) | |
| Cable News Network, Inc. ("CNN"), | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**BRIEF OF AMICI CURIAE GEORGIA PRESS ASSOCIATION, GEORGIA FIRST AMENDMENT FOUNDATION, THE ATLANTA JOURNAL-CONSTITUTION, WAGA FOX 5 AND THE MOTION PICTURE ASSOCIATION OF AMERICA, INC. IN SUPPORT OF THE CONSTITUTIONALITY OF O.C.G.A. § 9-11-11.1, ITS APPLICABILITY IN FEDERAL COURT AND RETROACTIVITY**

## STATEMENT OF THE INTERESTS OF AMICI

The Georgia Press Association (GPA) is a non-profit association whose members are 139 daily and weekly Georgia newspapers. An important mission of the GPA is to protect, promote, foster and advance the freedom of speech and of the press in Georgia. One way in which this is accomplished is to advocate for Georgia's statutory protections of free speech, including its anti-SLAPP law. While GPA is an organization of newspapers, its advocacy is intended to benefit all Georgians who are served by vigorous protection of the freedom of speech.

The Georgia First Amendment Foundation (GFAF) is a Georgia non-profit corporation organized in 1994 to inform and educate the public on government access and First Amendment issues, and to provide legal support in cases in which the freedom of speech is threatened.

The Atlanta Journal-Constitution is a daily newspaper published in Atlanta, Georgia that covers issues of interest to the greater metropolitan area and throughout the state. The AJC depends upon the enforcement of Georgia's laws that protect its rights to freedom of speech and the press, including the anti-SLAPP statute.

WAGA FOX 5 has fought for the First Amendment rights of Georgia residents to tell their stories free from censorship and other unwarranted

restrictions. WAGA FOX 5 has been broadcasting news and information in Georgia since 1949. Today, WAGA FOX 5 produces almost 60 hours of local news and information every week; provides around the clock coverage on its website, www.Fox5News.com, and, working with its affiliated entities, also provides news coverage of events across the country and worldwide. Through its broadcasts, website and other media, WAGA FOX 5 provides extensive coverage of matters of public significance and public interest to its viewers in the Atlanta metropolitan area and elsewhere. To continue its newsgathering efforts, WAGA FOX 5 needs the free speech protections embodied in Georgia's anti-SLAPP statute from lawsuits filed solely to silence opposing views and to increase the costs of producing news coverage.

The Motion Picture Association of America, Inc. ("MPAA") represents the six major film and TV studios in the U.S.: Paramount Pictures Corporation; Sony Pictures Entertainment Inc.; Twentieth Century Fox Film Corporation; Universal City Studios LLC; Walt Disney Studios Motion Pictures; and Warner Bros. Entertainment Inc.[1] The MPAA's members produce programming in Georgia[2] and

---

[1] MPAA member Warner Bros. Entertainment Inc. is a corporate affiliate of Defendant Cable News Network, Inc.

[2] A total of 245 feature films and television programs were produced in Georgia in fiscal year 2016, ranking number three, behind only California and New York, in production volume. *See* Press Release, "Film Industry Generates More than $7 Billion for Georgia's Economy," Aug. 2, 2016

distribute it to millions of moviegoers and television viewers around the world;

some also own local television stations, whose news organizations keep local

communities informed. In keeping with its nearly century-long history of fighting

for the free speech rights of filmmakers, the MPAA advocates for strong anti-

SLAPP laws across the nation, and played a leading role in the successful effort to

strengthen Georgia's anti-SLAPP statute through the passage of H.B. 513 in 2016.[3]

---

(continued…)

(available at http://www.georgia.org/newsroom/press-releases/film-industry-generates-7-billion-georgias-economy/).

[3] *See* Shawn McIntosh, "Stronger free speech rights for everyone," *Atlanta Journal-Constitution*, Oct. 15, 2106 (available at www.myajc.com/news/news/opinion/stronger-free-speech-rights-for-everyone/nsq3j/).

## INTRODUCTION

Anti-SLAPP laws are fundamentally important. The First Amendment grants every citizen a largely unfettered right to speak freely on matters of public concern. But when lawsuits are brought against people or businesses on account of their speech, the practical effect is often that their speech is silenced, constitutional protection notwithstanding. (Defending lawsuits—even frivolous ones—can be prohibitively burdensome and expensive.) Such suits have become a national problem in recent years, to the point that they have been given a name: "strategic lawsuits against public participation," or SLAPPs.

For those without the means to mount a traditional (read: costly) litigation defense, and for media entities that are by nature a constant target, state anti-SLAPP laws like the one at issue in this case are the only meaningful insulation against the chilling effect of SLAPPs. In a nutshell, these laws provide SLAPP defendants with a mechanism for securing dismissal of meritless claims without the burdensome discovery and litigation costs that would otherwise accrue. In Georgia, individuals in a wide range of circumstances have relied upon the anti-SLAPP law to fend off attempts to stifle their speech disguised as meritless claims for defamation, malicious prosecution, intentional interference with contractual

relations, and even trademark infringement. And in 2016, the Georgia legislature amended the anti-SLAPP law to broaden its protection of free speech.

Amici submit this brief to help the Court understand the importance of the questions presented by this case regarding the constitutionality and applicability of Georgia's anti-SLAPP law, and to explain why each of the plaintiff's attempts to eliminate or limit this indispensable protection of free speech falls short.

## ARGUMENT

## I. GEORGIA'S ANTI-SLAPP LAW PROVIDES VITAL PROTECTION FOR FREEDOM OF EXPRESSION

### A. SLAPPs and anti-SLAPPs

The First Amendment protects all kinds of expression. None, however, resides higher on the "hierarchy of First Amendment values" than speech on matters of public concern. *Connick v. Myers*, 461 U.S. 138, 145 (1983). Rightfully so. Speech on public issues is "more than self-expression; it is the essence of self-government." *Garrison v. State of La.*, 379 U.S. 64, 74–75, (1964). The representative democracy launched by the framers cannot fulfill its great promise unless speech on public issues remains "[u]ninhibited, robust, and wide-open." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). Accordingly, speech on matters of public concern garners "special protection." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quoting *Connick*, 461 U.S. at 145).

Strategic lawsuits against public participation—SLAPPs—threaten to suppress this vital speech on public issues. These suits—usually framed as civil tort actions like defamation, invasion of privacy, or interference with contract or business relationships—leverage the often-prohibitive expense of defending even frivolous lawsuits to stifle or punish protected speech the SLAPP plaintiff opposes.

As the Supreme Court explained in a famous SLAPP, such a suit "no doubt may be used ... as a powerful instrument of coercion or retaliation." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 740 (1983). "Regardless of how unmeritorious the ... suit is, the [defendant] will most likely have to retain counsel and incur substantial legal expenses to defend against it." *Id.* The "chilling effect ... upon a [defendant's] willingness to engage in protected activity is multiplied where the complaint seeks damages in addition to injunctive relief." *Id.* SLAPPs have a prospective chilling effect on constitutionally protected speech and petition activity as well, since the SLAPP plaintiff "place[s] [people] on notice that anyone who engages in such conduct is subjecting himself to the possibility of a burdensome lawsuit." *Id.*; *see also* Colin Quinlan, *Erie and the First Amendment: State Anti-SLAPP Laws in Federal Court After Shady Grove*, 114 Colum. L. Rev. 367 (2014) ("The burden of [SLAPP] litigation inhibits the exercise of First Amendment rights, because even targets who persevere and eventually prevail on the merits

must spend substantial time and money to do so, and the experience deters them from speaking out in the future. Worse yet, Pring and Canan found that targets who fail to secure swift dismissal of a SLAPP frequently decide to settle in order to avoid the expense and uncertainty of litigation, and such settlements invariably require targets to stop their political opposition.").

SLAPPs are a national problem; scholars have long estimated that thousands are filed annually. *See* George W. Pring & Penelope Canan*, "Strategic Lawsuits Against Public Participation" ("SLAPPs"): an Introduction for Bench, Bar and Bystanders*, 12 Bridgeport L. Rev. 937 (1992). Traditional protections against meritless lawsuits are often ineffective against them. Rule 11 sanctions against parties bringing frivolous suits and potential countersuits for malicious prosecution or abuse of process (sometimes called "SLAPPback suits") are difficult to win and do little to save defendants from the high upfront costs of extensive litigation. John C. Barker, *Common-Law and Statutory Solutions to the Problem of SLAPPs*, 26 Loy. L.A. L. Rev. 395, 416, 431 (1993). And while federal common law provides some protection of petitioning activity under the First Amendment's petition clause, this protection is very limited in scope and would offer no protection against many SLAPP suits. *Id.* at 425.

Many states have stepped in to fill that void with anti-SLAPP legislation. Recognizing that discussion of and participation in matters of public significance should not be chilled through abuse of the judicial process, states that have passed anti-SLAPP laws "provide SLAPP targets with an early opportunity to invoke immunity for their legitimate petitioning activity, thereby facilitating the swift and efficient dismissal of many SLAPP claims." Quinlan, *supra*, at 367. They do so by implementing a variety of procedures and standards that weed out meritless claims without the burdensome discovery and litigation costs that would otherwise accompany defense of those claims, *see, e.g., id.* at 370–71 (explaining that the "actual malice" standard governing liability for defamation introduces a "fact quagmire" that can often take a great deal of time and money for defendants to escape). These measures often include, among other things, "a special motion under the statute that must be given priority on a court's calendar; the right to appeal immediately if such motion is delayed or denied; and the stay of discovery pending resolution of the motion." *Id.* at 376 n.54. As of today, at least 28 states, along with the District of Columbia and Guam, have enacted anti-SLAPP laws.[§]

---

[§] *See* Ariz. Rev. Stat. Ann. §§ 12-751–12-752 (LexisNexis 2014); Ark. Code Ann. §§ 16-63-501–16-63-508 (2014); Cal. Civ. Proc. Code § 425.16 (Deering 2014); Del. Code Ann. tit. 10, §§ 8136-8138 (2014); D.C. Code § 16-5501 (2014); Fla. Stat. Ann. §§ 720.304(4), 768.295 (LexisNexis 2014); Ga. Code Ann. §§ 9-11-11.1, 51-5-7(4) (2016); Guam Code Ann. tit. 7 §§17101–17109 (2014); Haw. Rev.

Stat. §§ 634F-1–634F-4 (LexisNexis 2014); 735 Ill. Comp. Stat. Ann. 110/15–110/25 (LexisNexis 2014); Ind. Code Ann. §§34-7-7-1–34-7-7-10 (LexisNexis 2014); La. Code Civ. Proc. Ann. art. 971 (2013); Me. Rev. Stat. Ann. tit. 14, §556 (2014); Md. Code Ann., Cts. & Jud. Proc. § 5-807 (LexisNexis 2014); Mass. Gen. Laws Ann. ch. 231, § 59H (LexisNexis 2014); Minn. Stat. Ann. §§ 554.01–554.05 (2014); Mo. Ann. Stat. § 537.528 (2014); Neb. Rev. Stat. Ann. §§ 25-21, 241–25-21, 246 (2014); Nev. Rev. Stat. Ann. §§ 41.637, 41.650–41.670 (LexisNexis 2013); N.M. Stat. Ann. §38-2-9.1 (LexisNexis 2014); N.Y. Civ. Rights Law §§70-a, 76-a (Consol. 2014); N.Y. C.P.L.R. 3211(g) (Consol. 2014); Okla. Stat. Ann. tit. 12, §1443.1 (West 2013); Or. Rev. Stat. Ann. §§31.150–31.155 (West 2014); 27 Pa. Cons. Stat. Ann. §§7707, 8301–8303 (West 2014); R.I. Gen. Laws Ann. §§ 9-33-1–9-33-4 (West 2014); Tenn. Code Ann. §§4-21-1001–4-21-1004 (2014); Tex. Civ. Prac. & Rem. Code Ann. §§27.001–27.011 (Vernon 2013); Utah Code Ann. §§78B-6-1401–78B-6-1405 (LexisNexis 2014); Vt. Stat. Ann. tit. 12, §1041 (2014); Wash. Rev. Code Ann. §§ 4.24.510–4.24.525 (LexisNexis 2014).

### B.      Georgia's Anti-SLAPP Law

**1.**      First enacted in 1996, and substantially revised this past year, Georgia's anti-SLAPP statute is similar in purpose and design to those of other states. Like most, Georgia's statute "is intended to protect its citizens from having their important First Amendment rights to free speech and to petition the government chilled by the threat of being dragged into onerous judicial proceedings by improper or abusive tort claims." *Royalty Network*, 756 F.3d at 135; *see also* O.C.G.A. § 9-11-11.1 (West) ("The General Assembly of Georgia … finds and declares that the valid exercise of the constitutional rights of petition and freedom of speech should not be chilled through abuse of the judicial process."). The statute insulates defendants against the chilling effect of SLAPPs by permitting SLAPP defendants to file a special motion to strike, which triggers a series of protections against the costs of defending the suit while the court determines whether the plaintiff's suit is legitimate. Among other things, once the motion is filed, discovery is stayed (subject to a good-cause exception), and the plaintiff must "establish[] that there is a probability that [it] will prevail on the claim." Id. § 9-11-11.1, (b)(1), (d). Further, if the SLAPP defendant prevails on the motion to strike, the statute also grants the defendant fees and costs in an amount determined by the court. *Id.* § 9-11-11.1(b)(1).

In 2016, the Georgia legislature broadened the applicability of the anti-SLAPP law in two ways. *First*, the legislature expanded the scope of protected speech. The original statute permitted its use only against suits attacking speech made before, to or in connection with an official proceeding or an issue under consideration by an official body. *See Berryhill v. Georgia Cmty. Support & Sols., Inc.*, 638 S.E.2d 278, 279–80 (Ga. 2006). The amended statute protects "[a]ny … conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with a public issue or an issue of public concern." *Id.* § 9-11-11.1(c)(4). This language now clearly includes not just speech in connection with official proceedings or issues under consideration by official bodies, but also more generally conduct or speech—including by journalists, media entities and producers of movies and television programs[5]—on any matter of public concern. *See Berryhill*, 638 S.E.2d at 279–80; Chris Dodd, *Why Free Speech is Critical to Film and Television Production in Georgia...and Around the World*, The Huffington Post, https://goo.gl/KXCQno (last visited Oct. 24, 2016). The scope of speech protected now mirrors that protected by several other states, including California, Indiana, Louisiana, Maryland, and Rhode Island. *See* Cal. Civ. Proc.

---

[5] *See Joseph Burstyn, Inc. v. Wilson* 343 U.S. 495, 501–502 (1952) (motion pictures protected by the First Amendment); *Zacchini v. Scripps–Howard Broadcasting Co.* 433 U.S. 562, 578 (1977) ("There is no doubt that entertainment, as well as news, enjoys First Amendment protection.").

Code § 425.16(e) (West 2016); Ind. Code § 34–7–7–2 (West 2016); La. Code Civ. Proc. art. 971F.(1) (West 2016); Md. Code, Cts. & Jud. Proc. § 5–807(c) (West 2016); 9 R.I. Gen. Laws § 9–33–2(e) (West 2016).

*Second*, the legislature took steps that would permit the use of Georgia's anti-SLAPP provisions in federal court. The original statute had required the plaintiff, in response to the motion to strike, to file a written verification certifying that its claim was well grounded in fact, warranted under existing law, and not made for an improper purpose. However, the Eleventh Circuit recently deemed this requirement inapplicable in federal court, because it conflicted with Rule 11 of the Federal Rules of Civil Procedure. *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1362 (11th Cir. 2014). The Eleventh Circuit distinguished Georgia's verification requirement from other state anti-SLAPP laws that did apply in federal court because they only required the plaintiff to show a probability of success to defeat the motion to strike, and thus did not conflict with any Federal Rules. *Id.* at 1361–62. Taking the hint, the legislature eliminated the verification requirement and replaced it with a probability-of-success standard, thus clearing the way for use of the anti-SLAPP law in federal court. O.C.G.A § 9-11-11.1, (b)(1), (d); *see also infra* Section II.B.

2.    In the years since Georgia enacted its anti-SLAPP law, it has served as an important bulwark against suits brought to stifle constitutionally protected speech. Just a few of the instances in which individuals have successfully staved off SLAPPs thanks to Georgia's anti-SLAPP law:

- An action for malicious prosecution, intentional interference with contractual relations, and defamation brought by a Hindu temple against three individuals who had complained to the Gwinnett County Police Department that they had contacted the temple "to purchase 'religious services,' only to later discover that their credit cards had been charged up to ten times more than the agreed-upon amount." *Hindu Temple & Cmty. Ctr. of High Desert, Inc. v. Raghunathan*, 714 S.E.2d 628, 629 (Ga. Ct. App. 2011). They had also reported that the temple's founder had been misrepresenting himself as a medical doctor. The individuals successfully sought dismissal of the suit under the anti-SLAPP law and were awarded fees and costs. *Id.*; *see also Annamalai v. Capital One Fin. Corp.*, 738 S.E.2d 664, 666 (Ga. Ct. App. 2013) (dismissing similar claim by same religious temple founder).

- A defamation suit brought by the Atlanta Humane Society against a former volunteer who criticized the organization's practices on local television— claiming that the organization never investigated animal cruelty and disputing claims that it had 24-hour care—as well as a local journalist who had covered the story. *Harkins v. Atlanta Humane Soc'y*, 590 S.E.2d 737, 738 (Ga. Ct. App. 2003), *aff'd in part, rev'd in part and remanded*, 603 S.E.2d 289 (Ga. 2004). The defendants ultimately prevailed through use of the anti-SLAPP law. *Harkins v. Atlanta Humane Soc'y*, 618 S.E.2d 16, 17 (Ga. Ct. App. 2005).

- Claims of slander and interference with business relations brought by a former manager of Fulton County Schools' technology department against a consulting firm that had made observations to the school board criticizing the technology department. The firm secured dismissal of the claims under

the anti-SLAPP law. *Lovett v. Capital Principles, LLC*, 686 S.E.2d 411, 414 (Ga. Ct. App. 2009).

- A slander action brought by a Georgia outdoor supply store against New York City Mayor Michael Bloomberg for comments made in a press conference about combating illegal gun trafficking by "rogue gun dealers" who ignored federal laws. Bloomberg was able to secure dismissal of the suit through the procedures afforded by Georgia's anti-SLAPP law. *See Adventure Outdoors, Inc. v. Bloomberg*, 705 S.E.2d 241 (Ga. Ct. App. 2010).

In addition, other individuals who were unable to fend off the burdens (and accompanying chilling effect) of SLAPPs using the previous version of Georgia's anti-SLAPP law likely would have success now that Georgia has expanded the protection offered by the statute. Such cases include:

- A libel complaint brought by an organization that assists disabled adults against a woman who had sent emails and posted on an internet message board about the poor treatment her disabled son had received. Among other things, Ms. Berryhill stated that while her son was in the organization's care, it had not told her where he was; it had taken her two and a half months to find him; and when she did, she learned that he had been kept in a backyard shed and beaten. *Georgia Cmty. Support & Sols., Inc. v. Berryhill*, 620 S.E.2d 178, 180 (Ga. Ct. App. 2005), *aff'd*, 638 S.E.2d 278 (Ga. 2006). The Georgia Supreme Court rejected her attempt to seek relief through the anti-SLAPP law, because her speech was not related to an official proceeding, and Georgia's statute did not include "catchall language at the end … as in the comparable California and Louisiana anti-SLAPP statutes." *Berryhill*, 638 S.E.2d at 281. Had the suit been pending today, Ms. Berryhill's speech on this obvious matter of public concern would have been protected by the revised anti-SLAPP law.

- A trademark-infringement action brought by Wal-Mart against a Georgia resident who spoke out against Wal-Mart through operation of a website and

by selling t-shirts that parodied Wal-Mart's logo with phrases like "Wal-Ocaust" and "Freedom-Hater-Mart." The resident's motion to strike was denied because his statement were not related to a government proceeding. *Wal-Mart v. Smith*, 475 F. Supp. 2d 1318 (2007). Today's broader revised law would have applied.

- An action for libel, "injurious falsehood," and intentional infliction of emotional distress brought by a music publishing company against a Georgia resident who provided consulting services and who had denounced the company and their litigation tactics against him on a website. The consultant sought relief under Georgia's anti-SLAPP law, but the Eleventh Circuit held that the verification requirement of the statute prevented its application in federal court. *Royalty Network*, 756 F.3d at 1362. In 2016, the Georgia legislature removed the verification requirement that was an impediment to applying the law in federal court.

As the above examples demonstrate, Georgia's anti-SLAPP law and others like it serve a crucial role, insulating constitutionally protected speech of individuals and organizations in a wide variety of settings from the chilling effect of defending burdensome and expensive litigation. Without such laws, the freedom of speech guaranteed by the First Amendment would be substantially undermined.

## II. GEORGIA'S ANTI-SLAPP LAW APPLIES IN THIS CASE

Plaintiff in this case attacks Georgia's anti-SLAPP law in three ways: He says it violates the Seventh Amendment; that it does not apply in federal court; and that it does not apply retroactively. Each of these attempts to eliminate or limit the free-speech protection afforded by that law is unavailing.

## A.   Georgia's Anti-SLAPP Law Is Constitutional

The Seventh Amendment preserves the right to a trial by jury in federal court, including the right to have a jury resolve material factual disputes. U.S. Const. amend. VII. But that right is not necessarily infringed by pleading standards or similar screening mechanisms that permit a judge to make legal determinations that result in dismissal of a claim before reaching a jury. To the contrary: "In numerous contexts, gatekeeping judicial determinations prevent submission of claims to a jury's judgment without violating the Seventh Amendment." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 327 n.8 (2007). Rule 56's summary-judgment procedure permits judges to dispose of cases before they reach a jury, *see Pease v. Rathbun–Jones Engineering Co.*, 243 U.S. 273, 278 (1917); judges may exclude expert testimony based on a judicial determination of reliability, *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); and "[a]ny heightened pleading rule, including Fed. Rule Civ. Proc. 9(b), could have the effect of" dismissing the case and "preventing a plaintiff from getting discovery on a claim that might have gone to a jury, had discovery occurred and yielded substantial evidence." *Tellabs*, 551 U.S. at 327 n.9. Yet all of these rules comport with the Seventh Amendment.

Georgia's anti-SLAPP law is no different. Far from wresting factual determinations from a jury, section 9-11-11.1(b)(1) merely requires the court to determine whether "there is a probability that the nonmoving party will prevail on the claim" based on the pleadings and any affidavits submitted. The statute does not ask the court to make any determinations regarding the credibility of the alleged facts, and it does not require the court to resolve any disputed facts or weigh them according to any evidentiary standard.

In this way, section 9-11-11.1(b)(1) is similar to the heightened pleading requirement of the Private Securities Litigation Reform Act (PSLRA), which requires the complaint to (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs*, 551 U.S. at 321. That is, both section 9-11-11.1(b)(1) and the PSLRA's heightened pleading requirement ask only that the court make a "comparative assessment of plausible inferences" to determine whether the claim should proceed beyond the pleadings stage. *Tellabs*, 551 U.S. at 326. Indeed, the PSLRA standard arguably requires a higher threshold to get the case to a jury—particularized facts giving rise to a "strong inference"—than Georgia's law, which only requires a "probability" of success. Yet the PSLRA

pleading standard complies with Seventh Amendment. *Id.* There is no basis for concluding otherwise with respect to Georgia's anti-SLAPP law.

In fact, no court has ever held that an anti-SLAPP statute like Georgia's infringes upon the right to a jury trial. As far as amici are aware, every court to have considered an anti-SLAPP motion-to-strike provision with a "probability of success" standard similar to Georgia's has construed the provision as akin to a pleading standard rather than an evidentiary standard, such that it comports with the Seventh Amendment. *See Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 44 Cal. Rptr. 2d 46, 53 (Cal. Ct. App. 1995) ("Section 425.16 requires the plaintiff whose cause of action is subjected to that special motion to strike simply to demonstrate by affidavit a prima facie case. Thus, properly construed section 425.16, subdivision (b) does not violate the right to a jury trial."), *cited with approval by Rosenthal v. Great W. Fin. Sec. Corp.*, 926 P.2d 1061, 1071 (Cal. 1996); *Nader v. Maine Democratic Party*, 41 A.3d 551, 562 (Me. 2012) ("To avoid an unconstitutional application of the law, as our rules of statutory interpretation require us to do, section 556 must be construed .... [to] require only that the nonmoving party provide prima facie evidence to support its burden of showing that the moving party's petitioning activity was 'devoid of any reasonable factual support or any arguable basis in law and that the moving party's acts caused actual

18

injury to the responding party.'"); *Hi-Tech Pharm., Inc. v. Cohen*, No. CV 16-10660-WGY, 2016 WL 5334651, at *4 (D. Mass. Sept. 22, 2016) ("Were this Court to require Hi-Tech to make more than a prima facie showing that Cohen's petitioning activities had no reasonable basis in fact or law, it would necessarily impinge on the parties' Seventh Amendment right to a jury trial, inasmuch as it would require this Court to make factual findings and credibility determinations."); *S. Middlesex Opportunity Council, Inc. v. Town of Framingham*, No. CIVA 07-12018-DPW, 2008 WL 4595369, at *11 (D. Mass. Sept. 30, 2008) ("I note that it is possible for a judge to conclude as a matter of law that the legal claims raised are based purely on petitioning activities. Such a decision does not usurp the role of the jury."). *Cf. Davis v. Cox*, 351 P.3d 862, 868-69, 870 (Wash. 2015) (holding that anti-SLAPP provision violated Washington state constitutional right to jury trial because it required the plaintiff to establish a probability of success by "clear and convincing evidence"; distinguishing other states' anti-SLAPP statutes, which, like Georgia's, do not require a "clear and convincing" burden of evidentiary proof); *Leiendecker v. Asian Women United of Minnesota*, 848 N.W.2d 224 (Minn. 2014) (anti-SLAPP statute with "clear and convincing" evidentiary burden violated state constitutional right to jury trial).

19

Consistent with this clear line of decisions, this Court should apply the Georgia statute. Like the anti-SLAPP provisions upheld by other courts against Seventh Amendment challenges, section 9-11-11.1 does not impose an evidentiary burden or require the judge to find disputed facts. Further, it is "a relatively young statute, not much construed by the state courts, and there is no reason to think the state courts would construe [section 9-11-11.1] so as to be incompatible with the Seventh Amendment." *Godin*, 629 F.3d at 90.

## B. Georgia's Anti-SLAPP Law Applies In Federal Court

### 1. Legal Standard

When there is a question whether to apply a state law in federal court, "the district court must first decide whether a [federal statute or Federal Rule] is sufficiently broad to control the issue before the court." *Royalty Network, Inc.*, 756 F.3d at 1357–58 (quoting *Burke v. Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001)) (internal quotation marks omitted). "If the federal procedural rule is sufficiently broad to control the issue and conflicts with the state law, the federal procedural rule applies instead of the state law." *Id.* (quoting *Burke*, 252 F.3d at 1265) (internal quotation marks omitted). If the federal rule does not "control the issues raised," the court must make the "relatively unguided *Erie* choice … to determine whether to apply the state law," that is, to decide whether applying the state law (or

not) would serve "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417, 130 S. Ct. 1431, 1448, 176 L. Ed. 2d 311 (2010) (Stevens, J., concurring) (quoting *Hanna v. Plumer*, 380 U.S. 460, 468, 471 (1965)); *see also Godin v. Schencks*, 629 F.3d 79, 86 (1st Cir. 2010).

## 2.   *Royalty Network*

In *Royalty Network*, 756 F.3d 1351, the Eleventh Circuit applied this analysis to hold that the verification requirement of Georgia's previous anti-SLAPP statute did not apply in federal court. The Court reasoned that Federal Rule of Civil Procedure 11, which governs verifications to the court, is "broad enough to cover the issue," and that the anti-SLAPP statute's verification requirement in fact "directly conflict[ed]" with Rule 11, which "explicitly provides that a pleading need not be verified or accompanied by an affidavit and allows parties discretion in deciding whether to verify pleadings." *Id.* at 1358–59. In reaching that conclusion, the Court distinguished anti-SLAPP statutes from California, Louisiana, and Maine, each of which required the SLAPP plaintiff only to establish a probability of success on the merits rather than to file a verification. *Id.* at 1362. In cases involving each of those states' anti-SLAPP laws, a federal court of appeals held

that the anti-SLAPP law in question remained applicable in federal court. *See id.* at 1361–62 (discussing *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999); *Godin*, 629 F.3d 79; and *Henry v. Lake Charles Am. Press, L.L.C.*, 566 F.3d 164 (5th Cir. 2009)).

In the wake of the *Royalty Network* opinion, Georgia's legislature amended the anti-SLAPP statute, removing the verification requirement and adding the current motion-to-strike provision, which largely mirrors the anti-SLAPP laws of California, Louisiana, and Maine, among others. *Compare* O.C.G.A. § 9–11–11.1(b)(1) *with* Cal. Civ. Proc. Code § 425.16(e) (West 2016); La. Code Civ. Proc. art. 971F.(1) (West 2016); Me. Rev. Stat. tit. 14, § 556.

### 3.    *Godin*

The Eleventh Circuit has not addressed whether Georgia's revised anti-SLAPP law applies in federal court. However, in *Royalty Network*, the court discussed at length the First Circuit's determination that Maine's highly analogous anti-SLAPP statute, Me. Rev. Stat. tit. 14, § 556, does apply. 756 F.3d at 1361–62 (discussing *Godin*, 629 F.3d 79). Because that analysis is directly on point and highly persuasive, it deserves close attention in this case.

In *Godin*, the First Circuit concluded that Federal Rules 12 and 56 "are not so broad as to cover the issues within the scope of Section 556," and that neither

"attempt[] to answer the same question" nor "address the same subject" as the anti-SLAPP statute. *Id.* at 88. Unlike Rules 12(b)(6) and 56, Maine's Section 556 on its face is "only addressed to special procedures for state claims based on a defendant's petitioning activity." *Id.* Further, Section 556 does not "seek to displace the Federal Rules or have Rules 12(b)(6) and 56 cease to function." *Id.* In addition, "Maine itself has general procedural rules which are the equivalents of Fed.R.Civ.P. 12(b)(6) and 56," which "further supports the view that Maine has not created a substitute to the Federal Rules, but instead created a supplemental and substantive rule to provide added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities."

The court then compared each federal rule to the anti-SLAPP statute. Beginning with Rule 12(b)(6), the court noted that the federal rule "serves to provide a mechanism to test the sufficiency of the complaint." *Id.* at 89. "Section 556, by contrast, provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis: that the claims in question rest on the defendant's protected petitioning conduct and that the plaintiff cannot meet the special rules Maine has created to protect such petitioning activity against lawsuits." *Id.*

Rule 56 also did not control issues raised by Maine's Section 556. That rule "creates a process for parties to secure judgment before trial on the basis that there are no disputed material issues of fact, and as a matter of law, one party is entitled to judgment." *Id.* And "[i]nherent in Rule 56 is that a fact-finder's evaluation of material factual disputes is not required." *Id.* Section 556, on the other hand, has an "entirely distinct function"; it "protect[s] those specific defendants that have been targeted with litigation on the basis of their protected speech." *Id.*

Finally, the First Circuit rejected the plaintiff's suggestion that permitting dismissal of a case without affording discovery, as could happen under the anti-SLAPP law, would bring the law into conflict with Rule 56. The court explained that discovery was still permitted for "good cause shown," and "imposing on the opponent of the motion the burden of justifying discovery[] is consistent with the allocation of burdens under Rule 56(d), formerly Rule 56(f)." *Id.* at 90.

After finding neither Rule 12 nor Rule 56 broad enough to control the issues raised by Maine's anti-SLAPP statute, the *Godin* court moved to the second stage of the analysis, *i.e.*, whether it should "nonetheless decline to apply state law if so declining would better advance the dual aims of *Erie*: 'discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" *Id.* at 86 (quoting *Hanna v. Plumer*, 380 U.S. 460 (1965)). The court concluded, however,

that those dual aims were better served by applying the state law. Because the anti-SLAPP statute "substantively alters [state]-law claims that are based on a defendant's protected petitioning activity by shifting the burden to the plaintiff and altering the showing the plaintiff must make," "[d]eclining to apply [the anti-SLAPP statute] in federal court would … result in an inequitable administration of justice between a defense asserted in state court and the same defense asserted in federal court." *Id.* at 91–92 (citing *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 773 (1st Cir. 1994)). "Likewise, were Section 556 not to apply in federal court, the incentives for forum shopping would be strong"; "electing to bring state-law claims in federal as opposed to state court would allow a plaintiff to avoid Section 556's burden-shifting framework." *Id.* at 92. Accordingly, the First Circuit held that Maine's anti-SLAPP law applies in federal court. *Id.*

### 4. Applying The First Circuit's Analysis to Georgia's Anti-SLAPP Law

The First Circuit's analysis in *Godin* is thorough and persuasive, and it has been cited favorably by other federal circuit courts. *See, e.g.*, *Makaeff v. Trump Univ., LLC*, 736 F.3d 1180, 1184 (9th Cir. 2013) (denying petition for rehearing en banc) ("[I]n *Godin*, the First Circuit thoroughly and persuasively analyzed *Shady Grove* before concluding that Maine's anti-SLAPP law was enforceable in federal court."); *cf. Royalty Network, Inc.*, 756 F.3d at 1361–62 (distinguishing the

motion-to-strike provision of Maine's anti-SLAPP statute from the verification requirement at issue in Georgia's previous anti-SLAPP statute). Further, now that Georgia's anti-SLAPP law has been amended, there are no meaningful differences between that law and Maine's. Indeed, every feature the First Circuit relied upon to conclude that Maine's law applies in federal court is also present in Georgia's statute. Like Section 556, section 9-11-11.1:

- "is only addressed to special procedures for state claims based on a defendant's petitioning activity," *Godin*, 629 F.3d at 88;

- "does not seek to displace the Federal Rules or have Rules 12(b)(6) and 56 cease to function," *id.*;

- "provide[s] added protections, beyond those in Rules 12 and 56, to defendants who are named as parties because of constitutional petitioning activities," *id.*;

- "provides a mechanism for a defendant to move to dismiss a claim on an entirely different basis [from Rule 12(b)(6)]: that the claims in question rest on the defendant's protected petitioning conduct and that the plaintiff cannot meet the special rules [Georgia] has created to protect such petitioning activity against lawsuits," *id.* at 89;

- serves a function, "entirely distinct" from Rule 56, "of protecting those specific defendants that have been targeted with litigation on the basis of their protected speech," *id.*;

- "shifts the burden to plaintiff to defeat the special motion" and "also determines the scope of plaintiff's burden," *id.*; and

- permits discovery "upon good cause shown," thus preventing a potential conflict with Rule 56, *id.* at 90.

Finally, as in Maine, declining to apply Georgia's anti-SLAPP law would result in the same "inequitable administration of justice" and forum-shopping concerns. *Id.* at 91–92. Accordingly, amici submit that this Court should adopt the sound and thorough reasoning of the First Circuit in *Godin* and conclude that Georgia's materially identical anti-SLAPP law applies in federal court.

### C. Georgia's Anti-SLAPP Law Applies Retroactively

The legislative history of the 2016 amendments to Georgia's anti-SLAPP law indicates that the General Assembly expected the law to apply retroactively. An initial draft of the amendment included language limiting application of the amended statute "to all claims made on or after July 1, 2015," LC 41 0455 at § 3:106–07. However, the legislature chose not to include that language in the final law, *see* 2016 Ga. Laws Act 420 (H.B. 513) at § 4. Removing language precluding retroactivity suggests that the legislature preferred retroactive application of the amended statute.

### CONCLUSION

Georgia's anti-SLAPP law affords indispensable protection against the chilling effects of abusive litigation brought to silence constitutionally protected expression. Amici submit that this Court should hold that this law is constitutional, applies in federal court, and applies retroactively.

Dated:       October 31, 2016


                                        /s/   David E. Hudson
                                        David E. Hudson
                                        Georgia Bar No.:  374450


Hull Barrett, PC
Post Office Box 1564
Augusta, GA  30903-1564
706-722-4481 Phone
706-722-9779 Fax
dhudson@hullbarrett.com                 ATTORNEYS FOR
                                        AMICI CURIAE

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing

document with the Clerk of Court using the CM/ECF system and served upon

counsel of record by electronic filing.

This 31st day of October, 2016.


            /s/ David E. Hudson

David E. Hudson