# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA

RESOLUTE FOREST PRODUCTS, INC., *et al.*,  )
                                          )
                    Plaintiffs,            )        CIVIL ACTION FILE
                                          )        NO. CV116-071
        v.                                 )
                                          )
GREENPEACE INTERNATIONAL, *et al.*,        )
                                          )
                    Defendants.            )
_____   )

## GREENPEACE DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Since the completion of briefing on Defendants Greenpeace International, Greenpeace Inc., Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar's motion to dismiss pursuant to Rule 12(b)(6), ECF No. 62, and their motion to strike pursuant to the Georgia anti-SLAPP statute, ECF No. 60, the Eleventh Circuit issued a key decision demonstrating why Georgia's anti-SLAPP statute is applicable in this federal proceeding.

In *Tobinick v. Novella*, --- F.3d ---, 2017 WL 603832, at *5 (2017) (attached as Ex. A), the Eleventh Circuit concluded that, although the plaintiff waived the issue at hearing, the district court "acted reasonably in applying California's anti-SLAPP statute to the state law claims," including defamation, reflecting "'the majority of circuit courts," which have "'found anti-SLAPP special motions to strike permissible.'"  This decision presents the Eleventh Circuit's most recent commentary on the applicability of anti-SLAPP laws in federal court and is highly pertinent to the pending motion to strike.  The Court further affirmed the district court's order striking the defamation claim pursuant to the applicable anti-SLAPP statute on the grounds that the plaintiff could not show the statements were "anything more than medical or personal opinion," and, in any event, "[t]he mere existence of a false statement does not, on its own, demonstrate [a defamation

defendant's] knowledge of falsity," sufficient to establish actual malice. *Id* at *7. *See also* Greenpeace Defs.' Reply 21 & n.27, ECF No. 98.

The Eleventh Circuit's decision was issued the same day as the Northern District of Georgia's decision in *Carbone v. Cable News Network, Inc.*, Case No. 1:16-cv-01720-ODE, Order, ECF No. 28 (Feb. 15, 2017) (attached as Ex. B), holding that Georgia's anti-SLAPP statute was inapplicable in the federal court exercising diversity jurisdiction. The district court based its decision in part on the court's observation that a "circuit split" existed on the issue, and without foreknowledge that the Eleventh Circuit was ruling on the issue that same day. *Id*. at 6-7.

This 22nd day of February, 2017.

Respectfully submitted,

|  |  |
|---|---|
|  | /s/   Lisa Zycherman |
| Thomas W. Tucker | Laura Handman (admitted *pro hac vice*) |
| Georgia Bar No. 717975 | Lisa Zycherman (admitted *pro hac vice*) |
| TUCKER LONG, PC | DAVIS WRIGHT TREMAINE, LLP |
| 453 Greene Street | 1919 Pennsylvania Avenue, NW, Suite 800 |
| Augusta, Georgia 30901 | Washington, DC 20006-2401 |
| (706) 722-0771 | (202) 973-4200 |
| ttucker@tuckerlong.com | laurahandman@dwt.com |
|  | lisazycherman@dwt.com |
|  |  |
|  | Lacy H. Koonce, III (admitted *pro hac vice*) |
|  | DAVIS WRIGHT TREMAINE, LLP |
|  | 1251 Avenue of the Americas, 21st Floor |
|  | New York, NY 10020-1104 |
|  | (212) 603-6467 |
|  | lancekoonce@dwt.com |

*Attorneys for Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar*

**CERTIFICATE OF SERVICE**

This is to certify that on the 22nd day of February, 2017, I have served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

   /s/ Lisa B. Zycherman
LISA B. ZYCHERMAN (Admitted *Pro Hac Vice*)

# EXHIBIT A

2017 WL 603832
Only the Westlaw citation is currently available.
United States Court of Appeals,
Eleventh Circuit.

Edward Lewis Tobinick, MD, a medical
corporation, d.b.a the Institute of Neurological
Recovery, INR PLLC, a Florida professional
limited liability company, d.b.a. Institute
of Neurological Recovery, M.D. Edward
Tobinick, an individual, Plaintiffs–Appellants,
v.
Steven Novella, an individual, Society for Science–
Based Medicine, Inc., a Florida Corporation,
SGU Productions, LLC, a Connecticut limited
liability company, et al., Defendants–Appellees,
Yale University, a Connecticut
corporation, et al., Defendants.

No. 15-14889
|
(February 15, 2017)

**Synopsis**
**Background:** Physician, his medical corporation, and his
professional limited liability company (LLC) brought
action against author of two blog posts, claiming that
posts contained false and defamatory statements about
physician's medical practice, asserting claims for violation
of the Lanham Act, common law unfair competition,
trade libel, libel per se, and tortious interference with
business relationships. The United States District Court
for the Southern District of Florida, Robin L. Rosenberg,
J., 108 F.Supp.3d 1299, granted author's motion to
strike plaintiffs' state law claims under California's anti-
SLAPP statute, subsequently, 2015 WL 11254727, denied
plaintiffs' motion for sanctions and motion to vacate,
and subsequently, 142 F.Supp.3d 1275, entered summary
judgment in author's favor on plaintiffs' Lanham Act
claims. Physician, corporation, and LLC appealed.

**Holdings:** The Court of Appeals, Restani, Circuit Judge,
held that:

[1] physician waived challenge to district court's
application of California's anti-SLAPP statute based on
*Erie* doctrine;

[2] physician failed to establish actual malice, as required
to prevail on libel claims against author;

[3] district court did not abuse its discretion in denying
physician's motion to amend complaint; and

[4] author's blog posts did not constitute commercial
speech subject to Lanham Act.

Affirmed.

West Headnotes (23)

[1] **Federal Courts**
👉 Statutes, regulations, and ordinances,
questions concerning in general

The Court of Appeals reviews de novo a
district court's interpretation and application
of a statute.

Cases that cite this headnote

[2] **Federal Courts**
👉 Procedural Matters

The Court of Appeals reviews for an abuse
of discretion a district court's denial of
request for leave to amend, for sanctions for
failure to make disclosures or to cooperate in
discovery, for relief when facts are unavailable
to nonmovant on motion for summary
judgment, and for relief from a judgment or
order. Fed. R. Civ. P. 37, 56(d), 60(b).

Cases that cite this headnote

[3] **Federal Courts**
👉 Summary judgment
**Federal Courts**
👉 Summary judgment

The Court of Appeals reviews a grant of
summary judgment de novo, viewing all facts

in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party. Fed. R. Civ. P. 56.

Cases that cite this headnote

**[4]**    **Federal Civil Procedure**
👉 **Absence of genuine issue of fact in general**

**Federal Civil Procedure**
👉 **Right to judgment as matter of law**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

Cases that cite this headnote

**[5]**    **Federal Courts**
👉 **In general;necessity**

Exception to "waiver rule," under which Court of Appeals does not consider an issue not raised in district court and raised for first time on appeal, is when: (1) there is a pure question of law, and if refusal to consider would result in a miscarriage of justice, or (2) there was no opportunity to raise the objection at the district court level.

Cases that cite this headnote

**[6]**    **Federal Courts**
👉 **Defenses**

Physician waived challenge, based on *Erie* doctrine, to district court's application of California's anti-SLAPP statute to physician's state law claims in physician's action against author of allegedly defamatory blog posts about physician's medical practice; physician did not raise claim in response to author's special motion to strike claims pursuant to anti-SLAPP statute, did not otherwise raise issue before district court, and there was no miscarriage of justice resulting from a finding of waiver. Cal. Civ. Proc. Code § 425.16(a).

Cases that cite this headnote

**[7]**    **Libel and Slander**
👉 **Criticism and Comment on Public Matters;Public Figures**

For purposes of actual malice requirement in defamation action involving public figure, an "all-purpose public figure" is one that occupies positions of such persuasive power and influence that they are deemed public figures for all purposes, where a "limited public figure," by contrast, has thrust himself to the forefront of particular public controversies in order to influence the resolution of the issues involved; both types of public figures must prove that the defamatory statements were made with actual malice.

Cases that cite this headnote

**[8]**    **Libel and Slander**
👉 **Criticism and comment on public matters and publication of news**

**Pleading**
👉 **Frivolous pleading**

Physician who was limited public figure failed to establish actual malice, as required to prevail on state law libel claims against author of two blog posts regarding physician's medical practice, and thus striking of physician's state law claims under California's anti-SLAPP statute was warranted; author's investigation of physician's medical practices, in which he looked to trustworthy sources, including newspaper article, many of physician's case studies, Medical Board of California's investigations into physician's practices, and physician's website, demonstrated author's lack of subjective belief that the blog posts contained false statements. Cal. Civ. Proc. Code § 425.16(a).

Cases that cite this headnote

**[9]**    **Libel and Slander**
👉 **Criticism and comment on public matters and publication of news**

"Actual malice," for purpose of requirement that defamatory statements against public figures be made with actual malice for public figure to prevail on libel claim, means with knowledge that a statement was false or with reckless disregard of whether it was false or not, and must be shown by clear and convincing evidence.

Cases that cite this headnote

**[10]    Libel and Slander**
  👈 Criticism and comment on public matters and publication of news

To show reckless disregard for truth or falsity, as required to establish that defamatory statements were made with actual malice, as required for public figure to prevail on libel claim, California courts apply a subjective test in which there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication, and the court considers factors such as a failure to investigate, anger and hostility toward the plaintiff, and reliance upon sources known to be unreliable or known to be biased.

Cases that cite this headnote

**[11]    Federal Civil Procedure**
  👈 Time for amendment

A district court may properly deny leave to amend a complaint for reasons such as undue delay. Fed. R. Civ. P. 15(a)(1).

Cases that cite this headnote

**[12]    Federal Civil Procedure**
  👈 Time for amendment

District court did not abuse its discretion in twice denying physician's motion for leave to amend complaint, in his action against author of two blog posts that allegedly contained false and defamatory statements about physician's medical practice, even though author had not yet filed an answer at time of motions; both motions were

sought approximately one year after original complaint was filed, course of proceedings had been markedly advanced, physician filed first motion on deadline for amended pleadings and sought extensive changes to the operative complaint, and second motion, filed after deadline for amended proceeding, sought to supplement complaint with new cause of action. Fed. R. Civ. P. 15(a)(1).

Cases that cite this headnote

**[13]    Federal Civil Procedure**
  👈 Fraud;misconduct

Party moving for relief from a final judgment or order must show by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct. Fed. R. Civ. P. 60(b).

Cases that cite this headnote

**[14]    Federal Civil Procedure**
  👈 Failure to respond;sanctions

A district court has broad discretion in applying sanctions for failure to comply with a discovery order, and a default judgment sanction requires a willful or bad faith failure to obey a discovery order. Fed. R. Civ. P. 37(b)(2).

Cases that cite this headnote

**[15]    Federal Civil Procedure**
  👈 Failure to Appear or Testify;Sanctions
**Federal Civil Procedure**
  👈 Fraud;misconduct

Physician's allegation that author of two blog posts that allegedly contained false and defamatory statements about physician's medical practice misled physicians and district court through his deposition testimony, thereby prejudicing physician by an unfavorable summary judgment ruling, was insufficient to establish fraud of bad faith on part of author, and thus physician was not entitled to sanctions against author for failure to comply with discovery or to relief from

district court's final summary judgment order in author's favor; author explained each of the alleged false statements in his deposition. Fed. R. Civ. P. 37, 60(b).

Cases that cite this headnote

**[16]    Federal Civil Procedure**
    👉 Time for consideration of motion

District court did not abuse its discretion in denying physician's request for relief based on unavailability of facts on blog post author's motion for summary judgment, in physician's action against author, alleging that blog posts contained false and defamatory statements about physician's medical practice; physician never made proper motion for such relief, but instead requested the relief in brief responding to author's motion for summary judgment. Fed. R. Civ. P. 7(b)(1), 56(d).

Cases that cite this headnote

**[17]    Antitrust and Trade Regulation**
    👉 Advertising, Marketing, and Promotion

For purposes of Lanham Act liability for false commercial advertising or promotion, commercial advertising or promotion includes: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) the representations must be disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry. U.S. Const. Amend. 1; Lanham Trade-Mark Act § 43, 15 U.S.C.A. § 1125(a)(1)(B).

Cases that cite this headnote

**[18]    Antitrust and Trade Regulation**
    👉 Advertising, Marketing, and Promotion

For purposes of Lanham Act liability for false commercial advertising or promotion, "commercial speech," is expression related solely to the economic interests of the speaker and its audience. U.S. Const. Amend. 1;

Lanham Trade-Mark Act § 43, 15 U.S.C.A. § 1125(a)(1)(B).

Cases that cite this headnote

**[19]    Antitrust and Trade Regulation**
    👉 Advertising, Marketing, and Promotion

For purposes of Lanham Act liability for false commercial advertising or promotion, the "core notion" of commercial speech extends to speech that proposes a commercial transaction. U.S. Const. Amend. 1; Lanham Trade-Mark Act § 43, 15 U.S.C.A. § 1125(a)(1)(B).

Cases that cite this headnote

**[20]    Antitrust and Trade Regulation**
    👉 Advertising, Marketing, and Promotion

For purposes of Lanham Act liability for false commercial advertising or promotion, federal courts apply three factors in looking beyond the core notion of commercial speech to determine whether material is commercial speech subject to Lanham Act: (1) that the material was conceded to be advertisements; (2) it contained a reference to a specific product; and (3) the speaker has an economic motivation for distributing the material; no one factor is dispositive, but the combination of all three characteristics provides strong support for the conclusion that the material is properly characterized as commercial speech. U.S. Const. Amend. 1; Lanham Trade-Mark Act § 43, 15 U.S.C.A. § 1125(a)(1)(B).

Cases that cite this headnote

**[21]    Antitrust and Trade Regulation**
    👉 Advertising, Marketing, and Promotion

Speech is not rendered commercial for purposes of the Lanham Act by the mere fact that it relates to an advertisement. Lanham Trade-Mark Act § 43, 15 U.S.C.A. § 1125(a)(1)(B).

Cases that cite this headnote

**[22]    Antitrust and Trade Regulation**
👉 **Particular cases**

Author's blog posts, which allegedly contained false and defamatory statements about physician's medical practice, did not constitute commercial speech subject to Lanham Act; posts did not propose commercial transactions and did not discuss any products for sale by physician, stated purpose of blog was to provide objective analysis of questionable or controversial medical claims so that consumers could make more informed decisions, and posts discussed plausibility of physician's practices in relation to different medical conditions treated and the shortage of medical studies supporting the physician's positions, were not featured prominently in fundraising efforts, and were not central content driving advertising or membership-based revenue. U.S. Const. Amend. 1; Lanham Trade-Mark Act § 43, 15 U.S.C.A. § 1125(a)(1)(B).

Cases that cite this headnote

**[23]    Antitrust and Trade Regulation**
👉 **Representations, assertions, and descriptions in general**

Commercial purposes of newspapers and magazines do not convert the individual articles within such editorial sources into commercial speech subject to Lanham Act liability. U.s. Const. Amend. 1; Lanham Trade-Mark Act § 43, 15 U.S.C.A. § 1125(a)(1)(B).

Cases that cite this headnote

Appeal from the United States District Court for the Southern District of Florida, D.C. Docket No. 9:14–cv–80781–RLR.

**Attorneys and Law Firms**

Cullin A. O'Brien, Cullin O'Brien Law, PA, Fort Lauderdale, FL, Geoffrey Michael Cahen, Quarles & Brady, LLP, Boca Raton, FL, for Plaintiffs–Appellants.

Marc J. Randazza, Jay Marshall Wolman, Randazza Legal Group, PLLC, Las Vegas, NV, Jason Allan Fischer, Fischer Law, PL, Miami, FL, for Defendant–Appellee Steven Novella, an individual.

Scott Allan Cole, Alexandra Valdes, Cole Scott & Kissane, PA, Miami, FL, for Defendant–Appellee Society for Science–Based Medicine, Inc.

Darren Joel Spielman, Kain & Associates, PA, Fort Lauderdale, FL, for Defendant–Appellee SGU Productions, LLC, a Connecticut limited liability company.

Eugene Volokh, UCLA School of Law, Los Angeles, CA, for Amici Curiae Gregory Dolin, Henry Greely, David Hyman, Abigail Moncrieff, Natalie Ram, The Center for Medicine and Law.

Ian Clark, Pro Se.

Coralie Graham, Pro Se.

Robert Bruce Rich, Weil Gotshal & Manges, LLP, New York, NY, for Amici Curiae Association of American Publishers, Inc., American Booksellers for Free Expression, Comic Book Legal Defense Fund, Media Coalition Foundation, The Freedom to Read Foundation.

Mark P. McKenna, Notre Dame Law School, Notre Dame, IN, for Amicus Curiae Intellectual Property Law Professors.

Hannah Bloch–Wehba, Student Press Law Center, Arlington, VA, for Amici Curiae Reporters Committee for Freedom of the Press, 24 Media Organizations.

Bruce D. Brown, Reporters Committee for Freedom of the Press, Washington, DC, for Amicus Curiae Reporters Committee for Freedom of the Press.

Before HULL and MARTIN, Circuit Judges, and RESTANI, [*] Judge.

[*]    Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

## Opinion

RESTANI, Judge:

**\*1** Appellants Edward Lewis Tobinick, MD ("INR CA"), INR PLLC ("INR FL"), and M.D. Edward Tobinick ("Dr. Tobinick") (collectively, the "Tobinick Appellants") appeal the district court's orders striking INR CA's state law claims pursuant to California's anti-SLAPP statute, twice denying amendment of the Tobinick Appellants' complaint, denying relief pursuant to Federal Rules of Civil Procedure ("Rule") 37, 56(d), and 60 due to potential discovery-related abuses, and granting summary judgment against the Tobinick Appellants on their Lanham Act claim. We affirm the district court in all respects.

## BACKGROUND

This case concerns a dispute between two doctors regarding the medical viability of a novel use for a particular drug.

### I. The Parties

Dr. Tobinick is certified in internal medicine and dermatology, and he is licensed in both California and Florida. He has two clinics that conduct business as The Institute of Neurological Recovery: INR CA in Los Angeles, California, and INR FL in Palm Beach County, Florida. Dr. Tobinick has developed an unorthodox use for the drug etanercept by delivering it through perispinal administration, which involves a needle injection near particular spinal ligaments. Dr. Tobinick claims that this new use of etanercept is effective at treating spinal pain, post-stroke neurological dysfunctions, and Alzheimer's disease. Etanercept is the generic name of Enbrel, which was first approved by the United States Food and Drug Administration ("FDA") in November 1998 to treat rheumatoid arthritis. Notably, Enbrel has not been FDA approved for the purposes which Dr. Tobinick seeks to use the drug.

Steven Novella ("Dr. Novella") is a neurologist at Yale New Haven Hospital in the Botulinum Program and treats patients with a variety of conditions, including headaches, back pain, Alzheimer's disease, dementia, and seizures. Dr. Novella also engages in endeavors

apart from these professional obligations. For instance, he is on the board of the non-profit Society for Science–Based Medicine, Inc. ("Society"). In addition, in May 2005, Dr. Novella began working with his brother, Jay Novella ("Jay"), to produce and broadcast a podcast that discusses a variety of scientific issues. This podcast, "The Skeptics Guide to the Universe," is hosted on a website (www.theskepticsguide.org) owned by the for-profit company SGU Productions, LLC ("SGU"). Also, Dr. Novella is the executive editor of and contributor for the Science–Based Medicine ("SBM") blog (www.sciencebasedmedicine.org), which examines issues related to science and medicine, and is operated by a non-profit entity, the New England Skeptical Society. [1]

---

[1]    The Society is a separate entity from the SBM blog. The Society has its own website that was first made available to the public on January 1, 2014.

### II. Factual Background

In response to a May 5, 2013, Los Angeles Time article discussing Dr. Tobinick's novel treatments, Dr. Novella published an article "Enbrel for Stroke and Alzheimer's" in SBM's blog on May 8, 2013 (the "first article"). In this six-page article, Dr. Novella explains that he learned of the Los Angeles Time article, the typical characteristics of "quack clinics" or "dubious health clinics," the key features of Dr. Tobinick's clinic, and lastly the plausibility of and the evidence supporting Dr. Tobinick's allegedly effective use of etanercept. Particularly relevant to this case, Dr. Novella also quotes a portion of the Los Angeles Time article, which reported that "[Dr. Tobinick's] claims about the back treatment led to an investigation by the California Medical Board, which placed him on probation for unprofessional conduct and made him take classes in prescribing practices and ethics." Am. Compl. Ex. 1 at 3, Edward Lewis Tobinick, MD v. Novella, No. 9:14–cv–80781–RLR (S.D. Fla. Aug. 1, 2014), ECF No. 55 ("Am. Compl.").

**\*2** On June 9, 2014, the Tobinick Appellants filed a complaint against Appellees Dr. Novella, the Society, SGU (collectively, the "Novella Appellees"), and also Yale University ("Yale"), challenging Dr. Novella's first article. In response to the lawsuit and on July 23, 2014, Dr. Novella published another article in SBM's blog entitled "Another Lawsuit To Suppress Legitimate Criticism—This Time SBM" (the "second article"). In the second article, Dr. Novella details the lawsuit filed by the

Tobinick Appellants and provides Dr. Novella's view that the lawsuit is designed to silence his public criticism of Dr. Tobinick's practices. He also restates in large part his same criticisms of Dr. Tobinick's practices as set forth in the first article. In doing so, Dr. Novella again mentions the Medical Board of California ("MBC")'s investigation into Dr. Tobinick's practices, explains that the MBC "filed an accusation in 2004, amended in 2005 and 2006," and lists in detail the different allegations made in the 2004 Accusation against Dr. Tobinick. Am. Compl. Ex. 5 at 3–4. [2]

[2]    The Society's website also contains a short entry about Dr. Tobinick's use of etanercept. The entry discusses the MBC's 2006 Second Amended Accusation and subsequent settlement and Dr. Novella's criticism of Dr. Tobinick. The entry also links to Dr. Novella's entire article on the SBM blog.

### III. Course of Proceedings

As stated above, the Tobinick Appellants filed their initial complaint on June 9, 2014. On June 11, 2014, the Tobinick Appellants moved for a preliminary injunction to enjoin the Novella Appellees from continuing to display the articles. On August 1, 2014, the Tobinick Appellants filed an amended complaint to add allegations relating to the second article that was published just nine days prior. This operative amended complaint contests several aspects of the first article, including claims that these neurological conditions "not known to be immune mediated [can be] treated by a specific immunosuppressant," [3] claims that Dr. Tobinick's retrospective case studies are not probative medical evidence, implications that Dr. Tobinick is committing a health fraud, statements that Dr. Tobinick's clinics are "a one-man institute," and that Florida is a "very quack-friendly state." Am. Compl. ¶¶ 54, 60, 63, 69, 71. Regarding the second article, the Tobinick Appellants' operative complaint specifically takes issue with only one new statement therein, that "there have been no double-blind placebo-controlled clinical trials of the treatment provided by [Dr. Tobinick]." Am. Compl. ¶ 102. These disputes are covered in the operative complaint by the following causes of action: violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I); common law unfair competition (Count II); trade libel (Count III); libel per se (Count IV); and tortious interference with business relationships (Count V).

[3]    According to Dr. Novella, his statement that the neurological conditions treated by Dr. Novella are "not known to be immune mediated" means "that the current consensus is not that these conditions are primarily caused by or driven by an autoimmune disease that could be modified by this treatment." Dep. of Steven Novella, M.D., at 35–36, Edward Lewis Tobinick, MD v. Novella, No. 9:14–cv–80781–RLR (S.D. Fla. Sept. 1, 2015), ECF No. 261–9. Dr. Novella identified etanercept as an example of an immunosuppressant. Id.

On August 8, 2014, and August 13, 2014, SGU and Yale, respectively, moved to dismiss the action as to them for lack of personal jurisdiction. On August 11, 2014, Dr. Novella moved to dismiss all claims against him for various reasons. On August 18, 2014, the Society moved to dismiss the action against it for failure to state a claim, or for summary judgment, because, inter alia, the Society did not engage in false advertising under the Lanham Act.

On September 25, 2014, pursuant to SGU's and Yale's motions to dismiss for lack of personal jurisdiction, the district court dismissed each from the case. On September 30, 2014, Dr. Novella invoked California's anti-SLAPP law [4] and moved to strike the only California plaintiff's, INR CA's, state law claims. On January 23, 2015, the district court denied Dr. Novella's motion to dismiss in nearly all respects but granted his motion to dismiss Count V of the amended complaint, i.e., the tortious interference claim, because Florida's single publication rule barred that claim. The Tobinick Appellants do not challenge this dismissal on appeal.

[4]    The purpose of the anti-SLAPP law is to curb the "increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." See Cal. Civ. Proc. Code § 425.16(a). Such causes of action are subject to a special motion to strike. Id. § 425.16(b)(1).

**\*3** On March 16, 2015, after converting the Society's motion to dismiss into a motion for summary judgment, the district court granted summary judgment in favor of the Society with respect to the Lanham Act (Count I) and the unfair competition (Count II) claims, explaining that the articles were not commercial speech. The district court also dismissed without prejudice the trade libel (Count III) and libel per se (Count IV) claims against the Society because the Tobinick Appellants failed to properly notice

the Society of these claims as required by Florida law. The district court, therefore, dismissed the Society from the action, but it did provide the Tobinick Appellants leave to re-file their claims against the Society in a separate suit. [5] On April 2, 2015, following limited discovery, the district court denied the Tobinick Appellants' motion for a preliminary injunction.

[5]    On appeal, the Tobinick Appellants do not explicitly challenge the order granting summary judgment in favor of the Society. Their discovery-related requests for relief could be generously construed as a challenge to the validity of this summary judgment order. But, because we conclude that the district court did not abuse its discretion in denying the requests for discovery-related relief, we see no remaining challenge to the grant of summary judgment in favor of the Society.

On May 11, 2015, the deadline for amended pleadings, the Tobinick Appellants moved for leave to file a second amended complaint, adding new factual allegations some of which related to new webpages and a podcast that discussed Dr. Tobinick, [6] raising a new claim for common law civil conspiracy, reasserting claims against the previously-dismissed defendant SGU, and inserting two new defendants—Jay and Paul Ingraham ("Ingraham"), a co-blogger of Dr. Novella. On May 15, 2015, the Tobinick Appellants filed a corrected version of their motion for leave to amend.

[6]    More precisely, the Tobinick Appellants add allegations regarding (1) a July 23, 2014, legal defense webpage on SGU's website, which requests donations to help defend against the Tobinick Appellants' suit, (2) a July 26, 2014, SGU podcast that discusses Dr. Tobinick's medical treatments, the transcript of which was published on August 7, 2014, and (3) an April 1, 2015, article in SBM's blog that provided an update on the status of the litigation against the Tobinick Appellants.

On June 4, 2015, the district court granted Dr. Novella's special motion to strike INR CA's state law claims ("anti-SLAPP order"). On June 18, 2015, the district court issued an omnibus order denying the Tobinick Appellants' corrected motion for leave to file a second amended complaint. In that omnibus order, the district court also granted Dr. Tobinick's and INR FL's request for voluntary dismissal of Counts III and IV for trade libel and libel per se, respectively. Shortly thereafter, on June

25, 2015, Dr. Novella filed his answer to the operative amended complaint.

On August 18, 2015, the Tobinick Appellants again moved for leave to file another second amended complaint in order to add a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). On August 20, 2015, the district court denied the Tobinick Appellants' motion.

On August 25, 2015, Dr. Novella moved for summary judgment on all remaining claims. On September 1, 2015, the Tobinick Appellants filed two motions based on the allegation that Dr. Novella provided false deposition testimony, one motion pursuant to Rule 37 seeking sanctions and one pursuant to Rule 60(b) seeking reconsideration of the district court's anti-SLAPP order. The Tobinick Appellants argued that Dr. Novella falsely denied that he had communicated with the author of the May 5, 2013, Los Angeles Times article; denied that he had ever discussed Dr. Tobinick with Ingraham; and denied communicating with another physician, Stephen Barrett, regarding Dr. Tobinick.

**\*4** On September 15, 2015, the district court denied each of the Tobinick Appellants' motions based on the alleged discovery-related abuses. On October 2, 2015, the district court found that Dr. Novella's speech is not commercial and then granted summary judgment in favor of Dr. Novella on both remaining claims. The district court reasoned that the Tobinick Appellants largely based their unfair competition claim (Count II) on their Lanham Act false advertising claim (Count I). The Tobinick Appellants now appeal.

## JURISDICTION AND STANDARD OF REVIEW

[1]    [2]    We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291. We review de novo "the district court's interpretation and application of a statute" such as California's anti-SLAPP statute. Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1354 (11th Cir. 2014). We review for an abuse of discretion the district court's denial of leave to amend and the denial of requests for relief brought under Rules 37, 56(d), and 60(b). World Holdings, LLC v. Fed. Republic of Germany, 701 F.3d 641, 649, 654–55 (11th Cir. 2012) (Rule 56(d)); Garfield v. NDC Health Corp., 466 F.3d 1255, 1270 (11th Cir. 2006) (leave to

amend); Serra Chevrolet, Inc. v. Gen. Motors Corp., 446 F.3d 1137, 1146–47 (11th Cir. 2006) (Rule 37); Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir. 2000) (Rule 60(b)).

[3] [4] Further, we review a grant of summary judgment de novo, "viewing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party." McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1141 (11th Cir. 2014). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Id.

## DISCUSSION

### I. Dr. Novella's Special Motion to Strike

The Tobinick Appellants challenge the district court's anti-SLAPP order on two grounds. First, the Tobinick Appellants contend that the district court erred in adopting the anti-SLAPP expedited procedures because doing so "trampled federal procedure and constitutional rights" and violated the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Second, the Tobinick Appellants argue the district court's determination that there was no evidence of actual malice by Dr. Novella is erroneous. Dr. Novella responds that the Tobinick Appellants waived their Erie claim and, in the alternative, that the district court did not err on the merits of that claim. Dr. Novella also avers that the Tobinick Appellants fail to point to evidence of actual malice.

### A. Waiver of Erie Claim

[5] We do not consider an issue "not raised in the district court and raised for the first time in an appeal." Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (quoting Walker v. Jones, 10 F.3d 1569, 1572 (11th Cir. 1994)). We have recognized exceptions to the waiver doctrine, including, inter alia, where there is a: (1) "pure question of law, and if refusal to consider would result in a miscarriage of justice[,]" or (2) "no opportunity to raise [the objection] at the district court level." Id. at 1332 (quoting Wright v. Hanna Steel Corp., 270 F.3d 1336, 1342 (11th Cir. 2001)).

[6] The Tobinick Appellants waived their challenge to the district court's application of California's anti-

SLAPP statute based on the Erie doctrine. The Tobinick Appellants did not raise the Erie claim in their response to Dr. Novella's special motion to strike INR CA's state law claims, nor do the Tobinick Appellants now contend that they ever raised the issue before the district court. Moreover, when asked by the district judge "what about the issue of anti-SLAPP statutes applying in diversity cases in federal court?" the Tobinick Appellants' counsel responded "[t]here seems to be a plethora of case law that suggests that it is allowable in diversity actions in federal court." Tr. of Mot. Hr'g, at 26, Edward Lewis Tobinick, MD v. Novella, No. 9:14–cv–80781–RLR (S.D. Fla. Nov. 20, 2014), ECF No. 113. The Tobinick Appellants, therefore, waived the issue. See, e.g., NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C., 745 F.3d 742, 753–54 (5th Cir. 2014) (deeming waived party's argument that Texas' anti-SLAPP statute conflicts with the certain federal Rules).

*5 No exception to waiver saves the Tobinick Appellants' claim. The Tobinick Appellants have not identified any miscarriage of justice resulting from a finding of waiver, nor do we see one, given the weakness of the Tobinick Appellants' state law claims.[7] Furthermore, not only did the Tobinick Appellants squarely concede the Erie issue at the hearing, the district court nevertheless considered the argument in its anti-SLAPP order. The district court acted reasonably in applying California's anti-SLAPP statute to the state law claims, stating that "the majority of circuit courts have found anti-SLAPP special motions to strike permissible, and ... the specific anti-SLAPP statute at issue has previously been allowed in federal court." Edward Lewis Tobinick, MD v. Novella, 108 F.Supp.3d 1299, 1305 n.4 (S.D. Fla. 2015) ("Tobinick"). Moreover, that the Seventh Circuit's June 29, 2015, decision in Intercon Solutions, Inc. v. Basel Action Network, on which the Tobinick Appellants rely, had not been issued until after the district court issued its June 4, 2015, anti-SLAPP order does not excuse the Tobinick Appellants' waiver. See 791 F.3d 729, 731–32 (7th Cir. 2015) (holding that Washington's anti-SLAPP statute was inapplicable in federal court after that state's highest court interpreted that anti-SLAPP statute as going beyond a summary judgment procedure and as violating the right to a trial by a jury by requiring a judge to make factual findings).

---

7    As reflected in the discussion of actual malice, infra, it seems highly unlikely that the Tobinick Appellants' state law claims would survive even without the availability of an anti-SLAPP motion.

First, Intercon is obviously of limited applicability. Second, notwithstanding the date of the Intercon decision, the Tobinick Appellants explicitly conceded the Erie issue at the hearing in which Dr. Novella's counsel alerted the district court of that potential issue. Even more telling, the Tobinick Appellants did not raise the Erie issue in their September 1, 2015, motion for reconsideration of the district court's anti-SLAPP order, which was filed months after Intercon had been decided. Accordingly, we decline to consider the merits of the Tobinick Appellants' Erie-based challenge for the first time on appeal.

### B. Actual Malice

[7]   [8]   In applying California's anti-SLAPP statute,[8] the district court reasoned that Dr. Tobinick was a limited public figure[9] and that he had not produced evidence of actual malice such that INR CA, Dr. Tobinick's California entity, had a probability of prevailing on its state law claims. Tobinick, 108 F.Supp.3d at 1308, 1309; see Cal. Civ. Proc. Code § 425.16(b)(1). The Tobinick Appellants challenge only the latter holding regarding actual malice.

[8]   The anti-SLAPP statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

> Cal. Civ. Proc. Code § 425.16(b)(1).

[9]   As we have explained, the Supreme Court has identified two types of public figures in this context. An all-purpose public figure is one that "occup[ies] positions of such persuasive power and influence that they are deemed public figures for all purposes." Silvester v. Am. Broad. Cos., 839 F.2d 1491, 1494 (11th Cir. 1988) (quoting Gertz v. Robert Welch, Inc., 418 U.S. 323, 345, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). A limited public figure, by contrast, "ha[s] thrust [himself] to the forefront of particular public controversies in order to influence the resolution of the issues involved." Id. (quoting Gertz, 418 U.S. at 345, 94 S.Ct. 2997). Both types of public figures must prove that the defamatory statements were made with actual malice. See Gertz, 418 U.S. at 336, 94 S.Ct.

2997; Reader's Digest Ass'n, Inc. v. Superior Court, 37 Cal.3d 244, 208 Cal.Rptr. 137, 690 P.2d 610, 615 (1984) ("Unlike the 'all purpose' public figure, the 'limited purpose' public figure loses certain protection for his reputation only to the extent that the allegedly defamatory communication relates to his role in a public controversy.").

**\*6** [9]   [10]   Actual malice is defined as "with knowledge that [a statement] was false or with reckless disregard of whether it was false or not" and must be shown "by clear and convincing evidence." Reader's Digest Ass'n, Inc. v. Superior Court, 37 Cal.3d 244, 208 Cal.Rptr. 137, 690 P.2d 610, 617 (1984) (quoting N.Y. Times Co. v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). To show reckless disregard for truth or falsity, California courts apply a subjective test in which "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Id., 208 Cal.Rptr. 137, 690 P.2d at 617–18 (quoting St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)). California courts consider factors such as "[a] failure to investigate, anger and hostility toward the plaintiff, [and] reliance upon sources known to be unreliable or known to be biased." Id. 208 Cal.Rptr. 137, 690 P.2d at 618–19 (citations omitted); see Christian Research Inst. v. Alnor, 148 Cal.App.4th 71, 55 Cal.Rptr.3d 600, 612 (2007).

The Tobinick Appellants have not presented evidence that rises to the level of actual malice. The Tobinick Appellants believe there is actual malice because (1) Dr. Novella improperly relied on the MBC's 2004 Accusation, which had been superseded by a 2006 Second Amended Accusation, (2) Dr. Novella provided false declarations to the district court because one declaration indicates that, in researching the articles, Dr. Novella relied on the MBC's 2004 Accusation and other declarations state he relied on the MBC's 2006 Second Amended Accusation, (3) the articles contained false statements, such as claiming Dr. Tobinick ran a "one-man institute," and (4) Dr. Novella's deposition included false testimony regarding communications with certain third-parties. Here, even all of the Tobinick Appellants' circumstantial evidence taken as true is insufficient to show that Dr. Novella had serious doubts as to the truth of the content contained in his two articles.

Contrary to the Tobinick Appellants' arguments, the evidence indicates that Dr. Novella consulted both the

MBC's 2004 Accusation and the 2006 Second Amended Accusation. We see no reason why the fact that Dr. Novella consulted the 2006 document precludes him from having also consulted the 2004 document. Notwithstanding the alleged discrepancy, the Tobinick Appellants are unable to point to a definitively false statement in either of Dr. Novella's articles stemming from the reliance on the 2004 Accusation. [10] Instead, Dr. Novella's second article explicitly acknowledges that the MBC's 2004 Accusation was amended in 2006, thereby laying credence to the belief that Dr. Novella had seen both documents.

[10]    The Tobinick Appellants do state that both the 2004 Accusation and the 2006 Second Amended Accusation were superseded by an MBC 2007 Decision adopting a Stipulated Settlement and Disciplinary Order, which recognized that "studies ... have provided evidence that perispinal etanercept is effective for treatment of disc-related pain." Pls.' Corrected Rule 60(b) Mot. for Relief from June 4, 2015 Order and Sanctions and Incorporated Mem. of Law Ex. 29, at 4, Edward Lewis Tobinick, MD v. Novella, No. 9:14–cv–80781–RLR (S.D. Fla. Sept. 1, 2015), ECF No. 261. The Tobinick Appellants do not identify which of Dr. Novella's statements is in conflict with this settlement; instead, they seems to imply that Dr. Novella's articles are misleading as to existence of these studies incorporated in the MBC's 2007 Decision. Not only is this implication on its own insufficient to rise to the level of actual malice, but Dr. Novella's second article appears to reference these very studies. The second article admits that "[t]here are small studies for disc herniation showing conflicting results." Am. Compl. Ex. 5 at 3.

**\*7** Similarly, the allegedly false statements in Dr. Novella's articles and the inconsistencies in his deposition testimony are insufficient to demonstrate actual malice. Neither speaks to whether Dr. Novella was "aware of any erroneous statements or [was] in any way reckless in that regard" when he wrote the articles. Sullivan, 376 U.S. at 286, 84 S.Ct. 710. The mere existence of a false statement does not, on its own, demonstrate Dr. Novella's knowledge of its falsity. Tellingly, the Tobinick Appellants are unable to show that many of Dr. Novella's statements are actually false or that they are anything more than medical or personal opinion. As an example, the Tobinick Appellants rely on Dr. Novella's characterization of Florida as a "very quack-friendly state," Am. Compl. ¶ 71, but this statement is plainly Dr. Novella's opinion

and cannot be proven as true or false. The Tobinick Appellants, instead, point to isolated statements, which do not pertain to the article's essential criticism of Dr. Tobinick's medical practices, as evidence that Dr. Novella recklessly included falsities in the article. But, this evidence at most demonstrates mere negligence and does not raise to the level of reckless disregard needed to prove actual malice. See Sullivan, 376 U.S. at 271–72, 84 S.Ct. 710 ("[E]rroneous statement is inevitable in free debate, and ... it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need to survive[.]' "). For instance, the Tobinick Appellants allege that Dr. Novella "falsely implies" that Dr. Tobinick's clinics "have committed a health fraud insomuch as the [first article] was placed into a category identified as 'Health Fraud.' " Am. Compl. ¶ 63. The article itself, however, never states that Dr. Tobinick is committing or has committed health fraud. And, placement in a category on a website is insufficient here where there is no evidence that Dr. Novella decided in which category the article would be included. Furthermore, regarding the "one-man institute" comment, the Tobinick Appellants have failed to rebut Dr. Novella's statement that he looked at the websites for Dr. Tobinick and his clinic and "Dr. Tobinick [was] the only physician named and profiled on the websites." Def. Dr. Steven Novella's Mot. to Dismiss Ex. 1, ¶ 30, Edward Lewis Tobinick, MD v. Novella, No. 9:14–cv–80781–RLR (S.D. Fla. July 23, 2014), ECF No. 36. Dr. Novella's statement is reasonably held, as the name of Dr. Tobinick's California clinic, "Edward Lewis Tobinick, MD," further supports his belief that "Dr. Tobinick was a solo practicioner[.]" Id. Instead, as the district court acknowledged, Dr. Novella's articles contain "a more nuanced discussion of the issues than [INR CA's] pleading admits." Tobinick, 108 F.Supp.3d at 1311.

As to the allegedly false statements in the deposition testimony, they relate primarily to Dr. Novella's communications with certain third-parties after the first article had been published and do not speak to Dr. Novella's knowledge of the accuracy of the statements made in either of his articles. In any event, as discussed infra, the Tobinick Appellants' challenges to Dr. Novella's allegedly false deposition testimony are based on mere conjecture and, if true, at most demonstrate ill will towards Dr. Tobinick, likely based on differing views on medical matters. See Reader's Digest Ass'n, 208 Cal.Rptr. 137, 690 P.2d at 619 ("[M]ere proof of ill will on the part

of the publisher may ... be insufficient [to prove actual malice].").

Moreover, although "[t]he failure to conduct a thorough and objective investigation, standing alone, does not prove actual malice," id. 208 Cal.Rptr. 137, 690 P.2d at 619, we conclude that the evidence of Dr. Novella's investigation, in which he looked to trustworthy sources, demonstrates his lack of subjective belief that the articles contained false statements. Before writing, Dr. Novella consulted the Los Angeles Times article, many of Dr. Tobinick's case studies, the MBC's accusations, and the Tobinick Appellants' own websites. See Tobinick, 108 F.Supp.3d at 1310. Accordingly, because the Tobinick Appellants have not demonstrated a probability of success on the actual malice issue, the district court did not err in granting Dr. Novella's special motion to strike the state law claims pursuant to California's anti-SLAPP statute.

## II. The Tobinick Appellants' Motion for Leave to Amend
The Tobinick Appellants argue that the district court erred in twice denying them leave to amend the operative complaint because there would not have been prejudice to the Novella Appellees.

**[11]** Rule 15 provides that "[a] party may amend its pleading once as a matter of course...." Fed. R. Civ. P. 15(a)(1). And "[i]n all other cases, a party may amend its pleading only with ... the court's leave. The court should freely give leave when justice so require." Id. 15(a)(2). The Supreme Court has explained that a district court may properly deny leave to amend for reasons "such as undue delay." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

**[12]** The district court did not abuse its discretion in twice denying leave to amend the operative complaint. Both motions for leave to amend were sought approximately a year after the Tobinick Appellants filed the original complaint. By the time the Tobinick Appellants sought amendment, the course of proceedings had been markedly advanced—the district court had dismissed SGU and Yale for lack of personal jurisdiction, dismissed Count V of the operative complaint, granted summary judgment in favor of the Society, and denied the Tobinick Appellants' motion for preliminary injunction. The Tobinick Appellants filed the first motion for leave to amend on the deadline for amended pleadings and sought extensive changes to the operative complaint: they alleged

new factual allegations, added a civil conspiracy claim, reinserted previously-dismissed SGU back into the case, and added two new defendants. The second motion to amend also sought to supplement the complaint with the new FDUTPA cause of action.

**\*8** In denying the first motion, the district court reasonably concluded that allowing amendment "would essentially reset the case." Omnibus Order, at 2, Edward Lewis Tobinick, MD v. Novella, No. 9:14–cv–80781– RLR (S.D. Fla. June 18, 2015), ECF No. 202. The district court noted the "aggressively litigated" course of proceedings, the extent of the amendments sought by the Tobinick Appellants, and the fact that the Tobinick Appellants "could only identify a limited number of recent statements incorporated into the proposed" complaint. Id. at 1–2. Indeed, many of the new factual allegations added by the Tobinick Appellants related to the legal defense webpage and the SGU podcast, which were both initially published in July 2014, nearly a year before the Tobinick Appellants filed their first motion for leave to amend. Similarly, the district court denied the second motion, which was filed after the deadline for amended pleadings, in a docket entry "for all of the reasons previously stated on the record at the Court's Status Conference on June 18, 2015, as well as the timing of the Motion in relation to the dispositive motion deadline, which is imminent, and trial, which is two months hence." Paperless Order, Edward Lewis Tobinick, MD v. Novella, No. 9:14–cv–80781–RLR (S.D. Fla. Aug. 20, 2015), ECF No. 245. Thus, even though Dr. Novella had not yet filed his answer, the district court did not abuse its discretion because it properly sought to prevent an undue delay caused by the Tobinick Appellants' last-minute attempts to amend their complaint.

## III. The Tobinick Appellants' Discovery–Related Requests for Relief
The Tobinick Appellants argue that the district court abused its discretion in not granting relief under Rules 37, 56(d), and 60(b) because Dr. Novella misled the Tobinick Appellants and the district court through his deposition testimony, thereby prejudicing the Tobinick Appellants by an unfavorable summary judgment ruling.

**[13]** Under Rule 60(b), a party may move for relief from a final judgment or order, for reasons including fraud. Fed. R. Civ. P. 60(b). [11] The moving party must show "by

clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." Cox Nuclear Pharmacy, 478 F.3d at 1314 (quoting Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000)).

11      Because the Tobinick Appellants did not specify the grounds on which they were moving, the district court reasonably construed the basis for as for "fraud ..., misrepresentation, or misconduct by an opposing party." Edward Lewis Tobinick, M.D. v. Novella, No. 9:14–cv–80781, 2015 WL 11254727, at *1 (S.D. Fla. Sept. 15, 2015) (quoting Fed. R. Civ. P. 60(b)(3)). On appeal, the Tobinick Appellants do not challenge the district court's construction.

[14]   Under Rule 37(b)(2), a party may move for sanctions for failure to comply with a discovery order. Fed. R. Civ. P. 37(b)(2). A district court has broad discretion in applying these sanctions, and "a default judgment sanction," as requested by the Tobinick Appellants, "requires a willful or bad faith failure to obey a discovery order." Malautea v. Suzuki Motor Co., 987 F.2d 1536, 1542 (11th Cir. 1993).

Rule 56(d) provides: "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

[15]   First, to support his requests for Rules 37 and 60(b) relief, the Tobinick Appellants allege a scheme to ruin Dr. Tobinick perpetrated by Dr. Novella and other co-conspirators, but none of his claims are sufficient to demonstrate bad faith or fraud justifying sanctions or reconsideration. Dr. Novella explained each of the alleged false statements in his deposition. As to his communications with the author of the Los Angeles Times article, Dr. Novella testified that at the time of the deposition he did not remember a brief email conversation that had occurred more than two years prior. And, Dr. Novella explained that he truthfully answered his reasonable interpretation of the questions regarding his communications with Ingraham and Barrett.12 The Tobinick Appellants' conjecture of an elaborate conspiracy is not sufficient to controvert Dr. Novella's reasonable explanations and certainly is insufficient to

demonstrate bad faith or fraud. It, consequently, was not an abuse of discretion for the district judge to deny the motions under Rules 37 and 60(b).

12      Specifically, Dr. Novella's declaration provided that his deposition did not contain false statements because (1) as to Ingraham, he was asked if he discussed the topic of Dr. Tobinick with Ingraham, but the emails show one-sided emails from Ingraham to Dr. Novella, but did not contain responses from Dr. Novella, and (2) as to Barrett, he answered that he could not recall whether or not an email exchange took place and therefore never falsely denied the existence of such emails in his deposition.

*9   [16]   Second, the district court did not abuse its discretion on the Rule 56(d) issue as the Tobinick Appellants never made a proper motion for Rule 56(d) relief. "A request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). Instead, the Tobinick Appellants requested Rule 56(d) relief in their brief responding to Dr. Novella's motion for summary judgment. The district court did not issue an order regarding Rule 56(d), likely because it was not moved to do so. Indeed, the Tobinick Appellants had once before sought relief pursuant to Rule 56(d) by motion pending the close of discovery, and the district court both considered and ultimately granted the motion. To the extent that the Tobinick Appellants' request for Rule 56(d) relief is premised on the same discovery-related abuses as their other two motions, their claim fails because for the reasons already stated the district court did not abuse its discretion. Thus, the district court did not abuse its discretion in denying each of the Tobinick Appellants' discovery-related requests for relief.

## IV. The Tobinick Appellants' Lanham Act Claim

The Tobinick Appellants argue that the district court erred in granting summary judgment against them on their Lanham Act claim because there are material facts in dispute regarding the commercial nature of Dr. Novella's speech, chiefly as it relates to his economic motivations. The Tobinick Appellants further contend that Dr. Novella's statements are false and misleading and that the Tobinick Appellants have satisfied the remaining elements of a Lanham Act claim.

[17]   The Lanham Act prescribes liability for false advertising to "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Commercial advertising or

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

promotion includes "(1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services[;]" and (4) "the representations ... must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1349 (11th Cir. 2012) (quoting Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics, 859 F.Supp. 1521, 1535–36 (S.D.N.Y. 1994)).

**[18]** **[19]** **[20]** **[21]** Commercial speech is "expression related solely to the economic interests of the speaker and its audience." Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). The "core notion" of commercial speech extends to speech that proposes a commercial transaction. Bolger v. Young Drug Prods. Corp., 463 U.S. 60, 66, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983). The Supreme Court has identified three factors in looking beyond the core notion of commercial speech: (1) that the material was "conceded to be advertisements," (2) it contained a "reference to a specific product," and (3) the speaker "has an economic motivation" for distributing the material. Id. No one factor is dispositive. See id. at 67, 103 S.Ct. 2875. "The combination of all three characteristics, however, provides strong support for the ... conclusion that the [material is] properly characterized as commercial speech." Id. at 62, 67, 103 S.Ct. 2875. But, "speech is not rendered commercial by the mere fact that it relates to an advertisement." Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations, 413 U.S. 376, 384, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973).

**[22]** There is no genuine dispute of material fact regarding whether Dr. Novella's articles are commercial speech. A plain reading of the first and second articles makes clear that they do not fall within the core notion of commercial speech as they do not propose a commercial transaction. Instead, Dr. Novella's articles evoke many characteristics of noncommercial speech. The articles "communicate[ ] information, express[ ] opinion, [and] recite [ ] grievances, ...." See Sullivan, 376 U.S. at 266, 84 S.Ct. 710. Dr. Novella, who posted the articles on SBM's blog, states in his second article that the purpose of the SBM blog is to "provide an objective analysis of questionable or controversial medical claims so that consumers can make more informed decisions...." Am.

Compl. Ex. 5 at 1. The content of the articles corroborates this stated educational purpose, as the articles discuss the plausibility of Dr. Tobinick's practices in relation to the different medical conditions treated, the way etanercept works, and the shortage of medical studies supporting Dr. Tobinick's position. These articles, which conclude that Dr. Tobinick's perispinal administration of etanercept is ineffective, add to the public debate regarding the viability of a non-FDA approved medical treatment and are clearly of import to the public.

**\*10** We turn next to the three factors outlined by the Supreme Court in Bolger with regard to non-core commercial speech and conclude that these factors do not save the Tobinick Appellants' Lanham Act claim. First, the Novella Appellees do not concede that the articles are advertisements, nor can they reasonably be construed as such. The first article makes no mention of Dr. Novella's practice or medical services. Although the second article does make such a mention, it was authored in response to the Tobinick Appellants' filing of their lawsuit, criticizes the lawsuit as an attempt to suppress Dr. Novella's critiques, and mentions Dr. Novella's medical practice only to provide context regarding the lawsuit. In addition, Dr. Novella clarifies in his second article that he primarily treats headaches, thereby distancing the types of medical services he provides from the services marketed by Dr. Tobinick, who does not claim to treat headaches.

Second, the articles do not discuss any products for sale by Dr. Novella, and, as discussed, only briefly mention his practice for context. The articles' sole reference to a product is found in their discussion of Dr. Tobinick's medical treatments. But, these references to Dr. Tobinick's medical treatments are, by themselves, insufficient to subject Dr. Novella's otherwise protected speech to Lanham Act liability. See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 761–62, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (explaining that speech that includes content on commercial topics is not automatically commercial speech). In Gordon & Breach Sci. Publishers S.A., the district court explained that "a restaurant or movie review or a ... product report" on its own is not commercial speech under the Lanham Act, 15 U.S.C. § 1125(a), but can be transformed into commercial speech when, for instance, a restaurant "posts the ... review in its window." 859 F.Supp. at 1544. Dr. Novella's discussion of Dr. Tobinick's use of etanercept, which

resembles a medical peer review of a treatment's viability, therefore, does not render the articles commercial speech.

Third, the Tobinick Appellants have not demonstrated economic motivation sufficient to transform Dr. Novella's speech into commercial speech. As a preliminary matter, there is no factual dispute as to where the articles were displayed online, how the websites were set up, and whether the websites generated revenue through advertisements and membership subscriptions. The Tobinick Appellants describe a complex "funneling" scheme to generate profit for Dr. Novella, in which the Tobinick Appellants claim that the two articles are connected to other websites through hyperlinks in a way that readers are directed to websites that generate revenue for Dr. Novella, such as through advertising or membership subscriptions. [13] This funneling theory, which attempts to connect the articles to revenue sources, relies on such a level of attenuation that it fails to demonstrate economic motivation in the commercial speech context.

[13]     The Tobinick Appellants argue that the court should consider the "full context" of the "interrelated websites, promotion and links that funnel money directly to [Dr.] Novella." But, much of the "full context" the Tobinick Appellants implore us to now consider are merely the websites and factual allegations that the Tobinick Appellants sought to add to their complaint by moving for leave to amend. Because we determined above that the district court did not abuse its discretion in denying leave to amend, we limit our review, as we must, to the allegations included in the operative amended complaint.

The Tobinick Appellants' reliance on World Wrestling Federation Entertainment, Inc. v. Bozell is misplaced. 142 F.Supp.2d 514, 525 (S.D.N.Y. 2001). There, a wrestling organization sued a council comprising concerned parents who had initiated a public attack campaign about the risk to children of portraying violence in wrestling television programs. Id. at 521. The district court denied a motion to dismiss the complaint and held that the allegations were sufficient to demonstrate that the council engaged in commercial speech because it featured the attacks "prominently in a fundraising video," in "fundraising letters," and in order "to raise the profile of [the council]." Id. at 525, 526. Unlike the speech in Bozell, Dr. Novella's articles are neither featured prominently in fundraising efforts [14] (or other similar solicitations for money), nor

have the Tobinick Appellants shown that these articles are the central content driving advertising or membership-based revenue.

[14]     To the extent that the Tobinick Appellants argue that SGU's legal defense webpage sought donations, as discussed, the allegations regarding that webpage are not under review as they were not made in the operative amended complaint.

*11  To be sure, neither the placement of the articles next to revenue-generating advertising nor the ability of a reader to pay for a website subscription would be sufficient in this case to show a liability-causing economic motivation for Dr. Novella's informative articles. Both advertising and subscriptions are typical features of newspapers, whether online or in-print. But, the Supreme Court has explained that "[i]f a newspaper's profit motive were determinative, all aspects of its operations—from the selection of news stories to the choice of editorial position—would be subject to regulation if it could be established that they were conducted with a view toward increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment." Pittsburgh Press, 413 U.S. at 385, 93 S.Ct. 2553.

[23]  Furthermore, as our sister circuits have recognized, magazines and newspapers often have commercial purposes, but those purposes do not convert the individual articles within those editorial sources into commercial speech subject to Lanham Act liability. See Farah v. Esquire Magazine, 736 F.3d 528, 541 (D.C. Cir. 2013) (holding that a satirical article about a book in a magazine's online blog was not commercial speech subject to Lanham Act liability even though "writers write and publishers publish ... for commercial purposes"); Hoffman v. Capital Cities/ABC, Inc., 255 F.3d 1180, 1186 (9th Cir. 2001) ("A printed article meant to draw attention to the for-profit magazine in which it appears, however, does not fall outside of the protection of the First Amendment because it may help to sell copies."). We agree. Even if Dr. Novella receives some profit for his quasi-journalistic endeavors as a scientific skeptic, the articles themselves, which never propose a commercial transaction, are not commercial speech simply because extraneous advertisements and links for memberships may generate revenue. See Va. State Bd. of Pharmacy, 425 U.S. at 761, 96 S.Ct. 1817 ("Speech ... is protected ... even though it may involve a solicitation to purchase or otherwise pay or contribute money."); see also Burstyn

Edward Lewis Fashnick, MD v. Novella, --- F.3d ---- (2017)
Case 3:17-cv-02824-JST   Document 99   Filed 02/22/17   Page 20 of 39

2017 WL 603832

v. Wilson, 343 U.S. 495, 501, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment."). Thus, because the articles are not commercial speech, they cannot be subject to Lanham Act liability as commercial advertising or promotion. Accordingly, we need not reach the other elements of a prima facie Lanham Act false advertising action.

### CONCLUSION

For all of the reasons stated above, the judgment of the district court is

**AFFIRMED.**

**All Citations**

--- F.3d ----, 2017 WL 603832

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CHAMBERS
U.S.D.C. - Atlanta

FEB 15 2017

James N. Hatten, Clerk
By _____ Deputy Clerk

DAVIDE M. CARBONE,

        Plaintiff

v.

CABLE NEWS NETWORK, INC.,

        Defendant

CIVIL ACTION NO.
1:16-CV-1720-ODE

## ORDER

This defamation case is before the Court on Defendant Cable News Network, Inc.'s ("CNN") Motion to Strike Pursuant to OCGA § 9-11-11.1 or, in the Alternative, to Dismiss Plaintiff's Complaint Pursuant to F.R.Civ.P. 12(b)(6) [Doc. 5]. Plaintiff Davide M. Carbone ("Plaintiff") has responded in opposition [Doc. 14] and CNN has replied [Doc. 19]. Also before the Court is the Brief of Amici Curiae Georgia Press Association, Georgia First Amendment Foundation, The Atlanta Journal-Constitution, WAGA Fox 5, and the Motion Picture Association of America, Inc. in Support of the Constitutionality of O.C.G.A. § 9-11-11.1, Its Applicability in Federal Court and Retroactivity [Doc. 20-1], to which Plaintiff has responded in opposition [Doc. 21] and Amici have replied [Doc. 23]. Additionally before the Court is Plaintiff's Rule 56(d) Motion for Discovery to Respond to Defendant's Anti-SLAPP Motion [Doc. 9], to which CNN has responded in opposition [Doc. 11] and Plaintiff has replied [Doc. 13]. For the reasons set forth below, CNN's motion to strike or alternatively to dismiss is DENIED.

I.  **BACKGROUND**

Plaintiff is the former Chief Executive Officer ("CEO") of St. Mary's Medical Center located in West Palm Beach, Florida [Compl., Doc. 1 at 5-6].  On May 26, 2016, he filed this defamation action against CNN for its publication of "a series of false and defamatory news reports, articles, and social media posts beginning on June 1, 2015" and available to the public to this day [Id. at 1].  He has alleged that CNN published a total of twenty-five such reports relating to the infant mortality rate for open-heart surgery at St. Mary's [Id.].  CNN's reports alleged that this mortality rate was three times the national average; Plaintiff alleges that CNN "intentionally manipulated statistics to fabricate its claim" [Id. at 24].

CNN's reports intermittently included Plaintiff's name and picture in connection with statements from St. Mary's.  CNN also apparently sent a reporter to his home, "purportedly to obtain comment" and instead "ambushed" Plaintiff and his wife "in front of their home early in the morning" [Id. at 46].  It then reported that "[a]fter St. Mary's repeatedly denied requests for interviews, CNN approached Davide Carbone, the CEO of St. Mary's at his home.  He shut the garage door without commenting" [Doc. 14-1 at 5].  Plaintiff further alleges that "at all relevant times and prior to publication of the series, it was well known to CNN that members of the public and the medical community in Florida recognized [Plaintiff] as the Chief Executive Officer of St. Mary's and as the individual ultimately responsible for the oversight and administration of the hospital program" [Compl., Doc. 1 at 49-50].  Plaintiff asserts that because of the CNN series he was forced to resign as CEO of St.

2

Mary's and has yet to secure other employment; he has also allegedly received "multiple vile and hateful telephone calls" [Id. at 50-52].

After Plaintiff filed his Complaint, CNN moved to strike it on the basis of Georgia's anti-SLAPP statute, see O.C.G.A. § 9-11-11.1, or, in the alternative, to dismiss for failure to state a claim [Doc. 5]. The Court permitted an Amici Curiae brief [Doc. 27] in support of the application of Georgia's anti-SLAPP provision to this case [Docs. 20, 20-1]. Were this Court to determine that the anti-SLAPP provision applies, Plaintiff has requested leave to conduct discovery into CNN's alleged actual malice pursuant to the statute [Doc. 9].

## II. MOTION TO STRIKE/APPLICABILITY OF ANTI-SLAPP

CNN first seeks to strike Plaintiff's defamation claim on the basis of Georgia's anti-SLAPP statute [Doc. 5]. This provision applies to cases against "a person or entity arising from an act . . . which could reasonably be construed as an act in furtherance of the person's or entity's right of petition or free speech under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern." O.C.G.A. § 9-11-11.1(b)(1). If applicable, the statute allows the protected "person or entity" to move to strike the claim, "unless the court determines that the nonmoving party has established that there is a probability that the nonmoving party will prevail on the claim." Id. Generally, discovery is halted until the Court rules on the motion to strike, except "that if there exists a claim that the nonmoving party is a public figure plaintiff, then the nonmoving party shall be entitled to discovery on the sole issue of actual malice whenever actual

3

malice is relevant to the court's determination." Id. § 9-11-11.1(b)(2).

Plaintiff opposes CNN's motion on three grounds: (1) Georgia's anti-SLAPP regime is unconstitutional pursuant to the Seventh Amendment to the United States Constitution; (2) the statute is a procedural device inapplicable in federal court; and (3) CNN impermissibly seeks retroactive protection from the statute [Doc. 14 at 8-20]. Finding the second argument persuasive, the Court need not address the other two grounds for denying CNN's motion to strike.

**A.  Legal Standard**

"It is well established that when a federal court considers a case that arises under its diversity jurisdiction, the court is to apply state substantive law and federal procedural law." Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1357 (11th Cir. 2014) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965)). In striking down a different provision of Section 9-11-11.1, the United States Court of Appeals for the Eleventh Circuit elucidated the Supreme Court's test for substance versus procedure.

"'Under the Hanna test, when the federal law sought to be applied is a congressional statute or Federal Rule of Civil Procedure, the district court must first decide whether the statute is sufficiently broad to control the issue before the Court.'" Id. at 1357-58 (quoting Hanna, 380 U.S. at 465). "'If the federal procedural rule is sufficiently broad to control the issue and conflicts with the state law, the federal procedural rule applies instead of the state law.'" Id. at 1358 (quoting Hanna, 380 U.S. at 465). Essentially, if the federal rule and the state rule overlap and conflict such that both cannot be applied harmoniously, then the

4

Court considers the validity of the federal rule.  <u>See</u> <u>Shady Grove</u>
<u>Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393, 398
(2010) (citing <u>Burlington N. R.R. Co. v. Woods</u>, 480 U.S. 1 (1987)).

"A federal rule applies in the face of a conflicting state
rule . . . only if the federal rule comports with the Rules Enabling
Act, 28 U.S.C. § 2072, and the Constitution." <u>Royalty Network</u>, 756
F.3d at 1358 (citing <u>Gasperini v. Ctr. for Humanities, Inc.</u>, 518 U.S.
415, 427 n.7 (1996)).  Only if the "federal rule is not sufficiently
broad to cover the issue or does not directly conflict with the state
law [should] the district court . . . then proceed to the second
prong of the <u>Hanna</u> test, which requires the district court to apply
<u>Erie</u> and its progeny to determine 'whether failure to apply the state
law would lead to different outcomes in state and federal court and
result in inequitable administration of the laws or forum shopping.'"
<u>Id.</u> (quoting <u>Burke v. Smith</u>, 252 F.3d 1260, 1265 (11th Cir. 2001)).

### B.  Discussion

The first question for the Court is thus whether a federal rule
answers the question in dispute, namely the necessary pleading
standard for the Plaintiff to maintain his case at this stage; one
certainly does.  Federal Rule of Civil Procedure 12(b)(6) permits
dismissal of a complaint for "failure to state a claim upon which
relief can be granted."

> [A] complaint must contain sufficient factual matter,
> accepted as true, to state a claim to relief that is
> plausible on its face.  A claim has facial plausibility
> when the plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the defendant
> is liable for the misconduct alleged.

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations and internal
quotation marks omitted).  The standard "calls for enough fact to

5

raise a reasonable expectation that discovery will reveal evidence" of the claim. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007). It is not necessary for a complaint to set out all the facts in detail, but a plaintiff has to at least allege "enough factual matter (taken as true) to suggest" the existence of the required elements of the claim. <u>Id.</u>; <u>see</u> <u>also</u> <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1296 (11th Cir. 2007).

Not only does Rule 12(b)(6) address itself to the pleading standard, it directly conflicts with Georgia's anti-SLAPP statute. The statute essentially creates a Rule 12(b)(6) "plus" standard for cases with a First Amendment nexus. Like Rule 12(b)(6), Section 9-11-11.1(b)(1) allows a defendant to move to strike or dismiss a claim for relief at this early stage in the proceedings. Also like Rule 12(b)(6), upon the defendant's motion, Section 9-11-11.1(b)(1) requires a showing by the plaintiff that a basic pleading standard has been met. The conflict arises in that Rule 12(b)(6) requires "plausibility" on the face of the complaint, <u>see</u> <u>Iqbal</u>, 556 U.S. at 678, while Section 9-11-11.1(b)(1) requires a probability of prevailing.

CNN argues that the probability standard at issue "merely supplements" the federal plausibility standard [<u>see</u> Doc. 19 at 5], but imposing an additional requirement on the plaintiff at this stage is precisely where the issue lies. The Supreme Court has been clear that "[a]sking for plausib[ility] . . does not impose a probability requirement at the pleading stage" "[a]nd, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" <u>Twombly</u>, 550 U.S. at 556 (quoting <u>Scheuer v.</u>

6

Rhodes, 416 U.S. 232 (1974)). By its very definition, therefore, the Rule 12(b)(6) plausibility requirement not only conflicts, but also cannot coexist with Section 9-11-11.1(b)(1)'s probability requirement.

Thus, the Court turns to the second question it must answer, whether Rule 12(b)(6) comports with the Rules Enabling Act and the United States Constitution.[1] The Rule passes muster and thus applies if it "'really regulate[s] procedure'" by "govern[ing] only 'the manner and the means' by which the litigants' rights are 'enforced[.]'" Shady Grove, 559 U.S. at 407 (quoting Sibbach v. Wilson & Co., 312 U.S. 1, 14 (1941); Miss. Publ'g Corp. v. Murphree, 326 U.S. 438, 446 (1946)). The Supreme Court notes that it has "rejected every statutory challenge to a Federal Rule that has come before [it]," id., and Rule 12(b)(6) should be no different. Pleading standards relate only to how a litigant may bring his claims to court and bear not at all on the substance of those rights or their enforcement. Rule 12(b)(6) thus clears the second step in the Hanna test and applies here instead of Georgia's anti-SLAPP statute.

In reaching its decision, the Court is wading into a circuit split. See Travelers Cas. Ins. Co. v. Hirsh, 831 F.3d 1179, 1183 (9th Cir. 2016) (Kozinski, J., concurring). CNN argues that Georgia's revised anti-SLAPP statute mirrors in all material respects those of California, Maine, Oregon, and Louisiana, which the First, Fifth, and Ninth Circuits have found valid in federal court [Doc. 19

---

[1]Although neither party disputes that it does [see Doc. 19 at 5 n.1], nevertheless the Court considers the question for purposes of a complete analysis.

7

at 5-6]. The Court variously takes issue with each of these precedents.

For example, the Ninth Circuit case adopting California's anti-SLAPP statute determined that there was no direct conflict with the federal rule because a litigant bringing an unsuccessful motion to strike could subsequently "remain[] free to bring a Rule 12 motion to dismiss[.]" See Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 972 (9th Cir. 1999). After this decision, however, the Supreme Court reiterated that the proper standard under Hanna is not whether a state and federal law may potentially be applied in succession, but whether a federal law already addresses the question of the proper pleading standard. See Shady Grove, 559 U.S. at 398. Furthermore, in recent years, Judge Kozinksi and several of his colleagues have challenged the wisdom of the Ninth Circuit's continued tolerance for anti-SLAPP statutes gives that their "probability" standard "directly conflicts with Federal Rule 12, which provides a one-size-fits-all test for evaluating claims at the pleading stage" pursuant to the "plausib[ility]" standard. Travelers Cas. Ins., 831 F.3d at 1183 (Kozinski, J., concurring); see Makaeff v. Trump Univ., LLC, 715 F.3d 254, 275 (9th Cir. 2013) (Kozinski, J., concurring) ("Newsham was a big mistake. Two other circuits [the First and Fifth] have foolishly followed it.").

In considering these subsequent decisions in other circuits, this Court agrees with Judge Kozinski--the argument that the anti-SLAPP statutes somehow do not "test the sufficiency of the complaint[,]" while Rule 12(b)(6) does, is simply not persuasive. Godin v. Schencks, 629 F.3d 79, 89 (1st Cir. 2010). In fact, the court in Henry v. Lack Charles American Press, LLC, 566 F.3d 164, 181

(5th Cir. 2009), simply assumed the applicability of Louisiana's anti-SLAPP statute in federal court without analysis of any kind, a decision upon which this Court cannot possibly base its own.

Instead, this Court has looked to Judge Kavanaugh's thorough analysis in <u>Abbas v. Foreign Policy Group, LLC</u>, 783 F.3d 1328 (D.C. Cir. 2015), and found it persuasive. Unlike the Fifth Circuit in <u>Henry</u>, Judge Kavanagh begins with an analysis of D.C.'s anti-SLAPP statute and whether it has any place in federal court; unlike the Ninth Circuit in <u>Newsham</u>, he applies the correct legal standard as elucidated by the Supreme Court in <u>Shady Grove</u> and <u>Hanna</u>. <u>Id.</u> at 1333. Finally, unlike the First Circuit in <u>Godin</u>, Judge Kavanaugh notes that while both the anti-SLAPP statute and Rule 12 "establish[] the circumstances under which a court must dismiss a plaintiff's claim before trial[,]" the Rule "do[es] not require a plaintiff to show a likelihood of success on the merits" in the manner demanded by the statute. <u>Id.</u> at 1333-34. In this way, he agrees with this Court that the two are in conflict and cannot co-exist; as in D.C., here, the Georgia anti-SLAPP statute impermissibly "set[s] up an additional hurdle a plaintiff must jump over to get to trial" in federal court. <u>Id.</u> at 1334.

Thus, because Rule 12(b)(6) both "answers the same question" as Section 9-11-11.1(b)(1) and is valid under the Rules Enabling Act and the United States Constitution, "[a] federal court exercising diversity jurisdiction . . . must apply" the federal rule on dismissal and not the special anti-SLAPP motion to strike provision. <u>Abbas</u>, 783 F.3d at 1337. CNN's motion to strike based on Georgia's anti-SLAPP law [Doc. 5] is DENIED. This also means that Plaintiff's

9

motion for additional discovery as to actual malice pursuant to Section 9-11-11.1(b)(2) [Doc. 9] is DISMISSED AS MOOT.

## III. MOTION TO DISMISS

The Court thus continues with CNN's alternative motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) [Doc. 5]. In ruling on the pending motion, all of the well-pleaded factual allegations in Plaintiff's Complaint must be accepted as true and construed in the light most favorable to him. Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008). Furthermore, when determining a motion to dismiss, the Court may consider attached documents central to Plaintiff's claims and referred to by Plaintiff without converting the motion to one for summary judgment. Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations and internal quotation marks omitted). More specifically, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted). To survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above

10

the speculative level.'" <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting <u>Twombly</u>, 550 U.S. at 555).

### A.  Defamation Under Georgia Law

To establish a claim for defamation under Georgia law, "a plaintiff must submit evidence of (1) a false and defamatory statement about himself; (2) an unprivileged communication to a third party; (3) fault by defendant amounting to at least negligence; and (4) special damages or defamatory words 'injurious on their face.'" <u>Lewis v. Meredith Corp.</u>, 293 Ga. App. 747, 748 (Ga. Ct. App. 2008) (citation omitted).  The second element is not at issue here, and neither truly is the fourth.  Georgia law defines "defamatory words 'injurious on their face'" as "'charges against another in reference to his trade, office, or profession, calculated to injure him therein.'" <u>Infinite Energy, Inc. v. Pardue</u>, 310 Ga. App. 355, 357 (Ga. Ct. App. 2011) (quoting O.C.G.A. § 51-5-4(a)(3)).  "'This type of defamation is actionable per se and damage is inferred.'" <u>Id.</u> (citing <u>Strange v. Henderson</u>, 223 Ga. App. 218, 219 (Ga. Ct. App. 1996)).  In this case, Plaintiff is alleging that CNN's reporting directly impacted him in his professional capacity as CEO of St. Mary's.  If proven, Plaintiff's allegations certainly allege defamation per se.

The real crux of the dispute between the parties lies with the first and third elements of defamation, which may be evaluated via three questions: (1) does Plaintiff's Complaint indicate that he can meet his burden to establish the falsity of CNN's report, (2) was that reporting about and pertaining to Plaintiff himself, and (3) can Plaintiff establish CNN's fault to the requisite degree?  The Court will address each of these questions in turn.  In doing so, it will

11

consider the various CNN reports attached to Plaintiff's response, as well as any documents specifically referenced in the text of his Complaint, because they are "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999)). The Court will not consider any extraneous affidavits or declarations improperly before it.

### B.  False Reporting

In a case such as this, which "involves a speech of public concern, a plaintiff must show that . . . the defamatory statement was false." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1298 (11th Cir. 2008) (citing Mathis v. Cannon, 276 Ga. 16, 21 (Ga. 2002)). "'Georgia law puts the burden of proving falsity on the plaintiff,'" id. (quoting Straw v. Chase Revel, Inc., 813 F.2d 356, 361 n.6 (11th Cir. 1987)), and "'[t]ruth is an absolute defense[,]'" Monge v. Madison Cty. Record, Inc., 802 F. Supp. 2d 1327, 1333 (11th Cir. 2011) (quoting Wolf v. Ramsey, 253 F. Supp. 2d 1323, 1349 (N.D. Ga. 2003) (Carnes, J.)). However, to determine falsity, the Court must consider the publication as a whole, "'read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it.'" Lucas v. Cranshaw, 289 Ga. App. 510, 513 (Ga. Ct. App. 2008) (citations omitted). Facts that are "misstated, distorted or arranged so as to convey a false and defamatory meaning" give rise to liability, and in a close case, this question is one for the jury. Id. at 512-13.

As a preliminary matter, the Court notes that Plaintiff's pleading as a whole does include a number of non-actionable statements. "'Georgia law unquestionably excludes from defamation

12

liability any statements that . . . are clearly recognizable as pure opinion because their factual premises are revealed.'" Monge, 802 F. Supp. at 1335 (citation omitted). Plaintiff bases his defamation claim on a number of opinions, including statements from upset parents, statements that St. Mary's was "extremely inexperienced at doing such complicated heart surgeries on newborns[,]" and CNN's alleged reliance on "biased sources" [Compl., Doc. 1 at 12, 13, 18, 19, 20]. These statements are generally a matter of opinion and cannot be proven true or false for purposes of a defamation claim.

Perhaps recognizing this problem, Plaintiff's actual pleading appears to rest on two chief allegations. First, CNN admits that it used raw data to calculate St. Mary's "mortality rate" as 12.5%, "three times the national average" [Id. at 24]. Plaintiff does not dispute the raw numbers, but instead alleges that CNN "misstated, distorted or arranged [this data] so as to convey a false and defamatory meaning." Lucas, 289 Ga. App. at 512. The problem with CNN's headlines was allegedly that the 12.5% rate was not risk-adjusted, while the "national average" from the Society of Thoracic Surgeons ("STS") was. Furthermore, CNN allegedly calculated its rate using only open-heart surgeries at St. Mary's, while the "national average" was based upon both open- and closed-heart surgeries [Compl., Doc. 1 at 25-30]. Plaintiff insists that CNN was thereby doing an "apples-to-oranges comparison," which gave the average viewer an inaccurate perception. Plaintiff further alleges that CNN "doubled-down" on these assertions, even after St. Mary's drew its attention to the inaccuracy based upon publications by the STS itself [Id. at 32].

13

CNN counters by pointing to the raw data, that between 2011 and 2013 St. Mary's conducted forty-eight pediatric open-heart surgeries, of which six were fatal [Doc. 5-1 at 10-11].   The problem is that Plaintiff is not disputing the numbers; he is disputing the manner in which CNN used them as a comparison.   CNN further responds by pointing to its own, supposedly erroneous reporting to support its assertion that both sets of statistics were for open-heart surgery and were not risk-adjusted [Id. at 12].   The dispute is precisely whether this was factually the case, however, and CNN's reports therefore cannot support a motion to dismiss.   CNN finally argues that this is simply an academic disagreement over statistical methodology [Id. at 23].   Plaintiff is not, however, disputing how CNN did the math, but rather whether it compared its own math to a non-comparable figure in a way that misled its viewers.   Drawing all inferences in favor of Plaintiff, he has met his burden on the falsity of CNN's numbers for purposes of a motion to dismiss.

The second potential basis for a defamation claim is CNN's statements that Florida's Agency for Health Care Administration ("AHCA") opened an investigation into St. Mary's as a result of its reporting. Quite to the contrary, Plaintiff alleges that AHCA issued a public statement "setting the record straight" as to CNN's assertions in which it stated that it had conducted normal oversight operations, but that it was "not investigating" St. Mary's [Compl., Doc. 1 at 31-32].   Nevertheless, CNN allegedly continued reporting that an investigation was on-going.

CNN counters that the Fair Report Privilege, which protects "proceedings of, and fair, impartial, and accurate news accounts of, administrative agencies of the government[]" should protect it.   See

14

Doc. 19 at 23; <u>Lawton v. Ga. Television Co.</u>, 216 Ga. App. 768, 771 (Ga. Ct. App. 1995). Given that there was allegedly no such investigation, it would be difficult to apply a privilege to a non-existent proceeding. Furthermore, actual malice, as discussed further below and as evidenced by CNN's continued publication about an official investigation when the AHCA had affirmatively stated that none existed, generally overrules the privilege. <u>See</u> <u>Lawton</u>, 216 Ga. at 771 (applying privilege in part because "no allegation of actual malice" existed). Again drawing all inferences in favor of Plaintiff, he has met his burden on the falsity of CNN's reports on Florida's investigation for purposes of a motion to dismiss.

This is not to say that the question of falsity is not a close one here. Consistent with Georgia law, however, when an allegedly defamatory statement "is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury [and not the judge] to say, under all the circumstances surrounding its publication . . . which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." <u>Lucas</u>, 289 Ga. App. at 513.

### C. About Plaintiff

"To sustain an action for libel, '[t]he [allegedly] defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff.'" <u>Fiske v. Stockton</u>, 171 Ga. App. 601, 602 (Ga. Ct. App. 1984) (quoting <u>Ledger-Enquirer Co. v. Brown</u>, 214 Ga. 422, 423 (Ga. 1958)). Neither party here disputes that the various statements contained in the Complaint never mention Plaintiff by name. Nevertheless, Plaintiff is alleging that the nature of

CNN's negative reporting about St. Mary's was sufficient to defame him.  For purposes of a motion to dismiss, the Court agrees.

Plaintiff alleges that he was well-known in his community, his state, and his profession as the CEO of St. Mary's, responsible for its administration and for the hiring of the pediatric surgeon at the center of CNN's reporting [Compl., Doc. 1 at 6-8].  In the course of its reporting about the mortality rate at St. Mary's, CNN used Plaintiff's name and picture numerous times, and referred to him as its CEO.  CNN also freely admits in its motion to dismiss that it reported the situation at St. Mary's as "not the failure of any one individual[,]" but "the failure of the entire team and system." [Doc. 5-1 at 15].  In further reporting the supposed "financial incentive for the hospital to do these surgeries[,]" CNN was directing its audience to look beyond the single named pediatric surgeon at St. Mary's and consider the culpability of the administration [Compl., Doc. 1 at 15].

By then naming Plaintiff as CEO and using his picture, CNN was literally making Plaintiff the face of that culpable administration. CNN even sent a team to Plaintiff's home early one morning, presumably to get a quote, and later ran a report: "After St. Mary's repeatedly denied requests for interviews, CNN approached Davide Carbone, the CEO of St. Mary's at his home. He shut the garage door without commenting." [Doc. 14-1 at 5].  It is permissible to plead defamation by innuendo.  See Southland Publ'g Co. v. Sewell, 111 Ga. App. 803, 809 (Ga. Ct. App. 1965) (finding "defamatory publication" to be about plaintiff because he was co-owner of the named garage, "and was understood by the citizens of Forsyth County to be the 'Sewell' affiliated with that business, and . . . he was therefore

identified personally"). Drawing all inferences in favor of Plaintiff, he has sufficiently pled the first element of defamation.

### D.   With Actual Malice

Finally, Georgia law requires that Plaintiff prove CNN's fault "amounting to at least negligence" in order to establish defamation. If Plaintiff is a private figure--as he appears to plead initially [Compl., Doc. 1 at 1]--he need only show that CNN acted with ordinary negligence. If Plaintiff is a public figure, however, he "must prove by clear and convincing evidence" that CNN "acted with actual malice." Infinite Energy, 310 Ga. App. at 358 (citing Mathis, 276 Ga. at 20-21(2)).

Plaintiff is clearly not a "general purpose public figure" because he cannot be said to be a "celebrity" whose name is a "'household word' whose ideas and actions the public in fact follows with great interest.'" Id. at 359 (citing Riddle v. Golden Isles Broad., 275 Ga. App. 701, 703(1) (Ga. 2005)). Nevertheless, Plaintiff does appear to plead that he should be considered a "limited purpose public figure" because "[t]hat [he] was the Chief Executive Officer of St. Mary's and responsible for its administration was well-known to the public in the West Palm Beach area and in the medical community in the State of Florida and beyond" [Compl., Doc. 1 at 6]. The Court need not decide at this stage whether Plaintiff is a private or limited purpose public figure, however, because he has sufficiently pled actual malice.

As a matter of constitutional law, actual malice is defined as publication with "'knowledge that [the allegedly defamatory statement] was false or with reckless disregard of whether it was false or not.'" Masson v. New Yorker Magazine, Inc., 501 U.S. 496,

510 (1991) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964)). Plaintiff's Complaint is replete with statements that St. Mary's and others were bringing to CNN's attention the fact that the very society from which it was supposedly getting its data, the STS, was at the same time bestowing upon St. Mary's a two-star ranking given only to those programs with a mortality rate "within the expected range relative to the national average" [Compl., Doc. 1 at 33-34]. This fact should have raised doubts for CNN, particularly since it noted in its own June 9, 2015 article: "Bottom line: to calculate a mortality rate, you must know how many index operations were done, and we have no idea" [Id. at 34]. As noted above, the AHCA was allegedly also drawing CNN's attention to its reporting errors without effect [Id. at 31-32]. The Court finds these allegations sufficient to establish that CNN was acting recklessly with regard to the accuracy of its reporting, i.e., with "actual malice." Plaintiff has sufficiently pled the third element of defamation.

Therefore, drawing all inferences in favor of Plaintiff, he has met the pleading standard to maintain a claim for defamation under Georgia law.

## IV. CONCLUSION

For the reasons stated above, CNN's motion to strike or in the alternative dismiss [Doc. 5] is DENIED. Plaintiff's motion for discovery pursuant to Georgia's anti-SLAPP statute [Doc. 9] is DISMISSED AS MOOT.

SO ORDERED, this ___ day of February, 2017.

ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE