IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

RESOLUTE FOREST PRODUCTS, INC.  *
et al.,                         *
                                *
       Plaintiffs,              *
                                *
  v.                            *
                                *   CV 116-071
GREENPEACE INTERNATIONAL        *
et al.,                         *
                                *
       Defendants.              *
                                *
                                *

---

**O R D E R**

---

Plaintiffs began this litigation in May 2016 when they filed their 124-page, 318-paragraph complaint, alleging that Defendants illegally criticized Plaintiffs' forestry practices. Since then, the parties have filed over 300 pages of argument, raising various issues. After a thorough review of the record, the Court **GRANTS** Defendants' request to transfer this case to the Northern District of California.

## I. Background

Plaintiffs are in the forest-products industry. (Compl. ¶ 24.) They plant and harvest trees and make, among other things, different types of paper. (Id.) Plaintiffs have locations in several cities, including Augusta, Georgia. (Id.) Defendants

Greenpeace International, Greenpeace, Inc., Greenpeace Fund, Inc., and ForestEthics are all nonprofit or charitable organizations. (Id. ¶¶ 31-34.) Defendant Todd Paglia is an employee of ForestEthics, Defendants Daniel Brindis, Amy Moas, and Rolf Skar are employees of Greenpeace, Inc., and Defendant Matthew Daggett is an employee of Greenpeace International. (Id. ¶¶ 35-39.) Defendants are environmental activists. And as such, they often publicly assail companies that they think are environmentally irresponsible.

In 2013, Defendants began the "Resolute: Forest Destroyer" campaign against Plaintiffs. (Id. ¶ 79.) As part of this campaign, Plaintiffs contend, Defendants falsely accused Plaintiffs of harming the Boreal Forest in Canada. (See id. ¶¶ 81-87.) These attacks, according to Plaintiffs, caused Plaintiffs to lose customers and millions of dollars in revenue. (Id. ¶ 17.)

In response to the Resolute: Forest Destroyer campaign, Plaintiffs filed this lawsuit, alleging, among other things, federal and state Racketeer Influenced and Corrupt Organizations Act ("RICO") claims. Plaintiffs contend that Defendants have set out to illegally destroy Plaintiffs' business. Defendants

2

now move to transfer this case to the Northern District of California.[1] (Docs. 57, 62.)

## II. **Discussion**

Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." Thus, "[o]nly the events that directly give rise to a claim are relevant[,] [a]nd of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003). The venue analysis therefore demands stronger connections than the minimum-contacts test used for evaluating personal jurisdiction. See id. at 1372 (disagreeing with another court's application of § 1391(b)(2) "because its flavor was that of a 'minimum contacts' personal jurisdiction analysis rather than a proper venue analysis"); Bell v. Rosen, CV 214-127, 2015 WL 5595806, at *4 (S.D. Ga. Sept. 22, 2015) ("[T]he venue analysis under Section 1391(b)(2) generally requires a greater level of relevant activities by the defendants than the 'minimum contacts' analysis for personal jurisdiction.").

---

[1] Defendants also move to strike Plaintiffs' complaint under O.C.G.A. § 9-11-11.1 and to dismiss Plaintiffs' claims for failure to state a claim. (Docs. 55, 56, 60, 61, 62.) But because venue is not proper in this district, the Court does not address those arguments.

3

## A. Venue is Improper in the Southern District of Georgia

Defendants argue that venue is improper in this district because no events giving rise to Plaintiffs' claims occurred here. Plaintiffs contend that venue is proper here because (1) the Resolute: Forest Destroyer campaign caused Plaintiffs to lose a number of Georgia-affiliated customers and (2) Defendants traveled to Augusta to spread false information about Plaintiffs.

### 1. Plaintiffs' Alleged Loss of Customers in Georgia

Plaintiffs allege that Defendants and other Greenpeace associates "made false and misleading statements" about Plaintiffs to five Georgia-affiliated companies, causing some of the companies to cut ties with Plaintiffs. (Compl. ¶¶ 198-207.) They allege, for example, that Richard Brooks, a nonparty Greenpeace employee, held a conference call with YP, a customer of Plaintiffs, during which Brooks "made false and misleading statements about Resolute's operations in the Boreal Forest." (Id. ¶ 200.) As another example, Plaintiffs allege that Brooks threatened The Home Depot, another customer, "with market campaigns and in-store demonstrations if The Home Depot continued to buy from Resolute." (Id. ¶ 201.) They also claim that Defendants targeted Kimberly-Clark and P&G, other customers, with false information about Plaintiffs. (Id. ¶¶ 202-206.) And, Plaintiffs allege, Defendants "prevented

4

Resolute from securing a large contract with one of the world's leading manufacturers of tissue paper, Georgia Pacific . . . ." (Id. ¶ 207.)

Plaintiffs argue that these contacts are connected to Georgia because (1) YP participated in the conference call from its headquarters in Tucker, Georgia, (2) The Home Depot is headquartered in Atlanta, Georgia, (3) Defendants communicated with Kimberly-Clark executives working from the company's offices in Roswell, Georgia, (4) Plaintiffs supplied paper to P&G's plant in Albany, Georgia, and (5) Georgia Pacific is based in Atlanta, Georgia. But Plaintiffs do not allege any connection to this district: Tucker, Roswell, and Atlanta are located in the Northern District of Georgia, and Albany is located in the Middle District of Georgia. Thus, even if Defendants' communications with these customers are actionable, Plaintiffs have failed to establish that a substantial part of the events giving rise to the claims occurred in this district.

2. Defendants' Trip to Augusta

Plaintiffs allege that Daggett, Skar, and Brooks traveled to Augusta and "employed on-the-ground tactics aimed at harming Resolute's relationships with key constituents." (Id. ¶ 208.) And Plaintiffs cite this trip in support of their RICO claims.

Under 18 U.S.C. § 1962(c), the relevant RICO statute, it is "unlawful for any person employed by or associated with any

5

enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." "Racketeering activity" includes, among other things, mail fraud under 18 U.S.C. § 1341, wire fraud under 18 U.S.C. § 1343, and extortion under 18 U.S.C. § 1951. 18 U.S.C. § 1961(1). Plaintiffs contend that Defendants' Resolute: Forest Destroyer campaign was an enterprise through which Defendants committed fraud and extortion.

"Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (citation omitted) (internal quotation marks omitted). And extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

In the sections of their brief addressing their claims of fraud and extortion, Plaintiffs cite Defendants' trip to Augusta. But they fail to explain how the events of the trip support these claims. According to the complaint, Daggett, Skar, and Brooks visited Augusta to "communicate falsehoods." (Compl. ¶ 208.) Before the trip, Defendants circulated an email

6

declaring the event in Augusta their "opportunity to ask Resolute to make protecting the Boreal Forest a key priority" and inviting people to support the event on Facebook and Twitter. (Id.) After the trip, they circulated a second email stating that "[f]ive Greenpeace activists trekked to Augusta . . . to deliver some simple messages," which they "projected on site to the company's shareholders and directors . . . ." (Id.) Plaintiffs do not, however, provide any information about what these messages were or what "falsehoods" Defendants communicated. Nor do they provide a factual basis from which to infer that Defendants committed fraud or extortion before, during, or after the trip. Rather, the allegations in the complaint, at best, support the inference that Defendants organized and held a protest in Augusta. Thus, Plaintiffs have not established that the trip to Augusta gives rise to a claim for purposes of venue under § 1391(b)(2).[2]

---

[2] Plaintiffs also argue (1) that they felt some of the campaign's effects in this district, and (2) citing Delong Equipment Company v. Washing Mills Abrasive Co., 840 F.2d 843 (11th Cir. 1988), that attendance at a "conspiratorial meeting" is sufficient to establish venue. But that some harm was felt here, without more, does not show that a substantial part of the events giving rise to Plaintiffs' claims occurred in this district. See Rosen, 2015 WL 5595806, at *5 ("The harm to Plaintiffs' reputations in this District, by itself, would likely not be a sufficiently substantial event to establish venue, because the inquiry into relevant events focuses on the actions of Defendants."). And Plaintiffs have not pleaded that a "conspiratorial meeting" occurred during the May 2015 trip to Augusta.

## B. Venue is Proper in the Northern District of California

Defendants ask the Court to transfer this case to the Northern District of California under 28 U.S.C. § 1406(a), which allows a court to transfer a case brought in the wrong district to any district "in which it could have been brought." This case, Defendants argue, could have been brought in the Northern District of California. And although they oppose transferring the case, Plaintiffs do not argue that the Northern District of California is an improper venue.

According to Defendants, Skar and Brindis are "integral to Greenpeace, Inc.'s forestry campaign efforts in the United States." (Doc. 62-1 ¶ 4.) Indeed, Brindis, Skar, and Moas made the majority of the allegedly improper statements that were made in the United States. And Brindis and Skar both work from Greenpeace, Inc.'s San Francisco office and live in the San Francisco area.³ Thus, a substantial part of the events giving rise to Plaintiffs' claims occurred in the Northern District of California.

In sum, because Plaintiffs' alleged loss of Georgia-affiliated customers did not occur in this district, and because Plaintiffs have failed to plead that Defendants' trip to Augusta gives rise to any of Plaintiffs' claims, Plaintiffs have failed

---

³ Moas lives in Nevada but regularly travels to Greenpeace, Inc.'s San Francisco office for work. (Doc. 62-1 ¶ 4.)

8

to establish that a substantial part of the events giving rise to their claims occurred in this district. Venue is thus improper in this district under § 1391(b)(2), and the Court **GRANTS** Defendants' request to transfer this case to the Northern District of California.

### III. Conclusion

The Court **GRANTS** Defendants' request to transfer this case. (Docs. 57, 62.) The Clerk is **ORDERED** to **TRANSFER** this case to the United States District Court for the Northern District of California. The Clerk is further **ORDERED** to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia this 16th day of May, 2017.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA