KASOWITZ BENSON TORRES LLP
LYN R. AGRE (State Bar No. 178218)
*lagre@kasowitz.com*
101 California Street
Suite 2300
San Francisco, CA 94111
(415) 421-6140 (telephone)
(415) 398-5030 (facsimile)

KASOWITZ BENSON TORRES LLP
Michael J. Bowe (admitted *pro hac vice*)
*mbowe@kasowitz.com*
Lauren Tabaksblat (admitted *pro hac vice*)
*ltabaksblat@kasowitz.com*
1633 Broadway, New York, NY 10019
(212) 506-1700 (telephone)
(212) 506-1800 (facsimile)

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al*.<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>GREENPEACE INTERNATIONAL, *et al.*<br><br>　　　　Defendants. | **CASE NO. 3:17-CV-02824-JST**<br><br>**Hon. Jon S. Tigar**<br>**Courtroom 9**<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO GREENPEACE DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>**Action Filed:　May 31, 2016**<br>**Hearing Date: October 10, 2017**<br>**Time:　　　　2:00 p.m.** |

1

# <u>TABLE OF CONTENTS</u>

2
**Page**

3
TABLE OF AUTHORITIES ................................................................................................ii

4
INTRODUCTION ........................................................................................................... 1

5
FACTUAL BACKGROUND ............................................................................................ 2

6
ARGUMENT ................................................................................................................. 3

7
I.      THE GREENPEACE DEFENDANTS' MOTION TO STRIKE SHOULD

8
        BE DENIED ......................................................................................................... 3

9
        A.      California's Anti-SLAPP Statute Does Not Apply To Plaintiffs'
                Federal Claims. ....................................................................................... 3

10
        B.      Plaintiffs Have More Than Met Their Burden To Prevail On A Motion

11
                To Strike Their State Law Claims At The Pleading Stage. ...................... 5

12
II.     PLAINTIFFS' DEFAMATION CLAIM IS PROPERLY PLED ....................... 9

13
        A.      The Opinion Defense Is Inapplicable. ................................................... 10

14
                i.      The Greenpeace Defendants' False And Defamatory Allegations
                        Are Not Protected Hyperbole. ................................................... 11

15
                ii.     The Greenpeace Defendants' Inclusion Of Putative Sources

16
                        In Their Publications Do Not Transform Their False And
                        Defamatory Allegations Into Protected Opinions. ..................... 13

17
        B.      The Complaint Adequately Pleads Actual Malice ............................... 15

18
CONCLUSION .............................................................................................................. 19

19

20

21

22

23

24

25

26

27

28

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aeroplate Corp. v. Arch Ins. Co.*,
  No. 06-CV-1099-AWI-SMS, 2006 WL 3257487 (E.D. Cal. Nov. 9, 2006)............................ 6

*Antonovich v. Superior Court*,
  234 Cal. App. 3d 1041 (Ct. App. 1991) .................................................................................. 19

*In re Bah*,
  321 B.R. 41 (9th Cir. 2005)...................................................................................................... 7

*Baral v. Schnitt*,
  1 Cal. 5th 376 (2016)................................................................................................................ 4

*Bautista v. Hunt & Henriques*,
  No. 11-CV-4010 JCS, 2012 WL 160252 (N.D. Cal. Jan. 17, 2012)..................................... 5, 8

*Bradbury v. Superior Court*,
  49 Cal. App. 4th 1108 (1996)................................................................................................... 4

*Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.*,
  448 F. Supp. 2d 1172 (C.D. Cal. 2006)............................................................................. 4, 7, 8

*Carr v. Warden*,
  159 Cal. App. 3d 1166 (1984).............................................................................................. 15, 16

*Choyce v. SF Bay Area Indep. Media Ctr.*,
  No. 13-cv-01842-JST, 2013 WL 6234628 (N.D. Cal. Dec. 2, 2013) .................................. 6, 7

*Church of Scientology of California v. Flynn*,
  744 F.2d 694 (9th Cir. 1984)................................................................................................... 16

*Church of Scientology v. Wollersheim*,
  42 Cal. App. 4th 628 (1996)..................................................................................................... 4

*Cochran v. NYP Holdings*,
  58 F. Supp. 2d 1113 (C.D. Cal. 1998).................................................................................. 15, 16

*Copp v. Paxton*,
  45 Cal. App. 4th 829 (1996).................................................................................................... 17

*DARE America v. Rolling Stone Magazine*,
  101 F. Supp. 2d 1270 (C.D. Cal. 2000)................................................................................... 17

*Eastwood v. National Enquirer, Inc.*,
  123 F.3d 1249 (9th Cir. 1997).................................................................................................. 17

ii

*Edwards v. Hall*,
   234 Cal. App. 3d 886 (Ct. App. 1991) ................................................................. 12

*Elec. Waveform Lab, Inc. v. EK Health Servs.*,
   No. 15-cv-8061-DMG-RAO, 2016 WL 1622505 (C.D. Cal. Mar. 1, 2016) ........................... 5

*Fletcher v. Sam Jose Mercury News*,
   216 Cal. App. 3d 172 (1989) ............................................................................ 17

*Flowers v. Carville*,
   310 F.3d 1118 (9th Cir. 2002) .......................................................................... 18

*Garcia v. Enter. Holdings, Inc.*,
   No. 14-CV-00596-SBA-KAW, 2014 WL 4623007 (N.D. Cal. Sept. 15, 2014) ..................... 20

*Goldline, LLC v. Regal Assets, LLC*,
   No. 14-cv-03680-DDP-ASX, 2015 WL 1809301 (C.D. Cal. Apr. 21, 2015) ......................... 5

*Harte-Hanks Comms., Inc. v. Connaughton*,
   491 U.S. 657 (1989) ................................................................................ 16, 18

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ............................................................................. 3

*Johnson v. JP Morgan Chase Bank*,
   536 F. Supp. 2d 1207 (E.D. Cal. 2008) .................................................................. 5

*Johnson v. JP Morgan Chase Bank*,
   No. 08-cv-0081-LJO-SMS, 2008 WL 2682579 (E.D. Cal. June 30, 2008) ........................... 5

*Layton v. Terremark N. Am., LLC*,
   No. 5:13-CV-03093-PSG, 2014 WL 2538679 (N.D. Cal. June 5, 2014) ............................ 10

*Lopez v. Smith*,
   203 F.3d 1122 (9th Cir. 2000) .......................................................................... 20

*Illinois, ex rel. Madigan v. Telemarketing Assocs.*,
   538 U.S. 600 (2003) ....................................................................................... 10

*Melaleuca, Inc. v. Clark*,
   66 Cal. App. 4th 1344 (1998) ........................................................................... 13

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ................................................................ 6, 7, 9, 17

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ................................................................................... 10, 13

*Nadel v. Regents of Univ. of California*,
   28 Cal. App. 4th 1251 (1994) ........................................................................... 18

iii

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
   724 F.3d 1268 (9th Cir. 2013)....................................................................... 4

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) .................................................................................... 16

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ...................................................................... 14

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F. Supp. 2d 957 (N.D. Cal. 2013)............................................... 10, 11, 12

*Reader's Digest Ass'n Inc. v. Superior Court*,
   37 Cal. 3d 244 (1984) .................................................................................. 18

*Resolute v. 2471256 Canada Inc. dba Greenpeace Canada, et al.*,
   CV-164-13 (Sup. Ct. J. Ontario Aug. 20, 2014) ........................................... 14

*Rogers v. Home Shopping Network, Inc.*,
   57 F. Supp. 2d 973 (C.D. Cal. 1999)........................................................ 6, 7, 8

*Shropshire v. Fred Rappoport Co.*,
   294 F. Supp. 2d 1085 (N.D. Cal. 2003)........................................................... 7

*Slaughter v. Friedman*,
   32 Cal. 3d 149 (1982) .................................................................................. 14

*Snider v. Nat'l Audubon Soc., Inc.*,
   No. 91-CV-665 REC, 1992 WL 182186 (E.D. Cal. Apr. 14, 1992) ................. 12

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) .................................................................................... 19

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
   330 F.3d 1110 (9th Cir. 2003)...................................................................... 19

*Swierkiewicz v. Sorema*,
   534 U.S. 506 (2002) ...................................................................................... 6

*Thomas v. Fry's Electronics, Inc.*,
   400 F.3d 1206 (9th Cir. 2005) ........................................................................ 6

*United States v. Hempfling*,
   431 F. Supp. 2d 1069 (E.D. Cal. 2006) ......................................................... 10

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
   143 F. Supp. 3d 982 (N.D. Cal 2015)..................................................... 4, 5, 20

*Valdez v. Maya Pub. Grp. LLC*,
   No. 10CV733-L BGS, 2011 WL 2413510 (S.D. Cal. June 15, 2011) .......... 16, 17

*Vergos v. McNeal*,
   146 Cal. App. 4th 1387 (2007)................................................................................. 4

*Verizon Delaware, Inc. v. Covad Commc'ns Co.*,
   377 F.3d 1081 (9th Cir. 2004)................................................................................. 6

*Visant Corp. v. Barrett*,
   13CV389 WQH WVG, 2013 WL 3450512 (S.D Cal. July 9, 2013) ...................................... 17

*Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*,
   No. 15-CV-05789-JST, 2016 WL 1394360 (N.D. Cal. Apr. 8, 2016) ................................... 16

*Wilbanks v. Wolk*,
   121 Cal. App. 4th 883 (2004) ......................................................................... 13, 15

*Winters v. Jordan*,
   No. 09–CV–0522-JAM-KJN, 2010 WL 2838634 (E.D. Cal. July 20, 2010) ............................ 4

*Woodard v. Labrada*,
   No. 16-CV-16189-JGB-SPX, 2017 WL 1018306 (C.D. Cal. Mar. 6, 2017) ............................ 8

*Woods v. John Doe*,
   BC589746 (Sup. Ct. L.A. Cnty. Feb. 8, 2016) ......................................................... 12

*ZL Techs., Inc. v. Gartner, Inc.*,
   709 F. Supp. 2d 789 (N.D. Cal. 2010) ................................................................. 14

**Other Authorities**

18 U.S.C. §§ 1961–1968 ................................................................................. *passim*

Cal. Civ. Proc. Code § 425.16(b)(1)................................................................................. 5

Fed. R. Civ. Proc. 8 ......................................................................................... 7, 16

Fed. R. Civ. Proc. 9 ........................................................................................... 16

Fed. R. Civ. Proc. 12 .............................................................................. 1, 7, 16, 20

Fed. R. Civ. Proc. 15 ........................................................................................... 20

U.S. Const. amend. I........................................................................................ 9, 10, 13

U.S. Const. art. VI § 2 ..................................................................................... 1, 4, 8

Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek US, Inc., Fibrek International, Inc., and Resolute FP Canada, Inc. (collectively, "Resolute" or "Plaintiffs") respectfully submit this memorandum of points and authorities in opposition to the supplemental brief filed by Defendants' Greenpeace International ("GPI"), Greenpeace, Inc. ("GP-Inc."), Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar (collectively, the "Greenpeace Defendants") in further support of their motions to dismiss and strike the complaint.[1]

## INTRODUCTION

The Greenpeace Defendants' supplemental brief which purports to address the application of California law -- which has already been extensively briefed -- is really a backdoor effort to retract two central legal concessions that are fatal to their motions to strike and dismiss.

First, notwithstanding their prior concession that California's anti-SLAPP statute does not apply to federal claims, in their supplemental brief, the Greenpeace Defendants reverse positions and argue that all of Plaintiffs' claims, including Plaintiffs' federal RICO claims, should be stricken pursuant to the California anti-SLAPP statute.  However, the Greenpeace Defendants fail to cite a single case where a federal court has applied the California anti-SLAPP statute -- or any other state anti-SLAPP statute -- to a federal claim, and the law is clear that doing so would violate the Supremacy Clause of the U.S. Constitution.

Second, the Greenpeace Defendants use this supplemental brief as an opportunity to retract their prior concession that their false and defamatory allegations about Resolute made in connection with the "Resolute: Forest Destroyer" campaign "do not hew to strict literalisms or scientific precisions," and should not be taken "literally," and instead argue that all of their calculated falsehoods are protected because they are supported by extensive hyperlinks and footnotes and merely reflect Greenpeace's interpretation of those scientific sources.  As an initial matter, this argument fails to address the dozens of false and defamatory statements in direct

---

[1]     The Greenpeace Defendants' supplemental brief was submitted in further support of its Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 62) and its Motion To Strike Pursuant to O.C.G.A. § 9-11-11.1 (ECF No. 60).

1

Plaintiffs' Supplemental Memorandum in Opposition to Greenpeace Defendants' Rule 12(b)(6) Motion to Dismiss and Motion to Strike, Case No. 3:17-CV-02824-JST

1    communications to customers, by e-mails and on social media set forth in the Complaint which

2    were not accompanied by any citations.  Moreover, the law is clear that the Greenpeace

3    Defendants cannot escape liability where, as here, they purport to rely on incomplete or incorrect

4    facts, or draw erroneous conclusions based on those facts.

5            Accordingly, for all these reasons, and those set forth in Resolute's consolidated

6    opposition to Defendants' motions to dismiss and strike, the Greenpeace Defendants' motions to

7    strike and dismiss should be denied in their entirety.

8                                   **FACTUAL BACKGROUND**

9            Plaintiffs commenced this action on May 31, 2016 against, *inter alia*, the Greenpeace

10   Defendants in the Southern District of Georgia.  The Complaint alleges in substantial detail an

11   illegal scheme through which a network of environmental activist groups and those working in

12   concert with them disseminated materially false and misleading accusations about Resolute, and

13   engaged in other illegal conduct to devastate Resolute's business and fraudulently induce

14   millions of dollars in donations to Greenpeace.[2]  Defendants' scheme included, among other

15   things, ubiquitous misrepresentations about the impact of Resolute's business operations on the

16   boreal forest, its indigenous peoples and caribou populations, and climate change.  Defendants

17   also fabricated evidence, issued extortive threats, launched cyber-attacks, and organized crippling

18   tortious boycotts, and engaged in other illegal conduct.  As a direct result of their misconduct, the

19   Defendants themselves have taken credit for inflicting not less than C$100M in damages on

20   Resolute as a result of the conduct set forth above.  Based on these extensive and detailed

21   allegations of fraudulent and otherwise illegal conduct, the Complaint asserts racketeering claims

22   under federal law, as well as state law claims for defamation, tortious interference, trademark

23   dilution, and civil conspiracy.

24

25

26   _____

27   [2]      For a full recitation of the relevant facts, Plaintiffs direct the Court to the Complaint filed
     on May 31, 2016 (the "Complaint") along with the accompanying appendices (ECF No. 1), as

28   well as Resolute's consolidated opposition to Defendants' motions to dismiss, strike, and transfer
     (ECF No. 75).

Defendants, including the Greenpeace Defendants, moved to strike and dismiss the Complaint, arguing, among other things, that California law governed Resolute's claims. (ECF Nos. 60 at 3, 7-9; 62 at 11.) The motions were fully briefed before the U.S. District Court for the Southern District of Georgia. Although the Southern District of Georgia had the opportunity to dismiss the case on the merits if it deemed appropriate, it declined to do so, and instead transferred the case to this District.

## ARGUMENT

### I. The Greenpeace Defendants' Motion to Strike Should Be Denied

In their supplemental brief, the Greenpeace Defendants argue that all of Resolute's claims should be stricken pursuant to California's Strategic Lawsuit Against Public Participation statute (the "California anti-SLAPP Statute"). As set forth below and in Resolute's previously-filed opposition to Defendants' Motions to Dismiss, Strike and Transfer Venue (ECF No. 75) ("Resolute's Opposition"),[3] neither California's anti-SLAPP Statute -- nor any other state's anti-SLAPP statute -- has any application to the federal RICO claims asserted in this action. And while federal courts have applied the California anti-SLAPP Statute to pendent state law claims, Resolute has more than satisfied the "minimal" burden to prevail on a motion to strike pursuant to the California anti-SLAPP Statute at this stage of the proceeding. Both points will be addressed in detail below.

### A. California's Anti-SLAPP Statute Does Not Apply To Plaintiffs' Federal Claims.

It is black-letter law -- and the Greenpeace Defendants previously conceded -- that California's anti-SLAPP statute does not apply to federal claims. *See* ECF No. 98 at 24 ("The Greenpeace Defendants do not [ ] contend that the [anti-SLAPP] statute applies to federal claims."); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) ("[A] federal court can only entertain anti-SLAPP special motions to strike in connection with state law

---

[3]     The Greenpeace Defendants previously argued that all of plaintiffs' claims should be stricken pursuant to California's anti-SLAPP statute. (ECF No. 60.) Plaintiffs hereby incorporate by reference all arguments set forth in their opposition to the Greenpeace Defendants' motion to strike, dismiss, and transfer forum. (ECF No. 75.)

3

1  claims."); *Bulletin Displays, LLC v. Regency Outdoor Adver., Inc.,* 448 F. Supp. 2d 1172, 1181-

2  82 (C.D. Cal. 2006) (declining to strike federal RICO claims, reasoning that "applying [state

3  anti-SLAPP statute] to federal claims . . . [is a] violation of the Supremacy Clause of the

4  Constitution."); *Winters v. Jordan*, No. 09–CV–0522-JAM-KJN, 2010 WL 2838634, at *4 (E.D.

5  Cal. July 20, 2010) ("[A] party may not use an anti-SLAPP special motion to strike to seek the

6  dismissal of claims based on federal law."), *report and recommendation adopted,* 2010 WL

7  3636221 (E.D. Cal. Sept. 14, 2010), *aff'd,* 479 F. App'x 742 (9th Cir. 2012).

8  　　　In their supplemental brief, the Greenpeace Defendants reverse their prior position and

9  argue that California's anti-SLAPP statute applies to all of Resolute's claims, including

10  Resolute's federal RICO claims.  (ECF No. 127-1 at 8-10.)  However, the Greenpeace

11  Defendants fail to cite a single case where a federal court has applied a state anti-SLAPP statute

12  to a federal claim.  *See Bradbury v. Superior Court*, 49 Cal. App. 4th 1108, 1118 (1996) (holding

13  that "[w]here the action is founded on a federal statute and *brought in state court*, state procedure

14  controls unless the federal statute provides otherwise") (emphasis added); *Vergos v. McNeal*, 146

15  Cal. App. 4th 1387, 1392 n.4 (2007) (same) (citing *Bradbury*).  To the contrary, in *United*

16  *Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982 (N.D. Cal 2015) ("*Real*

17  *Action*") -- cited by the Greenpeace Defendants -- this District reiterated that California's anti-

18  SLAPP statute does not apply to federal law causes of action.  *Id.* at 998.

19  　　　Moreover, the Greenpeace Defendants do not cite a single case where a federal court

20  applied an anti-SLAPP statute to a federal cause of action on the grounds that it was merely a

21  "disguised" state law claim, despite their contention that there is "ample authority" to do so.  (*See*

22  ECF 127-1 at 10 (citing *In re NCAA Student-Athlete Name & Likeness Licensing Litig.,* 724 F.3d

23  1268, 1272 (9th Cir. 2013) (applying anti-SLAPP statute to right of publicity and other common

24  law claims); *Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016) (applying anti-SLAPP statute to state

25  law claims); *Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 652 (1996),

26  *disapproved on other grounds*, 29 Cal. 4th 53 (2002) (same).)  Tellingly, Defendants' argument

27  was likewise rejected by the court in *Real Action*, which declined to apply the California anti-

28  SLAPP Statute to a federal seizure claim notwithstanding the counter-defendants' assertion that

4

1    "at its essence th[e] [seizure] claim is one for conversion under state law simply relabeled to have

2    the appearance of a federal claim."  143 F. Supp. 3d at 998, n.10.[4]  Rather, the Court held that it

3    would not "twist and contort th[e] [federal] claim into something it is not," and explicitly

4    recognized plaintiffs' right "to seek relief under a variety of different claims."  *Id.*

5         Applying these principles, there is no basis to apply California's anti-SLAPP Statute to

6    Resolute's federal RICO claims.  Accordingly, the Greenpeace Defendants' motion to strike the

7    federal RICO claims should be denied.

8                    **B.    Plaintiffs Have More Than Met Their Burden To Prevail On A**
                              **Motion To Strike Their State Law Claims At The Pleading Stage.**
9

10        While the Ninth Circuit and federal district courts in California have applied the

11   California anti-SLAPP Statute to state law claims asserted in federal court, it is well-settled that a

12   motion to strike will be denied where the plaintiff demonstrates a probability of success on each

13   of the challenged claims.  *See* Cal. Civ. Proc. Code § 425.16(b)(1).  Courts in this District have

14   held that "plaintiff's burden of establishing probability of success *is not high*."  *Bautista v. Hunt*

15   *& Henriques*, No. 11-CV-4010 JCS, 2012 WL 160252, at *7 (N.D. Cal. Jan. 17, 2012) (emphasis

16   added).  Indeed, "probability in this context has been described as *a mere possibility* of success."

17   *Id.* (emphasis added); *see also Real Action*, 143 F.3d at 998 (a cause of action is only subject to

18   being stricken under the anti-SLAPP statute if it "*lacks even minimal merit*") (emphasis added).

19        Likewise, the Ninth Circuit and federal district courts in California have recognized that

20   certain aspects of the California anti-SLAPP Statute directly conflict with the Federal Rules of

21

22

23

---

24   [4]     Consistent with the holding in *Real Action*, California courts routinely allow plaintiffs to
     simultaneously seek relief under RICO and defamation claims.  *See, e.g., Elec. Waveform Lab,*
     *Inc. v. EK Health Servs.*, No. 15-cv-8061-DMG-RAO, 2016 WL 1622505 (C.D. Cal. Mar. 1,
25   2016) (trade libel and RICO claims arising from fraudulent insurance reimbursement scheme);
     *Goldline, LLC v. Regal Assets, LLC*, No. 14-cv-03680-DDP-ASX, 2015 WL 1809301 (C.D. Cal.
26   Apr. 21, 2015) (RICO claim and trade libel claim arising from fraudulent advertising survived
     motion to dismiss); *Johnson v. JP Morgan Chase Bank*, 536 F. Supp. 2d 1207, 1213 (E.D. Cal.
27   2008) (RICO claims and defamation claims arising from wrongful debt collection scheme
     survived motions to dismiss); *see also Johnson v. JP Morgan Chase Bank*, No. 08-cv-0081-LJO-
28   SMS, 2008 WL 2682579, at *2 (E.D. Cal. June 30, 2008).

Civil Procedure ("FRCP") and therefore cannot be applied in federal court.[5]  As a result, courts have severely limited the application and impact of anti-SLAPP statutes in federal court.  Indeed, as this Court has recognized, a "federal court special motion [to strike] is a far different (and tamer) animal than its state-court cousin.'"  *Choyce v. SF Bay Area Indep. Media Ctr.*, No. 13-cv-01842-JST, 2013 WL 6234628 at *5 (N.D. Cal. Dec. 2, 2013) (Tigar, J.).

Critically, the Ninth Circuit has held that allowing a state anti-SLAPP statute to alter the burden of proof to require a plaintiff to prove their allegations at the pleading stage would result in a "direct collision" with the FRCP.  *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845-46 (9th Cir. 2001) ("If this expedited procedure were used in federal court to test the plaintiff's evidence before the plaintiff has completed discovery, it would collide with [FRCP] 56.").[6] Therefore, courts in the Ninth Circuit have routinely held that anti-SLAPP statutes' "expedited procedure" to strike plaintiffs' claims based on a lack of evidence prior to completion of discovery is not applicable to claims brought in federal court.  *See Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) (defendant cannot bring a motion to strike in federal court based on lack of evidence until discovery has been developed); *Aeroplate Corp. v. Arch Ins. Co.,* No. 06-CV-1099-AWI-SMS, 2006 WL 3257487, at *7 (E.D. Cal. Nov. 9, 2006) (motions to strike pursuant to anti-SLAPP statutes are "restricted in federal court to only those situations where the issues presented by the anti-SLAPP motion can be resolved purely as a matter of law. . .").

---

[5]    The Ninth Circuit has expressly recognized that the California anti-SLAPP Statute's automatic stay of discovery does not apply in federal court:  "Because the discovery-limiting aspects of [the anti-SLAPP statute] collide with the discovery-allowing aspects of Rule 56, these aspects [of the anti-SLAPP statute] cannot apply in federal court."  *Metabolife*, 264 F.3d at 846 (quoting *Rogers*, 57 F. Supp. 2d at 980, 982); *see also Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *Choyce*, 2013 WL 6234628, at *5.

[6]    Indeed, *Thomas v. Fry's Electronics, Inc.*, cited by the Greenpeace Defendants in their supplemental brief, unequivocally recognized this to be the case.  (*See* ECF No. 127-1 at 8 (citing *Thomas*, 400 F.3d 1206 (9th Cir. 2005) (affirming the Ninth Circuit's holding that anti-SLAPP motions to strike are available in federal court, but noting that the Supreme Court's holding in *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002) that "federal courts may not impose a heightened pleading requirement in derogation of federal notice pleading rules" "is instructive in the pleading context").)

Accordingly, both the Greenpeace Defendants' motion to strike Resolute's state law claims and their Rule 12(b)(6) motion to dismiss should be decided under the standards set forth in FRCP 8 and 12.  *See Rogers,* 57 F. Supp. 2d at 982-83; *Metabolife,* 264 F.3d at 846; *In re Bah,* 321 B.R. 41, 45 n.6 (9th Cir. 2005); *Choyce,* 2013 WL 6234628 at *5 ("'if a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)'") (quoting *Rogers,* 57 F. Supp. 2d at 980).  Under this standard, a plaintiff satisfies the burden to demonstrate a probability of prevailing on the merits at the pleading stage, where "the complaint is legally sufficient and supported by a *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Bulletin Displays,* 448 F. Supp. 2d at 1179 (quoting *Metabolife,* 264 F.3d at 840) (emphasis added).  As with Rule 12(b)(6) motions, "the complaint [must] be read liberally . . . all well-pleaded allegations [must] be taken as true, and [ ] dismissal generally [must] be with leave to amend."  *Rogers,* 57 F. Supp. 2d at 982 (internal citations omitted); *see Real Action,* 143 F.3d at 998 ("A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.") (internal citations omitted).

Moreover, where, as here, "a defendant makes an anti-SLAPP motion based on the plaintiff's failure to submit evidence to substantiate its claims, the motion is treated as a motion for summary judgment, and discovery 'must be developed sufficiently to permit summary judgment under Rule 56.'"  *Bulletin Displays,* 448 F. Supp. 2d at 1180 (quoting *In re Bah,* 321 B.R. at 45 n.6); *see also Shropshire v. Fred Rappoport Co.,* 294 F. Supp. 2d 1085, 1099 (N.D. Cal. 2003) ("The Court is unable to resolve this issue at this stage of the proceeding, when no discovery has been permitted, because the applicability of the anti-SLAPP statute turns on disputed questions of fact."); *Metabolife,* 264 F.3d at 846-47 (remanding and directing the district court to permit plaintiffs the opportunity for discovery on the issue of actual malice and

7

1   falsity before deciding the defendant's motion to strike); *Rogers*, 57 F. Supp. 2d at 981

2   (recognizing that where information to defend a motion to strike is in defendants' control, "as is

3   generally the case when a plaintiff must prove malice," leave to conduct discovery should be

4   freely granted before considering the merits of the claims); *Bautista*, 2012 WL 160252, at *7

5   (declining to rule on motion to strike where factual disputes remained and plaintiff had not yet

6   been afforded the opportunity for discovery); *Woodard v. Labrada*, No. 16-CV-16189-JGB-SPX,

7   2017 WL 1018306, at *2 (C.D. Cal. Mar. 6, 2017) (deferring consideration of anti-SLAPP

8   motion to strike "until after the close of discovery").

9           Applying these principles, and as set forth in detail in Resolute's Opposition, Plaintiffs

10  have more than satisfied their burden of demonstrating a probability of success on all their claims

11  by alleging all required elements of the asserted causes of action, which is all that is required at

12  the pleading stage.  *See Bulletin Displays*, 448 F. Supp. 2d at 1179 (to prevail on a motion to

13  strike at the pleading stage, plaintiff must only make "a *prima facie* showing of facts to sustain a

14  favorable judgment if the evidence submitted by the plaintiff is credited") (emphasis added); *see*

15  ECF No. 75 at 45-46, 69-83.[7]  Accordingly, the Greenpeace Defendants' motions to dismiss and

16  strike should be denied in their entirety.  However, even if a *prima facie* factual showing of

17  falsity and malice beyond the detailed facts alleged in the Complaint were required at this stage

18  of the proceedings, the expert declarations of Peter Reich, Ph.D. (*see* ECF No. 77 ("Reich

19  Decl.")) and Frederick Cubbage, Ph.D. (*see* ECF No. 76 ("Cubbage Decl.")), submitted with

20  Resolute's Opposition, unequivocally demonstrate the falsity of the Greenpeace Defendants'

21  claims.  As set forth in Resolute's Opposition, Professor Reich, a recipient of the Nobel Prize

22  equivalent in forest ecology (the BBVA Foundation Frontiers of Knowledge Award in Ecology

23  and Conservation Biology) and a renowned scientist who has published over 500 peer-reviewed

24  articles for international scientific publications, and has conducted research in boreal, tropical,

25  and temperate ecosystems, opined that the Greenpeace Defendants' allegations concerning

26  

27  [7]      Even if this Court were to apply California's anti-SLAPP Statute to Plaintiffs' federal
    RICO claims which, as set forth above, would violate the Supremacy Clause, Plaintiffs have also
28  satisfied their burden at this stage with respect to those claims.  (*See* ECF No. 75 at 46-69.)

8

Plaintiffs' Supplemental Memorandum in Opposition to Greenpeace Defendants' Rule
12(b)(6) Motion to Dismiss and Motion to Strike, Case No. 3:17-CV-02824-JST

Resolute's impact on the boreal forest are predicated on "distort[ed] results" from studies that are "weakly related and largely irrelevant to the issue at hand" and demonstrate "a fundamental disregard for scientific reality."  (Reich Decl. ¶¶ 23, 38.)  Likewise, Professor Cubbage, a leading authority on forest certifications and forest resource policy, concluded that Resolute's 2013 FSC certification suspensions "resulted from unachievable targets wholly outside of Resolute's control," "indicate possible bias," and "do not equate to unsustainable practices."  Professor Cubbage reiterated that "[t]here is no scientific basis whatsoever to generalize about global impacts from the loss of three forest certifications," one of which was subsequently reinstated.  (Cubbage Decl. ¶¶ 45-49.)

Accordingly, the detailed allegations of the Complaint -- which standing alone are sufficient to defeat the Greenpeace Defendants' motion at the pleading stage -- along with the declarations of Professors Reich and Cubbage, more than satisfy Plaintiffs' burden to demonstrate a "mere possibility of success" as to each of their claims.  Thus, the Greenpeace Defendants' motion to strike should be denied.[8]

## II.    Plaintiffs' Defamation Claim Is Properly Pled

The Greenpeace Defendants' contention that all of their unlawful conduct amounts to protected opinions that are shielded by the First Amendment under California law is likewise belied by clear legal precedent.  As an initial matter, the Greenpeace Defendants concede that there is no conflict between the substantive laws of Georgia and California with respect to their First Amendment and opinion defenses.  (ECF No. 127-1 at 20.)  Accordingly, the analysis set forth in Resolute's Opposition applies with equal force here.  (ECF No. 75 at 69-78.)  Nevertheless, as set forth below, the Complaint adequately pleads defamation and actual malice under California law.

---

[8]      To the extent the Court determines that the Greenpeace Defendants' anti-SLAPP which asks this Court to weigh the sufficiency of the evidence is not premature – which it is – it should direct the parties to engage in limited discovery concerning among other things actual malice and falsity of defendants' statements before deciding the motion to strike.  *See*, *e.g.*, *Metabolife*, 264 F.3d at 846-47 (remanding and directing the district court to permit plaintiffs the opportunity for discovery on the issue of actual malice and falsity before deciding the defendant's motion to strike).

9

### A.    The Opinion Defense Is Inapplicable.

To state a claim for defamation under California law, "a plaintiff must allege (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damages."  *See Layton v. Terremark N. Am., LLC*, No. 5:13-CV-03093-PSG, 2014 WL 2538679, at *8 (N.D. Cal. June 5, 2014).

The Greenpeace Defendants contend that the defamation claim should be dismissed for failure to allege a false statement of fact because all of their knowingly false and misleading allegations about Resolute are "quintessential opinion publications . . . that . . . are understood by reasonable readers to be inherently opinion-based publications" and are therefore not actionable. (ECF No. 127-1 at 14.)  However, as set forth in detail in Resolute's Opposition, the Supreme Court of the United States has long held that calculated falsehoods are afforded no protection under the First Amendment.  *See Illinois, ex rel. Madigan v. Telemarketing Assocs.*, 538 U.S. 600, 612 (2003).  In *Madigan*, the Illinois Attorney General brought fraud charges against a telemarketing fundraiser for specific false misrepresentations made to donors for the "private pecuniary benefit of [the Telemarketers]."  *Id.* at 605.  The Supreme Court held that the pleading "described misrepresentations our precedent does not place under the First Amendment's cover." *Id.* at 618.  Since the Amended Complaint pleaded affirmative misrepresentations, deception, and false statements, no First Amendment analysis was necessary at all:  to the contrary, the state's antifraud laws were to be "vigorously enforce[ed]."  *Id.* at 619-624; s*ee also United States v. Hempfling*, 431 F. Supp. 2d 1069, 1083 (E.D. Cal. 2006) ("The Supreme Court has repeatedly held that the First Amendment does not shield fraud."); ECF No. 75 at 41-45.

Likewise, it has been long-held that there is no blanket protection for "opinions," and even utterances couched as "opinion" will support a defamation claim if the utterance (a) constitutes an express statement of verifiably false facts; (b) implies statements of verifiably false facts; or (c) was based on incorrect or incomplete facts.  *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 13-20 (1990).  As the Greenpeace Defendants concede, California courts apply a "totality of the circumstances" test in order to determine whether something is fact, or simply opinion or hyperbole.  *See* ECF No. 127-1 at 21; *see also Piping Rock Partners, Inc. v. David*

10

1   *Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 971 (N.D. Cal. 2013) (denying defendants' anti-

2   SLAPP motion to strike on the basis that blog posts were nonactionable opinions), *aff'd,* 609 F.

3   App'x 497 (9th Cir. 2015).  The key inquiry in determining whether a statement is fact or opinion

4   is "whether a reasonable fact finder could conclude that the published statement declares or

5   implies a provably false assertion of fact."  *Id.* at 971.  Accordingly, even a statement of opinion

6   "loses its constitutional protection and becomes actionable when it is 'based on implied,

7   undisclosed facts' and 'the speaker has no factual basis for the opinion.'"  *Id.* at 972.  Thus,

8   where, as here, "a statement of opinion implies a knowledge of facts which may lead to a

9   defamatory conclusion, the implied facts must themselves be true."  *Id.*

10          In their motions to dismiss and strike filed with the U.S. District Court for the Southern

11   District of Georgia, the Greenpeace Defendants argue that the false and defamatory allegations

12   made in connection with the "Resolute: Forest Destroyer" campaign are non-actionable

13   "hyperbole" that "do not hew to strict literalisms or scientific precisions," and concede that *RFP*

14   *did not literally destroy an entire forest*."  (ECF No. 98 at 18; *see also* ECF No. 62 at 24

15   (emphasis added).)  This legal defense amounts to an admission that the Greenpeace Defendants'

16   allegations about the impact of Resolute's harvesting are false.  Presumably having recognized

17   their concession, the Greenpeace Defendants reverse positions in their supplemental brief and

18   now argue that their allegations concerning the impacts of Resolute's harvesting on the Canadian

19   boreal forest are disclosed opinions supported by "extensive footnotes and hyperlinks to key

20   sources."  (ECF No. 127-1 at 21.)  Regardless of whether the Greenpeace Defendants attempt to

21   recast their false and defamatory allegations as "rhetorical hyperbole" or opinions based on

22   science, the law is clear that the statements are actionable.

23                      **i.      The Greenpeace Defendants' False And**
                                  **Defamatory Allegations Are Not Protected Hyperbole.**
24

25          Courts in the Ninth Circuit and Northern District of California have routinely rejected

26   claims that defamatory statements constitute nonactionable hyperbole where the statement,

27   viewed in context, is reasonably capable of defamatory meaning or is substantially false.  For

28

Plaintiffs' Supplemental Memorandum in Opposition to Greenpeace Defendants' Rule
12(b)(6) Motion to Dismiss and Motion to Strike, Case No. 3:17-CV-02824-JST

example, in *Piping Rock Partners,* the Ninth Circuit affirmed the district court's denial of defendants' anti-SLAPP motion on the basis that the alleged defamatory statements were "inherently hyperbolic," recognizing that "an opinion loses its constitutional protection and becomes actionable when it is based on implied, undisclosed facts and the speaker has no factual basis for the opinion."  946 F. Supp. 2d at 972, *aff'd*, 609 F. App'x 497.  Applying those principles, the court held that while defendants' allegations concerning putative business improprieties are the sorts of exaggerations and hyperbole that courts routinely consider opinion, considering the publication as a whole, "the post is a statement of fact about a deal gone wrong, and the opinions expressed therein are based on those facts."  *Id.*  Accordingly, the court held that "at the very least, the post is reasonably susceptible of a defamatory meaning," and thus declined to strike the claim at the pleadings stage.  *Id.*

The U.S. District Court for the Eastern District of California reached a similar result in *Snider v. Nat'l Audubon Soc., Inc.*, No. 91-CV-665 REC, 1992 WL 182186, at *3 (E.D. Cal. Apr. 14, 1992).  There, the court rejected the defendants' assertion that their allegations that plaintiff was an eel was nonactionable "figurative" speech.  *Id.*  Rather, considering the totality of the circumstances, the court concluded the article at issue "described as an eel [ ] someone who has been convicted of or has plead guilty to violation of the Endangered Species Act."  *Id.*  As such, the court determined that referring to the plaintiff as an eel was an assertion that could be provably false, and was thus actionable.[9]

In accordance with these precedents, the Greenpeace Defendants' false representations about Resolute, including among others, that Resolute is  a "Forest Destroyer" (ECF No. 1 at ¶¶ 81-94),  that "is bad news for the climate" (*id.*; ¶¶ 100-104) and that it is "put[ting] the health of the Boreal Forest at risk with its destructive logging practices" (*id.*; ¶ 195) -- which imply that Resolute's harvesting are materially contributing to climate change and negatively harming the

---

[9]  *See also Woods v. John Doe*, BC589746 (Sup. Ct. L.A. Cnty. Feb. 8, 2016) (rejecting claim that allegation that plaintiff was a "cocaine addict" was nonactionable hyperbole); *Edwards v. Hall*, 234 Cal. App. 3d 886, 903 (Ct. App. 1991) (statement that plaintiff was an "extortionist" was not mere hyperbole because defendant "explain[ed] the nature of his accusation," thereby reinforcing impression that defendant seriously maintained his view).

1   boreal Forests -- are likewise actionable.  *See, e.g., Milkovich*, 497 U.S. at 18-19 (statement may

2   "imply a false assertion of fact," as, for example: "If a speaker says, 'In my opinion John Jones is

3   a liar,' he implies a knowledge of facts, which lead to the conclusion that Jones told an

4   untruth.").   Indeed, not only are these statements provably false, the Greenpeace Defendants

5   have already conceded that the center-piece of their campaign is not true:  *RFP did not literally*

6   *destroy an entire forest*."  (ECF No. 62 at 24.)

             **ii.**     **The Greenpeace Defendants' Inclusion Of Putative**
                       **Sources In Their Publications Do Not Transform Their**
                       <u>**False And Defamatory Allegations Into Protected Opinions.**</u>

10       The Greenpeace Defendants' contention that their defamatory publications are protected

11   because they provide the reader with hyperlinks and footnotes to sources and facts purportedly

12   relied upon is likewise without merit.  (*See* ECF No. 127-1 at 21-22.)  As an initial matter, this

13   argument fails to address the dozens of false and defamatory statements in direct

14   communications to customers, by e-mail and on social media set forth in the Complaint which

15   were not accompanied by any citations.  (*See, e.g*., ECF No. 1 at 149-80.)   Moreover, the law is

16   clear that simply citing sources purporting to support false statements does not permit an author

17   to manufacture First Amendment protection for its defamatory statements.  *See Milkovich*, 497

18   U.S. at 18-19 ("Even if the speaker states the facts upon which he bases his opinion, if those facts

19   are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may

20   still imply a false assertion of fact."); *see also Melaleuca, Inc. v. Clark*, 66 Cal. App. 4th 1344,

21   1354-55 (1998) (disclaimer that statements in book expressed the opinions of the author based on

22   [her] scientific research and on specific case studies did not convert statements to nonactionable

23   opinions because considering the totality of the circumstances, the length of the book and the

24   reliance on scientific studies could lead a reasonable jury to conclude that the statements implied

25   knowledge of facts); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 904, n.7 (2004) (rejecting

26   argument that there can be no liability when the publisher reveals the facts upon which an

1    opinion is based.)[10]  This is especially true where, as here, the Greenpeace Defendants hold

2    themselves out as a legitimate environmental organization engaged in environmental advocacy

3    which has developed an *expertise* in matters related to the protection and conservation of

4    Canada's boreal forests.  *See Resolute v. 2471256 Canada Inc. dba Greenpeace Canada, et al.*,

5    CV-164-13, ¶ 34 (Sup. Ct. J. Ontario Aug. 20, 2014).  Indeed, every page on Greenpeace USA's

6    website, *greenpeace.org*, reiterates this: "Want to learn more about tax-deductible giving,

7    donating stock and estate planning?  Visit Greenpeace Fund, a nonprofit, 501(c)(3) charitable

8    entity created to increase public awareness and understanding of environmental issues through

9    ***research***, the media and ***educational programs***." (emphasis added).  *See Slaughter v. Friedman*,

10   32 Cal. 3d 149, 154 (1982) (an accusation that, if made by a layperson, might constitute opinion

11   may "carry a ring of authenticity and reasonably might be understood as being based on fact" if

12   made by someone with specialized knowledge); *Overstock.com, Inc. v. Gradient Analytics, Inc.*,

13   151 Cal. App. 4th 688, 706 (2007) (rejecting opinion defense where defendant "holds itself out to

14   its [consumers] as having specialized knowledge").[11]

15        The identical argument advanced by the Greenpeace Defendants here was rejected in

16   *Wilbanks*, where the defendant, a consumer watchdog, moved to strike claims for defamation and

17   unfair business practices arising from publications on her website on the basis that they were

---

19   [10]     The Greenpeace Defendants' reliance on *ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d
20   789 (N.D. Cal. 2010), *aff'd sub nom. ZL Techs., Inc. v. Gartner Grp., Inc.*, 433 F. App'x 547 (9th
     Cir. 2011), is misplaced.  There, the court held that considering the totality of the circumstances
21   defendants' statements were nonactionable opinion because the statements disclosed that they
     were based on "subjective assessments" based on "conversations with customers and vendor-
22   supplied references."  *Id.* at 797.  The *ZL Techs.* court even acknowledged that the alleged
     defamatory statements were not based on objective "product performance testing."  *Id.*  Thus, the
23   factual circumstances in *ZL Techs.* is distinguishable from the present case where the Greenpeace
     Defendants purport that their statements are supported on objective scientific research.
24
25   [11]     As set forth above, while the Court should defer weighing the evidence pending
     completion of discovery, to the extent the Court decides to weigh the merits of the putative
26   support the Greenpeace Defendants contend they relied on in their publications, the expert
     declaration of Peter Reich, Ph.D. demonstrates that the allegations concerning Resolute's impact
27   on the boreal forest demonstrate "a fundamental disregard for scientific reality," are based on
     "cherry-pick[ed] and distort[ed] results from a study that is weakly related and largely irrelevant"
28   and fails to consider "the state-of-the-art science of today."  (ECF No. 77.)

14

nonactionable opinions based on disclosed facts. *Wilbanks,* 121 Cal. App. 4th at 904. In holding that the statements were not protected, the First District Court of Appeal stated that "[a]n accusation that, if made by a layperson might constitute an opinion may be understood as being based on fact if made by someone with specialized knowledge of the industry," reasoning that, under those circumstances, the speaker "clearly expected readers to rely on [the] opinions as reflecting the truths." *Id.* The court likewise held that the fact that the publication disclosed the facts upon which defendant purported to rely on was not dispositive: "This proposition may have validity when the publisher reveals all relevant facts, the publication does not suggest that the publisher's own opinion is based in part on facts known only to her, and the publisher has no expertise beyond that of the average reader. It has no application here." *Id.* at n.7.

Here, Greenpeace disseminated demonstrable lies, falsely alleging that Resolute harvested in prohibited areas and violated the CBFA, materially contributed to climate change, destroyed the woodland caribou habitat and posed a material risk to those populations, and took advantage of First Nations. The Greenpeace Defendants' claim that these falsehoods were supported by fact-based research, which -- according to the Greenpeace Defendants' supplemental arguments -- were meant to be understood as professional and reliable assertions and compilations of objective fact by those issuing them, and thus are not protected opinions. This is all the more so when joined with the allegations that Greenpeace failed to disclose that its real motivation in its efforts was generating donations and not effectuating responsible environmental activism.[12]

### B.    The Complaint Adequately Pleads Actual Malice

As set forth in Resolute's Opposition, the Complaint adequately pleads actual malice by alleging that the Greenpeace Defendants knowingly published falsehoods about Resolute as part

---

[12]    Both *Cochran v. NYP Holdings*, 58 F. Supp. 2d 1113 (C.D. Cal. 1998) and *Carr v. Warden*, 159 Cal. App. 3d 1166 (1984), are factually distinguishable because in both cases, considering the "totality of the circumstances," it was clear that the allegedly defamatory statements were merely opinions. *See Cochran*, 58 F. Supp. 2d at 1123 (holding that statements were protected opinions when made by columnist who described himself as a person who writes "'very opinionated' columns about 'various political matters.'"); *Carr*, 159 Cal. App. 3d at 1168 (speaker explicitly admitted that he had no evidence to "substantiate" his statement).

of a calculated campaign to further their political and financial objectives.  *See* ECF No. 75 at 70-75; *see also New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) (defining actual malice as the publication of a statement "with knowledge that it was false or with reckless disregard of whether it was false or not.").  A complaint pleads actual malice where it alleges that defendant "made the false publication with a 'high degree of awareness of probable falsity, or [ ] entertained serious doubts as to the truth of his publication.'"  *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (internal citations omitted).

While the Greenpeace Defendants argue that Resolute's defamation claim should be dismissed because the Complaint fails to plead actual malice by "clear and convincing evidence" (ECF No. 127-1 at 16),  they misconstrue the relevant standard on this motion.  In federal court "[f]ederal law, rather than state law, sets the standard for dismissal under Fed. R. Civ. P. 12(b)(6)."  *Church of Scientology of California v. Flynn*, 744 F.2d 694, 696 n.2 (9th Cir. 1984); *Valdez v. Maya Pub. Grp. LLC*, No. 10CV733-L BGS, 2011 WL 2413510, at *4 (S.D. Cal. June 15, 2011) ("The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.") FRCP 8 and 9, which set forth the pleading standards that apply in federal court, "do not provide for a heightened pleading requirement of malice.  To the contrary, '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally.'"  *Id.* (quoting FRCP 9(b)).  Accordingly, while "[the plaintiff] still must allege facts sufficient to state a 'plausible claim for relief," defamation "is not subject to the heightened pleading standard of Rule 9(b)."  *Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*, No. 15-CV-05789-JST, 2016 WL 1394360, at *7 (N.D. Cal. Apr. 8, 2016).  To satisfy this standard, a complaint's "non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Visant Corp. v. Barrett*, 13-CV-389-WQH-WVG, 2013 WL 3450512, at *5 (S.D Cal. July 9, 2013) (applying federal pleading standards, finding plaintiff adequately alleged actual malice with facts allowing the court to "plausibly conclude" the statements were made with "reckless disregard of whether [they] were false or not").  Additionally, "a plaintiff is entitled to prove a defendant's state of mind through circumstantial

16

evidence. . . .  Factors such as failure to investigate, financial motive . . . reliance on sources known to be unreliable or biased, may constitute circumstantial evidence of malice."  *Valdez*, 2011 WL 2413510 at *6.

In addition, the Greenpeace Defendants' supplemental brief relies on cases applying the standard of review for summary judgment and post-trial, but not on a motion to dismiss.  *See Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249 (9th Cir. 1997) (addressing applicable standard for malice at trial), *Copp v. Paxton*, 45 Cal. App. 4th 829 (1996) (addressing applicable standard at summary judgment); *DARE America v. Rolling Stone Magazine*, 101 F. Supp. 2d 1270 (C.D. Cal. 2000) (addressing applicable standard for malice on summary judgment); *Fletcher v. San Jose Mercury News*, 216 Cal. App. 3d 172 (1989) (addressing applicable standard for malice on motion for judgment notwithstanding verdict).  However, because actual malice is a question of fact, actual malice is not properly determined at the pleading stage, and thus, as set forth above and in Resolute's Opposition, Plaintiffs are entitled to discovery prior to a determination on this issue.  *See Metabolife*, 264 F.3d at 848 ("[T]he issue of actual malice (or, to put it another way, intent to convey the defamatory impression) cannot properly be disposed of by a motion to dismiss in this case, where there has been no discovery. . . .  The defendants may challenge whether the asserted implication was made with "actual malice" at summary judgment, should the case proceed that far.") (internal citation omitted).

When the proper motion to dismiss standard is applied, the truth of Plaintiffs' well-pled factual allegations assumed, and the "totality" of the allegations considered, there is no question that the Complaint adequately alleges actual malice.  The Complaint pleads that the Greenpeace Defendants were central participants in an illegal racketeering enterprise to harm Resolute through the dissemination of materially false information about Resolute's purported impact on the environment, which were made with the express purpose to "emotionalize" donors and induce fraudulent donations.  (ECF No. 1 at ¶¶ 51, 54-56, 81-83, 143, 149, 164, 212.)  The Complaint also alleges in specific and extensive detail the alleged misrepresentations and the specific reasons why they were knowingly false, unfounded, and unreasonable.  This misconduct,

17

1   together with the profit-driven motive, is probative evidence of actual malice. *See Harte-Hanks*

2   *Comms., Inc.*, 491 U.S. at 688 (motive is relevant for actual malice analysis).

3        The Greenpeace Defendants assert that Resolute cannot establish actual malice because

4   the challenged statements rely on "previously published articles in reputable publications and

5   statements in official court records, scientific reports, and government reports."[13] (ECF No. 127-

6   1 at 16.) However, as set forth in Resolute's Opposition, the Complaint and the declarations of

7   Professors Reich and Cubbage demonstrate that Greenpeace's specific statements were

8   demonstrably false and predicated on distorted evidence and flawed and outdated science.[14]

9        For example, notwithstanding the fact that Greenpeace conceded that its 2012 claim that

10   Resolute was harvesting in areas prohibited by the CBFA was based on falsified GPS

11   coordinates, following its public retraction Greenpeace once again resorted to doctored photos

12   and redrawn maps to falsely accuse Resolute of harvesting in protected areas including in

13   Greenpeace's February 2016 publication "Endangered Forests in the Balance: The Impact Of

14   Logging Reaches New Heights In The Montagnes Blanches Endangered Forest" and direct

15   communications to Resolute customers. (ECF No. 1 at ¶¶ 135-42.) Moreover, Greenpeace

---

16

17   [13]   *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) supports a finding that actual
18   malice is adequately pled here, holding that "if someone knows that the news story is false, he
can't sanitize his republication by purporting to rely on the news source. Nor can he claim
19   immunity if he has conflicting information from another source and recklessly disregards it."
Moreover, *Flowers* further undermines the Greenpeace Defendants' argument that Resolute's
20   claims should be dismissed at this juncture, stating that "malice is a subjective standard that turns
on the defendant's state of mind; it is typically proven by evidence beyond the defamatory
21   publication itself. For that reason, the issue of actual malice ***cannot be properly disposed by a
motion to dismiss, where the plaintiff has had no opportunity to present evidence in support of
22   his allegations***." *Id.* at 1131 (emphasis added). Therefore, even if the Court decides that
Resolute has not pled malice -- which it has -- the Greenpeace Defendants' own authority
23   mandates that the Complaint not be dismissed at this premature stage.

24   [14]   Thus, *Reader's Digest Ass'n Inc. v. Superior Court*, 37 Cal. 3d 244 (1984) and *Nadel v.
25   Regents of Univ. of California*, 28 Cal. App. 4th 1251 (1994) are factually distinguishable
because neither case involved the publication of alleged facts that were belied by prominent
26   members of the scientific community. Indeed, the defendants in *Nadel* presented ***uncontested***
declarations stating that they "believed at all times that the statements were true." 28 Cal. App.
27   4th at 1270. Additionally, *Reader's Digest*'s analysis of malice is wholly irrelevant here as the
court was adjudicating a motion for summary judgment based on a full record after ample
28   discovery. *See* 37 Cal. 3d at 251-52.

1  ubiquitously disseminated the false allegation that Resolute's harvesting was impairing the boreal

2  forest's ability to mitigate climate change, including in reports published by Defendant Moas in

3  July 2015, despite the fact that the United Nations Intergovernmental Panel on Climate Change --

4  whose reports and conclusions Greenpeace features and cites prominently -- has declared that

5  sustainable forest harvesting and management is one of the most important mechanisms for

6  removing and sequestering greenhouse gases from the atmosphere.  (*Id.* at ¶ 101.)  As a result,

7  Professor Reich concluded that the Greenpeace Defendants' allegations concerning Resolute's

8  impact on climate change "cherry-pick[ed]" and "distort[ed] results" from a "weakly related and

9  largely irrelevant" study, "rather than examining the state-of-the-art science of today."  (Reich

10  Decl. ¶ 38.)

11         Moreover, scientific publications, including those cited extensively by Greenpeace in

12  other areas, directly contradict Greenpeace's lies about Resolute.  (ECF No. 1 at ¶ 101.)  Indeed,

13  Professor Reich concludes that Greenpeace's claim that "Resolute aggravates climate change . . .

14  shows a fundamental disregard for scientific reality."  (Reich Decl.  ¶ 23.)  The law is settled that

15  "[i]naction . . . which was the product of a deliberate decision to not acquire knowledge of facts

16  that might confirm the probable falsity of [statements], will support a finding of actual malice."

17  *Antonovich v. Superior Court*, 234 Cal. App. 3d 1041, 1048 (1991); *see also Suzuki Motor Corp.*

18  *v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1136 (9th Cir. 2003); *St. Amant v. Thompson*,

19  390 U.S. 727, 732 (1968).  The law is settled that a publisher cannot feign ignorance or profess

20  good faith when there are clear indications present which bring into question the truth or falsity

21  of defamatory statements.  *See St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).  Thus, under

22  these circumstances, the complaint adequately alleges actual malice at the pleading stage.

23                                                **CONCLUSION**

24         For the foregoing reasons and those set forth in Resolute's Opposition, the Greenpeace

25  Defendants' Rule 12(b)(6) Motion to Dismiss and Motion to Strike should be denied in their

26

27

28

                                                        19

entirety.  To the extent the Court is inclined to grant any of the Greenpeace Defendants' motions in whole or in part, any dismissal should be without prejudice and with leave to amend.[15]

Dated: August 8, 2017

KASOWITZ BENSON TORRES LLP

By: /s/ Lyn R. Agre

Lyn R. Agre
Michael J. Bowe
Lauren Tabaksblat

*Attorneys for Plaintiffs*

---

[15]     The FRCP instruct that "[t]he court should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a).  Accordingly, it is well established in the Ninth Circuit and in California federal district courts that leave to amend a deficient complaint is liberally granted.  *See Real Action,* 143 F. Supp. 3d 982, 997 (N.D. Cal. 2015) ("If a Rule 12(b)(6) motion is granted, the 'court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.") (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)); *Garcia v. Enter. Holdings, Inc.*, No. 14-CV-00596-SBA-KAW, 2014 WL 4623007, at *3 (N.D. Cal. Sept. 15, 2014) ("Defendants have not convinced the Court that their motion [to dismiss] is meritorious or that it will otherwise be granted without leave to amend, which courts grant liberally.")

20