THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email:    thomasburke@dwt.com

LAURA HANDMAN (appearing *pro hac vice*)
LISA ZYCHERMAN (appearing *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
Telephone: (202) 973-4200
Facsimile: (202) 973-4499
Email:    laurahandman@dwt.com
          lisazycherman@dwt.com

LACY H. KOONCE, III (appearing *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone:   (212) 489-8230
Facsimile:   (212) 489-8340
Email:       lancekoonce@dwt.com

Attorneys for Defendants
GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT and ROLF SKAR

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., RESOLUTE FP US, INC., RESOLUTE FP AUGUSTA, LLC, FIBREK GENERAL PARTNERSHIP, FIBREK U.S., INC., FIBREK INTERNATIONAL INC., and RESOLUTE FP CANADA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., GREENPEACE FUND, INC., FORESTETHICS, DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT, ROLF SKAR, TODD PAGLIA, and JOHN AND JANE DOES 1 through 20, inclusive,<br><br>Defendants. | Case No. 17-cv-02824-JST<br><br>**GREENPEACE DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Date: October 10, 2017<br>Time: 2:00 p.m.<br>Judge: The Honorable Jon S. Tigar<br>Location: Courtroom 9 19th Floor |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

I.    THIS COURT SHOULD DISMISS RFP'S COMPLAINT PURSUANT TO RULE 12(B)(6) ............................................................................................................ 2

    A.    All of RFP's Claims Implicate the First Amendment and RFP Cannot Recast Defamation to Avoid the First Amendment ............................................. 3

    B.    The Challenged Statements Are Non-Actionable Opinion ........................ 6

    C.    RFP Cannot Plausibly Plead Actual Malice ............................................... 9

DAVIS WRIGHT TREMAINE LLP

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baral v. Schnitt*,
    1 Cal. 5th 376, 392-96 (2016) ...............................................................................1, 4, 5

*Barry v. Time, Inc.*,
    584 F. Supp. 1110 (N.D. Cal. 1984) ...............................................................................11

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015) ...............................................................................10

*Blatty v. New York Times Co.*,
    42 Cal. 3d 1033 (1986) ...............................................................................3

*Campanelli v. Regents of Univ. of Cal.*,
    44 Cal. App. 4th 572 (1996) ...............................................................................7

*Electronic Waveform Lab, Inc. v. EK Health Services,*
    2016 WL 1622505 (C.D. Cal. Mar. 1, 2016) ...............................................................................5

*Energy Transfer Equity, L.P. v. Greenpeace Int'l*,
    17-cv-00173 (D.N.D. Aug. 22, 2017) ...............................................................................9

*Films of Distinction Inc. v. Allegro Film Prods., Inc.*,
    12 F. Supp. 2d 1068 (C.D. Cal. 1998) ...............................................................................3

*Flowers v. Carville*,
    310 F. 3d 1118 (9th Cir. 2002) ...............................................................................10

*Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd. of Culinary Workers*,
    542 F.2d 1076 (9th Cir. 1976) ...............................................................................10

*Gardner v. Martino*,
    563 F.3d 981 (9th Cir. 2009) ...............................................................................3

*Harte-Hanks Commc'ns Inc. v. Connaughton*,
    491 U.S. 657 (1989) ...............................................................................9, 10

*Heller v. NBCUniversal, Inc.*,
    2016 WL 6573985 (C.D. Cal. Mar. 30, 2016) ...............................................................................3

*In re Grand Jury Proceeding*,
    842 F.2d 1229 (11th Cir. 1988) ...............................................................................10

*Information Control Corp. v. Genesis One Computer Corp.*,
    611 F.2d 781 (9th Cir. 1980) ...............................................................................9

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ................................................................................................. 9

*Leidholdt v. L.F.P., Inc.*,
   860 F.2d 890 (9th Cir. 1988) ................................................................................................... 9

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
   838 F.2d 1287 (D.C. Cir. 1988) ............................................................................................ 11

*McDonald v. Wise*,
   769 F.3d 1202 (10th Cir. 2014) ............................................................................................ 10

*Med. Lab Mgmt. Consultants v. ABC*,
   306 F.3d 806 (9th Cir. 2002) ................................................................................................... 3

*Metabolife Int'l, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) ................................................................................................... 3

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .............................................................................................. 10

*Nicosia v. De Rooy*,
   72 F. Supp. 2d 1093 (N.D. Cal. 1999) ............................................................................... 9, 11

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1994) ................................................................................................... 7

*Pleasant v. Lovell*,
   876 F.2d 787 (10th Cir. 1989) .............................................................................................. 10

*Sheley v. Harrop*,
   9 Cal. App. 5th 1147 (2017) .................................................................................................... 4

*Spelson v. CBS, Inc.*,
   581 F. Supp. 1195 (N.D. Ill. 1984), *aff'd*, 757 F.2d 1291 (7th Cir. 1985) ................................ 8

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman*,
   55 F.3d 1430 (9th Cir. 1995) ................................................................................................... 6

*Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996*,
   302 F.3d 998 (9th Cir. 2002) ................................................................................................... 9

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) ................................................................................................. 7, 9

*Underwager v. Salter*,
   22 F.3d 730 (7th Cir. 1994) ..................................................................................................... 8

*Unelko Corp. v. Rooney*,
   912 F.2d 1049 (9th Cir. 1990) ............................................................................................. 3, 7

*Wynn v. Chanos*,
    75 F. Supp. 3d 1228 (N.D. Cal. 2014) ...................................................................................7

**Rules**

Fed. R. Civ. P. 12(B)(6) ................................................................................................................2

**Constitutional Provisions**

U.S. Constitution Amendment I............................................................................................. *passim*

**Other Authorities**

http://www.nationalreview.com/article/445373/greenpeace-environmental-groups-
    grandstand-harass-company-finally-sues-them............................................................................9

# INTRODUCTION

Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar (collectively, "GP" or the "Greenpeace Defendants") respectfully submit this reply in support of their supplemental brief, ECF No. 127-1, to the Motion to Dismiss, ECF No. 62, and the Motion to Strike, ECF No. 60, the Complaint of Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek U.S., Inc., Fibrek International Inc., and Resolute FP Canada, Inc. (collectively, "RFP").

On July 6, 2017, the Greenpeace Defendants brought an administrative motion for leave to file supplemental briefing in this case, as transfer of the case to this district left unresolved the pending dispositive motions, as well as the Greenpeace Defendants' contentions that California substantive law and California's anti-SLAPP statute were applicable to RFP's claims. In the interest of providing the Court with the necessary conflict of laws analysis and briefing on the arguments for dismissal under the applicable Ninth Circuit law, the Greenpeace Defendants filed an initial supplemental brief that provided a background on the procedural history, as well as choice of law and conflict of laws analyses.

In response, RFP has filed argumentative briefing rehashing its positions on the pending motions. RFP readily concedes that California substantive law and California's anti-SLAPP statute apply in this case, and essentially does not dispute any of the choice of law analyses set forth in the Greenpeace Defendants' briefing. Instead, it uses the bulk of its 20-page brief to try to prove what it could not demonstrate in its 90-page opposition to the pending motions: That it has met its pleading burden. RFP still cannot make this showing, even with additional briefing. In part, this is because the self-serving labels RFP has applied to its claims do not foreclose First Amendment scrutiny. California and Ninth Circuit law confirm that particularly where, as here, RFP has alleged that Defendants' advocacy and protected speech is "illegal" or "criminal," the Court must look beyond the labels set forth in the Complaint – here, *e.g.*, "Civil RICO" and "tortious interference" – to the underlying (and here, protected) activity. Indeed, the California Supreme Court recently observed that such probing analysis is ***required*** under the California anti-SLAPP statute. *Baral v. Schnitt*, 1 Cal. 5th 376, 392-96 (2016).

DAVIS WRIGHT TREMAINE LLP

Ultimately, all of RFP's efforts to avoid careful scrutiny of its pleading must fail, and upon a review of the actual claims in suit, in conjunction with the allegedly defamatory statements themselves, this Court should find that under California and Ninth Circuit law, none of RFP's various and sundry causes of action, all based on the same speech, state a valid claim. Greenpeace's statements – to the general public, to RFP itself, and to RFP's customers – were all patently protected opinion, made in the context of public advocacy about important environmental issues. These opinions were based on scientific analysis, prior publications and official actions, all of which Greenpeace clearly disclosed. Such advocacy constitutes quintessential protected speech, and upon application of well-settled First Amendment standards, RFP's claims against this advocacy cannot withstand dismissal. To the extent any statements are not opinion, RFP has failed to plausibly plead, as required under *Iqbal/Twombly*, much less demonstrate a probability of prevailing as required under anti-SLAPP law, specific facts that would support an inference of either substantial falsity or actual malice. These grounds are fully briefed in Greenpeace's Motion to Dismiss and Motion to Strike, now supplemented with applicable California federal and state law. Greenpeace's position, contrary to RFP's attacks, has not changed from day one.

In this reply memorandum, the Greenpeace Defendants refrain from rebutting each and every point raised again by RFP, as the briefing in support of the pending motions to dismiss and strike more than adequately address the legal issues presented in this case. Instead, in accordance with the underlying purpose of this supplemental briefing, the Greenpeace Defendants provide additional California law for relevant issues raised by RFP in its supplemental opposition.

## I. THIS COURT SHOULD DISMISS RFP'S COMPLAINT PURSUANT TO RULE 12(B)(6)

As a threshold matter, there is no dispute among the parties that California substantive law applies to RFP's claims, ECF No. 148, Suppl. Opp'n at 9, and that Defendants' motions to strike the Complaint are governed by the California anti-SLAPP statute, which applies in federal court, *id.* at 3. RFP continues to deny, however, that First Amendment principles apply to its claims against Defendants, and that the anti-SLAPP statute applies to defamation claims merely disguised as federal causes of action. We briefly address these points below, only to set forth additional

1  California and Ninth Circuit precedent supporting the Greenpeace Defendants' arguments on
2  point.

3        **A.**    **All of RFP's Claims Implicate the First Amendment and RFP Cannot Recast**
4               **Defamation to Avoid the First Amendment**

5  While RFP would have the Court accept its conclusory allegations that the speech at issue
6  states claims other than for defamation, the Court's gatekeeper role under the First Amendment is
7  not so easily dismissed. Indeed, that is the premise of California's anti-SLAPP statute, which
8  permits courts at an early stage to dismiss meritless cases "aimed at chilling expression through
9  costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir.
10 2001).

11 RFP cannot shield its claims from First Amendment scrutiny by mislabeling its allegations
12 with terms like illegal extortion, fraud, tortious interference, conspiracy, racketeering, and even
13 money laundering.  Plaintiffs' claims, all based on Greenpeace's speech on matter of
14 environmental advocacy – "however labeled and under whatever legal theory asserted," *Heller v.*
15 *NBCUniversal, Inc.*, 2016 WL 6573985, at *4 (C.D. Cal. Mar. 30, 2016) – must comport with the
16 First Amendment. *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (claims
17 sufficiently similar to defamation, such as tortious interference with business relationships and
18 product disparagement, "are subject to the same first amendment requirements that govern actions
19 for defamation"). Indeed, "[u]nder California law, 'First Amendment limitations are applicable to
20 all claims, of whatever label, whose gravamen is the alleged injurious falsehood of a statement.'"
21 *Films of Distinction Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998)
22 ("If the defendants' statements about the plaintiff's product or service are protected opinions, the
23 cause of action for trade libel must fail.").[1]  This includes defamation claims nominally disguised
24 as federal causes of action. *See* ECF No. 62, Mot. Dismiss at 17.[2]

---

[1] *See also Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009) (expanding *Unelko's* holding to actions for intentional interference with economic relations, with prospective economic advantage, with professional or business relationships, and with contractual relations); *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042-43, 1045 (1986) (plaintiffs cannot circumnavigate First Amendment limitations by "creative pleading" that "affix[es] labels other than defamation to injurious falsehood claims"); *Med. Lab Mgmt. Consultants v. ABC*, 306 F.3d 806, 821 (9th Cir. 2002) (tortious interference causes of action based on injurious falsehoods subject to First Amendment requirements).

[2] As Greenpeace has detailed previously, RFP has recast its speech-based claims as other causes of action to avoid the applicable one-year statute of limitations for defamation, which requires dismissal of 218 of the 267 statements

In the context of an anti-SLAPP motion, but with wider implications, in *Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016), a unanimous California Supreme Court conclusively resolved whether courts should parse particular causes of action in a complaint to determine whether they are based at least in part on allegations of protected activity, or whether the cause of action has to be viewed as an indivisible whole. The Court held that so-called "mixed" causes of action – those that include allegations related to both protected and unprotected activity – are not immune to scrutiny:

> The anti-SLAPP procedures are designed to shield a defendant's constitutionally protected *conduct* from the undue burden of frivolous litigation. It follows, then, that courts may rule on plaintiffs' specific claims of protected activity, rather than reward artful pleading by ignoring such claims if they are mixed with assertions of unprotected activity.

*Baral*, 1 Cal. 5th at 393 (emphasis in original); *see also Sheley v. Harrop*, 9 Cal. App. 5th 1147 (2017) ("Our high court reiterated that it is the defendant's activity allegedly giving rise to liability that is the focus of the anti-SLAPP scheme, not the manner in which the plaintiff pleads causes of action."). In short, consistent with settled First Amendment law, *Baral* instructs courts to look beyond the labels affixed to claims and consider whether the claims would unconstitutionally suppress protected speech.

Greenpeace does not argue that *Baral* and other relevant precedent holds that the California anti-SLAPP statute can be applied to strike properly-constituted federal claims, as RFP would have it. However, *Baral* clearly reinforces the conclusion that, in any context where First Amendment rights are at issue, ***mislabeled*** claims must be scrutinized to ensure that a defendant's right of free speech is not impinged by mere artful pleading. Here, as Greenpeace demonstrates at length in the pending motions, there is no question that all of RFP's claims are based on acts in furtherance of defendants' speech on environmental matters of public interest, which RFP seeks to stifle.

---

challenged in the Complaint, leaving only 49 statements that are not time-barred. ECF No. 62, Mot. Dismiss at 17-18. Further, there are only 26 non-time-barred statements made by named defendants. *Id*. at 18-20 (*citing* GP Defs.' Tables C & D). RFP has never disputed this, nor made the necessary contextual showing that these 26 statements are actionable. Instead, in its supplemental opposition, as in prior briefing, RFP reverts to the same summary allegations in the Complaint, which grossly mischaracterize the statements, and make outlandish, wholly unsupported charges – everything from cyberattacks to impersonation to theft of trade secrets – and neglect to plausibly plead how RFP is likely to succeed on the merits of its defamation claim. *See, e.g.*, ECF No. 75, Opp'n at 71.

4

Greenpeace Defendants' Reply in Support of Supplemental Brief
Case No. 17-cv-02824-JST

1    First, defamation is not, as a matter of law, a predicate act under RICO, *see* ECF No. 62, Mot. Dismiss at 30-31, and since all of the purported predicate acts are speech-based and in fact are the *same* speech that underpins RFP's state defamation claims, RFP tries to contort that speech into doing double duty as acts such as "extortion" of its customers.  Of course, as explained in the pending motions, defendants have not extorted anything from anyone. *Id.* at 33-35; *see also* ECF No. 104, Venue Transfer Order at 7 (noting that as to defendants' alleged acts during a trip to Augusta, Georgia, Plaintiffs have not "provide[d] a factual basis from which to infer that Defendants committed fraud or extortion before, during, or after the trip."). To the contrary, these independent environmental groups have simply published non-actionable opinions to RFP's customers, based on disclosed science, about RFP's activities in the Canadian Boreal Forest– statements consistent with other non-actionable statements they made to the general public – and encouraged RFP's customers to review that same information and consider whether to stop buying products from RFP until it changed its ways. *Id.*

As such, it is entirely proper for the Court to determine that the labeling of RFP's claims as federal RICO causes of action is no more than a sham.[3] A review of defendants' statements in context – which RFP attempted to obscure in its voluminous complaint – makes clear that all of those statements were typical of public advocacy generally, and precisely the type of activity the First Amendment, and the anti-SLAPP statute, are meant to insulate from ill-conceived legal claims. This is also why both environmental and media groups have filed amicus briefs in support of Greenpeace.

---

[3] In a footnote, RFP states California courts "routinely" permit plaintiffs to bring simultaneous claims for defamation and violation of the RICO statute. ECF No. 148, Suppl. Opp'n at 5 n.4. This is not only erroneous, but wildly misleading.  First, none of the cases RFP cites – all of which predate *Baral* – involve allegedly defamatory statements based on protected speech under the anti-SLAPP statute.  Second, in none of the cases did any party argue that the underlying acts for the RICO and defamation claims overlapped and thus that the RICO claim was a sham, so none of the courts reached the issue presented here.  Indeed, it does not appear that the statements alleged to be defamatory in those cases were even the same statements cited as predicate acts under the RICO claims in those cases.  For instance, in *Electronic Waveform Lab, Inc. v. EK Health Services*, the RICO claims included allegations that medical denial letters constituted mail and wire fraud because they misrepresented whether certain medical review decisions were compliant with the requirements of a statute, whereas the trade libel claims were based on the publication of false and disparaging statements about plaintiff.  2016 WL 1622505, at *9-11 (C.D. Cal. Mar. 1, 2016).

### B.     The Challenged Statements Are Non-Actionable Opinion

The centerpiece of RFP's opposition is the argument that the Greenpeace Defendants have "retract[ed] their prior concession" that the challenged statement that RFP is a "Forest Destroyer" is false, and have taken a new position that such statements are protected opinion only because they are supported by disclosed, true facts. ECF No. 75, Opp'n at 1, 10-11. Nothing could be further from the truth – the Greenpeace Defendants never "conceded" that their challenged statements were inaccurate,[4] and the Greenpeace Defendants have not adopted a "new" defense that their challenged opinions are only protected speech because they rely on disclosed, true facts. Greenpeace's supplemental brief merely provided California and Ninth Circuit context for positions that have been at the crux of Greenpeace's defenses all along.[5]

As Greenpeace has ***consistently*** maintained, the challenged statements are all based on credible science, cited in the publications in suit, and all resound as opinion advocacy on environmental public policy. Greenpeace has long called out RFP publicly for its environmental record in the Canadian Boreal Forest, among other things focusing on its unsustainable logging, and the impact of its practices on native communities and endangered wildlife habitat. Greenpeace's advocacy has taken a variety of forms, consisting of articles, online posts, letters and other types of speech. This broad advocacy has been directed to the general public, RFP itself, and RFP's customers. In almost every instance, Greenpeace's statements criticizing RFP either incorporated, or were accompanied by, substantive reports documented with references to (typically previously-published) scientific analyses, audits and official terminations of RFP's Forest Stewardship Council certifications as non-compliant with applicable standards. In other words, the statements clearly set forth the basis for the opinions expressed therein, and case law in this Circuit confirms that such statements are non-actionable. *See*, *e.g.*, *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of California v. Yagman,* 55 F.3d 1430, 1439 (9th Cir. 1995) ("[w]hen the facts underlying a statement of opinion are disclosed, readers will

---

[4] *See, e.g.*, ECF No. 62, Mot. Dismiss at 20-24; ECF No. 60, Mot. Strike at 13-24; ECF No. 98, Reply Br. at 8-14; ECF No. 127-1, Suppl. Br. at 13-14, 16.

[5] *See, e.g.*, ECF No. 62, Mot. Dismiss at 22-23, 28; ECF No. 60, Mot. Strike at 12-13; ECF No. 98, Reply Br. at 8-10, 12, 14; ECF No. 127-1, Suppl. Br. at 13-14, 16.

6
Greenpeace Defendants' Reply in Support of Supplemental Brief
Case No. 17-cv-02824-JST

understand they are getting the author's interpretation of the facts presented; they are therefore unlikely to construe the statement as insinuating the existence of additional, undisclosed facts."); *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1233-34 (N.D. Cal. 2014). Such advocacy, consisting of judgments supported by facts disclosed in the publications, is classic protected opinion, and cannot serve as the basis for defamation liability.[6]

To determine whether a statement implies a factual assertion, California courts examine the totality of the circumstances in which it was made. First, courts "look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995). Next, courts "turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Id.* Finally, they "inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false." *Id. See also Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1994) (applying three-factor test as the starting point for analysis); *Unelko Corp. v. Rooney*, 912 F.2d at 1053. While RFP gives back of the hand to cases illustrating the application of the "totality of the circumstances" standard, ECF No. 148, Suppl. Opp'n at 15 n.12, Greenpeace's advocacy work provides further context that its criticism, based on disclosed scientific and official reports, were protected opinion. *See Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 578 (1996).

*First*, the general context and tenor of the publications, aimed at convincing RFP's customers to reconsider using its paper products, make clear that the challenged statements were

---

[6] In its supplemental briefing, RFP incorrectly asserts that Greenpeace's direct statements to customers did not include citations to sources, ECF No. 148, Suppl. Opp'n at 13, but as illustrated in Greenpeace's Supplemental Appendix, this is simply not the case. For example, with respect to the publication "RFP Forest Products: Key risks and concerns for investors," ECF No. 62, Suppl. App. Tab 7, RFP challenges Greenpeace's commentary that four of RFP's Forest Service Council ("FSC") certificates had been "suspended or terminated … for major noncompliance with FSC criteria," Compl. 54, n.5, but the statement details what noncompliance was at issue and the publication is extensively annotated with footnotes to source documents, including scientific publications and hyperlinks to FSC documents detailing the status of RFP's certificates. *See also* ECF No. 98, Reply Br. at 10-11. *See also*, *e.g.*, Suppl. App. Tabs 1-2 (providing hyperlinks to scientific summaries of impact of Boreal Forest ecology); *id.* at Tab 3 (providing links to literature detailing links between forests and clean water, air quality, and climate change consequences that may result from poor forest management); *id.* at Tab 5 (hyperlinking to reporting on Canadian woodland caribou populations).Thus, RFP's reliance on *Piping Rock Partners*, and *Wilbanks*, both cases holding that an opinion is not protected speech when it is based on implied or undisclosed facts, is entirely misplaced.

7

Greenpeace Defendants' Reply in Support of Supplemental Brief
Case No. 17-cv-02824-JST

1  expressions of Greenpeace's environmental points of view.  The remaining 26 challenged
2  statements arise from just ten publications aimed at swaying corporations to cease using paper
3  products derived from RFP's logging.  *See* ECF No. 62, Suppl. App. Tabs 1-4, 8-9.  The
4  publications in suit also include statements applauding the companies that discontinue sourcing
5  paper from RFP.  *Id*. at Tabs 5-6.  In addition, RFP seeks to hold Greenpeace liable for statements
6  in the Greenpeace publication "Resolute Forest Products: Key Risks and concerns for investors,"
7  that sets forth an analysis that "Greenpeace believes warrant[s] investor consideration."  *Id*. at Tab
8  7.  All of these publications, and the challenged statements, are quintessential advocacy and
9  opinion based on disclosed facts to persuade paper-sourcing companies and RFP's investors to
10 change practices and/or demand that RFP take a more sustainable approach to logging in the
11 Canadian Boreal Forest.
12     *Second*, the challenged statements touch on matters of scientific controversy on which
13 many reasonable minds may disagree, including the experts on either side in this case.  Indeed,
14 this is why numerous courts have concluded that debates on matters of scientific opinion are ill-
15 suited to defamation litigation.  Because environmental science, like so many scientific pursuits, is
16 "at best an inexact science in which numerous and widely varied approaches and philosophies
17 exist" and about which "there can be much debate and disagreement," *Spelson v. CBS, Inc.*, 581 F.
18 Supp. 1195, 1202-03 (N.D. Ill. 1984), *aff'd*, 757 F.2d 1291 (7th Cir. 1985), speech espousing
19 opinions on matters of environmental science, "[r]egardless of the merit of [those] opinion[s]," is
20 protected.  Indeed, where, as here, experts retained by Greenpeace have demonstrated that the
21 challenged statements present well-supported opinions in the complex debate regarding forest
22 sustainability and climate changes, such statements are nonactionable and the fact that RFP's
23 experts disagree just underscores the vigorous debate over these topics.  *Underwager v. Salter*, 22
24 F.3d 730, 736 (7th Cir. 1994) (Scientific controversies "must be settled by methods of science
25 rather than matters of litigation.").
26     *Finally*, the complained-of statements that RFP was a "Forest Destroyer," along with other
27 rhetorical flourishes such as "Tell Rite Aid's CEO to do the 'rite' thing for forests," constitutes the
28

8
Greenpeace Defendants' Reply in Support of Supplemental Brief
Case No. 17-cv-02824-JST

type of "colorful, figurative" language given wide latitude under the First Amendment.[7] *Underwager v. Channel 9 Australia*, 69 F.3d at 367; *see also Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980).  Undeniably, Greenpeace uses forceful language to make their point on matters of environmental and public controversy. But the Supreme Court has confirmed time and again that the First Amendment protects vigorous speech on matters of public debate, and the Ninth Circuit and California courts have only added to this body of law.  *See*, *e.g.,  Knievel v. ESPN*, 393 F.3d 1068, 1074 (9th Cir. 2005); *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996*, 302 F.3d 998, 1006 (9th Cir. 2002).  *Leidholdt v. L.F.P., Inc.*, 860 F.2d 890, 894 (9th Cir. 1988); *Info. Control Corp. v. Genesis One Computer Corp.*, 611 F.2d at 784. Because environmental issues generally, and the climate change debate in particular, are notoriously contentious topics, the recipients of these publications "would expect emphatic language" from Greenpeace.  RFP complains that referring to it as a "Forest Destroyer" is defamatory (and even criminally fraudulent), but such charged statements signal nonactionable opinion – not literal assertions that each and every tree was chopped down, as RFP argues.

### C. RFP Cannot Plausibly Plead Actual Malice

RFP's only argument that Greenpeace acted with actual malice – the "daunting" and requisite degree of fault – is that Greenpeace made allegedly false statements to "further their political and financial objectives." ECF No. 148, Suppl. Opp'n at 15-16. But whether Greenpeace solicits and receives donations from its supporters is insufficient to show the actual malice analysis, because "[e]conomic interests of the defendant and animus toward the plaintiff cannot serve as a basis for actual malice." *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1109 (N.D. Cal. 1999).  Also, Greenpeace's motives for publishing the 10 remaining publications in suit "cannot provide a sufficient basis for finding actual malice."  *Harte-Hanks Commc'ns Inc. v.*

---

[7] Notably, although it does not go nearly so far here, in public statements since defendants' motions were filed, RFP has deliberately distorted GP's references to the latitude given to rhetorical expression under the First Amendment, claiming that GP has "admitted" that its statements were false because some could be deemed hyperbolic. *See* http://www.nationalreview.com/article/445373/greenpeace-environmental-groups-grandstand-harass-company-finally-sues-them. This outrageous assertion has even made its way into the newest, largely copycat lawsuit filed by Resolute's law firm against Greenpeace regarding its advocacy involving the Dakota Access Pipeline. *See* Complaint ¶ 6 in *Energy Transfer Equity, L.P. v. Greenpeace Int'l*, 17-cv-00173 (D.N.D. Aug. 22, 2017).

9

Greenpeace Defendants' Reply in Support of Supplemental Brief
Case No. 17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

*Connaughton*, 491 U.S. 657, 665-66 (1989) ("[T]he actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term.") "Nor can the fact that the defendant published the defamatory material in order to increase its profits" – which was not the case here in any event – "suffice to prove actual malice." *Id.* at 667. And, Greenpeace's motive to "further their political" efforts – here, to further best environmental practices, ECF No. 148, Suppl. Opp'n at 16, are equally tangential to the actual malice inquiry. *See, e.g., Pleasant v. Lovell*, 876 F.2d 787, 795 (10th Cir. 1989) (holding "that the presence of some commercial activity does not change the standard of first amendment review" where the organization engaged in such activity had a clear political purpose (citing *In re Grand Jury Proceeding*, 842 F.2d 1229, 1235 (11th Cir. 1988)).[8] Indeed, the Supreme Court has made clear to the contrary that the speech of charitable organizations, even in connection with fundraising activities, is protected. ECF No. 62, Mot. Dismiss at 14 n.11.

RFP also cannot negate this Court's obligation to confirm whether it has plausibly pled actual malice at the pleading stage. *See* ECF No 127-1, Suppl. Opp'n at 17. Actual malice must be addressed at the pleading stage – especially where the pending claim may chill speech – and in the wake of *Iqbal* and *Twombly*, a plaintiff cannot state a claim simply by making conclusory assertions of the elements of actual malice. Federal courts across the country now routinely dismiss defamation cases for failure to state a claim where, as here, the plaintiff fails to plead allegations to make actual malice plausible, *see*, *e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016); *Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014),[9] and Ninth Circuit precedent consistently scrutinizes actual malice allegations where the Complaint sought to hold a defendant liable for First Amendment-protected speech, *see, e.g., Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082-84 (9th Cir. 1976) (applying heightened pleading standard to dismiss complaint because it clearly implicated the First Amendment);

---

[8] RFP only points to incidents outside applicable one-year statute of limitations as evidence of actual malice, ECF No. 127-1, Suppl. Opp'n at 18, and fails to note that such incidents were previously resolved between the parties. *See* ECF No. 62, Mot. Dismiss at 6.

[9] RFP, citing *Flowers v. Carville*, 310 F. 3d 1118, 1130 (9th Cir. 2002), suggests the Ninth Circuit does not assess plausibility of demonstrating actual malice at the pleading stage, but that case issued before the *Iqbal* and *Twombly* decisions.

10

Greenpeace Defendants' Reply in Support of Supplemental Brief
Case No. 17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

*Nicosia*, 72 F. Supp. 2d at 1109 ("conclusory statements that [a defamation defendant] should have known the truth does not satisfy the heightened pleading standard] of actual malice); *Barry v. Time, Inc.*, 584 F. Supp. 1110, 1121-22 (N.D. Cal. 1984) (recognizing that actual malice should be tested at the pleading stage and concluding that complaint insufficiently alleged actual malice).

Here, the undisputed facts, as pled, suggest a lack of actual malice insofar as in publishing the challenged statements, Greenpeace relied on published articles, statements in official court records, scientific reports, and government reports.[10]  *See* ECF No. 62, Mot. Dismiss at 28. Greenpeace's reliance on previously published material from reputable publications precludes RFP from plausibly pleading actual malice, as a matter of law.  *See, e.g., Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988); *Reader's Digest Ass'n v. Superior Court*, 37 Cal.3d 244, 259 (1984).  Here, the challenged publications expressly cite the criticisms lodged in government reports, comprehensive audits conducted on RFP's logging practices, critiques by First Nation Communities, and scientific analyses published in reputable sources – all of which contain the facts RFP challenges.  *See* ECF No. 62, Mot. Dismiss at 22 & n.29.  And moreover, the differing opinions expressed by RFP's experts and Greenpeace's experts, *compare, e.g.,* ECF No. 76, Cubbage Decl. ¶ 49 *with* ECF No. 98-2, Moore Decl. ¶ 43, also demonstrate that the complained-of statements could not have been made with actual malice by confirming that the subject matter, and sources on which they are based, are open to differing interpretations and opinion, thus precluding an inference that Greenpeace made those statements with knowledge of

---

[10] Notably, RFP does not deny that California courts routinely grant pre-discovery dismissal motions on opinion grounds.  *See* ECF No. 127-1, Suppl. Br. at 14-15.

falsity or serious doubts as to the truth.  *See* ECF No. 98, Reply Br. at 21-22.

DATED: August 25, 2017

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP

By: /s/ *Lacy H. Koonce, III*
    Lacy H. Koonce, III

Attorneys for Defendants
GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT and ROLF SKAR

## **CERTIFICATE OF SERVICE**

This is to certify that I have this day electronically filed the foregoing **GREENPEACE DEFENDANTS' REPLY IN SUPPORT OF SUPPLEMENTAL BRIEF** using the CM/ECF system and served upon counsel of record by electronic filing.

DATED: August 25, 2017                     Respectfully submitted,

                                           DAVIS WRIGHT TREMAINE LLP


                                           By:  /s/ *Lacy H. Koonce, III*
                                                Lacy H. Koonce, III

                                           Attorneys for Defendants
                                           GREENPEACE INTERNATIONAL (aka
                                           "GREENPEACE STICHTING COUNCIL"),
                                           GREENPEACE, INC., DANIEL BRINDIS,
                                           AMY MOAS, MATTHEW DAGGETT and
                                           ROLF SKAR

Certificate of Service
Case No. 17-cv-02824-JST