1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7   RESOLUTE FOREST PRODUCTS, INC.,        Case No. 17-cv-02824-JST
    ET AL.,
8
                    Plaintiffs,            **ORDER GRANTING IN PART
9                                          DEFENDANTS' MOTIONS TO STRIKE,
            v.                             GRANTING DEFENDANTS' MOTIONS
10                                         TO DISMISS**
    GREENPEACE INTERNATIONAL, ET
11  AL.,                                   Re: ECF No. 55, 56, 60, 61, 62

12                  Defendants.

13

14  **I.      INTRODUCTION**

15          Plaintiffs Resolute Forest Products, Inc., Resolute FP US. Inc., Resolute FP August, LLC,

16  Fibrek General Partnership, Fibrek U.S., Inc., Fibrek International, Inc., and Resolute FP Canada,

17  Inc. ("Resolute" or "Plaintiffs") filed this case alleging claims for violation of the federal RICO

18  laws[1] as well as state law claims including racketeering, defamation, conspiracy, and tortious

19  interference with prospective and contractual business relations.  ECF No. 1 ("Complaint").

20  Defendants are the environmental groups Greenpeace and Stand, as well as their employees and

21  officers.  Id.  Defendants now bring five separate motions to dismiss or strike, alleging that the

22  conduct at the heart of Resolute's lawsuit consists of speech and other advocacy that is protected

23  by the First Amendment.[2]

24          In one motion before the Court, Defendants Stand, formerly known as ForestEthics, and

25

26  ───────────────
    [1] The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962 et seq.
27
    [2] Plaintiffs originally brought suit in the Southern District of Georgia, but that Court found venue
28  improper and transferred the case here.  ECF No. 57; ECF No. 104.

                                            1

United States District Court
Northern District of California

Todd Paglia ("Paglia"), the organization's Executive Director, move to dismiss Resolute's complaint in its entirety for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  ECF No. 55.  In a second motion, Defendants Stand and Paglia move to strike Resolute's complaint under Georgia's statute concerning Strategic Lawsuits Against Public Participation ("anti-SLAPP"), O.C.G.A. § 9-11-11.1, arguing that the complaint interferes with their speech and conduct protected under the First Amendment. ECF No. 56.  In a third motion, Defendants Greenpeace International, Greenpeace, Inc., Greenpeace Fund, Inc., and Greenpeace employees Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar ("All Greenpeace Defendants" or "Greenpeace") also move to strike Resolute's complaint under Georgia's anti-SLAPP statute, or, in the alternative, under California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16.  ECF No. 60.  Greenpeace Fund moves to dismiss Resolute's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  ECF No. 61.  Finally, Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar (the "Other Greenpeace Defendants") move to dismiss Resolute's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  ECF No. 62.  The matters came for a hearing on October 10, 2017.

This court GRANTS Defendants' three motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure to all claims.  The Court also GRANTS both motions to strike as to all state claims.

## II.  BACKGROUND

### A.  Factual Background

Plaintiff Resolute is a multi-entity company in the forest products industry, which harvests trees, and mills wood to create paper and generate products, among other activities.  Complaint ¶ 24.  Resolute Forest Products, Inc. is the parent company of the remaining Resolute plaintiffs. Id.  Defendant Greenpeace includes related Dutch and American non-profit organizations, operating in many states including in California, where it is also organized, which advocate for environmental protections.  Complaint ¶ 31-33.  Defendant Greenpeace Fund raises and donates money to the Other Greenpeace Defendants.  Complaint ¶ 33.  Defendant Stand is a non-profit

organized in California, which advocates for environmental protections.  Complaint ¶ 34.

Defendant Paglia is the Executive Director of Stand.  Complaint ¶ 35.  The remaining individual

defendants are officers and employees of the Greenpeace Defendants.  Complaint ¶ 36.

Resolute alleges that, beginning around 2012, and continuing through the present,

Greenpeace targeted the company with a number of media campaigns designed to reduce the

forestry company's profits through false or misleading statements about the company's impacts on

the environment and on indigenous communities.  Complaint ¶¶ 5-19.  According to Resolute,

Greenpeace also spread false information in order to "fraudulently induce donations" to "pay its

leaders and continue raising more funds."  Complaint ¶¶ 44, 53.

Specifically, Resolute claims that in 2012, Greenpeace published a false report accusing

the company of logging in an area of Canada's Boreal forest protected by an environmental

agreement, the Canadian Boreal Forest Agreement ("CBFA").  Complaint ¶ 73.  According to

Resolute, Greenpeace later admitted that it had "incorrectly stated that Resolute had breached the

[CBFA]."  Complaint ¶ 78.  Greenpeace then began a campaign referring to Resolute Forest

Products as "Resolute Forest Destroyer," in which it fabricated "phony photographic evidence"

and misrepresented the location of Resolute's logging.  Complaint ¶ 81.   According to Resolute,

the term "forest destroyer" is false because the company harvests only a small portion of the

Boreal forest.  Complaint ¶ 89, 103.  Resolute accuses Greenpeace of "bad faith" because the

organization once reported that a logging moratorium to which Resolute was a party protected

woodland caribou habitat, but then later described Resolute's logging activities within that area –

which Resolute characterizes as "miniscule" – as "endangering" the caribou.  Complaint ¶ 109.

Additionally, Resolute accuses Greenpeace of falsely criticizing the forestry company's

relationship with indigenous communities, when in fact the company employs community

members, notwithstanding lay-offs "result[ing from] economic and market realities."  Complaint

¶¶ 115-17, 122.  Finally, Resolute claims that Greenpeace committed additional bad acts when

volunteers placed banners on a Montreal landmark claiming injustice by Resolute, and when

supporters presented Resolute with a "guardian tree" containing 61,000 signatures asking Resolute

to protect the forest.  Complaint ¶ 194.  In sum, Resolute alleges that Greenpeace publishes

"whopping lie[s] . . . misrepresenting Resolute's harvesting as a major climate change risk." Complaint ¶¶ 86, 100.[3]

Much of the complaint is devoted to Resolute's criticism of Defendants' choice of tactics. For example, Resolute criticizes Greenpeace's strategy of using "sensational headlines," as Greenpeace leaders have admitted to "emotionalizing issues" to increase pressure.  Complaint ¶¶ 51-53.  Resolute also claims harm from Greenpeace's use of particular words, such as "ancient," "old," and "endangered," to describe the forest it seeks to protect.  Complaint ¶ 89. Resolute claims that Greenpeace's tactics show that the organization does not "actually care about . . . real environmental protection," has no "genuine interest" in protecting the forest, and that "science and truth are not important to Greenpeace."  Complaint ¶¶ 56, 60, 63, 83.  Relatedly, Resolute claims it was harmed by Greenpeace's omission of certain favorable facts about Resolute in its campaigns, such as the fact that Resolute impacts only a very small percentage of the caribou population in the forests in which it operates, and that Resolute follows some forestry management standards.  Complaint ¶¶ 11, 92.

Resolute claims that Greenpeace, Inc., Greenpeace International, Greenpeace Fund, Stand and Paglia closely coordinated the above described "disinformation campaign and broader attacks."  Complaint ¶ 46.  Resolute alleges that the Defendants agreed to coordinate this campaign, and carried it out as a racketeering scheme and a "criminal enterprise."  Complaint ¶¶ 42-44.[4]  Beyond explaining that the Defendants operated together, Resolute does not identify specific acts of racketeering by specific defendants in its complaint and instead refers to the Defendants collectively as the "Greenpeace Enterprise."  See e.g., Complaint ¶ 107.

Resolute claims that as a result of the Defendants' coordinated publications and associated

---

[3] The complaint also includes a few specific allegations against Stand.  For example, Resolute alleges that Defendant Stand threatened it in May 2013, when the organization offered to either work with or target Resolute in a public campaign.  Complaint ¶ 93.

[4] To demonstrate a sustained conspiracy, Resolute describes a number of Greenpeace activities unrelated to any acts carried out against Resolute.  For example, Resolute criticizes Greenpeace for an alleged emotionalized campaign against nuclear power, Complaint ¶ 52, for walking on a protected site in Peru, Complaint ¶ 64, for publications criticizing tuna fishing, Complaint ¶ 57, and for targeting a scientist scheduled to testify before Congress about carbon pollution. Complaint ¶ 65.

United States District Court
Northern District of California

activism, a number of the company's corporate customers in Europe and the United States, such as 3M and Best Buy, withdrew their business from Resolute, causing the company up to $100 million CND in economic harm.  Complaint ¶¶ 155, 166-67.  Accordingly to Resolute, the Defendants also caused independent auditors such as Rainforest Alliance and Forest Stewardship Council to issue bad reviews of the company.  Complaint ¶¶ 86-88.  Resolute accordingly claims damages to its reputation and goodwill.  Complaint ¶¶ 213-16.  Finally, Resolute seeks an injunction against "wrongful activity and disgorgement."  Complaint ¶ 319.

### B.    Procedural History

Resolute filed the complaint in this action on May 31, 2016 in the Southern District of Georgia.  ECF No. 1.  The complaint includes eleven causes of action:

(1)    Racketeering in violation of 18 U.S.C. § 1962(c), on the basis of predicate acts including mail fraud, wire fraud, extortion, illegal interference with commerce, and illegal monetary transactions, in the form of transmitting false reports by email and twitter from 2007-2016, and processing donations;

(2)    Racketeering in violation of 18 U.S.C. § 1962(a) by investing income from racketeering;

(3)    Conspiracy in violation of 18 U.S.C. § 1962(d) by conspiring to spread false reports;

(4)    Racketeering in violation of state law on the basis of the same acts alleged under federal racketeering;

(5)    Conspiracy in violation of state law on the basis of the same acts alleged under federal conspiracy;

(6)    Defamation on the basis of "knowingly and intentionally publish[ing] false and injurious statements" that Resolute's logging is destructive, with actual malice because they knew or had reckless disregard with respect to the truth;

(7)    Tortious interference with prospective business relations on the basis of unspecified acts;

(8)    Tortious interference with contractual relations on the basis of unspecified acts;

1    (9)    Conspiracy in violation of state common law on the basis of unspecified acts;

2    (10)    Trademark dilution in violation of state law on the basis of the "Resolute Forest

3    Destroyer" campaign; and

4    (11)    Attorney's fees under state law.

5    Complaint ¶ 218-318.  Plaintiffs also seek treble damages under their federal and state RICO

6    causes of action.  See e.g., Complaint ¶ 253.  All claims are alleged against all defendants.  ECF

7    No. 1 at 92-122.

8          The Defendants moved to stay discovery, arguing that they intended to move for dismissal

9    and to strike.  ECF No. 35.  The Defendants then moved to dismiss and strike the complaint in five

10   separate motions, which are the subject of this order.  ECF No. 55, 56, 60, 61, 62.  The district

11   court in Georgia granted the defendants' motion to stay discovery, reasoning that "[b]ased on a

12   preliminary peek at the defense motions, [there was] an immediate and clear possibility of rulings

13   that would dismiss some or all of the claims and/or Defendants,"  especially "in light of the

14   complaint's grand scope of factual allegations, claims, and defendants."  ECF No. 66; see also

15   ECF No. 91 (denying motion to lift stay of discovery).

16         Concurrently with their motions to dismiss and strike, the Defendants also filed motions to

17   transfer venue under 28 U.S.C. § 1406(a) for improper venue, or in the alternative to the Northern

18   District of California for convenience under 28 U.S.C. § 1404(a).  ECF No. 57, ECF No. 62.  The

19   district court for the Southern District of Georgia granted Defendants' motions to transfer venue

20   and transferred the case to this court, finding venue improper because Resolute failed to establish

21   that a substantial part of the events giving rise to the claims occurred in the Southern District of

22   Georgia.  ECF No. 104, at 5-6.  Moreover, the district court for the Southern District of Georgia

23   held that venue was proper in the Northern District of California under 28 U.S.C. § 1406(a)

24   because several defendants reside in that district and a substantial part of the events giving rise to

25   the Plaintiffs' claims occurred in that district.  Id. at 8.

26         Although the motions to dismiss and strike were fully briefed in the district court in the

27   Southern District of Georgia, briefing on the motions continued in this Court after transfer.  The

28   Other Greenpeace Defendants filed a Supplemental Brief in Support of their Motions to Dismiss

United States District Court
Northern District of California

and Strike arguing that that California choice of law analysis applies to both motions, and that under such analysis, California substantive law applies.  ECF No. 127 at 5-10.  Defendant Greenpeace Fund also filed a Supplemental Brief in Support of their Motions to Dismiss and Strike, arguing that Resolute failed to state a claim that overcame First Amendment defenses. ECF No. 144.  Plaintiffs' Supplemental Memorandum opposing the Greenpeace Defendant's Rule 12(b)(6) Motions to Dismiss and Strike argued that anti-SLAPP did not apply to federal claims and that Plaintiffs met their burden as to anti-SLAPP and state claims.  ECF No. 148.  Defendants Stand and Paglia provided a Supplemental Brief with citations to Ninth Circuit, Northern District of California, and California state law regarding the claims and defenses.  ECF No. 161.  Plaintiffs filed a Supplemental Memorandum opposing Defendants' Supplemental briefs arguing that its complaint adequately pleaded RICO violations by Greenpeace Fund and Stand, and actual malice as to all Defendants.  ECF 165.  Finally Greenpeace Fund filed a Supplemental Reply arguing that Plaintiffs failed to state a claim.  ECF No. 168.[5]

### C.      Jurisdiction

The Court has federal question and pendent jurisdiction over this action under 28 U.S.C.§§ 1331 and 1367.[6]

### D.      Choice of Law

Because the case was brought under Georgia law and transferred, this Court must first determine what law governs.  The first choice of law question is which state's choice of law analysis applies.  In federal question cases, where, as here, a case is transferred for improper venue, the choice of law of the transferee state applies.  Nelson v. Int'l Paint Co., 716 F.2d 640, 643 (9th Cir. 1983).  Therefore, California choice of law rules apply.

---

[5] Throughout their briefing, the parties suggest that this Court take judicial notice of various documents and facts but do not make separate or formal requests for judicial notice.  ECF No. 60 at 6; ECF No. 62 at 6 n.3, 22 n. 23 & n.26; ECF No. 168 at 21 n. 7.  The Court did not rely on these documents and facts in making its rulings and so declines to rule on judicial notice.

[6] At several points throughout the litigation, Defendants have asserted that the district court lacked personal jurisdiction over them on the basis of insufficient minimum contacts.  See, e.g. ECF No. 55 at 2, ECF No. 62 at 8-9, ECF No. 94 at 8 n. 5, ECF No. 95 at 6 n.3.  Defendants have not prosecuted this particular ground for dismissal since the case was transferred to this Court, and the Court does not address the argument.

United States District Court
Northern District of California

California follows the governmental interest approach to choice of law.  Hurtado v. Superior Court, 11 Cal. 3d 574, 579 (1974).  Under that approach, the court must analyze "the respective interests of the states involved . . . the objective of which is 'to determine the law that most appropriately applies to the issue involved.'"  Id. at 579-80 (quoting Reich v. Purcell, 67 Cal. 2d 551, 554 (1967)).  In the first step of the governmental interest approach, "the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California."  Wash. Mut. Bank, FA v. Superior Court (Briseno), 24 Cal. 4th 906, 919 (2001).  "When neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law."  Homedics, Inc. v. Valley Forge Ins. Co., 315 F.3d 1135, 1138 (9th Cir. 2003).  Resolute has not identified any material difference between California and Georgia law, and the company does not appear to argue that California's anti-SLAPP statute does not apply or that California law does not apply to their claims arising under state law.  ECF No. 148 at 3, 10.  Moreover, even if there were a conflict, California law would likely prevail, as "California would appear to object strongly to the absence of a robust anti-SLAPP regime," Sarver v. Chartier, 813 F.3d 891, 899 (9th Cir. 2016).  Additionally, the "state with the 'predominant' interest" in applying its law "normally is the state in which [the underlying] conduct occurs," which would likely be California, as the individual Greenpeace and Stand defendants largely reside and work in San Francisco.  Cable v. Sahara Tahoe Corp., 93 Cal. App. 3d 384, 394 (1979); ECF No. 104 at 8 & n.3.  Accordingly, the Court concludes that California law applies to the substantive claims under state law, and California's anti-SLAPP statute applies to Defendants' motions to strike.

## III.   ANALYSIS

### A.   Motions to Dismiss

#### 1.   Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Dismissal under Rule 12(b)(6) is appropriate . . . where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

8

United States District Court
Northern District of California

1  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  For purposes of

2  the motions to dismiss, "all allegations of material fact are taken as true and construed in the light

3  most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38

4  (9th Cir. 1996).  "While a complaint . . . does not need detailed factual allegations, [it] requires

5  more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

6  will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In other words, a pleading

7  must allege "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.[7]

8        Resolute's RICO claims are subject to a higher pleading standard because they are based in

9  fraud.  When a civil RICO claim is based in fraud, the heightened pleading standard of Rule 9(b)

10  of the Federal Rules of Civil Procedure applies.  See Edwards v. Marin Park, Inc., 356 F.3d 1058,

11  1065–66 (9th Cir. 2004).  Under Rule 9(b) of the Federal Rules of Civil Procedure, plaintiffs must

12  "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

13  Stating with particularity entails "stat[ing] the time, place, and specific content of the false

14  representations as well as the identities of the parties to the misrepresentation."  Glaser v.

15  Nationstar Mortg., LLC, No. 16-CV-07245-LB, 2017 WL 1861850, at *10 (N.D. Cal. May 9,

16  2017).

17        **2.**       **Analysis**

18            **a.**       **Defamation and Related State Law Claims**

19        Defendants contend that Resolute fails to state a claim for defamation under state law, and

20  the related causes of action for tortious interference with contractual and prospective relationships.

21

22  _____

23  [7] The Defendants also suggest that a "heightened pleading standard" applies because the case
involves conduct protected by the First Amendment.  ECF No. 168 at 8-10.  The standard they

24  urge the Court to apply, however, is the "plausibility" standard set forth in Ashcroft v. Iqbal,
556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); see also ECF No.

25  168 at 9 ("[A]pplication of the plausibility pleading standard makes particular sense when examining
public figure defamation suits." (quoting Michel v. NYP Holdings, 816 F.3d 686, 702 (11th Cir.

26  2016)).  The Iqbal/Twombly standard applies to all cases in federal court.  See Nicholas
Tymoczko, Between the Possible and the Probable: Defining the Plausibility Standard After Bell

27  Atlantic Corp. v. Twombly and Ashcroft v. Iqbal, 94 Minn. L. Rev. 505, 507 (2009) ("Two years
later, the Supreme Court, in Ashcroft v. Iqbal, expanded on Twombly, confirming that its

28  plausibility standard applies to all complaints.").

1    Defendants assert that Resolute is a public figure for the purposes of their claims, and as a result,

2    must allege actual malice as an element of its defamation and related state law claims.  ECF Nos.

3    55-1 at 29-30, 62 at 26-27.  Resolute, for its part, does not meaningfully contend that it is not a

4    public figure, and asserts instead that actual malice is shown "in spades."  ECF No. 75 at 69 n.31.[8]

5           When a Plaintiff who is a public figure brings a defamation claim, that plaintiff must

6    demonstrate that the alleged defamatory statements were made with actual malice.  Makaeff v.

7    Trump Univ., LLC, 715 F.3d 254, 265 (9th Cir. 2013).  Moreover, "[u]nder California law, First

8    Amendment limitations are applicable to all claims, of whatever label, whose gravamen is the

9    alleged injurious falsehood of a statement."  Films of Distinction Inc. v. Allegro Film Prods., Inc.,

10   12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (internal quotation marks and citations omitted); see

11   also Blatty v. New York Times Co., 42 Cal. 3d 1033, 1042-43, 1045 (1986) (holding that plaintiffs

12   cannot avoid First Amendment limitations by "creative pleading[s]" that "affix a label other than

13   'defamation' to injurious falsehood claims").  Therefore, claims which are similar to defamation,

14   such as tortious interference with contractual or prospective relationships "are subject to the same

15   first amendment requirements that govern actions for defamation."  Unelko Corp. v. Rooney, 912

16   F.2d 1049, 1058 (9th Cir. 1990); see also Gardner v. Martino, 563 F.3d 981, 992 (9th Cir. 2009)

17   (applying Unelko's holding to actions for intentional interference with economic relationships and

18   for prospective economic advantage); Med. Lab Mgmt. Consultants v. ABC, 306 F.3d 806, 821

19   (9th Cir. 2002) (holding that tortious interference causes of action are subject to First Amendment

20   requirements).

21          This Court must first determine whether Resolute is a public figure.  The Ninth Circuit has

22   explained that there are two types of public figures: "(1) all-purpose public figures, who occupy

23   'positions of such persuasive power and influence that they are deemed public figures for all

24

25   _____

     [8] Defendants offer additional reasons to dismiss the claims.  For example, Defendants Stand and
26   Paglia argue that Resolute's complaint is an impermissible "shotgun" pleading, is in large part
     time-barred by California's one-year limitations period, and that its statements were opinion or
27   true.  ECF No. 55-1 at 4, 17, 25, 28, 31.  Likewise, the Other Greenpeace Defendants argue that
     many of the alleged defamatory statements were made by a non-party, Greenpeace Canada, the
28   entity responsible for much of the Boreal forest campaign.  ECF No. 62 at 19.  That the Court does
     not address these and other arguments should not be taken as an indication of their merits.

United States District Court
Northern District of California

1    purposes,' and (2) limited purpose public figures, who achieve their status by 'thrust[ing]

2    themselves to the forefront of particular public controversies in order to influence the resolution of

3    the issues involved.'"  Makaeff, 715 F.3d at 267.  The Court concludes that Resolute is not an all-

4    purpose public figure.  In Makaeff, the Ninth Circuit held that "[t]he record does not support the

5    conclusion that Trump University is generally famous or that it wields vast influence in public

6    affairs" because the university was private and lacked notoriety.  Id. at 265.  It is difficult see how

7    a Canadian forestry company, however large or influential, could be an all-purpose public figure

8    when Trump University, even before the election of its chairman Donald J. Trump to the

9    presidency, was not.

10           The Court finds, however, that Resolute is a limited public figure for the purposes of the

11   claims involved in this case.[9]  "In undertaking this inquiry," this Court is instructed to consider

12   "(i) whether a public controversy existed when the statements were made, (ii) whether the alleged

13   defamation is related to the plaintiff's participation in the controversy, and (iii) whether the

14   plaintiff voluntarily injected itself into the controversy for the purpose of influencing the

15   controversy's ultimate resolution."  Id. at 266.  "[A] public controversy must be a real dispute, the

16   outcome of which affects the general public or some segment of it."  Id. at 267 (quoting

17   Waldbaum v. Fairchild Publ'ns, 627 F.2d 1287, 1296 (D.C. Cir. 1980)).  This Court has little

18   difficulty concluding that Resolute's record, or lack thereof, of sustainable forestry practices in

19   general, and specifically in the Boreal forest, is a public controversy generating large scale

20   demonstrations and signed petitions, and that the alleged defamation is related to this public

21   controversy.  Complaint ¶ 195.  Accordingly, the first and second factors are met.

22           Whether Resolute met the third factor by "voluntarily inject[ing] itself" into this public

23   controversy is a closer call.  In concluding that Trump University was a limited public figure, the

24   Ninth Circuit held that "large scale, aggressing advertising can inject a person or entity into a

25   public controversy that arises from the subject of that advertising."  Id.  The Ninth Circuit has also

26   suggested that public concern, as a more general principle, can suffice, when it held that a

27

28   _____
     [9] Resolute has not argued against the contention that the company is a public figure.

United States District Court
Northern District of California

company producing herbal dietary supplements must show actual malice because speech regarding "the safety of products intended for human consumption . . . addressed a matter of public concern." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 840 (9th Cir. 2001) (internal quotation marks omitted) (citing Milkovich v. Lorain Journal Co., 497 U.S. 1, 14 (1990)).  This Court concludes that Resolute's own allegations about their world-wide reach and influence, as well as the public nature of its work in forestry and sustainability, show that the company is a limited public figure for purposes of its participation in the forestry industry, including in the Boreal forest.  Complaint ¶¶ 24, 93, 117-18.  Resolute claims that it is "the largest producer of newsprint in the world," and is "regularly recognized as an industry leader in sustainable forestry, environmental, and safety," receiving "over twenty . . . awards . . . and distinctions for its sustainability."  Complaint ¶¶ 24, 93.  Resolute also explains that it "works with local and provincial governments to support continued economic development."  ECF No. 1 at 51.

Because Resolute is a limited public figure, the company must show that the Defendants' speech and related actions were made with actual malice.  Makaeff, 715 F.3d at 265.  The actual malice standard precludes a public figure plaintiff from recovering "for a defamatory falsehood" absent evidence that the statement was made with knowledge of its falsity or reckless disregard for whether it was false, and that the statement was materially false.  New York Times v. Sullivan, 376 U.S. 254,  279-80 (1954); see also Air Wisconsin Airlines Corp. v. Hoeper, 134 S. Ct. 852, 861 (2014) (explaining that "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified").  To demonstrate reckless disregard of the truth, the party seeking to show actual malice must show that the speakers "entertained serious doubts as to the truth" of their statements.  Gertz v. Robert Welch, Inc., 418 U.S. 323, 334 n.6 (1974).  It is "not measured by whether a reasonably prudent man would have published or would have investigated before publishing," but by whether "the defendant in fact entertained serious doubts as to the truth of [its] publication."  St. Amant v. Thompson, 390 U. S. 727, 731 (1968).

To determine whether a plaintiff adequately pleads actual malice, the court must "disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the

12

1    defendants had a particular state of mind in publishing the statements as '[t]hreadbare recitals of

2    the elements of a cause of action, supported by mere conclusory statements,' are insufficient to

3    support a cause of action." Michel v. NYP Holdings, Inc., 816 F.3d 686, 703–04 (11th Cir. 2016)

4    (quoting Iqbal, 556 U.S. at 678). The court must then search for specific allegations of a speaker's

5    mindset, for example

6                      if the defendant provide[d] no source for the allegedly defamatory
                       statements[,] if the purported source denies giving the information,
7                      [if] the allegedly defamatory statements were based wholly on an
                       unverified anonymous telephone call or were published despite
8                      obvious [specified] reasons to doubt the veracity of the informant or
                       the accuracy of his reports or despite the inherently improbable
9                      nature of the statements themselves.

10   Biro v. Conde Nast, 807 F.3d 541, 545 (2d Cir. 2015) (quoting St. Amant, 390 U.S. at 73).

11   Another court in this district recently described this standard as a "demanding burden" because

12   "general allegations that a defendant should have known or should have investigated the truth of

13   his or her statements do not adequately plead actual malice." Wynn v. Chanos, 75 F. Supp. 3d

14   1228, 1239 (N.D. Cal. 2014); see also Palin v. New York Times Co., No. 17-CV-4853 (JSR),

15   2017 WL 3712177, at *10 (S.D.N.Y. Aug. 29, 2017) (requiring a "high degree of particularized

16   proof . . . before plaintiff can be said to have adequately alleged clear and convincing evidence of

17   actual malice.").

18          "States of mind may be pleaded generally, but a plaintiff still must point to details

19   sufficient to render a claim plausible." Pippen v. NBC Universal Media, LLC, 734 F.3d 610, 614

20   (7th Cir. 2013). For example, another court in this district concluded that actual malice was

21   sufficiently pled where the plaintiff alleged that a statement that he was fired for performance was

22   made with actual malice because the plaintiff had recently been praised by defendants for his

23   performance so defendants lacked reasonable ground for belief in the truth of that statement .

24   MacKinnon v. Logitech, Inc., 2016 WL 2897661, at *4 (N.D. Cal. May 18, 2016).

25          One such detail regarding state of mind that must be pled is that the speaker itself held the

26   requisite state of mind. "When there are multiple actors involved in an organizational defendant's

27   publication of a defamatory statement, the plaintiff must identify the individual responsible for

28   publication of a statement, and it is that individual the plaintiff must prove acted with actual

1   malice." Palin, 2017 WL 3712177 at *7. "[T]he state of mind required for actual malice would

2   have to be brought home to the persons in the [defendant's] organization having responsibility for

3   the publication of the [statement]." New York Times, 376 U.S. at 287.

4          Resolute's complaint does not meet its burden of pleading actual malice with the requisite

5   specificity.  Resolute asserts, without corresponding details, that "[t]he false and defamatory

6   statements set forth herein concerning Plaintiffs were made and published with actual malice, as

7   such statements were made by Defendants with knowledge of their falsity or reckless disregard for

8   their truth." Complaint ¶ 282.  This is, at most, "a formulaic recitation of the elements of a cause

9   of action," which the Supreme Court has made clear "will not do." Twombly, 550 U.S. at 555.

10  Setting aside the conclusory allegations, the most specific allegation in the complaint which could

11  show actual malice is that Greenpeace "concocted a scheme to falsely accuse Resolute of

12  breaching the CBFA." Complaint ¶¶ 72-80.  It could be inferred that this false accusation was

13  made knowingly because it allegedly derived from photos that "were faked." Id.  Similarly,

14  Resolute alleges that Greenpeace "redrew maps and rewrote long-standing geographical

15  delineations" when it made false claims about where Resolute harvested.  Complaint  ¶ 135.

16  While these allegations certainly suggest some degree of knowledge or intent, Resolute does not

17  explain that Greenpeace knew the photos were faked, rather than mistaken, and no such inference

18  can be drawn because Greenpeace shortly thereafter retracted its statement because it relied on

19  "inaccurate maps."  Complaint  ¶ 72-80.  The plausible inference from this allegation is that

20  Greenpeace made a mistake, not that it acted with malice.  Likewise, Resolute claims that

21  Greenpeace knowingly made false statements that Resolute was "a controversial logging

22  company" responsible for "significant degradation" of the forest.  Complaint ¶ 168.  Resolute does

23  not, and likely cannot, claim that the Greenpeace speaker responsible for this statement "in fact

24  entertained serious doubts as to the truth" of this statement, as it appears to be a claim that

25  Greenpeace held honestly.  St. Amant, 390 U.S. at 731; ECF No. 62 at 5-6.  In sum, fatal to its

26  ability to show actual malice, Resolute "does not provide any specific allegations that would

27  support a finding that [the Defendants] harbored serious subjective doubts as to the validity of

28  [their] assertions."  Wynn, 75 F. Supp. 3d at 1239.

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    Moreover, even if these allegations were sufficiently specific to meet the "demanding

2    burden" of showing Greenpeace spoke with an actually malicious mindset, Resolute still falls

3    short because the company never alleges who among the "Greenpeace enterprise" made the

4    knowingly false statements.  All of Resolute's discussions of photograph faking and map

5    redrawing fail to specify what individual did the faking, and Resolute does not allege that the

6    speaker of the alleged false statements regarding the CFBA knew that the photos were faked or

7    maps redrawn.  While Resolute does specifically allege some statements by specific individuals,

8    for example that Rolf Skar emailed Hearst fake evidence showing a violation of the CFBA, it does

9    not allege that Skar knew this evidence was fake nor that any specific Greenpeace individual made

10   a false claim relying on information, including photos or maps, that that individual knew to be

11   false at the time they made the claim.  Complaint ¶ 151.  Accordingly, Resolute fails to state a

12   claim for actual malice.

13       Additionally, while the facts pleaded in Resolute's complaint could, if true, show ill will or

14   bad faith, such a showing cannot support actual malice.  For example, Resolute claims Greenpeace

15   operated in bad faith because it earlier stated that the caribou population was protected, and then

16   later stated that it was endangered by Resolute's activities.  Complaint ¶ 108.  The Ninth Circuit

17   has held that evidence showing that a party had "initial enthusiasm" for, but later made negative

18   statements against, the party suing her for defamation was "not probative of whether she acted

19   with actual malice."  Makaeff, 715 F.3d at 271.  Similarly, Resolute suggests that the Defendants

20   were able to draw more donations because of their alleged defamatory statements.  Complaint

21   ¶¶ 88, 122.  The Supreme Court has explained, however, that "the actual malice standard is not

22   satisfied merely through a showing of ill will or malice in the ordinary sense of the term . . . nor

23   that the defendant published the defamatory material in order to increase its profits."  Harte-Hanks

24   Commc'ns Inc. v. Counnaughton, 491 U.S. 657, 665-67 (1989) ("Motive in publishing a story . . .

25   cannot provide a sufficient basis for finding actual malice.").

26       Accordingly, this Court dismisses Resolute's state defamation claim (Count 6), and related

27   state tort claims (Counts 7 and 8) for failure to state a claim showing actual malice.  See Wynn, 75

28   F. Supp. 3d at 1238-40 (dismissing defamation under Rule 12(b)(6) due to failure to claim actual

1    malice); Wynn v. Chanos, Case No. 14-cv-04329-WHO, 2015 WL 971360, at *3 (N.D. Cal. Mar.

2    3, 2015) (same).[10]

3        Additionally, many of Defendants' publications and statements – such as the publication

4    entitled "Sending a resolute message to a forest destroyer #standforforests" – appear to be shielded

5    by the First Amendment as statements that are not "provable as false," or statements that "cannot

6    reasonably be interpreted as stating actual facts." Milkovich, 497 U.S. at 19-20; Complaint ¶ 227.

7    The Court also dismisses Resolute's claims for defamation and related torts on the basis of these

8    statements for the separate and independent ground that the Defendants' speech constituted the

9    expression of opinion, or "different viewpoints that [are] a vital part of our democracy. . . ."

10   Partington v. Bugliosi, 56 F.3d 1147, 1154 (9th Cir. 1995).

11       In its quest to describe Greenpeace's statements as matters of fact instead of opinion,

12   Resolute often takes an overly literal approach to obviously overemphatic speech. For instance,

13   Resolute refers to a Greenpeace campaign that describes Resolute as a Canadian Boreal "Forest

14   Destroyer." ECF No. 1 ¶ 5. Resolute's claim depends on construing the word "destroy" to mean

15   "annihilate" or "eliminate completely." In this vein, Resolute's expert witness Peter Reich states,

16   "Resolute has not destroyed, and is not destroying, the boreal forest. Because almost all harvested

17   stands grow back to boreal forest, Defendants' claims about Resolute's forest 'destruction' cannot

18   be true." ECF No. 77 (Reich Decl.) ¶ 10.

19       As any reader of Greenpeace's statements will know, these are not the only permissible

20   constructions. The word "destroy" is a perennial instrument of hyperbole. See, e.g., Edward

21   Barsamian, "Gigi Hadid Takes on the New Look of Destroyed Denim," Vogue (Feb. 3, 2015) (on-

22   line ed.) (https://www.vogue.com/article/gigi-hadid-style-destroyed-denim). The Vogue writer

23   here does not intend to convey that Ms. Barsamian's jeans have been completely annihilated, but

24   merely that they are "worn with deliberate tears at the knee" or "riddled with curious new holes."

25   Similarly, when the entertainment writer Shaunee Flowers states that "Kanye West destroys Wiz

26

27   ────────────────

     [10]  The Court agrees with the Defendants that Resolute failed to state a claim for a trademark
     violation (Count 10) as the complaint fails to allege ownership of any trademark or any
28   competitive use of the its trademark. See 1 McCarthy on Trademarks and Unfair Competition §
     2:10 (5th ed.); ECF No. 62 at 38.

United States District Court
Northern District of California

1    Khalifa on Twitter and it's epic," she is not suggesting that Mr. West has actually eliminated Mr.

2    Khalifa, but only that he has made disparaging comments about him on social media.  Shaunee

3    Flowers, "Kanye West Destroys Wiz Khalifa On Twitter And It's Epic – Even Amber Rose Gets

4    Involved," Inquisitr.com (Jan. 27, 2016) (https://www.inquisitr.com/2744304/kanye-west-

5    destroys-wiz-khalifa-on-twitter-and-its-epic-even-amber-rose-gets-involved/).  And even cabining

6    the use of the word "destroy" as Resolute does, Greenpeace's expert makes plain that

7    "destruction" can mean many things.  "If the fundamental nature of the forest is degraded during

8    the course of management – for example by the loss of wildlife species or ecological processes –

9    then we can also reasonably say that it has been destroyed.  After all, a forest consists of more than

10   its trees."  ECF No. 98-3 (Malcolm Decl.) ¶ 6.

11          Moreover, many of Greenpeace's publications at issue rely on scientific research or fact.

12   See e.g., ECF No. 62 at 23.  "A statement of opinion based on fully disclosed facts can be

13   punished only if the . . . facts are themselves false and demeaning."  Standing Comm. on

14   Discipline v. Yagman, 55 F.3d 1430, 1439 (9th Cir. 1995).  The submission by Resolute of two

15   expert declarations makes more manifest, not less, the degree to which the challenged statements

16   are protected by the First Amendment.  These declarations illustrate the extent to which the

17   challenged statements (a) concern matters of public importance and (b) are subject to professional

18   debate.  For example, declarant Frederick Cubbage undertakes a review of the FSC's suspensions

19   of RFP's certifications and concludes:  "Resolute's 2013 FSC audits indicate possible bias.  Audits

20   of similar forests in similar situations should have similar outcomes. That did not appear to be the

21   case for Resolute.  An applicant in full compliance with relevant laws should be certified under

22   any standard."  ECF No. 76 (Cubbage Decl.) ¶ 49.  Greenpeace's expert, Keith Moore, disagrees

23   with this analysis, noting that because "[t]he FSC certification system establishes a higher

24   standard and a broader suite of requirements," it is possible to comply with the relevant law and

25   still be denied FSC certification.  ECF No. 98-2 ¶ 43.  Accordingly, he concludes, "[i]t is also

26   incorrect to state that a company that meets regulatory requirements is equivalent to a company

27   meeting all FSC certification requirements."  Id.  After all, as Dr. Cubbage notes, "forest

28   certification, generally, refers to a *non-state* market-based policy approach to achieving

17

1   sustainable forest practices and development," ECF No. 49 at ¶ 3, so by definition it will

2   encompass more than "relevant laws."  The academy, and not the courthouse, is the appropriate

3   place to resolve scientific disagreements of this kind.  As the Seventh Circuit has said, "scientific

4   controversies must be settled by the methods of science rather than by the methods of litigation."

5   Underwager v. Salter, 22 F.3d 730, 736 (7th Cir. 1994).  For that reason, "[c]ourts have a

6   justifiable reticence about venturing into the thicket of scientific debate, especially in the

7   defamation context."  Arthur v. Offit, 2010 WL 883745, at *6 (E.D. Va. Mar. 10, 2010).[11]

8                                   **b.      RICO Claims**

9            The Defendants move to dismiss Resolute's RICO claims on two grounds:  (1) Resolute

10  fails to plead its RICO claims with the required specificity, and (2) Resolute fails adequately to

11  allege proximate cause.  ECF No. 55-1 at 4, 17.[12]  Both arguments are well-taken.

12           Resolute's RICO claims sound in fraud.  In its RICO causes of actions, Resolute avers that

13  "[i]t was the purpose of the Greenpeace Enterprise to create and disseminate false and misleading

14  reports and information . . . for the unlawful purpose of soliciting fraudulent donations from the

15  public at-large."  Complaint ¶ 222; see also, e.g., Complaint ¶ 224 (describing Greenpeace's

16  "artifices to defraud"), Complaint ¶ 241 (referring to "fraudulently induced donations" and

17  "fraudulent misappropriation of proprietary customer, sourcing, or other trade secret

18  information").  Resolute specifically claims that the Defendants committed predicate acts of mail

19  and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.  Complaint ¶¶ 223 (Count 1), 240 (Count

20  2), 247 (Count 3), 257 (Count 4), 273 (Count 5).  And, although Resolute claims that the

21  Defendants committed other predicate acts which do not constitute fraud in name – such as

22

23  _____

24  [11] Professor Reich supports this conclusion when he states that his analysis of the forestry
    industry's impact on Canada's caribou population is based on science that is "complex" and
25  "uncertain."  ECF No. 77 ¶¶ 43-44 ("It is difficult for scientists to agree on what scale
    sustainability should be measured . . . .  Scientists are uncertain about what sustainable
26  biodiversity is [and]what healthy forests are.").

27  [12] To state a successful claim under RICO, a plaintiff must allege "(1) conduct (2) of an enterprise
    (3) through a pattern (4) of racketeering (known as 'predicate acts') (5) causing injury to the
28  plaintiff's 'business or property.'"  Grimmet v. Brown, 75 F.3d 506, 510 (9th Cir. 1996); see also
    Odom v. Microsoft Corp., 486 F.3d 541, 547 (9th Cir. 2007).

United States District Court
Northern District of California

1    extortion in violation of the Hobbs Act, 18 U.S.C. § 875 et seq. – Resolute locates these acts

2    within a "fraudulent scheme."  Complaint ¶ 223.  Rule 9(b)'s heightened pleading requirements

3    apply even where fraud "is not a necessary element of a claim," but the plaintiff chooses

4    "nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct,"

5    including "a unified course of fraudulent conduct."  Vess v. Ciba-Geigy Corp. USA, 317 F.3d

6    1097, 1103 (9th Cir. 2003).  "In that event, the claim is said to be 'grounded in fraud' or to 'sound

7    in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of

8    Rule 9(b)."  Id. at 1103-1104.  Resolute's predicate acts, including those which are not fraud in

9    name, rely entirely on a unified course of fraudulent conduct.

10        Resolute must therefore meet Rule 9(b)'s heightened pleading standards for each of its

11   RICO causes of action.  Namely, Resolute must "state the time, place, and specific content of the

12   false representations as well as the identities of the parties to the misrepresentation."  Edwards,

13   356 F.3d at 1066.  In doing so, Resolute must identify the specific "role of each defendant in each

14   scheme."  Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist., 940 F.2d 397, 405 (9th Cir.

15   1991).  The Ninth Circuit "has interpreted Rule 9(b) to require that allegations of fraud are specific

16   enough to give defendants notice of the particular misconduct which is alleged to constitute the

17   fraud charged so that they can defend against the charge and not just deny that they have done

18   anything wrong."  Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation

19   marks and citations omitted).  Resolute fails to meet these heightened pleading requirements.

20   While Resolute's complaint lists reports authored by Greenpeace, and includes dates of

21   publication in many cases, in many cases it does not identify the author of the reports, and it never

22   identifies the "misconduct" or "specific content" that constitutes fraud in the reports.[13]  Much of

23   Resolute's pleading is even less specific.  For example, Resolute claims that the Defendant

24   "processed millions of dollars in fraudulently induced donations," without describing a single

25   donor, donation date or amount, nor how the donation was fraudulently induced.  Complaint ¶

26   228.  As such, the defendants are not on "notice of the particular misconduct which is alleged to

27

28   ---
     [13] Fraud is not apparent from the titles of the reports, which include "Will You Stand for the
     Boreal Forest?" and "Posted: Good News for the Forest!"  Complaint ¶¶ 226-27.

United States District Court
Northern District of California

1    constitute the fraud." <u>Neubronner</u>, 6 F.3d at 671.  These general allegations fall far short of Rule

2    9(b)'s requirements, and Resolute's RICO claims are therefore dismissed.

3           Resolute has also failed to show proximate cause as to its RICO claims.  To have standing

4    under RICO, a plaintiff must allege that the RICO violation proximately caused injury to its

5    business or property.  <u>Holmes v. Securities Investor Protection Corp.</u>, 503 U.S. 258, 268 (1992);

6    <u>see also Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 463-64 (2007); <u>Chaset v. Fleer/Skybox</u>

7    <u>Int'l, LP</u>, 300 F.3d 1083, 1086 (9th Cir. 2002).  The Ninth Circuit has described the factors used to

8    determine whether a RICO claim adequately alleged proximate cause under RICO:

9           (1) whether there are more direct victims of the alleged wrongful conduct . . . .;
10          (2) whether it will be difficult to ascertain the amount of the plaintiff's damages
             attributable to defendant's wrongful conduct; and (3) whether the courts will have
             to adopt complicated rules apportioning damages to obviate the risk of multiple
11          recoveries.

12   <u>Mendoza v. Zirkle Fruit Co.</u>, 301 F.3d 1163, 1168-69 (9th Cir. 2002).  Under each of these factors,

13   Resolute falls short.  Resolute does not explain how it is the victim of Resolute's fundraising

14   scheme, given that the only persons who could have been defrauded were the donors who gave the

15   money.  Also, to the extent that Resolute can claim harm, determining the amount of Resolute's

16   damages attributable Greenpeace's advocacy would be very difficult, because there are numerous

17   reasons why a customer might cease or interrupt its relationship with Resolute, as Resolute itself

18   acknowledges.  <u>See e.g.</u>, Complaint ¶¶ 12, 16, 258.  Because of the indirect and convoluted path

19   that might connect Greenpeace's actions to Resolute's harm, if any, the Court would be required

20   adopt "complicated rules apportioning damages." <u>Mendoza</u>, 301 F.3d at 1168-69.  Resolute's

21   failure to plead proximate cause as to its RICO claims is therefore an additional reason to dismiss

22   its claims.[14]

23   _____

24   [14] This Court agrees with Defendants Stand and Paglia that Resolute fails to state a claim for its
     state RICO claims for the same reasons it fails to state a claim for its federal RICO claims, and so
25   dismisses the claim (Count 4).  ECF No. 55-1 at 24.  Moreover, because Resolute fails to state a
     claim for any of the underlying claims, it also fails to state a claim for conspiracy under federal
26   law, state law, or common law, and the Court dismisses those claims as well (Counts 3, 5, and 9).
     <u>See e.g.</u>, <u>Applied Equipment Corp. v. Litton Saudi Arabia Ltd.</u>, 7 Cal. 4th 503, 510–511 (1994);
27   ECF No. 64 at 40 n.54.

28   Because this Court dismisses Resolute's RICO claims on the basis of their failure to meet the
     heightened pleading standards required under Rule 9(b) of the Federal Rules of Civil Procedure,

Resolute's RICO claims based on alleged Hobbs Act violations fail for an additional, separate reason:  Resolute fails to allege predicate acts of extortion under the Hobbs Act.  There is no Hobbs Act claim because the Defendants have not obtained "property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).  To show extortion, Resolute must allege that that Greenpeace demanded property from Resolute itself.  Sekhar v. United States, 133 S.Ct. 2720, 2725 (2013); Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 404 (2003).  In Scheidler, the Court held that the National Organization for Women ("NOW") had not alleged extortion against activists who sought to shut down abortion clinics because although those activists sought to harm the clinics and NOW, they did not seek to obtain any property from such harm.  537 U.S. at 405 ("Petitioners may have deprived or sought to deprive respondents of their alleged property right of exclusive control of their business assets, but they did not acquire any such property.  Petitioners neither pursued nor received something of value from respondents that they could exercise, transfer, or sell.").  Likewise here, even if Greenpeace sought to harm Resolute through Resolute's customers, it did not seek to obtain the business assets it sought to deprive Resolute of.  Any alleged property transfer induced by fraud, coercion, or threats, moved between Greenpeace and its donors, or between Resolute and its customers.  There was no alleged property transfer between Greenpeace and Resolute.

## B. Motions to Strike

Although each of Resolute's claims is dismissed for failure to show actual malice, or for failure to state a claim under RICO, this Court nonetheless addresses the motions to strike "[b]ecause the issue of attorney's fees and costs is not rendered moot by a dismissal." Robinson v. Alameda Cnty., 875 F. Supp. 2d 1029, 1046 (N.D. Cal. 2012).

California law provides for the pre-trial dismissal of certain actions called Strategic

---

and because Resolute failed to allege proximate cause, the Court need not reach the issue of first impression urged by the Amici:  whether the actual malice standard should apply to RICO claims which sound in defamation.  ECF No. 63; see also ECF No. 144 at 1-3 (Greenpeace Fund Defendants arguing that actual malice applies to all claims and thus implicitly to RICO claims); ECF No. 161 at 15 (same with respect to Defendants Stand and Paglia).

Lawsuits Against Public Participation, or SLAPPs, that "'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'"  Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003) (quoting Wilcox v. Superior Court, 33 Cal. Rptr. 2d 446, 450 (1994)).  The California legislature enacted the anti-SLAPP statute "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation."  Metabolife, 264 F.3d at 839.  The Greenpeace Defendants contend that Resolute's lawsuit was just that – "an effort to muzzle protected speech – here, statements about the company's poor environmental record" – and that this Court should strike the lawsuit in its entirety under California's anti-SLAPP statute.  ECF No. 60 at 2-3. Defendants Stand and Paglia contend that Resolute's lawsuit "was brought with the obvious intent to silence" their speech regarding matters of public importance and move to strike it through anti-SLAPP.  ECF No. 56-1 at 2.

### 1.        Applicability of Anti-SLAPP

The Ninth Circuit has made clear that "California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court."  Thomas v. Fry's Electronics, Inc., 400 F.3d 1206, 1206 (9th Cir. 2005).  In particular, because this Court has diversity jurisdiction over Resolute's state-law claims, it must apply California's anti–SLAPP statute as a substantive element of the state law.  U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 973 (9th Cir.1999).

While California's anti-SLAPP statute clearly applies to state claims brought in federal courts, see supra, and even to federal claims brought in state court, see Vergos v. McNeal, 146 Cal. App. 4th 1387, 1392 n.4 (2007), it does not clearly apply to federal claims brought in federal court.  The Ninth Circuit has held that "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims.'"  Hilton v. Hallmark Cards, 599 F.3d 894, 901 (9th Cir. 2010).  In other words, "the anti-SLAPP statute does not apply to federal law causes of action."  Doe v. Gangland Prods., Inc., 730 F.3d 946, 955 n. 3 (9th Cir. 2013) (quoting Hilton, 599 F.2d at 901); see also Hudson Martin Ferrante St. Witten & Demaria, PC v. Forsythe, No. 16-CV-06551-BLF, 2017 WL 1315576, at *2 (N.D. Cal. Apr. 7, 2017) (holding that the "anti-SLAPP

1   statute does not apply to claims asserted under federal law"); United Tactical Sys., LLC v. Real

2   Action Paintball, Inc., 143 F. Supp. 3d 982, 998 (N.D. Cal 2015) (same).

3          Defendants argue that because California's anti-SLAPP statute applies broadly to all first

4   amendment protected conduct, the anti-SLAPP statute should extend to Plaintiffs' federal RICO

5   claims.  ECF No. 162 at 8-9.  Defendants are correct that in California state courts, "the nature . . .

6   of the action is not what is critical" to anti-SLAPP analyses.  Church of Scientology v.

7   Wollersheim, 42 Cal. App. 4th 628, 652 (1996), disapproved on other grounds, 29 Cal. 4th 53

8   (2002).  It is also true, under California law, that "anti-SLAPP procedures are designed to shield a

9   defendant's constitutionally protected conduct from the undue burden of frivolous litigation," such

10  that courts should rule on plaintiffs' "claims of protected activity, rather than reward artful

11  pleading by ignoring such claims if they are mixed with assertions of unprotected activity."  Baral

12  v. Schmitt, 1 Cal. 5th 376, 393 (2016).  That California's anti-SLAPP statute might be broadly

13  applied in California state courts, however, does not mean that the California legislature has the

14  authority to create defenses to federal law claims brought in federal court.  The Court will consider

15  the Defendants' anti-SLAPP motions to strike as to Resolute's state law claims only.

16          **2.       Legal Standards**

17          The Ninth Circuit evaluates anti-SLAPP motions in two steps:  "First, the defendant must

18  'make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in

19  connection with a public issue in furtherance of the defendant's right to free speech under the

20  United States or California Constitution.'"  In re NCAA Student-Athlete Name & Likeness

21  Licensing Litig., 724 F.3d 1268, 1272–73 (9th Cir. 2013) (quoting Batzel, 333 F.3d at 1024).

22  Specifically, the Defendants must show that Resolute's claims are based on a written or oral

23  statement "made in a place open to the public or a public forum in connection with an issue of

24  public interest," or based on conduct that furthered "the exercise of the constitutional right of

25  petition or the constitutional right of free speech in connection with a public issue or an issue of

26  public interest."  Cal. Code Civ. Proc. § 425.16(e)(3), (4).  The California legislature has

27  instructed that public issues should be "construed broadly."  Id. § 425.16 (a).  Accordingly,

28  California courts "have broadly construed public interest to include not only governmental

United States District Court
Northern District of California

1   matters, but also private conduct that impacts a broad segment of society and/or that affects a

2   community in a manner similar to that of a governmental entity." Cross v. Cooper, 197 Cal. App.

3   4th 357, 372 (2011), as modified on denial of reh'g (Aug. 4, 2011), review denied (Oct. 12, 2011)

4   (internal quotation marks and citations omitted).

5      Second, Plaintiffs must establish "a reasonable probability" that they "will prevail" on their

6   claims. Batzel, 333 F.3d at 1024 (citing Cal. Code Civ. Proc. § 425.16(b)(1)). Resolute "must

7   demonstrate that the complaint is legally sufficient and supported by a prima facie showing of

8   facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited."

9   Metabolife, 264 F.3d at 840 (internal quotation marks omitted).

10                  **3.    Analysis**

11      As to the first step of the anti-SLAPP analysis, it is clear that the Defendants were involved

12   in protected activity with respect to Resolute's state claims. According to the company itself, the

13   activities at issue in its claims include that Greenpeace: published a report stating that Resolute

14   breached a forest protection agreement, referred to the company as a "forest destroyer," presented

15   the company with thousands of signatures asking it to protect the forest, published reports entitled,

16   for example, "Why Forests Are Critical For Public Health," and publicly represented the

17   company's "harvesting as a major climate change risk." Complaint ¶¶ 73, 81, 194, 226. The

18   Ninth Circuit has concluded that "statements warning consumers of fraudulent or deceptive

19   business practices constitute a topic of widespread public interest." Makaeff, 715 F.3d at 262.

20   Likewise, California courts have acknowledged that environmental harm is a matter of public

21   interest for the purposes of anti-SLAPP. Ludwig v. Superior Court, 37 Cal. App. 4th 8 (1995)

22   (holding that speech regarding the environmental effects of a mall satisfied the anti-SLAPP

23   statute's "public interest" requirement).[15]  The Court has little difficulty concluding that the

24   activities about which Resolute complains were "issues of public interest" for the purposes of

25   California's anti-SLAPP statute and, accordingly that the first step of the anti-SLAPP analysis is

26

27   [15] Perhaps for these reasons, Resolute does not appear to contend that Greenpeace's statements
     regard anything other than a matter of public interest, focusing instead on whether the Georgia

28   anti-SLAPP statute applied retroactively, and whether the company adequately alleged actual
     malice. ECF No. 75, at 31-35; ECF No. 165 at 7-11.

1    satisfied.  Cal Civ. Proc. Code § 425.16(e).

2         As for the second step, Resolute has not met its burden of showing a probability of success

3    on its state claims as a matter of law.  See Metabolife, 264 F.3d at 840 ("[A] defendant's anti-

4    SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the

5    claims.").  As this Court previously concluded, Resolute has not alleged facts which could show

6    actual malice by Defendants, and the "no plausibility" showing required for a motion to dismiss is

7    more demanding than the "no probability" showing required for a motion to strike.   In other

8    words, if Plaintiffs cannot plead a plausible cause of action under the FRCP 12(b)(6) standard,

9    then Plaintiffs as a matter of law cannot meet the probability of success on the merits standard.

10   Hilton, 599 F.3d at 902; see also Xu v. Yamanaka, No. 13-CV-3240 YGR, 2014 WL 342271, at

11   *4 (N.D. Cal. Jan. 30, 2014), aff'd sub nom. Mebo Int'l, Inc. v. Yamanaka, 607 F. App'x 768 (9th

12   Cir. 2015).  Accordingly, because the Defendants' have shown that Resolute's claims derive from

13   protected public interest activity, and Resolute has not in turn shown that the company will

14   probably prevail, this Court grants the Defendants' motions to strike as to each of its state law

15   claims (Counts 4-11).   In re NCAA Student-Athlete Name & Likeness Licensing Litig., 724 F.3d

16   at 1272–73; Batzel, 333 F.3d at 1024.

17                   **4.      Attorney's Fees and Costs**

18        "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or

19   her attorney's fees and costs."  Cal. Code Civ. Proc. § 415.16(c)(1).  The attorneys' fees provision

20   under anti-SLAPP motions is mandatory, unlike fees for motions to dismiss.  See Makaeff, 715

21   F.3d at 274 (Kozinski, J., concurring); Xu, 2014 WL 342271, at *5.  Accordingly, the Defendants

22   are "entitled to recover attorney fees and costs incurred in moving to strike the claims on

23   which . . . [they] prevailed, but not fees and costs incurred in moving to strike the remaining

24   claims.  Choyce v. SF Bay Area Indep. Media Ctr., No. 13-CV-01842-JST, 2013 WL 6234628, at

25   *10 (N.D. Cal. Dec. 2, 2013).  To be precise, the Defendants are entitled to attorneys' fees as to

26   each state law claim (Counts 4-11).

27        It is unclear to the Court why Resolute pleaded attorney's fees under Georgia state law as a

28   separate claim for relief, with only one paragraph, and no facts or argument for why fees are due.

1    Complaint ¶ 318.  It is also unclear, as with several of Resolute's claims, whether it continues to

2    prosecute that claim under California state law.  In any event, the Defendants are due attorney's

3    fees and costs at this juncture, at least as to the state law claims for which this court grants

4    Defendants' motions to strike, and Resolute is not.

5         **C.    Discovery**

6         Resolute contends that neither the motions to dismiss nor the motions to strike can be

7    granted until Resolute has been afforded the opportunity to take discovery.

8         As to the motions to strike, federal courts allow for discovery before granting an anti-

9    SLAPP motion on grounds of *factual* insufficiency, because under Rule 12 of the Federal Rules of

10   Civil Procedure the "sufficiency of a plaintiff's case will be tested prior to discovery only for legal

11   sufficiency."  Makaeff , 715 F.3d at 274 (Kozinski, J., concurring) (citing Fed. R. Civ. P. 12).  The

12   Court's decision to grant Defendants' motions to strike, however, is based on the *legal*

13   insufficiency of the pleadings.  See Wynn, 2015 WL 971360, at *2 (granting anti-SLAPP motion

14   to strike because discovery because the claim fails as a matter of law).  Resolute is not entitled to

15   discovery before the Court rules on the motions to strike because "further facts would not alter the

16   Court's analysis."  Agnir v. Gryphon Sols., LLC, No. 12-CV-04470-LHK, 2013 WL 4082974, at

17   *16 (N.D. Cal. Aug. 9, 2013).

18        Resolute's reference to Metabolife does not convince the Court otherwise.  264 F.3d 832.

19   In Metabolife, the Ninth Circuit held that a district court should have granted discovery before

20   granting a defendant's motion to strike under anti-SLAPP on the basis of falsity, as a matter of

21   fact or sufficiency of the evidence, because experts showed the claims to be false.  Id. at 846-47.

22   That case is inapposite, because actual malice in that case was lacking as a factual matter, whereas

23   here, the motions to strike are granted as a matter of law.  See also Wynn, 2015 WL 971360, at *2

24   (rejecting plaintiffs' similar arguments that Metabolife entitles it to discovery).

25        For the same reasons that the Court holds that discovery is not due before it strikes

26   Resolute's claims, the Court also holds that discovery is not due before it dismisses the claims

27   under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Like the motions to strike, this Court

28   dismisses Resolute's claims as a matter of law, not on the basis of facts or sufficiency of the

United States District Court
Northern District of California

evidence.  Indeed, another court in this district recently dismissed a case dismissed on legal grounds over similar objections from a plaintiff.  See Wynn, 75 F. Supp. 3d at 1240.  In that case the court concluded that "there is no reasonable expectation that discovery will prove any evidence that demonstrates subjective malice" and the same can be said here.  Id.

Although the Ninth Circuit has not yet had occasion to consider this question – whether discovery should be afforded prior to a dismissal on the basis of actual malice post-Iqbal – the circuits that have considered the question have uniformly held that a claim may be dismissed for failing plausibly to allege actual malice without permitting discovery.  See e.g., Michel, 816 F.3d at 701-02; Biro, 807 F.3d at 544-45; Schatz v. Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir. 2012); see also McDonald v. Wise, 769 F.3d 1202, 1220 (10th Cir. 2014) (holding, more generally, that the Iqbal standard applies to claims dismissed under actual malice); Pippen, 734 F.3d at 614 (same);  Mayfield v. Nat'l Ass'n for Stock Car Auto Racing,Inc., 674 F.3d 369, 377 (4th Cir. 2012) (same).  The reasoning of these cases is persuasive.

No discovery on actual malice, or otherwise, is due to Resolute.

## CONCLUSION

Defendants' motions to dismiss are granted in full.  This Court dismisses Counts 1-11 and grants in full the motions at ECF Nos. 55, 61, and 62.  Defendants' motions to strike, at ECF No. 56 and 60, are granted in part, such that the state claims are dismissed from the complaint entirely. This Court strikes Counts 4-11.

This Court's orders as to the motions to dismiss and strike are without prejudice, and Plaintiffs may file an amended complaint.  "[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment."  Verizon Delaware, Inc. v. Covad Commc'ns Co., 377 F.3d 1081, 1091 (9th Cir. 2004).  As to the motions to dismiss, leave to amend should be freely given.  Fed. R. Civ. P. 15(a).

\\\

\\\

\\\

1    Any amended complaint must be filed within twenty-one days of the date of this order.

2    IT IS SO ORDERED.

3    Dated: October 16, 2017

4                                                                   _____
                                                                    JON S. TIGAR
5                                                                   United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California