UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GREENPEACE INTERNATIONAL, et al.,<br><br>Defendants. | Case No. 17-cv-02824-JST (KAW)<br><br>**ORDER REGARDING DISCOVERY LETTER NOS. 1 AND 2**<br><br>Re: Dkt. No. 267, 268 |

Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek U.S., Inc., Fibrek International, Inc., and Resolute FP Canada, Inc. (collectively, "Resolute") filed the instant complaint against Defendants Greenpeace International, Greenpeace, Inc., Greenpeace Fund, Inc., Daniel Brindis, Amy Moas, Matthew Daggert, and Rolf Skar (collectively, "Greenpeace Defendants"), as well as ForestEthics and Todd Paglia. (First Amended Compl. ("FAC") at 1, Dkt. No. 185.) Plaintiffs brought claims for: (1) racketeering in violation of 18 U.S.C. § 1962(c), (2) racketeering in violation of 18 U.S.C. § 1962(a), (3) conspiracy in violation of 18 U.S.C. § 1962(d), (4) defamation, (5) trade libel, (6) tortious interference with prospective business relations, (7) tortious interference with contractual relations, (8) common law civil conspiracy, and (9) unfair business practices in violation of the Unfair Competition Law ("UCL").

On June 6, 2019, Plaintiffs and the Greenpeace Defendants filed Discovery Letter No. 1 concerning Plaintiffs' First Set of Requests for Production of Documents ("RFPs") and First Set of Interrogatories. (Discovery Letter No. 1, Dkt. No. 267.) The discovery letter did not include the RFPs and Interrogatories at issue; therefore, the Court is unable to provide rulings on specific discovery requests. Instead, the Court will provide "guidance concerning the scope of discovery

in this proceeding," as requested by the parties. (Discovery Letter No. 1 at ii.)

On July 9, 2019, Plaintiffs and Greenpeace Defendants filed Discovery Letter No. 2 concerning the timing of Greenpeace Defendants' response to the RFPs and Interrogatories, in light of the pending dispute. (Discovery Letter No. 2, Dkt. No. 268.)[1]

## I. BACKGROUND

Plaintiffs are corporate entities in the forest products industry, harvesting wood for the manufacture and sale of paper products. (FAC ¶¶ 24-30.) Greenpeace Defendants are non-profit environmental advocacy organizations and several of their employees. (FAC ¶¶ 31-33, 36-39.) Plaintiffs allege that Defendants worked with other environmental organizations, including non-party Greenpeace Canada, to carry out a campaign called "Resolute: Forest Destroyer," targeting Plaintiff with misrepresentations regarding their sustainability practices in Canada. (FAC ¶¶ 5-7.)

On January 22, 2019, the presiding judge granted in part and denied in part Defendants' motions to dismiss and strike. (Ord., Dkt. No. 246.) There, the presiding judge considered Plaintiffs' claims as it related to four primary sets of allegations. (*Id.* at 4-7.)

The first set of allegations concern the Canadian Boreal Forest Agreement ("CBFA"). Under this agreement, Plaintiffs and other forest companies would harvest in agreed-upon areas. (FAC ¶¶ 69-70.) In exchange, environmental groups such as Greenpeace Canada would not publicly campaign against the signatory companies. Plaintiffs allege, however, that in September 2012, Defendant Paglia and other non-parties accused Plaintiffs of logging in areas protected by the CBFA. (FAC ¶ 224.) In December 2012, Greenpeace Canada issued a report about Plaintiffs' purported failure to comply with the CBFA. (FAC ¶ 225.) Plaintiffs then sent a letter to the CBFA signatories, explaining why photographs and videos in the Greenpeace Canada report were misleading. (FAC ¶¶ 106-07.) In March 2013, Greenpeace Canada issued a notice of correction, stating that it had incorrectly stated that Plaintiffs had breached the CBFA. (FAC ¶ 115.)

---

[1] The Court also notes that both discovery letters do not comply with Civil Local Rule 3-4(c)(2), which requires that text -- including footnotes -- be in 12-point standard font. In the future, the Court may terminate any discovery letter that fails to comply with the Civil Local Rules and the Court's standing order. If the parties require additional pages, they should request leave of Court.

2

Plaintiffs do not allege any further specific misrepresentations regarding their compliance with he CBFA. (*See* Ord. at 4-5.)

The second set of allegations relate to an alleged "operational memorandum," memorializing an agreement between Defendants and other environmental organizations to target Plaintiffs. (FAC ¶ 76.)

The third set of allegations concern claims that Plaintiffs were logging in the Montagnes Blanches. In 2010, Greenpeace Canada issued a report that Plaintiffs were operating in the Montagnes Blanches. (FAC ¶ 212.) In May 31, 2016, Quebec's Minister of Forests, Wildlife, and Parks issued a statement that the map used in the report was misleading. (FAC ¶ 217.) Defendants Greenpeace USA and Greenpeace International, however, continued to feature the report on their websites. (FAC ¶ 218.) In December 2016, Defendant Moas wrote a letter to Plaintiffs' customers, claiming that Plaintiffs were operating in the Montagnes Blanches. (FAC ¶ 304.) In January 2017, Plaintiffs sent Defendants a cease and desist letter. (FAC ¶ 306.) In May 2017, Defendant Greenpeace, Inc. responded by publishing a report titled "Clearcutting Free Speech," which accused Plaintiffs of trying to silence Greenpeace and again stating that Plaintiffs were logging in the Montagnes Blanches. (FAC ¶¶ 308-09.) Defendants Moas, Skar, and Brindis then distributed the Clearcutting report at the 2017 Book Exposition. (FAC ¶ 311.)

The final set of allegations relate to Greenpeace Defendants' alleged mischaracterization of why Plaintiffs had lost four Forest Stewardship Council ("FSC") certifications. (FAC ¶¶ 186-188.)

The presiding judge first considered Plaintiffs' defamation claim. (Ord. at 8-20.) As an initial matter, the presiding judge found that the statute of limitations was one year; because Plaintiffs "filed [their] complaint on May 31, 2016, . . . all defamation claims must be based on statements made on or after May 31, 2015, and all other state law claims must be based on conduct on or after May 31, 2014." (*Id.* at 10-11.) The presiding judge also dismissed Defendant Greenpeace Fund, explaining that Plaintiffs had not alleged that Defendant Greenpeace Fund had published any defamatory statements, nor that it had editorial oversight over the other Greenpeace Defendants. (*Id.* at 14-15.)

3

1    The presiding judge then concluded that Plaintiffs only had a defamation claim based on
2    the Montagnes Blanches statements, specifically Defendant Moas's December 2016 letter and the
3    May 2017 Clearcutting report. (Ord. at 17-19.) Both statements were made after the Quebec
4    Minister's statement regarding the inaccuracy of the map relied upon by Defendants. (*Id.*) As to
5    the other allegations, the presiding judge found that the operational memorandum "add[ed]
6    nothing to the Court's actual malice analysis," the CBFA statements were published outside of the
7    statute of limitations by non-parties, and the FSC certification statements were "neither materially
8    false nor provably false." (*Id.* at 16-17, 19-20.)

With respect to the remaining causes of action, the presiding judge "dismisse[d] all claims except for [Plaintiffs'] claim for defamation based on the Montagnes Blanches statements, and the corresponding UCL claim, against defendants Greenpeace, Inc., Greenpeace International, Brindis, Moas, and Skar." (Ord. at 34.) The dismissal was with prejudice. (*Id.*)

## II. LEGAL STANDARD

Under Rule 26, in a civil action, a party may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Additionally, the court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

## III. DISCUSSION

The parties dispute whether the scope of the discovery sought by Plaintiffs is appropriate. For example, Plaintiffs seek "[a]ll documents, data, and communications concerning Resolute" and all documents concerning "the impacts of the forest product industry on the population of

4

woodland caribou in Canada" and on "intact forest landscapes in the Canadian Boreal Forest," as well as information on the operational memorandum, hacking and cyber activity directed at Plaintiffs and its customers, and financial support of Greenpeace for any "market campaign" about Plaintiffs. (Discovery Letter No. 1 at 1.) The discovery requests also seek information from the past ten years, and seeks information regarding non-party Greenpeace Canada. (*Id.*)

Plaintiffs make two primary arguments in support of their discovery requests. First, Plaintiffs argue that the discovery requests go to the element of actual malice by demonstrating motivation in disseminating the allegedly false claims. (Discovery Letter No. 1 at 3-5.) Second, Plaintiff contends it can get discovery regarding statements other than the December 16, 2016 letter by Defendant Moas and the May 2017 Clearcutting report because their UCL claim has a four-year statute of limitations. (*Id.* at 5.) The Court finds that the scope and time period of many discovery requests is too broad, particularly in light of the presiding judge's dismissal order.

### A. Actual Malice

Plaintiffs argue that the scope of the discovery is warranted to show actual malice. (Discovery Letter No. 1 at 4.) In alleging defamation against a public figure, a plaintiff must demonstrate "'actual malice'; that is, 'with knowledge of their falsity or with reckless disregard for the truth.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 265 (9th Cir. 2013) (quoting *Gertz v. Welch*, 418 U.S. 323, 342 (1974) (internal modification omitted); *see also Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) ("Actual malice . . . requires at a minimum that the statements were made with a reckless disregard for the truth."). Reckless disregard, in turn, exists where "the defendant . . . made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 667 (internal quotations omitted).

Plaintiffs contend that per *Herbert v. Londo*, actual malice can be shown through "relevant circumstances surrounding the transaction provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, [and] facts tending to show a reckless disregard of the plaintiff's right . . . ." 441 U.S. 153, 164 n.12 (1979). While motive may

5

have some bearing to the actual malice inquiry, the Supreme Court has made clear that "the actual malice standard is not satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 666; *see also id.* at 666 n.7 ("The phrase 'actual malice' is unfortunately confusing in that it has nothing to do with bad motive or ill will."). Indeed, in dismissing Plaintiffs' original complaint, the presiding judge explained that even if "the facts pleaded in [the] complaint could, if true, show ill will or bad faith, such a showing cannot support actual malice." (Dkt. No. 173 at 15.) Thus, the focus of discovery should be on whether Greenpeace Defendants were aware of the falsity of the statements made, or if they had entertained serious doubts about the truth of the statements, rather than merely their motivation in making such statements.

Moreover, even to the extent motive has some bearing on actual malice, Plaintiffs' discovery requests are too broad in scope. Plaintiffs generally do not explain why the expansive discovery sought goes to the "relevant circumstances" surrounding the two statements at issue. For example, Plaintiffs do not explain why *any* information related to Plaintiffs over the past ten years would demonstrate actual malice, particularly when Plaintiffs themselves allege that Greenpeace Defendants' campaign against Plaintiffs dates back to December 2012. Plaintiffs also do not explain why the operational memorandum would be relevant to actual malice, particularly after the presiding judge found that it was not. (*See* Ord. at 16 (finding that allegations concerning the operational memorandum "add nothing to the Court's actual malice analysis").) Likewise, Plaintiffs do not explain how financial support for a market campaign targeting Plaintiffs would go to showing actual malice. Again, in dismissing Greenpeace Fund, the entity responsible for collecting and distributing donations to Defendants Greenpeace International and Greenpeace, Inc., the presiding judge explained that there were no allegations that "Greenpeace Fund has any editorial oversight over statements by Moas, Brindis, or Skar, or any other Greenpeace-associated person or entity." (*Id.* at 14.) Additionally, evidence of "hacking" or "cyber activity" is too remote from the 2016 and 2017 statements.

Plaintiffs provide more explanation as to intact forests and woodland caribou, pointing to Greenpeace Defendants' argument at the May 31, 2018 hearing that Greenpeace Defendants'

6

definition of the Montagnes Blanches may differ from the Quebec government's. (May 31, 2019 Tr. at 9:14-10:17.) Greenpeace Defendants argued, in part, that they defined the Montagnes Blanches's borders based on whether it was intact forest and whether there were other ecological considerations. (*Id.* at 9:25-10:5.) While information about how Greenpeace Defendants defined Montagnes Blanches is directly relevant to actual malice, Plaintiffs do not explain why *any* information regarding intact forest and woodland caribou would have probative value, particularly if they are unrelated to the Montagnes Blanches. Thus, it appears that many of Plaintiffs' discovery requests are too remote and attenuated from the 2016 and 2017 statements, such that they would not affect the actual malice inquiry.

The Court, however, disagrees with Greenpeace Defendants that the discovery should primarily consist "of the materials and information considered and relied upon by the speaker when authoring the allegedly defamatory statements regarding the Montagnes Blanches forest region in 2016 and 2017." (Discovery Letter No. 1 at 2 (all bold and italics omitted).) As Plaintiffs argue, the statements regarding the Montagnes Blanches appear to be part of a campaign against Defendants, going back to December 2012. (*Id.* at 4.) For example, a 2013 report by Greenpeace Canada accusing Plaintiffs of violating the CBFA -- and later distributed by Defendant Brindis -- contained claims that Plaintiffs were logging in the Montagnes Blanches. (*Id.*) Thus, information about the Montagnes Blanches preceding the 2016 and 2017 statements, even as far back as 2013, may be relevant to actual malice, as it goes to Defendants' motivation and knowledge base when making the challenged statements.

### B. UCL Claim

Plaintiffs also contend that they may seek discovery of statements unrelated to the 2016 and 2017 Montagnes Blanches statements because their UCL claim has a four-year statute of limitations. (Discovery Letter No. 1 at 5.) Thus, Plaintiffs argue that they can seek liability based on other statements. (*Id.*)

While the UCL does have a four-year statute of limitations, the presiding judge has clearly limited the UCL claim to only the two Montagnes Blanches statements. (*See* Ord. at 26 ("Because the Court has concluded that Resolute states a claim for defamation with respect to the Montagnes

Blanches statements, Resolute's defamation claim may serve as the basis for its Section 17200 claim."), 34 ("The Court dismisses **all claims** except for Resolute's claim for defamation based on the Montagnes Blanches statements, and the corresponding UCL claim . . . ." (emphasis added)).) Thus, liability in this case is presently limited to the 2016 letter by Defendant Moas and the 2017 Clearcutting report; no other statements are at issue. To the extent that Plaintiffs believe they should be permitted to seek liability based on other statements, that is a merits issue for the presiding judge. The undersigned declines to expand the scope of the case.

## IV. CONCLUSION

For the reasons stated above, the Court provides the following guidance for the parties as to Discovery Letter No. 1. Many of the discovery requests that are limited to Greenpeace Defendants' motive, without any connection to the Montagnes Blanches, appears to be too remote from the statements at issue. Likewise, discovery focused only on statements other than the 2016 and 2017 statements are outside the scope of this case, as found by the presiding judge. Discovery of information related to the Montagnes Blanches prior to 2016 and 2017, however, is relevant to actual malice, even if not specifically considered when making the statements at issue. These discovery requests may proceed.

Further, in light of the Court's ruling on Discovery Letter No. 1, the Court ORDERS Greenpeace Defendants to provide their written responses within **two weeks** of the date of this order. This resolves Discovery Letter No. 2.

IT IS SO ORDERED.

Dated: July 10, 2019

KANDIS A. WESTMORE
United States Magistrate Judge