UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GREENPEACE INTERNATIONAL, et al.,<br><br>Defendants. | Case No. 17-cv-02824-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR ATTORNEY'S FEES AND COSTS**<br><br>Re: ECF No. 247, 251, 252 |

Before the Court are the motions for attorney's fees and costs brought by Defendants Stand and Todd Paglia (collectively, "Stand Defendants"); Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, and Rolf Skar (collectively, "Greenpeace Defendants"); and Defendant Greenpeace Fund, Inc. ("Greenpeace Fund" or "GP Fund") pursuant to California's anti-SLAPP statute. ECF Nos. 247, 251, 252. The Court will grant the motions in part and deny them in part.

## I. BACKGROUND

Plaintiffs Resolute Forest Products, Inc.; Resolute FP US, Inc.; Resolute FP Augusta, LLC; Fibrek General Partnership; Fibrek U.S., Inc.; Fibrek International, Inc.; and Resolute FP Canada, Inc. (collectively, "Resolute") sued Greenpeace, Stand, and several of their employees and officers for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*, and various state laws, including defamation and tortious interference with prospective and contractual business relations. ECF No. 185. Resolute consists of several corporate entities in the forest products industry that, together, harvest trees and mill wood to manufacture and sell paper products. *Id*. ¶¶ 24-30. Defendants Greenpeace International, Greenpeace, Inc., Greenpeace Fund, and Stand (formerly known as ForestEthics) are all non-profit

environmental advocacy organizations. *Id.* ¶¶ 31-34. Individual defendants Paglia, Moas, Skar, and Brindis work for Greenpeace and Stand. *Id.* ¶¶ 35-39. Resolute alleges that, through a campaign called "Resolute: Forest Destroyer," Defendants, along with other environmental advocacy organizations, made misrepresentations regarding Resolute's sustainability practices in Canada in an attempt to drive Resolute's customers to leave the company. *Id.* ¶¶ 5-7.

The Court granted Defendants' motions to dismiss Resolute's initial complaint without prejudice, ECF No. 173, and Resolute filed a timely amended complaint, ECF No. 185 ("FAC"). Defendants moved to dismiss the FAC under Federal Rule of Civil Procedure 12(b)(6) and to strike it under California's anti-SLAPP statute, which provides that actions brought primarily to chill the valid exercise of freedom of speech may be dismissed as Strategic Lawsuits Against Public Participation ("SLAPPs"). ECF Nos. 197-99; *see* Cal. Civ. Proc. Code § 425.16. The Court dismissed with prejudice all claims except for Resolute's claim for defamation, and its corresponding UCL claim, against the Greenpeace Defendants based on statements regarding the Montagnes Blanches. ECF No. 246 at 34. The Court also concluded that Resolute's suit "arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech" and granted Defendants' anti-SLAPP motions as to all dismissed claims. *Id.* at 31 (citation omitted).

The Stand Defendants, Greenpeace Defendants, and Greenpeace Fund now move for attorney's fees. ECF Nos. 247, 251, 252.

## II. LEGAL STANDARD

California's anti-SLAPP law provides for dismissal of actions that "'masquerade as ordinary lawsuits' but are brought to deter common citizens from exercising their political or legal rights or to punish them for doing so." *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003) (quoting *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 816 (1994)). The California legislature enacted the anti-SLAPP statute "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). An anti-SLAPP motion is a special motion to strike. Cal. Civ. Proc. Code § 425.16(b)(1). Prevailing defendants on an anti-SLAPP motion are entitled

2

to recover attorney's fees and costs. Cal. Civ. Proc. Code § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001).

"California anti-SLAPP motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court." *Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206 (9th Cir. 2005) (per curiam). However, because anti-SLAPP motions are a creature of state law, "the anti-SLAPP statute does not apply to federal law causes of action." *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

Section 425.16 does not expressly limit a fee award to "reasonable" fees, but California courts have construed the statute to contain a reasonableness requirement. *E.g.*, *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 488 (2014) ("[E]ach fee application under section 425.16, subdivision (c) must be assessed on its own merits . . . taking into account what is reasonable under the circumstances." (internal quotation marks and citation omitted)). Fees must be awarded "only for the motion to strike, not the entire litigation." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). Fees also are recoverable for the reasonable time spent seeking an award of attorney's fees and costs. *Ketchum*, 24 Cal. 4th at 1133-36. The anti-SLAPP fee-shifting provision "is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit." *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (quoting *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*, 141 Cal. App. 4th 15, 22 (2006)).

A court's analysis of a reasonable fee award starts with the lodestar, which the court calculates by multiplying the number of hours reasonably spent by counsel by a reasonable hourly rate. *Ketchum*, 24 Cal. 4th at 1133. "[T]he lodestar is the basic fee for comparable legal services in the community." *Id.* at 1132.

A court may adjust the lodestar based on several factors. *Id*. "The purpose of such adjustment is to fix a fee at the fair market value for the particular action. In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market value for such services." *Id*. To determine whether a multiplier should be applied,

3

courts consider several factors, including the novelty or difficulty of the questions involved, the expertise and capability of counsel, the results obtained, the contingent risk involved in the case, the extent to which the nature of the litigation precluded other employment by the attorneys, and whether the attorneys received public and/or charitable funding. *Id.*; *Rogel v. Lynwood Redevelopment Agency*, 194 Cal. App. 4th 1319, 1329 (2011) (citing *Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977)). Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. . . . [T]he most critical factor [in determining a reasonable fee award] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

## III.  DISCUSSION

As the Court has already held, Defendants are entitled to recover fees and costs incurred in moving to strike the claims on which they prevailed. ECF No. 246 at 31 n.20. The Stand Defendants seek $37,898.63 in attorney's fees and $89.77 in costs. ECF No. 247 at 5-9. The Greenpeace Defendants seek $669,205.50 in attorney's fees and $20,687.18 in costs. ECF No. 251 at 28. Greenpeace Fund seeks $261,365.94 in fees and $368.95 in costs. ECF No. 252 at 25-26. The Court addresses each request in turn below.

### A.  The Stand Defendants' fee application

For the most part, Resolute does not oppose the Stand Defendants' fee request. ECF No. 257 at 10-11. The Stand Defendants claim 273.95 hours for their counsel's work on the anti-SLAPP motions at rates between $100 and $185 per hour, including $92.50 per hour for attorney Peter F. Finn's travel time. ECF No. 247 at 6-9. Because the Court granted the Stand Defendants' first anti-SLAPP motion to strike as to eight of the eleven claims asserted in the complaint, the Stand Defendants request only 72.72% of the total amount of attorney's fees associated with that motion. *Id.* at 6 n.3. The Stand Defendants request full attorney's fees for their second anti-SLAPP motion to strike because the motion attacked only the state law claims in the FAC, not any federal claims, and was granted in full. *Id.* at 7 n.4.

The Stand Defendants' counsel submitted declarations that their rates are reasonable for lawyers of comparable experience doing comparable work in the Bay Area and Atlanta (where

some counsel practice). ECF No. 247-1 at 3, 5, 13, 14, 17. The Stand Defendants also justify their counsel's claim by submitting records identifying the general subject matter of their time expenditures. *See* ECF No. 247 at 7-9. Based on these declarations, the Court is satisfied that the rates are consistent with – or, based on the Court's experience, lower than – prevailing rates in the community. *See Cuviello v. Feld Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2 (N.D. Cal. Jan. 12, 2015) ("The Court has broad discretion in setting reasonable hourly rates used in the lodestar calculation.").

In total, the Stand Defendants request $37,988.40 for their actual and expected fees and costs related to their anti-SLAPP motions. ECF No. 247 at 9. Resolute does not oppose the Stand Defendants' request but asks that the total amount be reduced by $973.09 to offset the claimed amounts for counsel's anticipated work on the reply brief and anticipated travel to oral argument on the fees motion ($943.50), as well as related anticipated costs ($29.59). ECF No. 257 at 7 n.1, 10-11.

The Court concludes that the attorney's fees and costs sought by the Stand Defendants, including the percentage reduction for the portion of their first anti-SLAPP motion that was unsuccessful, are reasonable. The Court further agrees with Resolute that it is appropriate to reduce this total by $973.09 to account for the lack of necessity of a reply brief, due to Resolute's non-opposition, and the vacated hearing. Accordingly, Resolute shall pay the Stand Defendants fees and costs in the amount of $37,015.31.

### B. The Greenpeace Defendants' fee application

The Greenpeace Defendants request that the Court award $669,205.50 in attorney's fees and $20,687.18 in costs, as well as fees and costs incurred after the filing of their fee motion. ECF No. 251 at 28. They request fees related to their first and second anti-SLAPP motions and their motion for attorney's fees and costs. *Id.* at 14-20. Counsel claim 2,059.80 hours for their work on these motions at rates between $300 and $830 per hour. ECF No. 251-1 ¶ 16. The costs incurred include online research, filing fees, copying, postage, and travel. *Id.* ¶ 31; ECF No. 251-7. Counsel submitted declarations that their rates are reasonable for lawyers of comparable experience in the Bay Area, ECF No. 251-1 ¶¶ 17-19, and further justify their claims by

submitting time records identifying the general subject matter of their time expenditures and the attorney or paralegal who performed the task, ECF No. 251-6. Except for one paralegal who worked on the case, which the Court addresses below, Resolute does not object to the reasonableness of the claimed hourly rates. Based on counsel's declarations and the Court's own experience with fee applications, and given Resolute's lack of opposition on this point, the Court is satisfied that the claimed rates are consistent with prevailing rates in the Bay Area legal market.

In their fee request, the Greenpeace Defendants do not separate fees and costs incurred in moving to strike the claims on which they prevailed from their overall legal work. They reason that all of their work was related: "Given the common nucleus of facts and similar legal elements, the work performed by the Greenpeace Defendants' counsel in connection with Plaintiffs' federal RICO claims substantially overlapped with their work performed in connection with the other state causes of action that the Greenpeace Defendants sought to strike in the SLAPP Motion." ECF No. 251 at 16. The Greenpeace Defendants have submitted the entirety of their attorney time incurred to date but "are seeking only sixty percent of their fees." *Id.* They do not provide a basis for selecting sixty percent as a reasonable proportion of their fees, but they characterize this figure as "conservative[]." *Id.* at 28.

Resolute challenges the reasonableness of the Greenpeace Defendants' forty percent reduction, of counsel's case staffing, of a paralegal's hourly rate, and of the total hours Greenpeace counsel billed. ECF No. 257 at 20-27.

### 1. Proposed forty percent reduction

Resolute first contends that "the Greenpeace Defendants fail to meet their burden to subtract fees incurred to defend [Plaintiffs' federal RICO] claims as required to establish the reasonableness of their requested fee award." ECF No. 257 at 20. The Greenpeace Defendants respond that all of their claimed fees are recoverable because the motions to strike under the anti-SLAPP statute and to dismiss the RICO claims were based on the same 296 statements, involve a common core of facts, and are based on related legal theories. ECF No. 251 at 16.

However, "mere common issues of fact are insufficient to award all fees when legal theories do not overlap or are not inextricably intertwined." *Kearney v. Foley & Lardner*, 553 F.

Supp. 2d 1178, 1184 (S.D. Cal. 2008) (awarding fees for work on federal claims where such work was premised on the same theories as successful anti-SLAPP motion, but denying fees for work on "separate and distinct defenses concerning RICO, conspiracy to commit RICO violations, and section 1983 raised in the motion to dismiss" (footnote omitted)).  "Work that is inextricably intertwined with an anti-SLAPP motion is compensable," but "work performed on federal claims is not compensable."  *Fallay v. San Francisco City & Cty.*, No. 08-cv-2261-CRB, 2016 WL 879632, at *3 (N.D. Cal. Mar. 8, 2016).  Although Resolute's state defamation claims and federal RICO claims spring from common facts, they are premised on distinct legal theories without overlapping elements, and the claims are not inextricably intertwined.

The Court must therefore consider how to reduce the Greenpeace Defendants' total fees to account for the federal claims as to which fees are not proper.  The Greenpeace Defendants neither attempt this task nor explain why the task is impossible.  Instead, they argue that 60 percent is reasonable because Greenpeace is actually entitled to all its fees, and 60 percent is less than all.  ECF No. 251 at 16.  As explained above, however, Greenpeace is not entitled to fees for its work on Resolute's non-inextricably-intertwined claims, including its federal claims.  It may be that an overall percentage reduction is an appropriate way of excluding that time.  But if that is so, Greenpeace does not explain why a 40 percent reduction is more appropriate than a reduction of any other size.[1]  "[D]ecisions of district courts employing percentages in cases involving large fee requests are subject to heightened scrutiny," and a court that uses a percentage must "set forth a 'concise but clear' explanation of its reasons for choosing a given percentage reduction."  *Gates v. Deukmejian*, 987 F.2d 1392, 1400 (9th Cir. 1992) (quoting *Hensley*, 461 U.S. at 437).  The Court cannot discharge its obligation to explain an attorney's fee award where, as here, the request itself is not adequately explained.  There are approximately 1,000 lines of time entries in the Greenpeace Defendants' fee application.  The Court should not have to review them all and draw its own conclusions about what constitutes compensable work.

The Court will therefore deny the Greenpeace Defendants' request without prejudice to a

---

[1] To be clear, the Court is not holding that a reduction of 40 percent is insufficient, merely that the record as it now stands does not support a reduction of any particular amount.

renewed motion in which they exclude non-compensable time and explain their method for doing so. The Greenpeace Defendants are directed to submit, within 14 days of the date of this order, a supplemental brief revising its request for fees. If Resolute has any response to this filing, it must submit that response no later than 14 days after the Greenpeace Defendants file their supplemental brief. The Court will then take the matter under submission without a hearing, unless otherwise ordered.

To assist the Greenpeace Defendants in preparing their revised request, the Court next addresses Resolute's remaining objections to their fee request.

### 2.     Partial success on state law claims

Resolute also objects to the reasonableness of the claimed fees on grounds that the Greenpeace Defendants are not entitled to fees for state law claims on which they did not prevail. ECF No. 257 at 22-23. The Court previously held Defendants are "entitled to recover attorney fees and costs incurred in moving to strike the claims on which [they] prevailed, but not fees and costs incurred in moving to strike the remaining claims." ECF No. 246 at 31 n.20 (alteration in original) (citation omitted). Because the Court denied dismissal of one defamation claim and the corresponding UCL claim, *id.* at 34 – i.e., two out of six state law claims in the FAC – Resolute requests that the Court "further reduce the fees incurred in connection with the motions to dismiss and strike by 2/6 or 33% to account for non-compensable work related to these claims," ECF No. 257 at 23.

However, where a party "has obtained excellent results, . . . the fee award should not be reduced simply because the [party] failed to prevail on every contention raised in the lawsuit. . . . [T]he most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 435-36. In this case, Resolute sued for defamation based on 296 statements, and 294 of these – i.e., all except the two Montagnes Blanches statements – were dismissed. ECF No. 246 at 17-20. This is a far greater success rate than the 67% that Resolute would ascribe. In addition, Resolute's state law claims "involve a common core of facts" and are "based on related legal theories," and much of the Greenpeace Defendants' time on these claims was "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461

8

U.S. at 435.  The Court will not require a further reduction for the Greenpeace Defendants' work on state law claims.

### 3. Case staffing

Resolute argues that the Greenpeace Defendants failed to utilize associates for appropriate tasks and highlights that "the aggregate hours billed by the three partners more than double the hours billed by [the single senior] counsel."  ECF No. 257 at 24-25.  The Greenpeace Defendants respond that staffing three partners and one senior counsel was appropriate because "the claims presented novel, intertwined theories of state and federal RICO law, tortious interference, and other business torts alongside libel claims.  In light of the various partners' in-depth knowledge of the case, and the need for senior counsel to advise on novel issues presented in this litigation, it cannot be found that fees accrued should have been assigned to less experienced attorneys."  ECF No. 258 at 13-14.

As a guiding principle, the Court's assessment of attorney's fees is driven by "[t]he difficulty and skill level of the work performed, and the result achieved – not whether it would have been cheaper to delegate work to other attorneys."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008).  Also, "[t]he court may permissibly look to the hourly rates charged by comparable attorneys for similar work, but may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests."  *Id.*

Nonetheless, these guiding principles are not without limit, because otherwise they would insulate virtually every attorney's fee request from scrutiny regarding case-staffing decisions.  Thus, in a prior case in which this Court was "concerned that 440.4 hours of work was performed entirely by four senior attorneys," the Court reduced the billed time of each attorney by 25 percent, finding that "[i]t simply cannot be the case that all 440.4 hours of work on the Dowdys' appeal was required to be performed by senior partners."  *Dowdy v. Metro. Life Ins. Co.*, No. 15-cv-03764-JST, 2019 WL 120730, at *7 (N.D. Cal. Jan. 7, 2019).

The Court has the same concern here.  The Court has no quarrel with the size of the Greenpeace Defendants' team – this is a large case that appears to be staffed appropriately on all

9

sides – but, as in *Dowdy*, it "simply cannot be the case" that all but one of the attorneys on the Greenpeace Defendants' team were required to be partner-level lawyers. It is clear from counsel's billing records that many of the tasks performed by partners could have been performed by less senior attorneys. For example, partner Lance Koonce has submitted time records for 848.9 hours, almost double the hours of the only non-partner attorney on the team. ECF No. 251 at 22. His time entries that include tasks such as "Legal research" or "Drafting table of allegations from Complaint" total more than 200 hours.[2] *See* ECF No. 251-6. To account for this staffing concern, any renewed motion should reduce Koonce's time by an additional 20 percent beyond the reduction applied for non-compensable work generally.

### 4. Hourly rates for paralegal

Next, Resolute objects to the hourly rates, between $300 and $350, that the Greenpeace Defendants claim for paralegal Susan Casey, who billed 436.4 hours on the motions to dismiss and strike. ECF No. 257 at 25; ECF No. 251-1 ¶ 16. The only information the Greenpeace Defendants provide is that "Ms. Casey has more than 36 years of experience as a litigation paralegal." *Id.* ¶ 15. Other courts in the Northern District have determined that a reasonable rate for paralegals in the local market ranges between $150 and $240 an hour.[3] *Open Source Sec. Inc. v. Perens*, No. 17-cv-04002-LB, 2018 WL 2762637, at *4 (N.D. Cal. June 9, 2018) ($220); *Wynn*

---

[2] The Court included undivided time such as "research and drafting" but excluded time that included only drafting tasks, such as "revisions to motion to dismiss." Nevertheless, at least some large portion of these latter tasks could also have been performed by less senior attorneys.

[3] The briefing on these motions suffers from a lack of expert testimony or survey evidence showing the rates generally charged by lawyers or paralegals of comparable skill or experience in the San Francisco Bay Area. *See, e.g.*, *Lota by Lota v. Home Depot U.S.A., Inc.*, No. 11-cv-05777-YGR, 2013 WL 6870006, at *16-17 (N.D. Cal. Dec. 31, 2013) (considering competing surveys as well as awards in comparable cases); *Garcia v. Resurgent Capital Servs., L.P.*, No. C-11-1253 EMC, 2012 WL 3778852, at *2-4 (N.D. Cal. Aug. 30, 2012) (setting rates based on survey of attorney's fees within the Bay Area); *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1084 (N.D. Cal. 2010) (same). Instead, the parties cherry-pick individual cases in which courts approved various hourly rates. *E.g.*, ECF No. 251 at 23-24. As the parties are no doubt aware, small sample sizes generally are not reliable. *E.g.*, *United States v. Kelly-Palmer*, No. 08cr283-IEG, 2008 WL 11453689, at *3 n.1 (S.D. Cal. Sept. 16, 2008), *aff'd*, 360 F. App'x 941 (9th Cir. 2010). In addition, the only case the Greenpeace Defendants cite to support Casey's billing rates is from the Central District, where one court approved "paralegal fees at rates between $240 for a paralegal with five years' experience to $345 for a paralegal with 23 years' experience." *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 WL 1746484, at *21 (C.D. Cal. Mar. 24, 2015) (cited in ECF No. 258 at 16 n.10).

*v. Chanos*, No. 14-cv-04329-WHO, 2015 WL 3832561, at * 3 (N.D. Cal. June 19, 2015) ($170); *In re Magsafe Apple Power Adapter Litig.*, No. 5:091-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ($150 to $240). The hourly rates claimed by the Greenpeace Defendants – $300 in 2016, $315 in 2017, $335 in 2018, and $350 in 2019 – are well above the market rates accepted by other courts in this district, and the Court finds them to be unreasonable. Due to the complex nature of the case, and given Casey's over 36 years of experience, the Court finds $240 to be a reasonable hourly rate for Casey's services. The Court also concludes that the 436.4 hours billed by Casey were reasonable.

### 5. Total hours billed

Finally, Resolute contends that the Greenpeace Defendants' claimed hours should be reduced because of their counsel's expertise with anti-SLAPP motions and the significant overlap between the motions to strike and dismiss and between the first and second anti-SLAPP motions. ECF No. 257 at 25-26. The Court is not persuaded by this objection. There is no question that the Greenpeace Defendants' lawyers are experienced in First Amendment litigation. *See* ECF No. 251-1 ¶¶ 11-14. But, having filed a 124-page complaint with 56 pages of attachments, followed by a 190-page amended complaint with 34 pages of attachments, alleging nine separate causes of action and seeking $300 million in damages, Resolute invited a robust, thorough, and vigorous response. The Greenpeace Defendants accepted that invitation. Having considered the arguments of both parties, the Court determines that the total number of hours billed is reasonable due to the complexity of the legal issues and underlying factual contentions in this case.

### C. Greenpeace Fund's fee application

Greenpeace Fund requests that the Court award $261,365.94 in fees and $368.95 in costs "for the time its attorneys spent on their motions to dismiss and to strike, and for their time on earlier stages of the case." ECF No. 252 at 8, 24-26. Greenpeace Fund claims 153.31 hours for the work done by its Georgia counsel, Warlick, Stebbins, Murray, & Chew, LLP ("WSMC"), and 423.75 hours for the work done by Cannata O'Toole Fickes & Olson LLP ("COFO") after the case was transferred to the Northern District, at hourly rates between $225 and $775. ECF No. 252-2 at 3, 5; ECF No. 252-4 at 4. Counsel submitted declarations that their rates are reasonable for

11

lawyers of comparable experience in Georgia and the Bay Area, ECF No. 252-2 at 3-4; ECF No. 252-3 at 3; ECF No. 252-4 at 3; ECF No. 252-5 at 6-7, and Resolute does not dispute the reasonableness of counsel's claimed rates. The Court is satisfied that the claimed rates are consistent with prevailing rates in the relevant markets.

Resolute does object to the total number of hours claimed. It contends that Greenpeace Fund's billing records are inappropriately block-billed, and it also challenges Greenpeace Fund's request for fees incurred challenging Resolute's RICO claims, fees associated with the defamation and UCL claims that were not dismissed, and general case management fees. ECF No. 257 at 15-20, 24-27.

### 1. Block billing

Resolute argues that "all of GP Fund's time entries are block-billed, obscuring the nature of the work claimed and making it difficult to determine how much time was spent on a particular task." *Id.* at 24. "[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates*, 987 F.2d at 1397-98. "Conclusory and unsubstantiated objections are not sufficient to warrant a reduction in fees." *Cancio v. Fin. Credit Network, Inc.*, No. C04-03755 TEH, 2005 WL 1629809, at *3 (N.D. Cal. July 6, 2005) (citation omitted). Here, Resolute has not provided specific objections to items billed by Greenpeace Fund's counsel, instead objecting to their overall record-keeping approach.

Greenpeace Fund's counsel is "not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Hensley*, 461 U.S. at 437 n.12; *see also Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (the fee applicant may meet "his burden – although just barely – by simply listing his hours and identify[ing] the general subject matter of his time expenditures" (alteration in original) (internal quotation marks and citation omitted)). Greenpeace Fund has done so here by providing declarations that include authenticated time and cost records, breaking down

counsel's time on a day-by-day and timekeeper-by-timekeeper basis and identifying the tasks performed. ECF Nos. 252-2, 252-4. With one exception discussed below, the Court agrees with Greenpeace Fund that its "counsel's time is billed specifically enough for the Court to tell what they did and when they did it." ECF No. 259 at 18.

### 2. Fees on RICO claims

The exception is that counsel's billing records are insufficient to establish an appropriate reduction for time spent on federal claims. As discussed above, fees for federal RICO claims cannot be recovered under the anti-SLAPP statute, even if the facts underlying the state and federal claims are related. Greenpeace Fund's COFO counsel states that he deducted time "[w]hen time entries . . . identify time which was spent on a federal claim," resulting in a $20,000 reduction. ECF No. 252-2 at 5. However, counsel's billing records are insufficient to allow the Court to determine whether this reduction is adequate. It does not seem reasonable that a reduction of less than nine percent would capture all the time spent on non-compensable work; if the COFO attorneys spent more than 90 percent of their time on the SLAPP motion, or matters inextricably bound up with that motion, they should say so. For the same reasons expressed with regard to the Greenpeace Defendants' fee application, the Court will therefore deny Greenpeace Fund's request without prejudice to a renewed motion in which they exclude non-compensable time and explain their method for doing so.[4] Greenpeace Fund is directed to submit, within 14 days of the date of this order, a supplemental brief revising its request for fees. If Resolute has any response to this filing, it must submit that response no later than 14 days after Greenpeace Fund files its supplemental brief. The Court will then take the matter under submission without a hearing, unless otherwise ordered.

### 3. General case management fees

To assist Greenpeace Fund in preparing its revised request, the Court addresses Resolute's objection to Greenpeace Fund's request for general case management fees. Resolute objects to fees claimed for work relating to "California counsel's substitution and initial review of case files"

---

[4] If the Greenpeace Fund continues to propose a $20,000 reduction to account for their work on the RICO claims, it should explain the basis for that proposal.

1   because these fees would have been incurred irrespective of a special motion to strike. ECF No.
2   257 at 15-16. Resolute also objects to Greenpeace Fund's request for fees incurred in connection
3   with Rule 26(f) and ADR reports and conferences because they were required by federal and local
4   court rules and related to claims that were not subject to the special motion to strike. *Id.* at 16.

5   The Court finds merit to these objections. As the Court previously stated, under the anti-
6   SLAPP statute, a defendant is not entitled to fees that are unrelated to the anti-SLAPP motions.
7   A defendant may not "transfer to the opposing parties the cost of every minute counsel expended
8   on the case, whether or not anti-SLAPP work was involved." *Christian Research Inst.*, 165 Cal.
9   App. 4th at 1325. "[G]eneral case work independent of the motion" is not compensable. *Henry v.*
10  *Bank of Am. Corp.*, No. C 09-0628 RS, 2010 WL 3324890, at *4 (N.D. Cal. Aug. 23, 2010).
11  Instead, "[t]he only fees compensable are those related to the [anti-SLAPP] motions." *Open*
12  *Source Sec. Inc.*, 2018 WL 2762637, at *7 (reducing fee award for "case management" from 88.58
13  hours to 34.2 hours). Greenpeace Fund should exclude categories of work unrelated to its anti-
14  SLAPP motions when it submits its revised request for fees.

15  **D.   Timing of the award of attorney's fees**

16  Finally, using a mere five lines of its opposition, Resolute asks that the Court stay the
17  imposition of the fee awards until after final judgment. ECF No. 257 at 27. No party has
18  presented sufficient argument on this issue. In support of its request, Resolute cites *Henry*, in
19  which the court stayed execution of a fee award "[a]s a matter of appropriate and efficient case
20  management." 2010 WL 3324890, at *6. The Greenpeace Defendants – the only set of
21  defendants to respond to this argument – do not address the court's decision in *Henry* but state that
22  "timely recovery of fees expended in this matter is important, particularly where they have to
23  continue to defend the remaining portion of Plaintiff's suit." ECF No. 258 at 16.

24  Resolute's request is denied without prejudice to the filing of a separate motion for stay.
25  Any such motion, and any response to such motion, should discuss in more detail the legal
26  grounds for a stay and whether those grounds are present in this case. In *Sarver v. Hurt Locker*
27  *LLC*, for example, the district court concluded that a stay of execution of an attorney's fees order
28  was available only upon either posting of a supersedeas bond or consideration of the five factors

set forth in *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988). *Sarver*, No. 2:10-cv-09034-JHN-JCx, 2012 WL 12892147, at *2-3 (C.D. Cal. Feb. 2, 2012). The Court does not now determine that *Sarver* is controlling, in part because the procedural posture of the cases appears to be different. It cites *Sarver* only to emphasize that any motion for a stay should include a more fulsome discussion of the relevant legal authorities.

## CONCLUSION

The Court grants in part and denies in part Defendants' motions for attorney's fees and costs. Resolute is ordered to pay fees and costs in the amount of $37,015.31 to the Stand Defendants. The Court will determine Resolute's obligation to the Greenpeace Defendants and Greenpeace Fund following the submission of supplemental briefing. Resolute's motion for stay of execution is denied without prejudice.

**IT IS SO ORDERED.**

Dated: September 24, 2019



JON S. TIGAR
United States District Judge