UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GREENPEACE INTERNATIONAL, et al.,<br><br>　　　　　Defendants. | Case No. 17-cv-02824-JST (KAW)<br><br>**ORDER GRANTING MOTION TO QUASH; REGARDING JOINT DISCOVERY LETTER**<br><br>Re: Dkt. Nos. 333, 349 |

　　　　Plaintiffs are corporate entities who harvest wood for the manufacture and sale of paper products. Defendants are non-profit environmental advocacy organizations and several of their employees. Plaintiffs bring claims for defamation (and a corresponding Unfair Competition Law claim) based on Defendants' December 2016 and May 2017 statements that Plaintiffs were operating in the Montagnes Blanches forest. (*See* Dismissal Order at 34, Dkt. No. 246.)

　　　　Pending before the Court are: (1) third-party Stand.Earth's motion to quash Plaintiffs' subpoena for documents and deposition testimony, and (2) third-party Greenpeace Fund's and Plaintiffs' discovery letter regarding Plaintiffs' subpoena for documents and deposition testimony. (Stand.Earth Mot. to Quash, Dkt. No. 333; Discovery Letter, Dkt. No. 349.) Both Stand.Earth and Greenpeace Fund are former Defendants in this case. (*See* Dismissal Order at 34.)

　　　　Having reviewed the filings, the Court GRANTS Stand.Earth's motion to quash and GRANTS Greenpeace Fund's request to quash. Further, for the reasons discussed below, the Court GRANTS Greenpeace Fund's requests for sanctions.

## I.　DISCUSSION

### A.　Procedural Defects

　　　　As an initial matter, both Stand.Earth and Greenpeace Fund argue that the subpoenas are

defective because Plaintiffs failed to tender witness fees at the time of service. Federal Rule of Civil Procedure 45(b) states: "Serving a subpoena requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." The Ninth Circuit has held that "the plain meaning of Rule 45[(b)] requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with service of a subpoena." *CF & I Steel Corp. v. Mitsui & Co.*, 713 F.2d 494, 496 (9th Cir. 1983). Thus, district courts have concluded that "[a] failure to tender fees at the time of service invalidates the subpoena and the deposition testimony will not be compelled." *Fujikura Ltd. v. Finisar Corp.*, Case No. 15-mc-80110-HRL (JSC), 2015 U.S. Dist. LEXIS 135871, at *13 (N.D. Cal. May 14, 2015) (internal quotation omitted). Courts have quashed subpoenas for failure to tender witness fees upon service. *E.g.*, *S.F. BART Dist. v. Spencer*, Case No. 04-4632-SI, 2006 U.S. Dist. LEXIS 73140, at *3 (N.D. Cal. Sept. 25, 2006) (finding subpoenas were invalid where not accompanied by tender of witness fees).

Plaintiffs do not dispute their failure to tender witness fees. Rather, Plaintiffs rely on *Kremen v. Cohen*, but this case is readily distinguishable. (Discovery Letter at 5.) There, the subpoenas were for document production only, and required no travel or the subpoenaed parties' presence. Case No. 11-cv-5411-LHK (HRL), 2012 WL 2277857, at *2 (N.D. Cal. June 18, 2012). Thus, fees were not required. Such is not the case here, where the subpoenas specifically command the presence of Stand.Earth and Greenpeace Fund on specific dates for a recorded deposition. (Ragan Decl., Exh. A, Dkt. No. 344; Discovery Letter, Exh. A.)

Additionally, Stand.Earth argues that the subpoena was not properly served because it was served on Stand.Earth's counsel and sent by certified mail. Rule 45(b)(1) requires that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person[.]" While Plaintiffs argue that Rule 45 does not require personal service, "[t]he majority of courts understand 'delivering' to require personal service of the subpoena." *Fujikura Ltd.*, 2015 U.S. Dist. LEXIS 135871, at *14; *Toni Bratton & Co. v. Mosaic Int'l, LLC*, Case No. 15-mc-80090-MEJ, 2015 U.S. Dist. LEXIS 46756, at *8 (N.D. Cal. Apr. 9, 2015) ("While the Ninth Circuit does not appear to have had many opportunities to construe the service requirement of

Rule 45, it has indicated that personal service is preferred in the unpublished decision of *Chima v. U.S. Dep't of Defense*, 23 Fed. App'x, 221, 724-25 (9th Cir. 2001)"); *Khan v. Rogers*, Case No. 17-cv-5548-RS (LB), 2018 U.S. Dist. LEXIS 190884, at *10 (N.D. Cal. Nov. 6, 2018) ("The majority rule is that Federal Rule of Civil Procedure 45 requires personal service, as opposed to service by mail."). Thus, "contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness and[,] and unlike service of most litigation papers after the summons and complaint, service on a person's lawyer will not suffice." *Fujikura Ltd.*, 2015 U.S. Dist. LEXIS 135871, at *15 (internal quotation omitted). As Plaintiffs did not personally serve the subpoena on Stand.Earth, nor did they request that the Court authorize substitute service of the subpoena, the Court finds that the Stand.Earth subpoena was not properly served.

### B. Undue Burden

Even if the subpoenas were procedurally proper, the Court finds that the subpoenas place an undue burden on the nonparties. *See* Fed. R. Civ. P. 45(d)(3)(A) (requiring that a court quash or modify a subpoena that "subjects a person to undue burden").

#### i. Stand.Earth

Following meet and confer efforts, Plaintiffs now seeks two categories of information: (1) communications with Defendants and Greenpeace Canada concerning the claims that Plaintiffs violated the Canadian Boreal Forest Agreement ("CBFA") by harvesting in the Montagnes Blanches and (2) internal Stand.Earth communications and files concerning the borders of the Montagnes Blanches. (Pls.' Opp'n at 2-3, Dkt. No. 3.) Stand.Earth, in turn, asserts that the subpoena is unduly burdensome and harassing because the information sought is already in the possession of Defendants and Greenpeace Canada. (Stand.Earth Mot. to Quash at 5-7.)

With respect to the latter category, the Court finds that the internal Stand.Earth communications and files are not relevant. While Plaintiffs assert that Stand.Earth jointly developed a plan with Defendants to accuse Resolute of violating the CBFA by harvesting in the Montagnes Blanches, Stand.Earth is not a party in this case, and their personal knowledge does

not go to *Defendants'* liability.[1] (*See id.* at 4.) Indeed, it does not appear that Stand.Earth was responsible for publication of the actionable statements; in the dismissal order, the presiding judge explained that after Stand.Earth learned that Plaintiffs had not actually violated the CBFA in December 2012, "[t]he organizations never again stated that Resolute violated the CBFA." (Dismissal Order at 26.) Thus, it is unclear that Stand.Earth did, in fact, have any involvement in the two actionable statements in this case.[2] As the requested information is "not relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed would be by definition 'undue.'" *Compaq Computer Corp. v. Packard Bell Elecs.*, 163 F.R.D. 329, 335-36 (N.D. Cal. 1995).

As to the first category, the Court agrees that such discovery imposes an undue burden on Stand.Earth because such information is obtainable from party litigants or Greenpeace Canada. "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *Petka v. Mylan Pharms., Inc.*, Case No. 16-mc-80196-MEJ, 2016 U.S. Dist. LEXIS 164591, at *7 (N.D. Cal. Nov. 28, 2016) (internal quotation omitted). Thus, courts in this district have repeatedly quashed subpoenas that seek discovery from third parties where the discovery sought is "obtainable from a source more direct, convenient and less burdensome -- namely, from Defendants." *Nidec Corp. v. Victor Co.*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); *see also id.* ("There is simply no reason to burden nonparties when the documents sought are in possession of the party defendant."); *Genus Lifesciences Inc. v. Lannett Co.*, Case No. 18-cv-7603-WHO, 2019 U.S. Dist. LEXIS 222550, at *13 (N.D. Cal. Dec. 20, 2019) (quashing subpoena "because the documents requested in [the plaintiff's] subpoena can be obtained from the [defendant] in a way that would be more convenient and less burdensome"); *Ironhawk Techs., Inc. v. Dropbox, Inc.*, Case No. 19-mc-80017-TSH, 2019 U.S. Dist. LEXIS

---

[1] The Court observes that it already ruled as such with respect to Greenpeace Canada. (*See* Dkt. No. 324 at 3 ("[W]hile Plaintiffs argue that they are entitled to discover GPC's state of mind, GPC is not a party in this case. Their state of mind does not affect whether Defendants are liable.").

[2] Stand.Earth's apparent lack of involvement in the publication of the actionable statements is in contrast to Greenpeace Canada, who the parties do not appear to dispute co-authored the December 2016 statement. (*See* Dkt. No. 316 at 1, 2.)

4

24579, at *2-3 (N.D. Cal. Feb. 11, 2019) (quashing subpoena to third-party because the requested documents could be obtained from the plaintiff); *Anderson v. Ghaly*, Case No. 15-cv-5120-HSG, 2020 U.S. Dist. LEXIS 104232, at 27-28 (N.D. Cal. June 15, 2020) (quashing subpoena seeking documents from third-parties because such information was available from named parties and were being sought from those sources); *Geller v. Hagens*, Case No. 11-cv-80269-LHK (HRL), 2012 U.S. Dist. LEXIS 67962, at *12 (N.D. Cal. Apr. 19, 2012) ("In essence, plaintiffs would impose a heavy burden on [the third-party] to locate and analyze large amounts of information that should be available from the defendants."); *Free Stream Media Corp. v. Alphonso Inc.*, Case No. 17-cv-2107-RS (KAW), 2017 U.S. Dist. LEXIS 202594, at *20 (N.D. Cal. Dec. 8, 2017) (quashing subpoena seeking information from a third-party because such information could be obtained from the defendants).

      Plaintiffs fail to demonstrate that the documents sought cannot be obtained from Defendants or Greenpeace Canada, particularly when Plaintiffs have limited the scope of the subpoenas to documents that were jointly developed with, transmitted to, and/or communicated by Defendants or Greenpeace Canada. (Pls.' Opp'n at 4.) There is no suggestion that Defendants or Greenpeace Canada would not have documents that they developed, received, or communicated to others. *Compare with Khan*, 2018 U.S. Dist. LEXIS 190884, at *14 (rejecting subpoena requests where the plaintiffs did not demonstrate that they could not obtain the discovery sought from the defendants); *Ow v. United States*, Case No. 17-cv-733-SK, 2018 U.S. Dist. LEXIS 227748, at *3 (N.D. Cal. June 12, 2018) ("while all of the documents sought may be relevant, Plaintiffs fail to demonstrate that they could not have obtained the documents regarding communications and/or writings between the Port and Defendant directly from Defendant"); *Free Stream Media Corp.*, 2017 U.S. Dist. LEXIS 202594, at *20 ("Plaintiff fails to explain why it is seeking these documents from Shazam, a third-party, when Defendants would have the same documents."). While Plaintiffs point to *Meeks v. Parsons* for the proposition that a party is entitled to documentary evidence from non-parties to confirm a party's testimony, *Meeks* did not appear to consider the undue burden on non-parties. No. 03-cv-6700-LJO-GSA, 2009 WL 3003718, at *11 (E.D. Cal. Sept. 18, 2009). This does not comport with the Ninth Circuit's recognition that

5

"[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. C.B.S., Inc.*, 666 F.2d 634, 371-72 (9th Cir. 1982); *see also Chevron Corp. v. Donziger*, Case No. 12-mc-80237-CRB (NC), 2013 U.S. Dist. LEXIS 119622, at * (N.D. Cal. Aug. 22, 2013) (finding that, with respect to non-parties, "[t]he court must limit the discovery sought if it is unreasonably duplicative, if it can be obtained from a source that is more convenient or less burdensome, or if the burden of producing it outweighs its likely benefit").

Accordingly, the Court finds that the Stand.Earth subpoena must be quashed because it imposes an undue burden, as Plaintiffs fail to demonstrate that the documents sought could not be obtained from Defendants or Greenpeace Canada.

### ii. Greenpeace Fund

Following meet and confer efforts, Plaintiffs seek discovery from Greenpeace Fund as to: (1) the planning, production, direction, and/or facilitation of the campaign accusing Plaintiffs of harvesting in the Montagnes Blanches, (2) the veracity of Defendants' statements concerning Plaintiffs' alleged activities in the Montagnes Blanches, (3) whether Greenpeace Fund provided funds for the development of these allegedly false claims, and (4) whether Defendants' statements about Plaintiffs harvesting in the Montagnes Blanches increased donations and funding. (Discovery Letter at 1.) In short, Plaintiffs seek information from Greenpeace Fund as to Defendants' knowledge and motivation for accusing Plaintiffs of harvesting in the Montagnes Blanches. (*Id.* at 3.)

The Court finds that Plaintiffs' subpoena is unduly burdensome. With respect to information about Defendants' state of mind and knowledge, as discussed above, such information should be obtained *from Defendants*. This is particularly the case where Greenpeace Fund's involvement in the publication of the actionable statements is even more tenuous than that of Stand.Earth. Greenpeace Fund is a fundraising organization. (Dismissal Order at 3.) Plaintiffs did "not allege that Greenpeace Fund published a defamatory statement." (*Id.* at 14.) Indeed, the presiding judge dismissed Greenpeace Fund from this case precisely because Plaintiffs "fail[ed] to allege that Greenpeace Fund had *any responsibility* over [Defendants'] statements." (*Id.* at 14-15

6

(emphasis added).) The presiding judge also found Plaintiffs failed "to plausibly allege that any Defendant is responsible for statements by non-party Greenpeace Canada." (*Id.* at 15.)

To argue that Greenpeace Fund was involved in the publication of the actionable statements, Plaintiffs contend that Greenpeace Fund and Defendant Greenpeace, Inc. are "operationally combined," collectively "hold[ing] themselves out as Greenpeace USA, *the entity which published the defamatory statements at issue in this case.*" (Discovery Letter at 1 (original emphasis).) The presiding judge, however, **rejected** this claim, finding that "'Greenpeace USA' is purely a creature of [Plaintiffs'] nomenclature. [Plaintiffs do] not allege that Greenpeace USA is a legal entity, or that it has employees." (Dismissal Order at 14.) In short, as the presiding judge already found, there is no entity known as Greenpeace USA (and if there was, it is unclear why Plaintiffs do not seek information from it rather than Greenpeace Fund, further suggesting that no such entity exists), and Plaintiffs' reliance on the existence of such an entity to obtain discovery of Greenpeace Fund must fail.

Plaintiffs also seek fundraising information and the source of those funds on the grounds that such information may have given Defendants a financial motive to publish the actionable statements. (Discovery Letter at 3.) As Defendants correctly observe, the undersigned **already** rejected Plaintiffs' prior attempts to obtain such financial information. (*Id.* at 7.) On July 10, 2019, the Court found Plaintiffs' discovery requests were too broad in scope, including that:

> Plaintiffs do not explain how financial support for a market campaign targeting Plaintiffs would go to showing actual malice. Again, in dismissing Greenpeace Fund, the entity responsible for collecting and distributing donations to Defendants Greenpeace International and Greenpeace, Inc., the presiding judge explained that there were no allegations that "Greenpeace Fund has any editorial oversight over statements by Moas, Brindis, or Skar, or any other Greenpeace-associated person or entity."

(July 10, 2019 Discovery Order at 6, Dkt. No, 269.) Although Plaintiffs unsuccessfully appealed the Court's July 10, 2019 order, Plaintiffs did **not** raise any objections to this finding. (*See* Dkt. No. 270.)

Accordingly, the Court finds that the Greenpeace Fund subpoena must be quashed because it imposes an undue burden.

7

**C.     Sanctions**

Both Stand.Earth and Greenpeace Fund request sanctions per Rule 45(d)(1), which states:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

"Rule 45(d)(1) is discretionary." *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).  Thus, "[m]erely losing a motion to compel does not expose a party to Rule 45 sanctions." *Id.*  "[W]hile failure [to narrowly] tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." *Id.*  Sanctions, however, may be imposed "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Id.*  Courts have imposed Rule 45(d)(1) sanctions without a hearing. *See Herrera v. City of Los Angeles*, Case No. 16-cv-2719-DSF (SKx), 2017 U.S. Dist. LEXIS 222556, at *8 (C.D. Cal. Mar. 9, 2017).

The Court declines to impose sanctions as to the Stand.Earth subpoena.  It appears there was a legitimate dispute as to whether the subpoena was overbroad given that the requested information could be directly obtained from Defendants and Greenpeace Canada.  Further, while the Court found that the subpoena had not been served on Stand.Earth, it recognizes that a minority of courts have found that personal service is not required. *E.g.*, *Pac. Coast Surgical Ctr, L.P. v. Scottsdale Ins. Co.*, No. 19-mc-00049-PSG(KSx), 2019 WL 4267764, at *5 (C.D. Cal. July 31, 2019).  Thus, the Court does not believe that Plaintiffs' subpoena to Stand.Earth was necessarily in bad faith, for an improper purpose, or in a manner inconsistent with existing law.

As to the Greenpeace Fund subpoena, however, the disputes at issue were not new.  Rather, Plaintiffs relied on arguments that had already been rejected by both the presiding judge and the undersigned, namely that Greenpeace Fund was actually involved in publishing the actionable statements because of the nonexistent "Greenpeace USA" entity and that financial information was obtainable.  Thus, the Court finds that the subpoena was in bad faith because

8

Plaintiffs were essentially relitigating issues that had already been decided against them.[3] This bad faith is compounded by the fact that Plaintiffs were seeking discovery from a third party that had already been dismissed from the instant case.

Defendants seek $29,318.50 in attorney's fees for time spent on the instant dispute. (Discovery Letter at 10; Field Decl. ¶¶ 13, 15, 17-18, Dkt. No. 349-1.) The Court observes, however, that "courts have interpreted Rule 45(d)(1) sanctions as applying primarily to reimburse a non-party's costs incurred in *complying* with a subpoena, not merely litigating a motion to quash." *Fujikura Ltd.*, 2015 U.S. Dist. LEXIS 135871, at *24 (citing *Mount Hope Church*, 705 F.3d 418, 427 (9th Cir. 2012)). When considered with the discretionary nature of Rule 45(d)(1) sanctions, the Court SANCTIONS Plaintiffs $7,500, to be paid to Greenpeace Fund within three weeks of the date of this order. The Court finds that this amount is appropriate in light of the bad faith nature of the Greenpeace Fund subpoena, and is comparable to time spent by Plaintiff's counsel in responding to the subpoena (as opposed to litigating the motion to quash). (*See* Field Decl., Exh. B.) Specifically, Attorney Aaron Field has spent approximately 25 hours responding to the subpoena, including meeting and conferring with Plaintiffs' counsel, as well as researching and drafting objections to subpoena.[4] (Field Decl., Exh. 2 at 2.) Attorney Field claims an hourly rate of $375, which the Court finds appropriate given that Attorney Field was previously awarded an hourly rate of $350 by the presiding judge in September 2019. (Field Decl. ¶¶ 13-14.) This amounts to $9,375. While the Court exercises its discretion and imposes only $7,500 in sanctions, Plaintiffs are forewarned that the Court may impose sanctions in the future if Plaintiffs continue to relitigate arguments already rejected by the presiding judge and/or undersigned.

## II. CONCLUSION

For the reasons stated above, the Court GRANTS Stand.Earth's motion to quash and

---

[3] While Plaintiffs argue that the Court did not specifically find Plaintiffs' subpoena as to Greenpeace Fund was overbroad when it required the parties to meet and confer, the simple explanation for this is that the subpoena had *not been submitted to the Court*. (Discovery Letter at 3 n.10.) Rather, the parties had merely submitted a stipulation regarding the preparation of the joint letter. (*See* Dkt. No. 337.)

[4] In contrast, Attorney Karl Olson's time entries are focused on the motion to quash. (*See* Field Decl. Exh. B at 1-2.)

9

Greenpeace Fund's request to quash, and SANCTIONS Plaintiffs in the amount of $7,500, payable to Greenpeace Fund within three weeks of the date of this order.

IT IS SO ORDERED.

Dated: January 21, 2021

_____
KANDIS A. WESTMORE
United States Magistrate Judge