BROWN RUDNICK LLP
LEO J. PRESIADO (State Bar No. 166721)
2211 Michaelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: lpresiado@brownrudnick.com

Michael J. Bowe (admitted *pro hac vice*)
*mbowe@brownrudnick.com*
Lauren Tabaksblat (admitted *pro hac vice*)
*ltabaksblat@brownrudnick.com*
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Counsel for Plaintiffs

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE (State Bar No. 141930)
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone:  (415) 276-6500
Facsimile:  (212) 276-6599
Email:  thomasburke@dwt.com

LAURA HANDMAN (appearing *pro hac vice*)
LISA ZYCHERMAN (appearing *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW, Suite 800
Washington, DC 20006
Telephone:     (202) 973-4200
Facsimile:      (202) 973-4499
Email: laurahandman@dwt.com
             lisazycherman@dwt.com

LACY H. KOONCE, III (appearing *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone:     (212) 489-8230
Facsimile:      (212) 489-8340
Email: lancekoonce@dwt.com

i

Counsel for Defendants

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al.*,<br><br>        Plaintiffs,<br><br>        vs.<br><br>GREENPEACE INTERNATIONAL, *et al.*,<br><br>        Defendants. | Case Number: 4:17-CV-02824-JST (KAW)<br><br>**JOINT DISCOVERY LETTER** |

Pursuant to Magistrate Judge Westmore's Standing Order, Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek U.S., Inc., Fibrek International, Inc., and Resolute FP Canada, Inc. (collectively "Resolute" or "Plaintiffs"), and Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, and Rolf Skar (collectively the "Greenpeace Defendants"), by and through their respective counsel, hereby submit the attached joint letter regarding a discovery dispute. The parties attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing this letter, and that, as required by ¶ 12 of this Court's Standing Order, counsel for Plaintiffs and for the Greenpeace Defendants met and conferred telephonically regarding the dispute on January 8, 2021, and, subsequently, exchanged letters and emails before reaching impasse.

ii

1   By:

2   Date:   January 28, 2021          Signed:  /s/ Lauren Tabaksblat
                                               Lauren Tabaksblat (admitted *pro hac vice*)
3                                              BROWN RUDNICK LLP
                                               Attorney for Plaintiffs
4

5

6   Date:   January 28, 2021          Signed:  /s/ Lacy H. Koonce, III
                                               Lacy H. Koonce, III (admitted *pro hac vice*)
7                                              DAVIS WRIGHT TREMAINE LLP
                                               Attorney for Defendants Greenpeace
8                                              International, Greenpeace, Inc., Daniel
                                               Brindis, Amy Moas and Rolf Skar
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iii

Dear Judge Westmore:

The following summarizes the nature of the discovery dispute the parties hereby submit for the Court's resolution.  Plaintiffs seek production of responsive Skype messages and records from all custodians previously identified by the parties in this action.  Skype is a messaging and chat application provided by Microsoft.  Defendants have agreed to produce Skype messages for the named defendants and a former defendant, but contend that due to difficulties acquiring and reviewing the Skype data, the process and cost is too burdensome disproportionate to the discovery needs in this case to justify producing material for the remaining Greenpeace custodians.

**Plaintiffs' Position.**  Defendants concede that Greenpeace regularly used Skype to correspond and transmit data relevant to the claims and defenses in this action and purported to produce relevant data for the individual named Defendants in this action for one-year only.[1]  Defendants have unilaterally withheld Skype data for the other custodians that Defendants already agreed to and conceded having relevant documents concerning the Challenged Statements. Discovery to date demonstrates that the Omitted Custodians communicated through Skype about the Challenged Statements constantly. Defendants argue primarily that the difficulty and cost of reviewing the Skype messages (because the Custodians used Skype so regularly) before production is too burdensome to review (or for some custodians, collect and analyze). Defendants are effectively asking this Court to determine that because Defendants chose to use a messenger system that allowed them to communicate regularly they should be relieved of the burden of reviewing and producing indisputably responsive and relevant messages that fall within the time frame and scope of discovery decided by this Court.  That position completely upends the purpose of discovery and would allow any party to avoid their discovery responsibilities simply by choosing certain communication methods that are difficult to obtain or review.

Following a series of meet and confers in 2019, the parties agreed that Greenpeace would collect electronically stored information ("ESI") from the following custodians in response to Resolute's document demands: Amy Moas, Daniel Brindis, Rolf Skar, Matthew Daggett, Vicky Wyatt, Eugenie Mathieu, Maik Marahrens, Rodrigo Estrada, and Annie Leonard (the latter five defined herein as Omitted Custodians).  Those document demands included Skype data. *See* Ex. 1 (11/15/19 Letter from Tabaksblat to Koonce). Defendants' Responses and Objections to the Requests did not object to the production of Skype messages. To the contrary, Defendants confirmed collection of Skype and ESI in a letter dated December 5, 2019. *See* Ex. 2 (12/5/19 Letter from Koonce to Tabaksblat).  Yet, Defendants later clarified that they would not be collecting Skype data from custodians other than named Defendants but would consider doing so later. *See* Ex. 3 (12/12/19 Email from Brownstein to Koonce.) Plaintiffs objected to this approach. Defendants then accused Plaintiffs of misrepresenting their position and reserved further production until they completed the processing of Skype data for the named defendants.  *See* Ex. 4 (12/20/19 Email from Koonce to Brownstein).  Nowhere was there an objection to relevance of the data or custodians. It was not until August 28, 2020 that Defendants informed Plaintiffs for the

---

[1] This JDL focuses on the artificial narrowing of custodians for Skype message productions. Arguments regarding the insufficient time period of productions or possible spoliation of Skype material are to be raised by separate JDL.

Joint Discovery Letter
Case No. 3:17-cv-02824-JST (KAW)

first time that they would not be producing Skype data for custodians other than the named Defendants, arguing disproportionate costs of collection and processing.

*First*, Defendants' proportionality and burden analysis is discordant and self-serving. In their August 28, 2020 letter, Defendants detail a litany of costs and processes required to collect and process Skype messages from the named Defendants. In that letter, and in earlier drafts of this joint letter and multiple meet and confers, Defendants largely emphasized the forensic and technical barriers required for Skype message production. However, in the meet and confer held on January 8, 2021 and now the fourth draft of this letter, Defendants shift to emphasizing that the voluminous number of responsive texts somehow protects them under a proportionality analysis. This position contradicts the central importance of Greenpeace's communications to showing actual malice. Supported by the text of FRCP 26, the central importance of the Skype messages – the primary evidence of Defendants' mindset and intentions – with potential damages in the millions – outweighs attorney review of $143,000 as proffered by Defendants.[2] *Second*, in refusing to produce the Skype data, Defendants attempt to unilaterally make a distinction and enforce a priority between custodians who are named Defendants and custodians who are not individually named in the suit. This is a flawed distinction that fails to recognize the foundational principal "that corporations act through their employees." *Potter Voice Techs., LLC v. Apple Inc.*, 24 F. Supp. 3d 882, 886 (N.D. Cal. 2014). The remaining custodians are all employees of Defendants Greenpeace, Inc. or Greenpeace International. Defendants already agreed they were valid custodians for ESI collection and don't dispute the relevance of their Skype data (confirmed by the Skype messages produced from named defendants that include some of the Omitted Custodians but only those between the Omitted Custodians and Defendants). *Finally*, Defendants' claim that the burden of collecting this information is heightened because it was housed on the custodians' personal devices is likewise inapposite. Corporate litigants who permit employees to use a personal device or platform for business purposes have the same duty to preserve and produce relevant records on personal devices as it does for corporate systems.[3] *Legal Support, Inc. v. Hofioni*, 2014 WL 172336, at *3 (E.D. Cal. Jan. 15, 2014); *see also Passlogix, Inc. v. 2FA Tech., LLC*, 708 F.

---

[2] *See Gen-Probe Incorporated v. Becton, Dickinson and Company*, 2011 WL 13100706, at *4 (S.D. Cal. Aug. 25, 2011) (granting motion to compel of ESI due to an estimated review time of 10,000 attorney hours at a cost of one million dollars); *see also Lou v. Ma Laboratories, Inc.*, 2013 WL 12328278, at *2 (N.D. Cal. March 28, 2013) ("[T]he fact that a corporation has an unwieldy record keeping system which requires it to incur heavy expenditures of time and effort to produce requested documents is an insufficient reason to prevent disclosure of otherwise discoverable information."); *Campbell v. Facebook, Inc.*, 310 F.R.D. 439, 444 (N.D. Cal. Oct. 14, 2015) (rejecting Facebook's position that it need to provide voluminous discovery where the discovery went directly to Plaintiffs affirmative claims); *In re eBay Seller Antitrust Litigation*, 2009 WL 10694848, at *2 (N.D. Cal. July 13, 2009) (compelling discovery and use of 105 search terms despite over 400,000 documents being produced requiring an eight week review by twenty attorneys at a cost of $400,000).

[3] Defendants argue, in part, the complexity of the forensic recovery necessary to obtain Skype messages for review. Plaintiff's expert, Mr. Lawrence A. Wolfenden, rebuts the purported difficulty of Defendants' chosen approach – an approach only made necessary by their use of a personal messaging platform. *See* Ex. 5.

2

Supp. 2d 378, 416 (S.D.N.Y. 2010) (litigants breached duty to preserve Skype messages from employee's personal computer supporting a finding of spoliation). The discovery produced to-date reflects Skype as the primary medium for Defendants communications about the Challenged Statements and Resolute.[4] There are repeated invites to contact or join Skype groups as well as Skype usernames in Greenpeace's e-mail signature blocks. Moreover, Greenpeace only produced 2,991 emails from all agreed upon *nine* custodians compared to 9,604 Skype messages for the same period for only the four Defendants. Defendants also admit having actual notice that employees were actively utilizing Skype to conduct business. *Infra.* at 3-4. Defendants cannot now use the lack of a retention policy and intentional use of personal devices to avoid discovery obligations. *See Klipsch Group, Inc. v. ePro E-Commerce Limited,* 880 F.3d 620, 629 (2d Cir. 2018) (ePro cannot use their lack of a policy preventing personal and business use on personal devices or failures to retain business messages from personal devices as excuse for production).

**Defendants' Position.**  Despite this Court's admonitions against Plaintiffs' repeated efforts to expand the scope of discovery, Plaintiffs persist in pursuing discovery of material outside the bounds of proportionality, especially in light of the narrow issues remaining in this lawsuit.  This scorched-earth approach reeks of the type of SLAPP behavior already sanctioned by this Court.

The present dispute involves chat messages among Greenpeace employees using the Skype messaging platform.  Defendants, at an expense of over $160,000, have produced all material in their possession for the Skype accounts of the four individual defendants, the key document custodians in this case. Given the expense of that production, Defendants take the position that producing the same type of material for five additional custodians as requested by Plaintiffs would be prohibitively expensive and time-consuming, and that the dictates of proportionality under the Federal Rules do not require Defendants to go to such extremes.  Defendants offered, however, that if other fact discovery identified specific areas for additional Skype production from the five other custodians, Defendants would consider making such additional, targeted productions.[5]

The instant dispute has been pending for months.[6] Plaintiffs first sent a draft of this joint letter on

---

[4] Defendants own argument highlighting the sheer volume of Skype chats for only four custodians proves this proposition. *Infra.* at 3-4 ("review encompassed 244,045 chats; second-level review comprised 44,401 chats"). Defendants can't voluntarily acquiesce to hundreds of thousands business communications to a personal "voluntary" platform and then argue its lack of preservation-friendly tools as a reason to restrain production.

[5] Separately, Plaintiffs have issued a third-party subpoena to Skype itself, seeking material from 31 user accounts, including many individuals employed by third parties such as Greenpeace Canada. Defendants are moving to quash that subpoena.  Also, Plaintiffs have indicated they wish to submit yet another joint discovery letter relating to Skype material predating 2017 that is no longer available in the individual users' accounts.  Plaintiffs' efforts to collect every scrap of Skype material regardless of its significance to the issues in this case is the very definition of overreach.

[6] Plaintiffs' contention they were unaware that Defendants were producing Skype data for only four custodians until August 2020 is false; the parties discussed their positions in January 2020, and Plaintiffs indicated they would press for production of Skype data from other custodians, but then did not raise the issue again for seven months.

3

September 11, 2020. In the draft of their responsive portion, as they had in earlier communications, Defendants emphasized proportionality: "The volume of the Skype data for just the four custodians was immense.  Defendants' first-level document review encompassed 244,045 chats; second-level review comprised 44,401 chats for responsiveness and privilege. The first-level review was very arduous because the attorney reviewer typically had to open up each Skype chat thread to review.  For the second-level review, if the reviewer wanted to understand the context of a chat, she had to pull up the thread to see the surrounding chats, which was time-intensive.  Counsel has spent over 300 attorney and paralegal hours on processing and reviewing Skype chat data for four custodians, and Defendants' vendor has spent at least 65 hours on forensics, project management and hosting analysis. In total, Defendants have incurred fees and costs associated with processing and reviewing Skype data well exceeding $100,000, roughly one third of Defendants' total fees and costs for ediscovery." Ex. 6 (Aug. 28, 2020 Letter from Koonce to Tabaksblat).

In response, Plaintiffs forwarded a declaration from an ediscovery expert criticizing the method of processing Skype data employed by Epiq eDiscovery Solutions, Inc., Defendants' experienced, reputable e-discovery vendor, and even claimed via Mr. Wolfenden that the costs Defendants incurred in producing Skype data could be drastically cut from approximately $156,000[7] to $30,000 by replacing attorney review with data analytic tools. Defendants were forced to have Epiq prepare declarations in response, explaining in detail the methods it employed. Plaintiffs then forwarded a *revised* expert declaration, requiring Epiq to also revise its responsive declarations. This "battle of the experts" serves neither the parties nor the Court.

Because Plaintiffs have continued to characterize this dispute as one over the cost of technical processing of Skype data, in a recent draft of this letter, Defendants added a break-down of those technical costs versus the cost of attorney review once the Skype material had been processed, to again make clear that much of the cost incurred involves the latter. Plaintiffs now inexplicably claim Defendants have "shifted" their position on the burdens imposed by reviewing voluminous Skype data.  However, as noted, Defendants have consistently provided Plaintiffs with a clear explanation of both the technical difficulties of collecting and producing Skype data, as well as how those obstacles rendered attorney review more complex and time-consuming.

As the declarations of Lars Schou and Nam Ly make clear, Epiq applied common forensic tools to collect all available Skype data from four custodians.  *See generally* Ex. 7 (Schou Decl.); Ex. 8 (Ly Decl).  Then, Defendants' vendor processed the data into reviewable excel spreadsheets that included links to view the individual chats in the context of the conversation "thread" in which they were made.  Attorney reviewers used search terms to narrow the Skype data set from approximately 240,000 to approximately 40,000 chats, which were then reviewed individually, using the "threads," for responsiveness and privilege.  The ediscovery costs associated with collecting, processing, and producing Skype data totaled approximately $13,000, and the attorney review costs totaled approximately $143,000, just for these four employees.  Mr. Wolfenden affirms that this approach was "forensically sound," and Plaintiffs still fail to address the fact that the bulk of the costs rendering further Skype data production disproportionate are associated with

---

[7] Additional processing and review that has taken place since the September draft letter has increased the costs and fees from $100,000 to approximately $156,000.

necessary and appropriate attorney review.  Attorney review of Skype data was more arduous than typical document review because even *after* keywords were applied to facilitate review of individual chats, the attorney reviewer still had to open up each Skype chat thread to understand the context of an individual, potentially-responsive chat (i.e., individual lines of text, some as brief as one word), which was time-intensive.  Mr. Wolfenden's assertion that these steps should have been replaced with analytic tools and performed without attorney involvement to save cost is wholly contrary to best discovery practices and obligations of counsel. Simply put, regardless of what forensic tool is used, requiring Defendants to produce Skype chats for additional custodians will require many hundreds of additional hours of review time.

Defendants have produced documents in all other formats for all identified custodians.[8]  The **only** area in which Defendants seek to limit their production on the basis of proportionality is Skype data.  Defendants do not suggest that there is no responsive material within the remaining Skype data, but rather that the burden of identifying and producing it outweighs the likely benefit, given the narrow confines of this case.  This is especially so because much of it will be duplicative of chat data from the four key custodians given their roles in the publications at issue. Those four custodians were named as individual defendants in this case, and are alleged to have authored or distributed the two allegedly defamatory statements, whereas the other five custodians only supported that work or, in at least one case, played no role in that work at all.[9]  Plaintiffs' claim that the burdens outlined by Defendants are outweighed due to "potential damages in the millions," is of course belied by Plaintiffs' continued failure to provide any explanation of their damage claim.[10] *See* ECF No. 372 (pending joint discover ltr).  And, Plaintiffs are wrong that the volume of chat data far exceeds that of other documents – they are comparing apples to oranges, as a short chat response in a longer thread would be counted as a single "chat."

Defendants' position is justified by the December 2015 amendment to Rule 26, which reinforced the proportionality factors and clarified that relevancy alone is no longer sufficient to obtain discovery. Discovery must be proportional to the needs of the case, necessitating a cost/benefit analysis. Fed. R. Civ. P. 26(b)(1). The scope of electronically stored information is further limited, and a party is not required to produce it "from sources that the party identifies as not reasonably accessible because of undue burden or cost."  Fed. R. Civ. P. 26(b)(2)(B); *see also* N.D. Cal. Guidelines ¶ 1.03. Here, the rule militates against requiring Defendants to produce Skype data from five additional custodians.

---

[8] It is untrue that Defendants do not have document retention policies; they do.  Nor is it true that Defendants have ever claimed that the use of "personal devices" prevented full discovery.
[9] Skype was not provided by Greenpeace; it was downloaded by employees who wished to use it.
[10] Plaintiffs rely on cases assessing discovery burdens that bear no resemblance to this case.  *See, e.g.*, *Gen-Probe*, 2011 WL 13100706, at *4 (no undue burden in "patent case with approximately 140 asserted claims … under seven different patents," where party "is a much larger multi-national company … and presumably has greater resources to conduct the discovery"); *Lou*, 2013 WL 12328278, at *2 (no undue burden where party was "stonewalling … discovery" in class action); *Campbell*, 310 F.R.D. at 444 (no undue burden where Facebook complained of "twenty-five hours of work over the course of two months").

5

Respectfully submitted,

_/s/ Lauren Tabaksblat_ _____   _/s/ Lacy H. Koonce, III_ _____
Lauren Tabaksblat (admitted *pro hac vice*)   Lacy H. Koonce, III
BROWN RUDNICK LLP                             DAVIS WRIGHT TREMAINE LLP
7 Times Square                                1251 Avenue of the Americas, 21st Floor
New York, NY 10036                            New York, NY 10020
Telephone: (212) 209-4800                     Telephone: (212) 489-8230
Email: ltabaksblat@brownrudnick.com           Email: lancekoonce@dwt.com

*Attorneys for Plaintiffs*                    *Attorneys for Defendants Greenpeace*
                                              *International, Greenpeace, Inc., Daniel*
                                              *Brindis, Amy Moas, and Rolf Skar*

6