# **EXHIBIT A**

BROWN RUDNICK LLP
LEO J. PRESIADO (State Bar No. 166721)
2211 Michaelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: lpresiado@brownrudnick.com


BROWN RUDNICK LLP
Michael J. Bowe (admitted *pro hac vice*)
*mbowe@brownrudnick.com*
Lauren Tabaksblat (admitted *pro hac vice*)
*ltabaksblat@brownrudnick.com*
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al.* | CASE NO. 4:17-CV-02824-JST |
| Plaintiffs, | Hon. Jon S. Tigar<br>Courtroom 9 |
| v. | |
| GREENPEACE INTERNATIONAL, *et al.* | **PLAINTIFFS' NOTICE OF RULE 30(B)(6) DEPOSITION TO DEFENDANT GREENPEACE, INC.** |
| Defendants. | |

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs, by and through their counsel of record, will take the oral deposition of Defendant Greenpeace, Inc., through one or more of their officers, directors, or managing agents, or other persons who consent to testify on its behalf, with regard to the matters set forth in the attached <u>Schedule A</u>.  Plaintiffs request that Greenpeace, Inc. identify, in writing, at least seven (7) days in advance of the deposition the person(s) designated to testify on its behalf, the job title of such person(s), and the topic(s) on which each such person(s) will testify.

The deposition will commence on September 24, 2021, at 9:30 a.m. (PT) at the offices of Brown Rudnick LLP, 2211 Michelson Dr., Irvine, CA 92612, or at such other time and place as may be agreed by counsel. The deposition will be taken before a qualified notary public or other officer authorized by law to administer oaths, and will continue from day-to-day, excluding weekends and holidays, until completed. The testimony will be recorded stenographically and videotaped.

DATED: September 10, 2021

BROWN RUDNICK LLP

By: <u>/s/ Lauren Tabaksblat</u>
Lauren Tabaksblat

Attorneys for Plaintiffs

# SCHEDULE A

## DEFINITIONS

Resolute incorporates by reference the Definitions from *Plaintiff's Amended First Set of Requests for Production of Documents* to Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, and Rolf Skar ("Defendants"), served March 28, 2019, and the Definitions from *Plaintiff's Second Set of Requests for Production of Documents* to Defendants, served April 28, 2021, as if set forth fully herein.

## TOPICS

1. Greenpeace Inc.'s knowledge concerning Resolute, including without limitation: (i) Resolute's operations in the Boreal Forest, the region Greenpeace has unilaterally defined as the Montagnes Blanches Endangered Forest, and the region recognized by the Quebec government as the Montagnes Blanches; (ii) the span of time over which Greenpeace Inc. investigated and researched Resolute and the investigative and research efforts Greenpeace Inc. has made during that time; (iii) the information, findings, and conclusions Greenpeace Inc. reached as a result of its research and investigation of Resolute, and when such information, findings, and conclusions were discovered or made; and (iv) the persons, whether at Greenpeace Inc., other Greenpeace entities, or third parties, involved in the research and investigation of Resolute.

2. Greenpeace Inc.'s knowledge concerning Greenpeace's campaign against Resolute, including without limitation: (i) Greenpeace's decision to commence a campaign targeting Resolute and the research, evidence, and other basis for that decision; (ii) Greenpeace' strategy in its campaign against Resolute; (iii) the anticipated economic impact of Greenpeace's campaign on Resolute, and any assessment by Greenpeace of the impact of the campaign on Resolute; (iv) any objections, feedback, or rebuttal research, evidence, opinions, or analysis Greenpeace received or considered in connection with the campaign against Resolute; (v) any adjustments Greenpeace

3
Plaintiffs' Notice of Rule 30(b)(6) Deposition to Greenpeace, Inc., Case No. 4:17-CV-02824-JST

made to the campaign against Resolute over time and the basis (or bases) for any such adjustments; and (vi) the persons, whether at Greenpeace Inc., other Greenpeace entities, or third parties, involved in the research, conception, planning, implementation, analysis, and adjustment of Greenpeace's campaign against Resolute.

3.   Communications Greenpeace Inc. had concerning Resolute, including without limitation: (i) communications with Resolute's customers; (ii) communications with other Greenpeace entities; and (iii) communications with journalists, politicians, government officials, First Nations, ENGOs, or other third parties.

4.   Greenpeace's statement, in a January 2016 investor briefing, that the financial impact of Greenpeace's campaign on Resolute is "over C$100 million," including without limitation the basis (or bases) for this statement and the persons knowledgeable about this statement.

5.   Any allegations in Resolute's Amended Complaint (Dkt. No. 185) that Greenpeace Inc. denies, including without limitation the facts upon which Greenpeace Inc. bases its denials.

6.   The Clearcutting Free Speech Report, the December 2016 Letter, or any other report or direct communication that accuses Resolute of harvesting in the Montagnes Blanches or Montagnes Blanches Endangered Forest or negatively impacting endangered species and intact forest landscapes in those regions, including without limitation: (i) the conception, development, research, drafting, approval, and dissemination of each such report or communication and the persons involved in each of the foregoing stages; (ii) the bases for the findings, factual assertions, and conclusions contained in each such report or communication; and (iii) when and to whom each such report or communication was disseminated.

7.   Greenpeace Inc.'s involvement in the research, development, and dissemination of any reports, letters, or other publications concerning Resolute's operations and impacts in the

Montagnes Blanches or Montagnes Blanches Endangered Forest, including without limitation Greenpeace's December 2012 "Exposed" report, January 2013 "Boreal Alarm" report, May 2013 "Unsustainability" report, and February 2016 "Endangered" report.

8. The region Greenpeace defines as the Montagnes Blanches Endangered Forest, including without limitation the decision to define this region as the Montagnes Blanches Endangered Forest, the borders of this region, and any changes or revisions to Greenpeace's definition of the Montagnes Blanches Endangered Forest.

9. The Quebec Minister of Forests, Wildlife and Parks' May 31, 2016 statement concerning the official borders of the Montagnes Blanches, including without limitation any communications with Greenpeace Canada, Greenpeace Fund, or the Quebec Ministry of Forests concerning this statement.

10. Greenpeace's claim that Resolute violated the CBFA by harvesting in the Montagnes Blanches, including, but not limited to: (i) all factual bases for this claim; (ii) the GPS coordinates and other data that Greenpeace claims it relied on in making this claim; (iii) all communications about this claim, whether internal, with another Greenpeace entity, or any third party; and (iv) Greenpeace Canada's decision to retract the claim.

11. Greenpeace's communications with and concerning Best Buy, as alleged in paragraph 405(a) of the Amended Complaint (Dkt. No. 185), including without limitation: (i) the conception, development, research, drafting, approval, and dissemination of the publication entitled "Better Buying in the Boreal Forest;" (ii) the conception, development, research, drafting, approval, and dissemination of the publication entitled "Best Buy Wasting Ancient Forests, One Flyer at a Time;" and (iii) any actions by or directed by Greenpeace that impacted or interacted with Best Buy's website.

12. The "operational memorandum" referenced in paragraphs 76, 286, 309, 322, and 401 of the Amended Complaint (Dkt. No. 185), including without limitation: (i) Greenpeace's involvement in the conception, preparation, and drafting of the operational memorandum; (ii) the persons at Greenpeace Inc. with knowledge concerning the operational memorandum; (iii) the bases for the factual assertions, conclusions, plans, and strategy set forth in the operational memorandum; and (iv) Greenpeace's efforts to execute upon the plans and strategy set forth in the operational memorandum.

13. The relationship between and among Greenpeace Inc. and Greenpeace International, Greenpeace Fund, and Greenpeace Canada, including without limitation: (i) communications and coordination among these entities with respect to the campaign against Resolute; (ii) how the activities of the foregoing entities are funded, including the salaries of each entities' employees; and (iii) the persons who exert operational control over, and approves and funds campaigns executed by, the foregoing entities.

14. Greenpeace's solicitation of any grants, donations, or other goods or services in connection with the campaign against Resolute, including without limitation: (i) Greenpeace's efforts to obtain any such grants, donations, or other goods or services; (ii) the identities of the persons solicited and those persons who provided any such grants, donations, or other goods and services; (iii) the amounts or specific goods or services solicited and secured from each person; (iv) the recipients of any funds, goods, or services secured; and (iv) any research or analysis in connection with Greenpeace's solicitation of any grants, donations, or other goods or services.

15. Training programs, manuals, guidelines, handbooks, or policies concerning the conduct of Greenpeace employees working on campaigns and engaging in fundraising efforts.

16. Questions raised by the review of documents produced in this action.

17.     Greenpeace Inc.'s responses to each of Plaintiffs' interrogatories, including the content of the response and how that content was gathered.

18.     Greenpeace Inc.'s data retention policies or practices, both before and after the filing of this action, including without limitation any policy or practice concerning the creation, retention, preservation, and destruction of any electronic or physical documents.

19.     Greenpeace Inc.'s knowledge concerning the preservation or loss of documents or communications relevant to this Action.

20.     Greenpeace's use of Skype to communicate regarding the Resolute, including without limitation: (i) any guidelines or policies concerning the use of Skype by Greenpeace employees; (ii) any communications with Greenpeace employees concerning the use of the Skype platform; (iii) the members of any Skype groups used to communicate about Resolute; and (iv) Greenpeace's retention, collection, and production of Skype data.

21.     The deletion or other loss of any of Greenpeace Inc.'s electronically-stored information, including without limitation e-mails and Skype data, that was generated, sent and/or or received by Greenpeace Inc. from June 1, 2012 to the present.

22.     Any investigation by Greenpeace Inc. concerning the loss or deletion of any of Greenpeace Inc.'s electronically-stored information, including without limitation e-mails and Skype data, generated, sent and/or received by Greenpeace Inc. from June 1, 2012 to the present, including, but not limited to, the retention of any forensic experts, any internal investigation by Greenpeace Inc.'s IT group or other department, and any documents or communications concerning or work product generated by any such investigation(s).

23.     Greenpeace Inc.'s efforts to recover any of Greenpeace Inc.'s electronically-stored information, including without limitation e-mails and Skype data, generated, sent and/or received by Defendants from June 1, 2012 to the present, including, but not limited to, information

regarding the retention of any forensic experts and any internal efforts by Greenpeace Inc. to locate or recover such Skype data.

24. Any devices, including but not limited to hard drives, electronic applications or software used for the purposes of archiving or storing data generated or received by Greenpeace Inc. from June 1, 2012 to the present.

25. Any updates or modifications to the Skype platform used by Greenpeace Inc. from June 1, 2012 to present, whether such updates or modifications were made automatically or intentionally by Microsoft, Skype, Greenpeace Inc., another Greenpeace entity, or a third-party acting on Greenpeace's behalf.

26. The identity and location of the persons likely to have knowledge of the foregoing topics.

27. The identity and location of documents and things pertaining to the foregoing topics.

BROWN RUDNICK LLP
LEO J. PRESIADO (State Bar No. 166721)
2211 Michaelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: lpresiado@brownrudnick.com


BROWN RUDNICK LLP
Michael J. Bowe (admitted *pro hac vice*)
*mbowe@brownrudnick.com*
Lauren Tabaksblat (admitted *pro hac vice*)
*ltabaksblat@brownrudnick.com*
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>GREENPEACE INTERNATIONAL, *et al.*<br><br>Defendants. | CASE NO. 4:17-CV-02824-JST<br><br>Hon. Jon S. Tigar<br><br>**PLAINTIFFS' NOTICE OF RULE 30(B)(6) DEPOSITION TO DEFENDANT GREENPEACE INTERNATIONAL** |

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs, by and through their counsel of record, will take the oral deposition of Defendant Greenpeace International, through one or more of their officers, directors, or managing agents, or other persons who consent to testify on its behalf, with regard to the matters set forth in the attached Schedule A. Plaintiffs request that Greenpeace International identify, in writing, at least seven (7) days in advance of the deposition the person(s) designated to testify on its behalf, the job title of such person(s), and the topic(s) on which each such person(s) will testify.

The deposition will commence on September 27, 2021, at 9:30 a.m. (PT) at the offices of Brown Rudnick LLP, 2211 Michelson Dr., Irvine, CA 92612, or at such other time and place as may be agreed by counsel. The deposition will be taken before a qualified notary public or other officer authorized by law to administer oaths, and will continue from day-to-day, excluding weekends and holidays, until completed. The testimony will be recorded stenographically and videotaped.

DATED: September 10, 2021

BROWN RUDNICK LLP

By: /s/ Lauren Tabaksblat
Lauren Tabaksblat

Attorneys for Plaintiffs

## SCHEDULE A

## DEFINITIONS

Resolute incorporates by reference the Definitions from *Plaintiff's Amended First Set of Requests for Production of Documents* to Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, Matthew Daggett, and Rolf Skar ("Defendants"), served March 28, 2019, and the Definitions from *Plaintiff's Second Set of Requests for Production of Documents* to Defendants, served April 28, 2021, as if set forth fully herein.

## TOPICS

1. Greenpeace International's knowledge concerning Resolute, including without limitation: (i) Resolute's operations in the Boreal Forest, the region Greenpeace has unilaterally defined as the Montagnes Blanches Endangered Forest, and the region recognized by the Quebec government as the Montagnes Blanches; (ii) the span of time over which Greenpeace International investigated and researched Resolute and the investigative and research efforts Greenpeace International has made during that time; (iii) the information, findings, and conclusions Greenpeace International reached as a result of its research and investigation of Resolute, and when such information, findings, and conclusions were discovered or made; and (iv) the persons, whether at Greenpeace International, other Greenpeace entities, or third parties, involved in the research and investigation of Resolute.

2. Greenpeace International's knowledge concerning Greenpeace's campaign against Resolute, including without limitation: (i) Greenpeace's decision to commence a campaign targeting Resolute and the research, evidence, and other basis for that decision; (ii) Greenpeace' strategy in its campaign against Resolute; (iii) the anticipated economic impact of Greenpeace's campaign on Resolute, and any assessment by Greenpeace of the impact of the campaign on Resolute; (iv) any objections, feedback, or rebuttal research, evidence, opinions, or analysis

3

Greenpeace received or considered in connection with the campaign against Resolute; (v) any adjustments Greenpeace made to the campaign against Resolute over time and the basis (or bases) for any such adjustments; and (vi) the persons, whether at Greenpeace International, other Greenpeace entities, or third parties, involved in the research, conception, planning, implementation, analysis, and adjustment of Greenpeace's campaign against Resolute.

3. Communications Greenpeace International had concerning Resolute, including without limitation: (i) communications with Resolute's customers; (ii) communications with other Greenpeace entities; and (iii) communications with journalists, politicians, government officials, First Nations, ENGOs, or other third parties.

4. Greenpeace's statement, in a January 2016 investor briefing, that the financial impact of Greenpeace's campaign on Resolute is "over C$100 million," including without limitation the basis (or bases) for this statement and the persons knowledgeable about this statement.

5. Any allegations in Resolute's Amended Complaint (Dkt. No. 185) that Greenpeace International denies, including without limitation the facts upon which Greenpeace International bases its denials.

6. The Clearcutting Free Speech Report, the December 2016 Letter, or any other report or direct communication that accuses Resolute of harvesting in the Montagnes Blanches or Montagnes Blanches Endangered Forest or negatively impacting endangered species and intact forest landscapes in those regions, including without limitation: (i) the conception, development, research, drafting, approval, and dissemination of each such report or communication and the persons involved in each of the foregoing stages; (ii) the bases for the findings, factual assertions, and conclusions contained in each such report or communication; and (iii) when and to whom each such report or communication was disseminated.

7. Greenpeace International's involvement in the research, development, and dissemination of any reports, letters, or other publications concerning Resolute's operations and impacts in the Montagnes Blanches or Montagnes Blanches Endangered Forest, including without limitation Greenpeace's December 2012 "Exposed" report, January 2013 "Boreal Alarm" report, May 2013 "Unsustainability" report, and February 2016 "Endangered" report.

8. The region Greenpeace defines as the Montagnes Blanches Endangered Forest, including without limitation the decision to define this region as the Montagnes Blanches Endangered Forest, the borders of this region, and any changes or revisions to Greenpeace's definition of the Montagnes Blanches Endangered Forest.

9. The Quebec Minister of Forests, Wildlife and Parks' May 31, 2016 statement concerning the official borders of the Montagnes Blanches, including without limitation any communications with Greenpeace Canada, Greenpeace Fund, or the Quebec Ministry of Forests concerning this statement.

10. Greenpeace's claim that Resolute violated the CBFA by harvesting in the Montagnes Blanches, including, but not limited to: (i) all factual bases for this claim; (ii) the GPS coordinates and other data that Greenpeace claims it relied on in making this claim; (iii) all communications about this claim, whether internal, with another Greenpeace entity, or any third party; and (iv) Greenpeace Canada's decision to retract the claim.

11. Greenpeace's communications with and concerning Best Buy, as alleged in paragraph 405(a) of the Amended Complaint (Dkt. No. 185), including without limitation: (i) the conception, development, research, drafting, approval, and dissemination of the publication entitled "Better Buying in the Boreal Forest;" (ii) the conception, development, research, drafting, approval, and dissemination of the publication entitled "Best Buy Wasting Ancient Forests, One

Flyer at a Time;" and (iii) any actions by or directed by Greenpeace that impacted or interacted with Best Buy's website.

12. The "operational memorandum" referenced in paragraphs 76, 286, 309, 322, and 401 of the Amended Complaint (Dkt. No. 185), including without limitation: (i) Greenpeace's involvement in the conception, preparation, and drafting of the operational memorandum; (ii) the persons at Greenpeace International with knowledge concerning the operational memorandum; (iii) the bases for the factual assertions, conclusions, plans, and strategy set forth in the operational memorandum; and (iv) Greenpeace's efforts to execute upon the plans and strategy set forth in the operational memorandum.

13. The relationship between and among Greenpeace International and Greenpeace Inc., Greenpeace Fund, and Greenpeace Canada, including without limitation: (i) communications and coordination among these entities with respect to the campaign against Resolute; (ii) how the activities of the foregoing entities are funded, including the salaries of each entities' employees; and (iii) the persons who exert operational control over, and approves and funds campaigns executed by, the foregoing entities.

14. Greenpeace's solicitation of any grants, donations, or other goods or services in connection with the campaign against Resolute, including without limitation: (i) Greenpeace's efforts to obtain any such grants, donations, or other goods or services; (ii) the identities of the persons solicited and those persons who provided any such grants, donations, or other goods and services; (iii) the amounts or specific goods or services solicited and secured from each person; (iv) the recipients of any funds, goods, or services secured; and (iv) any research or analysis in connection with Greenpeace's solicitation of any grants, donations, or other goods or services.

15. Training programs, manuals, guidelines, handbooks, or policies concerning the conduct of Greenpeace employees working on campaigns and engaging in fundraising efforts.

16. Questions raised by the review of documents produced in this action.

17. Greenpeace International's responses to each of Plaintiffs' interrogatories, including the content of the response and how that content was gathered.

18. Greenpeace International's data retention policies or practices, both before and after the filing of this action, including without limitation any policy or practice concerning the creation, retention, preservation, and destruction of any electronic or physical documents.

19. Greenpeace International's knowledge concerning the preservation or loss of documents or communications relevant to this Action.

20. Greenpeace's use of Skype to communicate regarding the Resolute, including without limitation: (i) any guidelines or policies concerning the use of Skype by Greenpeace employees; (ii) any communications with Greenpeace employees concerning the use of the Skype platform; (iii) the members of any Skype groups used to communicate about Resolute; and (iv) Greenpeace's retention, collection, and production of Skype data.

21. The deletion or other loss of any of Greenpeace International's electronically-stored information, including without limitation e-mails and Skype data, that was generated, sent and/or or received by Greenpeace International from June 1, 2012 to the present.

22. Any investigation by Greenpeace International concerning the loss or deletion of any of Greenpeace International's electronically-stored information, including without limitation e-mails and Skype data, generated, sent and/or received by Greenpeace International from June 1, 2012 to the present, including, but not limited to, the retention of any forensic experts, any internal investigation by Greenpeace International's IT group or other department, and any documents or communications concerning or work product generated by any such investigation(s).

23. Greenpeace International's efforts to recover any of Greenpeace International's electronically-stored information, including without limitation e-mails and Skype data, generated,

sent and/or received by Defendants from June 1, 2012 to the present, including, but not limited to, information regarding the retention of any forensic experts and any internal efforts by Greenpeace International to locate or recover such Skype data.

24. Any devices, including but not limited to hard drives, electronic applications or software used for the purposes of archiving or storing data generated or received by Greenpeace International from June 1, 2012 to the present.

25. Any updates or modifications to the Skype platform used by Greenpeace International from June 1, 2012 to present, whether such updates or modifications were made automatically or intentionally by Microsoft, Skype, Greenpeace International, another Greenpeace entity, or a third-party acting on Greenpeace's behalf.

26. The identity and location of the persons likely to have knowledge of the foregoing topics.

27. The identity and location of documents and things pertaining to the foregoing topics.