# **EXHIBIT B**

BROWN RUDNICK LLP
LEO J. PRESIADO (State Bar No. 166721)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: lpresiado@brownrudnick.com

Michael J. Bowe (admitted *pro hac vice*)
mbowe@brownrudnick.com
Lauren Tabaksblat (admitted *pro hac vice*)
ltabaksblat@brownrudnick.com
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al.*, | Case No.  4:17-CV-02824-JST (KAW) |
| Plaintiffs, | Hon. Jon S. Tigar<br>Courtroom 9 |
| v. | **PLAINTIFFS' THIRD SET OF INTERROGATORIES** |
| GREENPEACE INTERNATIONAL, *et al.*, | |
| Defendants. | |

**PROPOUNDING PARTY:**   PLAINTIFFS RESOLUTE FOREST PRODUCTS, INC. RESOLUTE FP US, INC., RESOLUTE FP AUGUSTA, LLC, FIBREK GENERAL PARTNERSHIP, FIBREK INTERNATIONAL INC., AND RESOLUTE FP CANADA INC.

**RESPONDING PARTY:**   DEFENDANTS GREENPEACE INTERNATIONAL, GREENPEACE, INC., DANIEL BRINDIS, AMY MOAS, AND ROLF SKAR

**SET NUMBER:**   THREE

1

Plaintiffs' Interrogatories (Set Three), Case No. 4:17-CV-02824-JST

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek International Inc., and Resolute FP Canada Inc. (together, "Plaintiffs") hereby request that each of the defendants Greenpeace International, Greenpeace Inc., Daniel Brindis, Amy Moas, Rolf Skar (together, the "Defendants") answer, separately and fully, in accordance with the following definitions and instructions, in writing, under oath, the following Third Set of Interrogatories (the "Interrogatories"), within 30 days after service.

## DEFINITIONS

1. "You" or "Your" means the person or entity to whom this document request is directed and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments, and operating units, and includes, without limitation, each of its current or former partners, directors, shareholders, employees, employers, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, aliases, and all persons and entities acting or purporting to act on their behalf.

2. "Complaint" means the Amended Complaint, filed by Plaintiffs on November 8, 2017, in the United States District Court for the Northern District of California, Case No. 4:17-cv-02824-JST (ECF No. 185).

3. "Clearcutting Free Speech Report" refers to the May 2017 report published by Greenpeace Inc. and published on the website of Greenpeace USA and Greenpeace International.

4. "December 2016 Letter" refers to the December 2016 letter authored by Amy Moas and Shane Moffatt and sent separately to a number of Resolute's customers, including without limitation, MacMillan Publishers, Holtzbrinck Publishing Group, Hachette Livre and Hachette Book Group, Penguin Random House, and Scholastic.

5. "Actionable Statements" are those statements in the December 2016 Letter and

Clearcutting Free Speech Report that the Court ruled are actionable in sustaining, in part, Plaintiffs' defamation claim in the Complaint.

6. "Defendant" or "Defendants" means the following parties/entities and each of their current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments, and operating units, and includes, without limitation, each of their current or former partners, directors, shareholders, employees, employers, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, aliases, and all persons and entities acting or purporting to act on their behalf:

    a. Greenpeace International
    b. Greenpeace, Inc.
    c. Daniel Brindis
    d. Amy Moas
    e. Rolf Skar

7. "Resolute" means Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek International Inc., and Resolute FP Canada Inc., and each of their current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments, and operating units, and includes without limitation its current or former managers, partners, directors, shareholders, employees, employers, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all persons and entities acting or purporting to act on its behalf.

8. "Greenpeace Inc." means Greenpeace Inc. and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments, and operating units, and includes without limitation its current or former managers, partners, directors, shareholders, employees, employers, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all persons and entities acting or purporting to act on its behalf.

9. "Greenpeace International" means Greenpeace International, a/k/a Stichting Greenpeace Council and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments, and operating units, and includes without limitation its current or former managers, partners, directors, shareholders, employees, employers, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all persons and entities acting or purporting to act on its behalf.

10. "Montagnes Blanches" refers to the official Montagnes Blanches region of Canada, the boundaries of which are depicted in an official May 31, 2016 map entitled "Montagnes Blanches" published by the Quebec Minister of Forests, Wildlife, and Parks.

11. "Montagnes Blanches Endangered Forest" refers to the region delineated by Greenpeace, the putative borders of which are reflected in, without limitation, the 2010 report "Boreal Refuge: Saving Quebec's Last Large Intact Forests" and the February 2016 report "Endangered Forests in the Balance: the impact of logging reaches new heights in the Montagnes Blanches Endangered Forest."

12. "Skype" means Skype Communications US Corporation and each of its current or former subsidiaries, affiliates, parents, predecessors and successors, divisions, departments, and operating units, and includes without limitation its current or former managers, partners, directors, shareholders, employees, employers, officers, agents, principals, officials, representatives, associates, consultants, attorneys, advisors, accountants, and all persons and entities acting or purporting to act on its behalf.

13. "Skype platform" means the user interface and services provided by Skype, including, without limitation, the video communication services, telephone or Voice over IP (VOIP) services, named Skype Groups, group chat, or individual chat functions, and any other communication method not specifically described provided by Skype and/or for the Skype for Business platform applications.

14. "Skype data" means any electronically-stored information generated by, stored within, or transmitted through the Skype platform.

15. "Employee" includes, without limitation, current or former partners, directors, shareholders, employees, officers, agents, officials, representatives, associates, consultants, attorneys, advisors, accountants, aliases, and all persons and entities acting or purporting to act on the employer's behalf.

16. "Any" or "all" shall mean any and all, and shall serve to bring within the scope of the Requests all responses that might otherwise be construed to be outside of their scope.

17. "Person" includes a natural person, firm, association, organization, partnership, limited liability partnership, business, enterprise, limited liability company, corporation, or public entity.

18. "Concerning," "regarding," "relating," and "related to" shall be construed to mean alluding to, reflecting, evidencing, supporting or contradicting, regarding, referring to, containing, embodying, commenting upon, discussing, involving, showing, comprising, referencing, identifying, bearing upon, pertaining to, affecting, or connected with or associated with, in whole or in part.

19. "Representative" or "representatives" with regard to a person or entity shall mean and shall include, both collectively and individually, each and every present and former director, officer, partner, employee, agent, independent consultant, investment advisor, expert, or any other person acting or purporting to act on behalf of the person or entity.

20. All of the terms defined above have the same meanings in the plural as they have in the singular.

21. The use of a verb in any tense shall be construed as the use of the verb in all other tenses, as necessary, to bring within the scope of this document request all documents and responses which might otherwise be considered beyond the scope.

22. The use of capital letters, lower case letters or quotation marks in this document request shall not be construed to limit the scope of any specific request contained herein.

23. The term "including" means including without limitation.

## INSTRUCTIONS

1. In each instance, if any, where You deny knowledge or information sufficient to respond to an Interrogatory, or any part thereof, identify each person known or believed to have such knowledge.

2. If, in responding to this set of Interrogatories, or any part of it, You encounter any ambiguity in construing either any Interrogatory or instruction relevant to the Interrogatory, You shall construe the Interrogatory in the broadest manner reasonably calculated to lead to information relevant to any issues or potential issues in this case and set forth in Your response the construction chosen or used in answering the Interrogatory.

3. Unless otherwise stated herein, the period covered by the Interrogatories is from June 1, 2012 to the present (the "Relevant Time Period").

4. The Interrogatories are continuing in nature and require that you promptly produce additional or amended responses promptly if new or further information is obtained or discovered subsequent to the time responses are served.

## INTERROGATORIES

1. Identify all facts known to you, including without limitation any documents, correspondence, conversations, or publicly-available information considered or relied upon, concerning Resolute's operations in the Montagnes Blanches or Montagnes Blanches Endangered Forest on each of the following dates: (a) on December 7, 2012, when Defendant Rolf Skar sent the email to Mr. Schirmer of Hearst reflected in RFP-0018689; (b) on January 21, 2013, when Defendant Daniel Brindis sent the email to Mr. Schirmer of Hearst reflected in RFP-0012021; (c)

1  in February 2016, on the date the report entitled "Endangered Forests in the Balance: The Impact of Logging Reaches New Heights in the Montagnes Blanches Endangered Forests" was published; (d) on March 2, 2016, when Defendant Amy Moas sent the email to Mr. Rojack of Midland Paper reflected in GPDEFS00001790; (e) on April 19, 2016, when Defendant Amy Moas sent the email to Mr. Rojack of Midland Paper reflected in RFP-0054277; (f) on December 16, 2016, when the letter bearing that date co-authored by Defendant Amy Moas and Shane Moffatt was disseminated; and (g) in May 2017, on the date the Clearcutting Free Speech Report was disseminated.

2. With respect to the May 31, 2016 statement by Laurent Lessard, Quebec's Minister of Forests, Wildlife, and Parks (the "Lessard Statement"): (a) identify the date you first learned of the Lessard Statements and the person(s) who first learned of the Lessard Statement on that date; (b) describe the circumstances in which you learned of the Lessard Statement, including without limitation the person or persons, if any, who informed you of the Lessard Statement; (c) identify all persons who were employed by or affiliated with Defendants Greenpeace Inc. or Greenpeace International in May and June of 2016 who were informed of the Lessard Statement, the date on which each such person was informed of the Lessard Statement, and whether each such person received a copy of the Lessard Statement; and (d) describe all steps that you took in response to the Lessard Statement.

3. Describe the basis for your statement on page 4 of the January 2016 briefing entitled "Resolute Forest Products: Key risks and concerns for investors" that you estimate the financial impact of reductions and cancellations by Resolute's customers "at over C$100 million."

4. For every allegation in the Complaint that you deny, identify the allegation or portion of the allegation you deny, including those that you did not address in your answer to the Complaint, and describe all facts and evidence upon which you base your denial.

5. Identify all facts supporting your contention, in support of your motion to dismiss the Complaint, that the "gist" of the Actionable Statements is about Resolute's effect on caribou herds.

6. For each of the following Greenpeace entities (a) describe the corporate, operational, and financial relationship between the entity and the other Greenpeace entities identified in this Interrogatory, (b) describe the entity's involvement in Greenpeace's campaign against Resolute, and (c) identify the persons, board(s) or committees that govern the entity: Greenpeace Inc.; Greenpeace International; Greenpeace Canada; and Greenpeace Fund, Inc.

7. Describe your knowledge concerning the "operational memorandum" referenced in paragraphs 76, 286, 309, 322, and 401 of the Complaint, including without limitation: (a) the persons who prepared the operational memorandum; (b) your involvement in the preparation of the operational memorandum; (c) the purpose of the operational memorandum; (d) all persons to whom the operational memorandum was disclosed or disseminated; (e) the bases for the factual assertions, conclusions, plans, and strategies set forth in the operational memorandum; and (f) all steps you took to execute upon the plans and strategies set forth in the operational memorandum.

8. With respect to the Declaration of Peter Reich in Support of Plaintiffs' Response to Defendants' Motions to Strike, Dismiss, and Transfer Venue, filed in the United States District Court for the Southern District of Georgia on November 22, 2016 (ECF No. 77) (the "Reich Declaration"), identify all statements in the Reich Declaration that you assert are inaccurate and, for each such assertion, explain how the statement is inaccurate and identify all facts and evidence upon which you base your assertion that statements in the Reich Declaration are inaccurate.

9. With respect to the Declaration of Frederick Cubbage in Support of Plaintiffs' Response to Defendants' Motions to Strike, Dismiss, and Transfer Venue, filed in the United States District Court for the Southern District of Georgia on November 22, 2016 (ECF No. 76)

(the "Cubbage Declaration"), identify all statements in the Cubbage Declaration that you assert are inaccurate and, for each such assertion, explain how the statement is inaccurate and identify all facts and evidence upon which you base your assertion that statements in the Cubbage Declaration are inaccurate.

10. With respect to the Declaration of Keith Moore in Support of Greenpeace Defendants' Motion to Strike Pursuant to O.C.G.A. § 9-11-11.1, filed in the United States District Court for the Southern District of Georgia on January 23, 2017 (ECF. No. 98-2) (the "Moore Declaration"): (a) describe how Mr. Moore was selected to provide a declaration; (b) describe how the Moore Declaration was prepared; (c) identify the persons involved in the preparation of the Moore Declaration; and (d) identify all facts and evidence that support the opinions and factual assertions in the Moore Declaration.

11. With respect to the Declaration of Jay R. Malcolm in Support of Greenpeace Defendants' Motion to Strike Pursuant to O.C.G.A. § 9-11-11.1, filed in the United States District Court for the Southern District of Georgia on January 23, 2017 (ECF. No. 98-3) (the "Malcolm Declaration"): (a) describe how Mr. Malcolm was selected to provide a declaration; (b) describe how the Malcolm Declaration was prepared; (c) identify the persons involved in the preparation of the Malcolm Declaration; and (d) identify all facts and evidence that support the opinions and factual assertions in the Malcolm Declaration.

12. With respect to the Declaration of Daniel Kneeshaw in Support of Greenpeace Defendants' Motion to Strike Pursuant to O.C.G.A. § 9-11-11.1, filed in the United States District Court for the Southern District of Georgia on January 23, 2017 (ECF. No. 98-4) (the "Kneeshaw Declaration"): (a) describe how Mr. Kneeshaw was selected to provide a declaration; (b) describe how the Kneeshaw Declaration was prepared; (c) identify the persons involved in the preparation of the Kneeshaw Declaration; and (d) identify all facts and evidence that support the opinions and

factual assertions in the Kneeshaw Declaration.

13. Identify the persons solicited to provide donations, grants, or other goods or services to you in connection with Greenpeace's campaign against Resolute and, for each such person: (a) indicate whether this person made a donation, grant, or provided other goods or services; (b) describe the amount or nature of such donation, grant, goods, or services; (c) identify the recipient of such donation, grant, goods, or services; and (d) describe how the donation, grant, goods, or services were used by the recipient.

14. Describe all steps you took to preserve electronically-stored data relevant to this action and/or responsive to Plaintiffs' discovery requests to you in this action, including without limitation the steps you took to ensure the preservation of Skype data generated by your employees in the course of their employment.

15. Identify and describe any policy pertaining to the use of the Skype platform by your employees in the course of their employment.

DATED: September 3, 2021

BROWN RUDNICK LLP
By: /s/ Lauren Tabaksblat
Lauren Tabaksblat
Michael Bowe
Leo J. Presiado

*Attorneys for Plaintiffs*