BROWN RUDNICK LLP
LEO J. PRESIADO (State Bar No. 166721)
2211 Michaelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: lpresiado@brownrudnick.com

Michael J. Bowe (admitted *pro hac vice*)
*mbowe@brownrudnick.com*
Lauren Tabaksblat (admitted *pro hac vice*)
*ltabaksblat@brownrudnick.com*
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

Counsel for Plaintiffs

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE (State Bar No. 141930)
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (212) 276-6599
Email:  thomasburke@dwt.com

LAURA HANDMAN (appearing *pro hac vice*)
CHELSEA T. KELLY (appearing *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499
Email: laurahandman@dwt.com
           chelseakelly@dwt.com

Counsel for Defendants

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al.*, | Case Number: 4:17-CV-02824-JST (KAW) |
| Plaintiffs, | **JOINT DISCOVERY LETTER** |
| vs. | |
| GREENPEACE INTERNATIONAL, *et al.*, | |
| Defendants. | |

Pursuant to Magistrate Judge Westmore's Standing Order, Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek U.S., Inc., Fibrek International, Inc., and Resolute FP Canada, Inc. (collectively "Resolute" or "Plaintiffs"), and Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, and Rolf Skar (collectively the "Greenpeace Defendants"), by and through their respective counsel, hereby submit the attached joint letter regarding a discovery dispute. The parties attest that they have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing this letter, and that, as required by ¶ 14 of this Court's Standing Order, counsel for Plaintiffs and for the Greenpeace Defendants met and conferred via video conference regarding the dispute on February 1, 2022, before reaching impasse.

By:

Date:   February 4, 2022           Signed:  /s/ *Lauren Tabaksblat*_____
                                            Lauren Tabaksblat (admitted *pro hac vice*)
                                            BROWN RUDNICK LLP
                                            Attorney for Plaintiffs
ii

Date: February 4, 2022     Signed: /s/ *Laura Handman*
Laura Handman (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
Attorney for Defendants Greenpeace
International, Greenpeace, Inc., Daniel
Brindis, Amy Moas and Rolf Skar

iii

Joint Discovery Letter
Case No. 4:17-cv-02824-JST (KAW)

Dear Judge Westmore:

This letter addresses a dispute regarding Plaintiffs' claims of privilege with respect to certain categories of documents withheld from their document productions and those of third parties.

**Defendants' Position.** In this case involving claims that Defendants made defamatory statements about Resolute, Plaintiffs take the extraordinary position that documents created, sent, or received by a public relations firm that Plaintiffs (not their counsel) hired to create *communications strategies* for responding to Greenpeace campaigns are privileged. Defendants served a subpoena on PR firm Counterpoint Strategies in March 2021, seeking documents relating to its work for Resolute in connection with Greenpeace. While Counterpoint produced 231 documents on November 29, 2021, it (through Plaintiffs) withheld a staggering 551 documents on the basis of attorney-client or work product privilege. *See* Exs. A, B. Because discussions with third-party PR firms are privileged, if at all, only in unique circumstances not present here, all of the documents withheld should be produced.

Typically, the sharing of attorney-client communications with a third party results in waiver of any privilege. As "the scope of attorney-client privilege must be construed narrowly[,] . . . the burden is on the party asserting the privilege to show that it applies despite that disclosure." *Anderson v. SeaWorld Parks & Ent., Inc.*, 329 F.R.D. 628, 632 (N.D. Cal. 2019), *citing Behunin v. Superior Court*, 9 Cal.App.5th 833 (2017). In *SeaWorld*, after release of a film critical of the company, SeaWorld and its counsel hired public relations firms "'to work with counsel ... in developing legal strategy including potential litigation,' among other duties," and later claimed certain documents were privileged. *Id*. The court determined that "the mere fact that such communications [between the attorney, the client, and the PR consultant] relate to litigation is not sufficient—*if the communications were intended to develop a public relations strategy in response to litigation, they are not privileged*." *Id.* at 633 (emphasis added).

Indeed, "in order for disclosure to a third party to be 'reasonably necessary' for an attorney' [sic] purpose, and thus not to effect a waiver of privilege, . . . *the third party must facilitate communication between the attorney and client*." *Id.* at 634 (emphasis added). The Court thus held that the communications at issue were not attorney-client privileged because "the evidence submitted . . . show at most that SeaWorld and its counsel sought advice from public relations firms to better predict the public reaction to legal activities and other efforts it considered in response to [the film], and to determine how best to present such activities to the public and other entities." *Id. See also In re Pac. Fertility Ctr. Litig.,* No. 18-CV-01586-JSC, 2020 WL 1934981, at *3 (N.D. Cal. Apr. 22, 2020) (inclusion of PR firms waived privilege because even if firms helped counsel develop media strategy in connection with lawsuits, "there is nothing about the communications which suggests the inclusion of the third party was necessary or essential").

Here, the claim of privilege is even more attenuated.[1] Counterpoint was hired on November 2, 2015 by Resolute's Vice President for Corporate Communications, to develop "▮▮▮

---

[1] Approximately 30 entries reference attorney work product; however, "it is not enough to show merely that the material was prepared at the behest of a lawyer or was provided to a lawyer," and the doctrine "does not extend to public relations activities even if they bear on the litigation strategy

████████████████████████████████████.[2] *See* Ex. C at 1. Counterpoint was to draft a ████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 5. Counterpoint also agreed to ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* While Plaintiffs now claim it was integral to the development of "a global litigation strategy," the retention letter and descriptions of withheld documents are to the contrary.[3] Indeed, subject lines for Counterpoint's privilege log suggest purely media-related activities such as "Video concepts/scripts," "Clips for approval," "Media Monitoring," and references to media articles and social media. *See, e.g.*, Ex. B at 3-4.

Further, of the 231 documents in Counterpoint's production withheld for privilege, 226 do not list the name of any attorney who authored, sent, or received it. Almost all entries describe the alleged basis for privilege as "Communications reflecting legal strategy development upon direction of Resolute counsel." Resolute's log for its own documents lists at least 320 withheld for privilege, but again, most do not list any attorney who authored, sent, or received the document.[4] Many have descriptions such as "Development of draft strategy documents re GP publications and Resolute response" but do not mention legal advice or the litigation at all. Even entries that do (*e.g.*, "Draft strategy documents reflecting legal advice") are vague and do not list specific attorneys. The fact that the correspondence at issue generally does not include counsel is consistent with retention to develop communications strategies, not facilitate legal communications. Further, Counterpoint was not hired by counsel, but directly by Plaintiffs, a factor Your Honor has noted may be considered in determining whether privilege applies. *See Stardock Sys., Inc. v. Reiche*, No. 4:17-cv-07025-SBA(KAW), 2018 WL 6259536, at *6 (N.D. Cal. Nov. 30, 2018) (finding attorney-client privilege applied in part "because Defendants' counsel (*and not Defendants themselves*)

---

because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *SeaWorld*, 329 F.R.D. at 635. Nothing in Resolute's log indicates that the documents withheld are work product.

[2] In response to this joint discovery letter, Plaintiffs for the first time disclosed another supposed engagement letter, between Plaintiffs' outside counsel and Counterpoint covering *services provided to the Kasowitz law firm* and making no mention of Resolute, Greenpeace, or this litigation. Even if entered into in April 2016 as Plaintiffs claim—confusingly, the letter is dated July 23, 2014 and has metadata indicating it was first created in June 2016—it would have no bearing on documents related to Counterpoint's work for Resolute or on the 353 documents withheld here that predate April 2016.

[3] If necessary, the Court could require production of a random sample of withheld documents for *in camera* review.

[4] 80 entries mention Resolute's General Counsel, Jacques Vachon (*e.g.*, "Vachon solicited to review strategy options re GP publication"). For most, Vachon is not listed as author, sender, or recipient; the documents are emails between non-lawyers at Resolute and Counterpoint, and thus, at best, should be redacted instead of withheld. *See, e.g.*, Ex. A, Entry Nos. 328-30.

hired the PR firm", and the documents at issue primarily involved e-mails "between [the PR firm] and Defendants' counsel" (emphasis added)); *see also In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 331 (S.D.N.Y. 2003) (no privilege if client "had hired [the PR firm] directly, even if her object in doing so had been purely to affect her legal situation").[5]

Based on the retainer letter, documents produced and logs, Counterpoint's role was decidedly *not* to facilitate communication between Plaintiffs and their attorneys or develop litigation strategy. The Counterpoint retainer was signed six months before this suit even was filed, and mentions ████████████████████████████████████████████████████████████████████████ Ex. C at 5. This clearly describes a non-privileged effort "to develop a public relations strategy," *see SeaWorld*, 329 F.R.D. at 633, and if anything, suggests an intent to use litigation in service of a PR effort, not vice-versa. Defendants ask the Court to reject the claim of privilege here, and order the documents to be produced.

**Plaintiffs' Position.**

Defendants acknowledge that Plaintiffs and Counterpoint produced hundreds of non-privileged communications reflecting factual information. Defendants concede that Counterpoint's communications with Resolute's in house and outside counsel in furtherance of a global litigation litigation strategy are privileged. *See* n.4. Nevertheless, Defendants make a blanket assertion to hundreds of communications with Resolute's public relations firms related to this coordinated legal strategy. Defendants' challenges are predicated on two flawed premises. First, Defendants incorrectly claim that Resolute, not its outside counsel, retained Counterpoint, and that this somehow pierces the privilege over third-party consultants engaged to advise in connection with a global litigation strategy. Second, Defendants claim that no communications between Resolute and Counterpoint in furtherance of this global strategy that did not include an attorney are not protected. They are wrong on both counts.

Plaintiffs retained Counterpoint to assist with litigation strategy in connection with both this action and a prior action filed in Canada against Greenpeace Canada in May 2013. Both litigations arose from an ongoing and coordinated campaign by Defendants and their affiliates to disseminate false and misleading information about Resolute's operations and to interfere with Resolute's relationships with customers and critical market constituents. Because Defendants utilized online

---

[5] Plaintiffs' reliance on *Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d 1198, 1204 (N.D. Cal. 2015) is misplaced. There, the Court found communications privileged where a PR consultant was not hired for "general public relations," but solely to communicate "directly with the regulatory bodies and neighbors/potential legal adversaries," and collect information for the attorneys to assist in resolving a potential litigation. *Id.* This goes far beyond what Counterpoint did here—*i.e.*, providing guidance on general public relations. Judge Tigar distinguished the facts from another case where, as here, "the communications at issue 'appear[ed] on their face to be routine suggestions from a public relations firm as to how to put the 'spin' most favorable to [plaintiff] on successive developments in the ongoing litigation'"—in which case, privilege did not apply. *Id.*

reports and social media as primary vehicles to disseminate and legitimize their false and misleading claims, Resolute's counsel understood from the beginning that it was critical that they have expert analysis and advice of a PR firm to provide accurate, useful, and well-informed legal advice to its client concerning Defendants' ongoing attacks.

In April 2016, when Resolute began to contemplate a litigation in the United States against Defendants, its then-outside counsel, Kasowitz Benson Torres, entered into an engagement with Counterpoint so that Counterpoint could advise counsel in connection with the pre-litigation and litigation strategy.[6] Pursuant to that engagement, Counterpoint was providing expertise to Resolute's in house and outside counsel as "functional employees" of Resolute at different times and aided in the collection of information and provision of legal advice and strategy development.

As Judge Tigar properly recognized, communications with a PR firm, may be protected by the attorney-client privilege, where, as here, a PR firm is retained in connection with the litigation. That the public relations firm may be a third party does not break that privilege. *See Schaeffer v. Gregory Village Partners, L.P.*, 78 F. Supp. 3d 1198, 1203-04 (N.D. Cal. 2015) (Tigar, J.). Where third parties are "functional employees" of the client, they are an "agent of a corporation that fall within the privilege's scope under *Upjohn*." *Id.* (citing *Upjohn Co. v. United States,* 449 U.S. 383, 391-92 (1981)). In upholding the privilege over communications with a PR firm, Judge Tigar relied on a number of cases, which generally found that a public relations firm can be "essentially, incorporated into [the corporation's] staff to perform a corporate function that was necessary in the context of the government investigation, actual and anticipated private litigation, and heavy press scrutiny . . . ." *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001); *see also In re Grand Jury Subpoenas*, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003) (recognizing that "[PR] consultants engaged by lawyers to advise them on [legal] matters . . .[or PR] consultants come within the attorney-client privilege, as they have a close nexus to the attorney's role in advocating the client's cause before a court.") (brackets in original).

Likewise, materials "prepared in anticipation of litigation or for trial" that are prepared "by or for another party or by that party's representative[s]" are afforded work-product protection. *See U.S. v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011). This protection can be extended to documents prepared and shared with public relations firms or documents or information collected by a public relations firm or employees of a corporation to assist counsel in providing legal advice. *See, e.g.*, *Stardock Sys., Inc. v. Reiche*, No. 417CV07025SBAKAW, 2018 WL 6259536, at *3 (N.D. Cal. Nov. 30, 2018); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 664 (D. Or. 2019) (draft scripts to be given to customer service representatives prepared with a public relations firm, regarding data security breach were protected). Where the public relations firm is

---

[6] Resolute previously entered into an engagement letter with Counterpoint in December 2015 in connection with the Canadian action. Counterpoint was retained at that time to replace a prior PR consultant which was engaged in 2013 at the advice of counsel to consult in connection with that action. Although Defendants incorrectly claim that the engagement letter between Kasowitz and Counterpoint was executed in 2014, the agreement was actually executed in April 2016 – just weeks before the filing of the U.S. action – as reflected in the signature block. A copy of this engagement letter is annexed hereto as Exhibit "1."

Joint Discovery Letter
Case No. 4:17-cv-02824-JST (KAW)

hired to service like or together with an in-house public relations department, work product privilege extends just like it would to another employee. *Id.*

Here, Resolute's outside counsel retained Counterpoint to provide expertise and develop strategy in connection with the pre-litigation strategy and legal efforts to address the ongoing dissemination of misinformation. Counterpoint's expertise was specifically required given the manner in which Defendants carried out their campaign.  The privilege log entries Defendants challenge reflect a joint effort between Resolute's internal and external counsel and PR consultants to, among other things: (1) analyze Greenpeace's claims and prepare litigation strategy; (2) gather information to respond to Defendants' claims; (3) develop preliminary drafts for counsel to respond to Defendants' claims and mitigate Resolute's damages; and (4) directly assist counsel in obtaining necessary information for the provision of legal advice.  Like the actions highlighted by Judge Tigar in *Schaeffer*, the documents withheld as privileged include the collection and provision of information for Resolute's attorneys to determine the truth or falsity of Defendants' claims and mitigate damages attributable to reputational harm, lost business, and lost opportunities.

Defendants' challenge to 226 documents withheld on the grounds that they "do not list the name of any attorney who authored, sent or received it," (*see* p. 2), is similarly wrong as a matter of law. The law does not limit the application of the attorney-client privilege to persons who are themselves attorneys.  *See Zurich Am. Ins. Co. v. Superior Ct.*, 66 Cal. Rptr. 3d 833, 841 (2007) (holding, after a thorough review of privilege law and California Supreme Court precedent, that attorney-client privilege applies to corporate communications by middle and lower-level employees not directly involving attorney, but which discuss legal advice); *see also U.S. Specialty Ins. Co. v. Capitol Films U.S., LLC*, No. CV077206AHMAGRX, 2008 WL 11340369, at *4 (C.D. Cal. Oct. 7, 2008) (holding the same, and extending the privilege to redactions within documents between employees that discuss legal advice); *Fed. Trade Comm'n v. Abbvie, Inc.*, No. CV 14-5151, 2015 WL 8623076, at *3 (E.D. Pa. Dec. 14, 2015).  This is particularly true here, where, although preliminary drafts and fact-gathering at the direction of counsel were not always sent to or copied counsel or PR firms, they were all in furtherance of the overall litigation strategy as reflected in later versions of those communications which were ultimately provided to and commented on by counsel.  *See, e.g.*, Priv. Log (Dec. 29, 2021), 186-196, 247, 248. The remaining documents reflect communications between non-lawyers discussing advice or communications with counsel, even if such counsel does not appear on the e-mail.  *See* n.8.

Finally, Defendants are incorrect that Resolute improperly asserted a privilege over strictly media related communications.  In circumstances where Counterpoint provided Resolute with strictly factual notice that Greenpeace had produced yet another false social media post or other public statement, those documents have already been produced. *See supra.* The privileged documents withheld involve communications discussing potential legal responses to such statements or preparing responses to give to customers to help mitigate damages in the litigation.  Accordingly, Plaintiffs request that the Court deny Defendants' requests for privileged materials.

5

Joint Discovery Letter
Case No. 4:17-cv-02824-JST (KAW)

Respectfully submitted,

/s/ *Lauren Tabaksblat*
Lauren Tabaksblat (admitted *pro hac vice*)
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800
Email: ltabaksblat@brownrudnick.com

*Attorneys for Plaintiffs*

/s/ *Laura Handman*
Laura Handman (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Telephone:   (202) 973-4200
Facsimile:   (202) 973-4499
Email: laurahandman@dwt.com

*Attorneys for Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, and Rolf Skar*