UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>GREENPEACE INTERNATIONAL, et al.,<br><br>Defendants. | Case No.  17-cv-02824-JST   (KAW)<br><br>**ORDER REGARDING DISCOVERY LETTER NO. 13**<br><br>Re: Dkt. No. 432 |

The instant case concerns Plaintiffs' defamation claims based on Defendants' December 2016 and May 2017 statements that Plaintiffs were operating in the Montagnes Blanches forest ("Challenged Statements"). Pending before the Court is the parties' discovery letter regarding Plaintiffs' claims of attorney-client and work product privilege with respect to certain documents being held by Counterpoint, a public relations firm. (Discovery Letter at 1, Dkt. No. 432.)

**I.    DISCUSSION**

**A.    Attorney-Client Privilege**

As an initial matter, the Court observes that Plaintiffs rely on federal common law regarding attorney-client privilege, while Defendants rely on California law. Neither party, however, explains which law should apply.

The Court finds that California statutory law applies. State law governs attorney-client privilege claims when subject-matter jurisdiction is based on diversity of citizenship, whereas federal common law applies when subject-matter jurisdiction is based on federal question. *See Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1081 (C.D. Cal. 2009); *Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d 1198, 1202 (N.D. Cal. 2015). Here, Plaintiffs asserted both federal question and diversity jurisdiction; federal question jurisdiction was premised on a RICO

1  claim.  (Amend. Compl. ¶¶ 20-21, Dkt. No. 185.)  The RICO claims were then dismissed with

2  prejudice, leaving only a defamation claim and corresponding Unfair Competition Law ("UCL")

3  claim.  (*See* Dkt. No. 246 at 34.)  Thus, the only remaining basis for jurisdiction is diversity

4  jurisdiction.

           **i.**    **California Law**

6        In general, "[t]he attorney-client privilege applies only to confidential communications,"

7  and must "be narrowly construed."  *Behunin v. Superior Court*, 9 Cal. App. 5th 833, 843, 850

8  (2017) (quotations omitted).  Typically, an attorney-client "communication is presumed to have

9  been made in confidence and the opponent of the claim of privilege has the burden of proof to

10  establish that the communication was not confidential."  *Id.* at 844.  Where, however, "the

11  communication is disclosed to a third party . . . no presumption of confidentiality obtains, and the

12  usual allocation of burden of proof, resting with the proponent of the privilege, applies in

13  determining whether confidentiality was preserved under § 952."  *Id.* at 844-45.

14        "There is no 'public relations privilege' in California, and the courts cannot create one."

15  *Behunin*, 9 Cal. App. 5th at 845.  Thus, "whether communications among a client, his or her

16  attorney, and a public relations consultant are protected by the attorney-client privilege depends on

17  whether the communications were confidential and whether disclosing them to the consultant was

18  reasonably necessary to accomplish the purpose for which the client consulted the attorney."  *Id.*

19  The "necessity" element, however, "means more than just useful and convenient, but rather

20  requires that the involvement of the third party be nearly indispensable or serve some specialized

21  purpose in facilitating the attorney-client communications."  *Id.* at 848 (quotation omitted).  Thus,

22  even when a "public relations consultant was inserted into the legal decision-making process," this

23  "d[id] nothing to explain why the consultant's involvement was necessary to the plaintiff's

24  obtaining legal advice from his actual attorneys."  *Id.* at 848-49.

25        In *Egiazaryan v. Zalmayev*, a case *Behunin* relied heavily upon, the public relations firm

26  was retained to develop key messages and narrative in support of the legal cases, participate in the

27  development of legal strategy, contribute legal recommendations, provide next step action plans,

28  and weigh strategic considerations to promote the client's overall legal goals.  290 F.R.D. 421,

2

431 (S.D.N.Y. 2013).[1]  This, however, was insufficient to demonstrate that the public relations firm's participation was "'nearly indispensable' or otherwise necessary to facilitate his communications with his attorneys," or to otherwise "improve[] the comprehension of the communications between attorney and client." *Id.* (quotation omitted).  Rather, "it simply demonstrates the circumstances under which the waiver occurred." *Id.*

Here, Plaintiffs assert that Counterpoint was retained "to assist with litigation strategy in connection with both this action and a prior action filed in Canada against Greenpeace Canada in May 2013." (Discovery Letter at 3.)  Plaintiffs further assert that because this case concerned Defendants' use of social media to disseminate their allegedly false statements, Plaintiffs' counsel believed that "it was critical that they have expert analysis and advice of a PR firm to provide accurate, useful, and well-informed legal advice to its client concerning Defendants' ongoing attacks." (*Id.* at 3-4.)  Thus, Counterpoint's expertise was used to: (1) analyze Defendants' claims and prepare litigation strategy, (2) gather information to respond to Defendants' claims, (3) develop preliminary drafts for counsel to respond to Defendants' claims, and (4) directly assist counsel in obtaining necessary information for the provision of legal advice.  (*Id.* at 5.)

Some of these activities appear to be related to public relations and media strategy, which would not be covered by attorney-client privilege. *See Egiazaryan*, 290 F.R.D. at 431 ("a media campaign is not a litigation strategy").  Other activities demonstrate Counterpoint's involvement in legal strategy and analysis, but as in *Egiazaryan*, this does not carry Plaintiffs' burden of demonstrating that Counterpoint was essential or necessary to facilitate communications between Plaintiffs and their attorneys. *See Anderson v. Seaworld Parks & Entm't, Inc.*, 329 F.R.D. 628, 634 (N.D. Cal. 2019) ("[I]t is not enough that the third party weighs in on legal strategy.  Instead, the third party must facilitate communication between the attorney and client."); *In re Pac. Fertility Ctr. Litig.*, No. 18-cv-01586-JSC, 2020 U.S. Dist. LEXIS 71127, at *8-9 (N.D. Cal. Apr. 22, 2020) ("[T]here is nothing about the communications which suggests the inclusion of the third party was necessary or essential.  That is, the documents do not show that counsel needed the

---

[1] While *Egiazaryan* applied New York law, the California Court of Appeal explained that New York law "is similar to California law on this issue . . . ." *Behunin*, 9 Cal. App. 5th at 847-48.

3

1  public relations firms' assistance to accomplish the purpose for which Defendants hired the
2  attorneys."). Again, it is not enough for communications with Counterpoint to be useful and
3  convenient even to legal strategy; Counterpoint's involvement must "be nearly indispensable or
4  serve some specialized purpose in facilitating the attorney-client communications." *Behunin*, 9
5  Cal. App. 5th at 847-48 (quotation omitted). Plaintiffs do not explain why a public relations firm
6  is essential to providing legal advice, such that Plaintiffs' counsel would have been unable to
7  provide competent advice absent Counterpoint's involvement. Accordingly, the Court finds that
8  Plaintiffs have not demonstrated that attorney-client privilege protects communications involving
9  or shared with Counterpoint under California law.

### ii. Federal Common Law

The Court further observes that Plaintiffs would also not demonstrate attorney-client privilege under federal common law. "[F]ederal common law on attorney-client privilege . . . is broader than New York law and California law and does not require a finding the communication was reasonably necessary for the attorney to provide legal advice." *Behunin*, 9 Cal. App. 5th at 851. Relying on *Schaeffer*, Plaintiffs contend that Counterpoint is their "'functional employee,'" such that Counterpoint is an "'agent of a corporation that fall within the privilege's scope under *Upjohn*.'" (Discovery Letter at 4 (quoting 78 F. Supp. 3d at 1202). To qualify as a functional employee, however, it is not sufficient to merely be an outside consultant hired in connection with a litigation. *See United States v. Graf*, 610 F.3d 1148, 1159 (9th Cir. 2010) (distinguishing between a functional employee and an independent outside consultant).

In *Graf*, the Ninth Circuit found that the defendant was a functional employee despite his claimed status as an independent consultant because the defendant "communicated with insurance brokers and agents on behalf of [the company,] managed company employees[, and] was the company's primary agent in its communications with corporate counsel." 610 F.3d at 1159. The Ninth Circuit went so far as to observe that "[i]t appears that the sole reason Graf was not explicitly named a director, officer, or employee of [the company] was because of the outstanding California cease-and-desist orders preventing him from lawfully being employed by an insurance company in the State of California." *Id.* Likewise, in *In re Bieter Co.*, an Eighth Circuit decision

4

relied upon by *Graf*, the independent contractor worked in the company's office with a company principal, interacted daily with a company principal, appeared at public hearings before government entities on behalf of the company, and was viewed as a representative of the company by the government, media, potential tenants, and the defendants in the case. 16 F.3d 929, 933-34 (8th Cir. 1994). The independent contractor also had significant communications with the company's counsel, including attending meetings with counsel alone or with a company principal and working closely with counsel as the litigation developed. *Id.* at 934. Observing that the independent contractor likely possessed information possessed by no other person, the Eighth Circuit found he was a functional employee. *Id.* at 938. Finally, in *Schaeffer*, the district court found that a contractor was a functional employee because she interacted with the eventual defendants in the litigation with respect to the site contamination that became the subject of the litigation, acted as the face of the company during public meetings, was counseled by the company's attorneys when attending the meetings, and provided information to the company's legal staff to allow them to evaluate legal strategy. 78 F. Supp. 3d at 1204.

In contrast, Plaintiffs point to no facts that would suggest Counterpoint worked so closely with Plaintiffs that it was functionally an employee except in name only. Indeed, it is not clear who hired Counterpoint, as Plaintiffs assert that its outside counsel hired Counterpoint so that Counterpoint could advise counsel regarding a pre-litigation and litigation strategy. (Discovery Letter at 4.) There is no suggestion that Counterpoint acted as Plaintiffs' sole representative to the public, government, or Defendants; rather, it appears Counterpoint was hired to advise Plaintiffs' counsel as to legal and media strategy. Thus, Plaintiffs cannot demonstrate that attorney-client privilege applies to the communications with or sent to Counterpoint under either California or federal common law.

### B.  Work Product

"Unlike the attorney-client privilege, the application of the work product doctrine in diversity of citizenship cases is determined under federal law." *Kandel*, 683 F. Supp. 2d at 1083. The work product doctrine "protects from discovery 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.'"

*Anderson*, 329 F.R.D. at 635 (quoting Fed. R. Civ. P. 26(b)(3)).

Public relations work, however:

> is generally treated as business strategy, rather than a legal one, and is not protected as work product. Because the protection arises only for materials prepared in anticipation of litigation, it is not enough to show merely that the material was prepared at the behest of a lawyer or was provided to a lawyer, and the work product doctrine does not extend to public relations activities even if they bear on the litigation strategy because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally. Nor is an attorney's own work subject to protection if the work is intended for public relations or other business purposes rather than litigation . . . .

*Anderson*, 329 F.R.D. at 635.

Here, it is apparent that not all communications with and to Counterpoint concerned legal advice and strategy only. For example, Plaintiffs contend that Counterpoint "gather[ed] information to respond to Defendants' claims." (Discovery Letter at 5.) If such responses were part of a media or public relations strategy, this would constitute business strategy rather than legal strategy, and would not be protected by the work product privilege. Likewise, Counterpoint's work "develop[ing] preliminary drafts for counsel to respond to Defendants' claims and mitigate Resolute's damages" falls squarely within business strategy, as it concerns limiting the economic harm to Resolute rather than the legal ramifications of Defendants' statements. (*Id.*) Defendants also point to privilege log entries such as "Video concepts/scripts," "Clips for approval," "Media Monitoring," and references to media articles and social media. (*Id.* at 2.) It would appear such entries concern public relations work.

In contrast, documents concerning the analysis of Defendants' statements and preparation of litigation strategy, as well as assisting counsel in obtaining necessary information for the provision of legal advice, may qualify as work product if it was prepared at the behest of an attorney or provided to an attorney in anticipation of litigation.

## II.  CONCLUSION

For the reasons stated above, Counterpoint must produce all documents being withheld on the basis of attorney-client privilege. Counterpoint must also produce all documents being

6

withheld on the basis of the attorney work product doctrine to the extent that such documents were not prepared in anticipation of litigation. This includes documents that were produced as part of a media or public relations strategy, even if such documents are tangentially related to the litigation.

Counterpoint shall produce these documents within **fourteen days** of the date of this order.

This order disposes of Docket No. 432.

IT IS SO ORDERED.

Dated: March 25, 2022

KANDIS A. WESTMORE
United States Magistrate Judge