THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111
Telephone:(415) 276-6500
Facsimile: (415) 276-6599
Email:      thomasburke@dwt.com

LAURA HANDMAN (appearing *pro hac vice*)
CHELSEA T. KELLY (appearing *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Telephone:(202) 973-4200
Facsimile: (202) 973-4499
Email:      laurahandman@dwt.com
            chelseakelly@dwt.com

LACY H. KOONCE, III (appearing *pro hac vice*)
KLARIS LAW
29 Little West 12th Street
New York, NY 10014
Telephone:   (917) 612-5861
Email:      lance.koonce@klarislaw.com

Attorneys for Defendants
GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING
COUNCIL"), GREENPEACE, INC., DANIEL BRINDIS, AMY MOAS, and
ROLF SKAR

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA:  OAKLAND DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., RESOLUTE FP US, INC., RESOLUTE FP AUGUSTA, LLC, FIBREK GENERAL PARTNERSHIP, FIBREK U.S., INC., FIBREK INTERNATIONAL INC., and RESOLUTE FP CANADA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., GREENPEACE FUND, INC., FORESTETHICS, DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT, ROLF SKAR, TODD PAGLIA, and JOHN AND JANE DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 4:17-cv-02824-JST <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS** <br><br> Complaint Filed:  May 31, 2016 <br> Amended Complaint Filed:  November 8, 2017 |

DAVIS WRIGHT TREMAINE LLP

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL BACKGROUND ...................................................................................... 2

        A.      Defendants Took Reasonable Steps to Preserve All Relevant Evidence, and Carefully Collected All Available Skype Data.................................................. 2

        B.      Defendants Produced Large Amounts of Skype Data, Including from the Time Period that Plaintiffs Incorrectly Allege Was "Destroyed." ......................... 5

        C.      Skype Cloud Only Maintains Individuals' Data Going Back to April 2017.......... 5

        D.      Defendants Informed Plaintiffs of the Available Skype Data and Cooperated with Plaintiffs' Efforts to Obtain Even Additional Skype Data from Microsoft. ....................................................................................................... 7

        E.      The Discovery that Resolute Seeks Does Not and Has Never Existed. ................. 9

        F.      Defendants Confer with Resolute and Present Joint Discovery Letter Based on Resolute's Discovery Malfeasance........................................................ 11

III.    LEGAL STANDARD ............................................................................................... 12

IV.     ARGUMENT ............................................................................................................ 12

        A.      Resolute's Motion Is Procedurally Improper. .................................................... 13

        B.      The Greenpeace Defendants Did Not Spoliate Evidence..................................... 13

                1.      Defendants Took Reasonable Steps to Preserve Skype Messages............ 13

                2.      There Is No Evidence that Skype Messages Were Actually "Lost," and Not Collected from Other Custodians. ............................................... 16

        C.      Sanctions Are Not Appropriate in This Case....................................................... 18

                1.      Resolute Suffered No Prejudice, Foreclosing Sanctions Under Rule 37(e)(1)..................................................................................................... 18

                2.      Defendants Did Not Intentionally Destroy Evidence, Foreclosing Severe Sanctions Under Rule 37(e)(2)..................................................... 23

V.      CONCLUSION ......................................................................................................... 25

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

1

<div align="center">

**TABLE OF AUTHORITIES**

</div>

2

<div align="right">

**Pages**

</div>

3

**Cases**

4

*Aircraft Fueling Sys., Inc. v. Sw. Airlines Co.*,

5
    No. 08-CV-414-GKF-FHM, 2011 WL 4954250 (N.D. Okla. Oct. 18, 2011) ..........................20

6

*Blumenthal Distributing, Inc. v. Herman Miller, Inc.*,
    No. ED CV 14-1926-JAK, 2016 WL 6609208 (C.D. Cal. July 12, 2016) ..............................25

7

8

*Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*,
    No. CV 10-6938 SVW (PLA), 2012 WL 3217858 (C.D. Cal. Aug. 8, 2012) .........................23

9

10

*Burns v. Medtronic, Inc.*,
    No. 8:15-CV-2330-T-17TBM, 2017 WL 11633269 (M.D. Fla. Aug. 9, 2017)...................19, 20

11

*Busch v. Dyno Nobel, Inc.*,
    40 F. App'x. 947 (6th Cir. 2002)..................................................................................................16

12

13

*Colonies Partners, L.P. v. Cty. of San Bernardino*,
    No. 5:18-CV-00420-JGB (SHK), 2020 WL 1496444 (C.D. Cal. Feb. 27, 2020),
    *report and recommendation adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27,

14

    2020).........................................................................................................................................15, 25

15

16

*Cramton v. Grabbagreen Franchising LLC*,
    No. CV-17-04663-PHX-DWL, 2019 WL 7048773 (D. Ariz. Dec. 23, 2019)...........................14

17

*Exp.-Imp. Bank of Korea v. ASI Corp.*,
    No. CV 16-2056-MWF, 2018 WL 3203038 (C.D. Cal. June 28, 2018)...................................19

18

19

*Fiteq Inc v. Venture Corp.*,
    No. 13-CV-01946-BLF, 2016 WL 1701794 (N.D. Cal. Apr. 28, 2016)...................................16

20

21

*FTC v. Lights of Am. Inc.*,
    No. SACV 10-1333 JVS (MLGx), 2012 WL 695008 (C.D. Cal. Jan. 20, 2012)......................19

22

*Gaina v. Northridge Hosp. Med. Ctr.*,
    No. CV 18-00177-DMG, 2018 WL 6258895 (C.D. Cal. Nov. 21, 2018), *aff'd*,

23

    No. CV 18-177-DMG, 2019 WL 1751825 (C.D. Cal. Feb. 25, 2019) .....................................23

24

*Gutman v. Klein*,
    No. 03 CIV. 1570 (BMC), 2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008) .................................25

25

26

*HCC Ins. Holdings, Inc. v. Flowers*,
    No. 1:15-CV-3262-WSD, 2017 WL 393732 (N.D. Ga. Jan. 30, 2017)....................................19

27

28

<div style="writing-mode: vertical">DAVIS WRIGHT TREMAINE LLP</div>

---

<div align="center">

ii

</div>

DAVIS WRIGHT TREMAINE LLP

*Hoover v. NCL (Bahamas) Ltd.*,
    No. 19-22906-CIV, 2020 WL 4505634 (S.D. Fla. Aug. 5, 2020) ..............................18

*Hugler v. Sw. Fuel Mgmt., Inc.*,
    No. 16 CV 4547-FMO, 2017 WL 8941163 (C.D. Cal. May 2, 2017) ......................................16

*Int'l Bus. Machines Corp. v. Naganayagam*,
    No. 15 CIV. 7991 (NSR), 2017 WL 5633165 (S.D.N.Y. Nov. 21, 2017) ...............................20

*John v. Cty. of Lake*,
    No. 18-CV-06935-WHA (SK), 2020 WL 3630391 (N.D. Cal. July 3, 2020) ...................12, 24

*Kinnally v. Rogers Corp.*,
    No. CV-06-2704-PHX-JAT, 2008 WL 4850116 (D. Ariz. Nov. 7, 2008)................................16

*Leidig v. Buzzfeed, Inc.*,
    No. 16-cv-0542(VM)-(GWG), 2017 WL 6512353 (S.D.N.Y. Dec. 19, 2017).........................14

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006) ...............................................................................................24

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
    No. 13-CV-04236-BLF, 2015 WL 8482256 (N.D. Cal. Dec. 10, 2015) ...................................14

*Med. Lab. Mgmt. Consultants v. Am. Broad. Co.*,
    306 F.3d 806 (9th Cir. 2002)........................................................................................16, 18

*Oppenheimer v. City of La Habra*,
    No. SACV 16-00018 JVS (DFMx), 2017 WL 1807596 (C.D. Cal. Feb. 17,
    2017)......................................................................................................................................25

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
    271 F.R.D. 429 (S.D.N.Y. 2010).........................................................................................16

*Pall Corp. v. 3M Purification Inc.*,
    279 F.R.D. 209 (E.D.N.Y. 2011) .........................................................................................23

*Radiologix, Inc. v. Radiology & Nuclear Med., LLC*,
    No. 15-4927-DDC-KGS, 2019 WL 354972 (D. Kan. Jan. 29, 2019)................................18, 19

*Roadrunner Transp. Servs., Inc. v. Tarwater*,
    No. SACV 10-1534 AG (MLGx), 2012 WL 12918366 (C.D. Cal. May 31,
    2012)......................................................................................................................................24

*Sanchez v. Jiles*,
    No. CV-10-09384-MMM, 2012 WL 13005996 (C.D. Cal. June 14, 2012) .............................18

*Sekisui Am. Corp. v. Hart*,
    No. 12 CIV. 3479 (SAS) (FM), 2013 WL 2951924 (S.D.N.Y. June 10, 2013).......................23

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

*Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*,
    C.A. No. 13-33WES, 2019 WL 118412 (D.R.I. Jan. 7, 2019)................................18, 24

*Zubulake v. UBS Warburg LLC*,
    220 F.R.D. 212 (S.D.N.Y. 2003)................................................................................13

**Rules**

Federal Rules of Civil Procedure
    11................................................................................................................................17
    37........................................................................................................................ *passim*
    37(e) ................................................................................................................. *passim*
    37(e)(1)................................................................................................................12, 18
    37(e)(2)................................................................................................................12, 23

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

# I.    INTRODUCTION

After months of silence—and without any attempt to meet and confer, Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek U.S., Inc., Fibrek International, Inc., and Resolute FP Canada, Inc. (collectively, "Resolute" or "Plaintiffs") inexplicably moved for the most severe sanctions against Defendants Greenpeace, Inc., Greenpeace International, Daniel Brindis, Amy Moas, and Rolf Skar (collectively, the "Greenpeace Defendants" or "Defendants") for alleged spoliation of personal Skype messages *that the Greenpeace Defendants took reasonable steps to preserve and had already produced.*

Resolute's request, which seeks extraordinary relief without Plaintiffs having laid any of the necessary groundwork (because they cannot), appears to be little more than a tactical ambush. Resolute seeks to distract this Court from Defendants' own forthcoming sanctions request, which Defendants have been pursuing in good faith for several months through meet-and-confer exchanges and negotiation of a joint discovery letter with Plaintiffs, and which will be filed imminently.[1]  This is the only explanation for the abrupt timing of Resolute's hasty and ill-conceived motion, which attempts to revive disputes resolved between the parties months ago.

Resolute's motion rests on the faulty premise that Skype messages must have been willfully spoliated between May and December 2016 because the Greenpeace Defendants did not produce any "smoking gun" evidence to prove the allegation at the heart of Resolute's case—that Defendants knew the Montagnes Blanches boundaries they had been using were *incorrect*, as the only "true" Montagnes Blanches boundaries were set forth in Minister Lessard's May 2016 press release.  But such messages would not and cannot exist because, to this day, the words "Montagnes Blanches" do not have just one definition or set of boundaries in Quebec—as Defendants shall establish at summary judgment.  And key witness testimony demonstrates that Defendants either disagreed with Minister Lessard's May 2016 statement or were unaware of it; and that *Greenpeace-Canada*—who

---

[1] The Greenpeace Defendants will file this sanctions request as a joint discovery letter if the Court grants the Administrative Motion for Clarification (ECF No. 437), thereby confirming that discovery-related sanctions motions should follow the requirements in Magistrate Judge Westmore's Standing Order.  If the Court denies or does not rule on this Administrative Motion, then Defendants will file their request as a motion for sanctions.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

1  is not a party to this litigation and who has also produced its own Skype data—took the lead on

2  responding to the press release, as it involved their own government and relevant language (French).

3  In any event, Defendants have fully complied with their discovery obligations and Resolute's

4  extreme sanctions are entirely unwarranted.

5  On the merits, Resolute fails to justify the sanctions it seeks because: (1) the Greenpeace

6  Defendants took careful steps to preserve—and have produced—thousands of Skype messages from

7  their custodians' personal accounts, including the alleged "Critical Period Messages"[2] between May

8  2016 and December 2016 that bely the entire premise of Resolute's motion; (2) Resolute fails to

9  show that any Skype messages were, in fact, lost as a result of Defendants' conduct (as opposed to

10 an unexpected system-wide Skype upgrade that caused Cloud data loss in April 2017); (3) Resolute

11 suffered no prejudice, as it cannot establish that it is missing any relevant Skype communications

12 that were not produced from other custodians' accounts, (thus, compensatory monetary sanctions

13 are inappropriate); and (4) Resolute has not even approached proving that Defendants acted

14 intentionally to deprive Resolute of any evidence, as required to warrant more severe sanctions, such

15 as default judgment or an adverse inference.

16 Because Resolute's motion is both procedurally improper and fails independently on the

17 merits, the Greenpeace Defendants respectfully request that this Court deny the motion.

## II.      FACTUAL BACKGROUND

18

19 **A.      Defendants Took Reasonable Steps to Preserve All Relevant Evidence, and Carefully
         Collected All Available Skype Data.**

20 Defendants have taken extensive measures to ensure the preservation and collection of

21 relevant Skype data.  As Plaintiffs acknowledge, shortly after receiving Resolute's May 2015 cease

22 and desist letter, Greenpeace Inc.'s counsel issued a litigation hold notice to Defendants Daniel

23 Brindis and Rolf Skar, and former defendant, Matthew Daggett (one of whom forwarded it to

24 Defendant Amy Moas), directing them to preserve "any information (whether in electronic, digital

25 or paper form) that pertains to this matter."  Mot., Ex. 6 at 3.  Mere days after the filing of this

26 lawsuit on May 31, 2016, Defendants circulated additional litigation holds, informing staff of their

27

28 _____

[2] As defined by Resolute at page 3 of its Motion.

DAVIS WRIGHT TREMAINE LLP

need to preserve relevant data in relation to the case, including all "electronic records."[3]  *Id.* at 2-3. Defendants testified that they understood the litigation hold to apply to their personal Skype accounts.  *See* Dep. Tr. of Amy Moas at 314:6-11 ("I made sure not to delete, manually delete any [Skype] chats. That would not have been my normal course of action, and I knew not to do that because of document retention"); *see also* Dep. Tr. of Daniel Brindis at 330:12-15 (stating that, after receiving the litigation hold, he understood that he was "supposed to preserve [his] Skype messages"); Dep. Tr. of Matthew Daggett at 16:7-15 (noting that he "interpreted [the litigation hold] . . . to not delete anything . . . including in Skype").  Defendants also testified that Greenpeace, Inc. and Greenpeace International did not maintain corporate Skype accounts, but rather, employees used *personal* Skype accounts.  *See, e.g.,* Dep. Tr. of Matthew Daggett as Greenpeace International 30(b)(6) Rep. at 14:16-21 ("Greenpeace International employees that used Skype used it in a personal capacity.  So . . . Greenpeace IT doesn't manage . . . the other personal Skype accounts of the different individuals at Greenpeace International").

Once discovery began, Defendants' counsel and their e-discovery vendor collected Skype data from the personal Skype accounts of Defendants Amy Moas, Rolf Skar, Daniel Brindis, and (former Defendant) Matthew Daggett. Decl. of Lacy H. Koonce ("Koonce Decl.") ¶ 2.  Defendants spent a great amount of time, expense, and resources in collecting, processing, and reviewing this Skype data—over $160,000 in attorney, paralegal, and vendor hours.  *See id.* ¶ 3; *see also* ECF No. 385 at 3.  They ultimately produced 9,676 Skype chats from these four individuals—on top of thousands of emails and other documents.  *Id.*  While Defendants initially argued in a Joint Discovery Letter (ECF No. 385) that—because of the time and financial burden involved—they should not have to review and produce Skype data from the secondary custodians (Greenpeace International employees Maik Marahrens and Eugenie Mathieu and Greenpeace Inc. employees Rodrigo Estrada and Vicky Wyatt), they eventually did so.[4]  *Id.* ¶ 4.  To date, Defendants have spent

---

[3] Plaintiffs, by contrast, failed to issue a litigation hold pertaining to this case at all, as will be outlined in Defendants' forthcoming motion.

[4] Defendants also collected Skype data from Greenpeace, Inc. employee Annie Leonard (Co-Executive Director of Greenpeace USA).  However, the Court later ordered that Defendants only needed to produce "Ms. Leonard's Skype messages responsive to Plaintiffs' requests . . . that involve

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

**over \$300,000** in attorney, paralegal, and vendor hours for Skype collection, review, and production—as well as litigating Plaintiffs' Skype-related discovery disputes. *Id.* ¶ 5. Defendants produced 133 threaded Skype chat conversations totaling **thousands** of pages of Skype chats from the additional four custodians.[5] *See id.* ¶ 6.

Throughout this process, Defendants collected all available Skype data from the eight custodians' personal Skype accounts. *See id.* ¶ 7. To this end, Defendants collected from multiple repositories—via both the Skype Cloud and also directly from the custodians' physical devices such as laptops and phones (wherever available, where the custodian indicated that they used Skype on such devices for relevant work, and where the e-discovery vendor confirmed that such device might contain data in addition to that available in the Cloud). *Id.* ¶ 8. Through this process, Defendants successfully collected Skype data from the following date ranges for each custodian:

| Custodian (in alphabetical order) | Date Range of Available Skype Data from the Cloud | Date Range of Available Skype Data from Devices (Laptops and/or Phones) |
|---|---|---|
| Daniel Brindis | 4/20/2017 - 10/31/2019 (collected from the Cloud)[6] | 4/20/2017 - 10/31/2019 (first laptop); 1/3/2017 - 11/6/2020 (second laptop); 4/24/2017 - 10/31/2019 (iPhone) |
| Matthew Daggett | 4/20/2017 - 1/31/20 (collected from the Cloud) | |
| Rodrigo Estrada | 4/20/2017 - 01/08/2021 (collected from the Cloud) | 5/5/2015 - 04/11/2019 (laptop) |
| Maik Marahrens | 4/20/2017 - 3/5/2021 (collected from the Cloud) | 11/19/2014 - 7/30/2018 (first laptop); 4/26/2017 - 3/4/2021 (second laptop) |
| Eugenie Mathieu | 9/20/2017 - 5/3/2020 (collected from the Cloud) | 7/1/2003 - 2/17/2021 ( laptop) |
| Amy Moas | 4/20/2017 - 3/5/2021 (collected from the Cloud) | 12/19/2016 - 11/29/17 (laptop) Defendants' vendor was able to extract some Skype messages from 2009-2010 from Ms. Moas's phones. |

third parties." ECF No. 411 at 3. Upon review, there were no such messages; thus, Defendants do not address Ms. Leonard's Skype data in this brief.

[5] To most efficiently review and produce the secondary custodians' Skype data, the parties agreed that Defendants would produce full Skype "conversations"—redacting out non-responsive text—instead of producing each line of responsive chat as a separate document. Some of these "conversations" were over 1,000 pages and covered years of data. *See, e.g.*, GPDEFS00047040 (1,854-page Skype conversation starting on June 1, 2015 and going through April 4, 2018).

[6] At least two of the custodians, Daniel Brindis and Matthew Daggett, had some Skype "data" but no messages going back before April 20, 2017 in the Cloud.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

| Rolf Skar | 4/20/2017 - 3/4/2021 (collected from the Cloud) | 9/23/2016 - 10/15/2019 (laptop); 8/13/2015 – 11/10/2015 (first phone); 4/20/2017 - 10/28/2020 (second phone) |
| Vicky Wyatt | 6/8/2017 - 03/28/2020 (collected from the Cloud) | 4/25/2017 - 1/8/2020 (laptop); 9/5/2016 - 2/21/2017 (first phone); 6/8/2017 - 3/28/2020 (second phone) |

**B.    Defendants Produced Large Amounts of Skype Data, Including from the Time Period that Plaintiffs Incorrectly Allege Was "Destroyed."**

As the chart above demonstrates, Defendants preserved and collected some Skype data going as far back as *2003*. *Id.* ¶ 10.  And despite Plaintiffs' representations to the contrary, six of the eight custodians' Skype accounts (including two of the three remaining Defendants) contained at least some data falling between May and December 2016—the time period apparently of greatest interest to Plaintiffs.  Indeed, Defendants produced 61 Skype conversations that included *2,852* pages of Skype chats from this period alone, including conversations involving all three of the named Defendants and former-Defendant Matt Daggett.  *Id.*; *see also id.*, Ex. A, GPDEFS00041986 (Skype conversation from June 2, 2015 to March 15, 2018 including Amy Moas, Daniel Brindis, and Rolf Skar)[7]; GPDEFS00048894 (Skype conversation from Feb. 18, 2016 to May 26, 2016 including Amy Moas); GPDEFS00049690 (Skype conversation from Oct. 14, 2016 to Oct. 24, 2016 including Rolf Skar and Vicky Wyatt); GPDEFS00036584 (Skype conversation from May 12, 2016 to April 3, 2017 including Matt Daggett, Maik Marahrens, and Eugenie Mathieu).  Defendants also separately produced 74 individual Skype chats from December 2016.  Koonce Decl. ¶ 11.

**C.    Skype Cloud Only Maintains Individuals' Data Going Back to April 2017.**

Defendants worked diligently to confirm if there were other means to recover even additional Skype data from their custodians' accounts, and also to better understand why—for some custodians—Skype data was not available prior to certain dates.  They engaged an expert vendor,

---

[7] Contrary to Plaintiffs' statement that "Defendants do not have a single message from defendant Amy Moas . . . until *three days after* that [Dec. 16, 2016] publication was issued," this Skype conversation includes a May 26, 2016 discussion between Amy Moas and Rodrigo Estrada about Minister Lessard's response to Greenpeace-Canada's recent report.  *See* GPDEFS00042056-57.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

iDiscovery Solutions, to assist in the process.  *See* Decl. of Bobby Williams ¶ 1.

In the course of this investigation, Defendants discovered that Skype's Customer Support website states that: "[Skype m]essages, videos, video messages, and pictures are available until they are deleted *or dated back to April 2017* and chat titles until deleted or users leave conversations." *See* Williams Decl., Ex. D, available at https://support.skype.com/en/faq/FA34893/how-long-are-files-and-data-available-in-skype (emphasis added).  Accordingly, Skype itself represents that, even if an individual does not delete any data or activate any auto-deletion settings, Skype does not retain that individual's data prior to April 2017.  Indeed, it appears that there were a number of system-wide updates at Microsoft around April 2017, which have likely impacted the retention of historical Skype data prior to this time period.  *See* Williams Decl. ¶¶ 18-19 (stating that, in 2017, Microsoft transitioned Skype from a peer-to-peer network to a centralized system via Azure Cloud and upgraded its platform to a new version).  This fact explains why most of the custodians' Skype Cloud data cuts off in April 2017; even though Defendants were able to recover some of the prior data from thoroughly collecting Skype directly from the individuals' devices.[8]

It is unknown exactly why certain individuals' devices appear to have retained more Skype data than others; however, Mr. Williams offered at least one possible explanation.  He noted that if an individual synchronized the Skype account on his/her personal device with his/her Cloud account after the April 2017 upgrade, then such messages might disappear from the device.  *Id.* ¶¶  22(c), 41.  In fact, Mr. Williams tested this theory on his own device and confirmed that, if a message was deleted from the Cloud—or, in this case, inadvertently lost as a result of the April 2017 upgrade—it disappeared from his device after he synchronized the accounts.  *Id.* ¶¶ 30-35.  Mr. Williams also analyzed the Skype interface and "found *no settings that would permit a user to . . . remove all messages prior to a specified date*," indicating that even if Defendants had wanted to retroactively mass delete their historical Skype data (they did not), they could not do so.  *Id.* ¶ 29 (emphasis added).

---

[8] By contrast, none of Plaintiffs' witnesses have indicated that any of their personal devices were searched for responsive data in this case.  Koonce Decl. ¶ 12.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

In their depositions, Defendants testified that they believed their Skype history was being automatically saved, as long as they did not affirmatively delete anything.  *See* Koonce Decl., Ex. B, Dep. Tr. of Amy Moas at 314:3-19 (testifying that she did not believe she had ever lost her chat history in Skype); *id.*, Ex. C., Dep. Tr. of Eugenie Mathieu at 87:14-15 ("Q. Is all of your Skype history intact?  A. As far as I know, yes"); Ex. D, Dep. Tr. of Matthew Daggett at 16:18-21 ("I didn't ever recall missing [Skype] information").  Indeed, only one custodian, Daniel Brindis, testified that, after the lawsuit was filed, he realized that he had—at an earlier date, prior to the lawsuit—turned on an auto-deletion setting in his personal Skype account.  *See id.*, Ex. E, Dep. Tr. of Daniel Brindis at 330:4-331:5.  As soon as he realized that this setting was still active after the litigation hold, he immediately turned it off.  *See id.* at 330:17-20 ("I didn't know that [my Skype chats] were not being maintained.  And at a certain moment when I found out that they weren't being maintained I changed that setting to make sure.").[9]

**D.**    **Defendants Informed Plaintiffs of the Available Skype Data and Cooperated with Plaintiffs' Efforts to Obtain Even Additional Skype Data from Microsoft.**

The parties have been discussing a variety of discovery-related issues since December 2019. Even before Defendants made their first Skype production, they disclosed to Resolute the date ranges of Skype data that they were able to collect from their primary custodians.[10]  Mot., Ex. 7 (Aug. 28, 2020 letter) at 2.  They also disclosed their understanding of the reason behind the time frame of available data.  *See id.* (describing "a few possible causes, including Skype upgrades and Skype migration to Microsoft . . . .").

---

[9] Throughout their Motion, Plaintiffs also argue that Skype is the "primary" mode of communications for Defendants.  But this is an overstatement of the facts.  While Defendants used Skype as a communication tool during the relevant time period, many of them used e-mail more substantively.  *See* Ex. D at 15:21-16:6 ("[T]he main form of written communication was email . . ."); *see also* Ex. E at 331:6-12 (Q. "Well, but the Skype messages were your primary mode of communicating. Right? A. I wouldn't say primary. . . we communicated . . . a lot through e-mail, videoconference, and . . . Skype.").  Plaintiffs also misleadingly contrasted Defendants' over 9,600 produced Skype messages to its comparatively smaller email production—without specifying that, for Defendants' first and primary Skype production, each individual chat message was produced as a *separate document* (as opposed to the later production, where Defendants were able to thread the messages into conversations, similar to email chains).

[10] Defendants were later able to collect additional Skype data from Defendant Daniel Brindis's second laptop as well as Rolf Skar and Amy Moas's phones.

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

As discovery proceeded, Defendants provided Plaintiffs with a detailed explanation of their Skype collection and review process, and again noted their understanding that it was "unclear why Skype content/data does not exist for earlier time frames, although it is suspected that changes or upgrades to the Skype platform of which Defendants and the custodians were unaware may be responsible." Mot., Ex. 6 (Feb. 4, 2021 letter) at 3. Defendants later further informed Plaintiffs that, consistent with Mr. Brindis's later testimony:

> [O]ne of the reasons that some periods are not available for some custodians' Skype accounts may be because some custodians unknowingly had settings on their individual Skype accounts that affected the timeframes for saved messages; there may have been other reasons as well for why certain Skype accounts retained more data than others. Either way, Defendants have produced all relevant Skype data in their possession, custody, or control.

Koonce Decl., Ex. F (Dec. 14, 2021 letter).

In short, Defendants have been fully transparent with Plaintiffs regarding the scope of available data and their understanding of the reason for such scope.[11] Although Resolute claims that Defendants reneged on a meeting between their expert and Defendants' e-discovery vendor, this is a blatant mischaracterization, as the parties' extensive correspondence demonstrates. *Id.* ¶ 19, Ex. G. In January 2021, the parties tentatively discussed having their respective experts confer telephonically, but in light of Resolute's suggestion even then that they might seek spoliation sanctions, Defendants proposed—and Resolute agreed—that Defendants' vendor would respond instead to written questions. *See id.* Resolute then sent and Defendants answered not one, but two rounds of written questions, many of which exceeded the scope of the inquiry that the parties had agreed the questions would cover. *See id.* Resolute correctly states that—when it became clear that rather than seeking information, Resolute was angling to make a spoliation motion regardless of the facts—Defendants then indicated that Resolute would need to pursue further inquiries through formal discovery. *See id.*

---

[11] By contrast—and as will be further explained in a forthcoming joint discovery letter or sanctions motion—Plaintiffs' document productions have entirely lacked transparency, resulting in numerous delays and expenses that have greatly prejudiced Defendants in this litigation.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

Additionally, Defendants cooperated with Plaintiffs' efforts to subpoena additional Skype data directly from third-party Microsoft.  Koonce Decl. ¶ 20.  In particular, Defendants worked with all nine of their custodians to execute two sets of consent forms to allow Microsoft to disclose these custodians' Skype data to Resolute—and personally followed up with Microsoft in-house counsel to attempt to troubleshoot issues when Microsoft rejected these consent forms.  *Id.*  Microsoft's policy only allows two attempts at "consent form verification," after which the account is locked.  *Id.* ¶ 21.  The policy also does not allow Microsoft to provide any information as to the nature of the error on the consent form, so that the party can fix it.  *Id.*  Upon encountering these obstacles with the consent forms, Resolute abandoned the Microsoft subpoena, instead of moving to compel or seeking any other relief from the Court.  *Id.*  Accordingly, Resolute's motion is not only meritless, but also premature, as Resolute failed to exhaust remedies to obtain any additional Skype data.

Plaintiffs also misrepresent the facts in asserting that Defendants have prevented them from understanding Skype production issues by directing "the corporate representative for Defendant Greenpeace International not to answer deposition questions on this topic . . . ."  Mot. at 4.  Indeed, the text of that deposition transcript makes clear that Defendants' counsel informed Plaintiffs' counsel that the Skype investigation was undertaken by ***outside*** counsel and so was not a topic on which the Greenpeace International corporate representative was knowledgeable, and therefore able to testify regarding.  *See* Koonce Decl., Ex. D at 21:25-22:20.  Defendants' counsel even offered to have a conversation at a later date "about the efforts that outside counsel took" regarding the Skype investigation, but Plaintiffs' counsel never followed up on that offer—preferring to instead file the instant sanctions motion without properly meeting-and-conferring.  *See id.*  Notably, Defendants have, for months, also made Greenpeace, Inc.'s Chief Information Officer, Tom Camerlinck, available to Plaintiffs to testify as a corporate representative on matters related to data retention and preservation.  Koonce Decl. ¶ 22.  But Plaintiffs have thus far declined to depose him.

**E.    The Discovery that Resolute Seeks Does Not and Has Never Existed.**

Discovery has established that the words "Montagnes Blanches" do not have just one definition or set of boundaries in Quebec, even after Minister Lessard's May 2016 press release

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

(hereinafter, the "Lessard Statement").  As just one example, in his deposition, Francis Forcier, a third-party representative of the Quebec Ministry of Forests, Wildlife, and Parks, testified that the Montagnes Blanches mountain range extends far beyond the boundaries of both the 2008 Montagnes Blanches biodiversity preserve and the 2016 Montagnes Blanches caribou reserve mentioned in the Lessard Statement, even though all three areas use the ***same name***.  *See* Koonce Decl., Ex. H (Dep. Tr. of Francis Forcier) at 73:16-74:2; 287:15-22.[12]

Additionally, discovery has established that Defendants either disagreed with the Lessard Statement or were unaware of it; and that ***Greenpeace-Canada***—who is not a party to this litigation—took the lead on responding to the statement.  *See, e.g.*, *id.*, Ex. I (Dep. Tr. of Rolf Skar at 229:22-230:1)  ("[I]f there was a response to the minister, it would have been led by the Canadian team . . . . I [don't] recall being part of conversations"); *see also id.*, Ex. B at 121:7-125:23 (Amy Moas testifying that she discussed the Lessard Statement on a call with the "Greenpeace Canada team," and they agreed that Mr. Lessard's criticisms of the Greenpeace-Canada map were unwarranted and did not change the accuracy of the map; and that someone might draft a rebuttal to the Lessard Statement, but she was not part of that team); *id.*, Ex. J (Dep. Tr. of Annie Leonard) at 53:23-54:7 (stating that she definitely did not have conversations about the Lessard Statement because this "would be handled by Greenpeace Canada").  Mr. Skar explained that Greenpeace-Canada would have handled such a response in part because it involved their own government and they spoke the relevant language (French).  *Id.*, Ex. I at 219:23-221:19.  And third-party witness Shane Moffatt of Greenpeace-Canada confirmed as much.  *Id.*, Ex. K (Dep. Tr. of Shane Moffatt) at 145:3-149:19 (stating that he did not recall discussing the Lessard Statement with Greenpeace-US colleagues, but did recall discussing it with colleagues in Quebec).  Notably, Greenpeace-Canada already produced its own Skype data in response to a subpoena from Resolute.  Mot. at 7.

Other of Defendants' employees did not even recall seeing and/or hearing about the Lessard

---

[12] Mr. Forcier also testified that Resolute's description of the Montagnes Blanches differed from the Quebec Government's description of the Montagnes Blanches in Minister Lessard's 2016 map. Koonce Decl., Ex. H at 144:14-17 ("It is clear here that when the Government of Quebec talks about the White Mountains and when Mr. Richard Garneau [CEO of Resolute] talks about the White Mountains they're not referring to the same thing.").

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

Statement at all during this time.  *See* Koonce Decl., Ex. E at 236:3-12 (Daniel Brindis: "I don't know if I read [the Lessard Statement] in that particular year of 2016"); *id.*, Ex. D at 197:13-14 (Matt Daggett: "I don't recall seeing this letter back in 2016"); *id.*, Ex. C at 138:7-139:15  (Eugenie Mathieu stating that she did not recall ever seeing or hearing about the Lessard Statement).  Indeed, there is only one email from Defendants' accounts in which they appear to discuss the Lessard Statement and the fact that Greenpeace-Canada employees would handle the response thereto. Koonce Decl., Ex. L (GPDEFS00028778).

**F.    Defendants Confer with Resolute and Present Joint Discovery Letter Based on Resolute's Discovery Malfeasance.**

As noted above, the Greenpeace Defendants spent many months and significant resources beginning in January 2021 addressing Plaintiffs' concerns regarding Skype messages.  Other than one subsequent exchange by letter in November-December 2021 in which Plaintiffs asked and Defendants answered some additional questions about Defendants' Skype productions, Defendants believed that the Skype dispute was resolved over six months ago.  *Id.* ¶ 28.  Separately, however, as the parties began to take depositions of fact witnesses in August 2021, Defendants discovered that there were very serious issues with Plaintiffs' document productions, which had purportedly been completed in December 2020.  *Id.* ¶ 29.  As a result of continued pressure from Defendants over the next five months, Plaintiffs produced an additional 14,362 documents as of February 24, 2022, after originally only producing 10,564 documents.  *Id.* ¶ 30.  Plaintiffs also revealed that they never instituted a litigation hold in this case, and Plaintiffs' employees indicated they did not preserve entire categories of documents.  *Id.*

As a result of these revelations, the Greenpeace Defendants first approached Resolute about a joint discovery letter regarding Plaintiffs' document retention and production on February 22, 2022 in accordance with Magistrate Judge Westmore's Standing Order governing discovery disputes and related sanctions motions.  *Id.* ¶ 31.  The parties have exchanged further drafts of that joint discovery letter over the course of seven weeks, during which time Plaintiffs filed the instant motion without following Magistrate Judge Westmore's Standing Order.  *Id.* ¶ 32.  Defendants' sanctions request is nearly ready to file.  *Id.*  The timing of Plaintiffs' motion is particularly suspect

DAVIS WRIGHT TREMAINE LLP

1   as the Motion is based on long-resolved issues and demonstrably false allegations, resurrected now

2   only to distract from Plaintiffs' significant discovery shortcomings.

### III.   LEGAL STANDARD

4        Federal Rule of Civil Procedure 37(e) sets forth three criteria to determine

5   whether spoliation of electronically stored information ("ESI") has occurred: (1) the ESI "should

6   have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost because a party

7   failed to take reasonable steps to preserve it"; and (3) "[the ESI] cannot be restored or replaced

8   through additional discovery." Fed. R. Civ. P. 37(e).  If these criteria are met and the court finds

9   that there is "prejudice to another party from loss of the [ESI]," Rule 37(e)(1) instructs a court to

10  "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

11       Only if ESI is destroyed and a party "acted with the intent to deprive another party of the

12  information's use in the litigation," does Rule 37(e)(2) authorize the imposition of more

13  severe sanctions, such as an adverse inference or default judgment. *See John v. Cty. of Lake*, No.

14  18-CV-06935-WHA (SK), 2020 WL 3630391, at *5 (N.D. Cal. July 3, 2020).  "Negligent or even

15  grossly negligent behavior" is insufficient to show "intent" under this rule.  Fed. R. Civ. P. 37

16  Advisory Committee's Notes on 2015 Amendment (hereinafter, "2015 Advisory Comm. Notes").

17  "Courts should exercise caution . . . in using the measures specified in (e)(2)" and even "[f]inding

18  an intent to deprive another party of the lost information's use in the litigation does not require a

19  court to adopt any of [these severe sanctions]."  2015 Advisory Comm. Notes.

### IV.   ARGUMENT

21       Resolute's Motion fails on multiple grounds. *First*, it is procedurally improper, as Resolute

22  failed to comply with Magistrate Judge Westmore's Standing Order. *Second*, Resolute cannot show

23  ESI spoliation under Rule 37 because Defendants took reasonable steps to preserve Skype data, and

24  there is no evidence that "lost" data was not fully recovered from other custodians. *Third*, Resolute

25  cannot establish prejudice where Defendants produced Skype data and emails from the relevant time

26  period and testified as to why the communications that Resolute seeks do not exist. *Fourth*, even if

27  Resolute met all of the other requirements (it does not), the severe sanctions that it seeks (*i.e.*, default

28

DAVIS WRIGHT TREMAINE LLP

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

judgment or an adverse inference) are not warranted because there is no evidence showing that Defendants purposefully destroyed Skype data to avoid their obligations in litigation.

**A.      Resolute's Motion Is Procedurally Improper.**

Because Resolute's Motion is brought pursuant to Rule 37(e), it is governed by this Court's judicial reference of discovery matters to Magistrate Judge Westmore.  *See* ECF No. 265 (referring "all further discovery matters" in this action to magistrate).  Magistrate Judge Westmore's Standing Order makes clear that "no motions for sanctions may be filed" unless the parties engage in substantive conferrals and raise discovery disputes in a joint letter.  Koonce Decl., Ex. M ¶ 19 (Standing Order for Magistrate Judge Kandis A. Westmore).  But Resolute filed its Motion without first complying with these requirements.

While Resolute raised questions about Defendants' Skype production in the past, Defendants answered these questions months ago and believed all Skype-related issues had been resolved. Koonce Decl. ¶ 28.  In particular, the last time that Plaintiffs raised any questions about Defendants' Skype production was in a November 26, 2021 letter, to which Defendants responded on December 14, 2021. *Id.*  Resolute never responded to this letter. *Id.*  Nor did they ever submit a joint discovery letter to Magistrate Judge Westmore on these issues, as required by the Standing Order.  Had Resolute properly conferred, Defendants likely could have clarified some of factual inaccuracies and misrepresentations that pervade the Motion—most significantly, that Defendants have in fact produced of thousands of pages of "Critical Period Messages" on which the entire motion rests. Defendants submit that the Motion is not ripe for review given the procedural deficiencies in the conferral process and request that the Court deny the Motion from the outset on these grounds.

**B.      The Greenpeace Defendants Did Not Spoliate Evidence.**

**1.      Defendants Took Reasonable Steps to Preserve Skype Messages.**

Rule 37(e) recognizes that due to "the ever-increasing volume of electronically stored information and the multitude of devices that generate such information, perfection in preserving all relevant [ESI] is often impossible."  2015 Advisory Comm. Notes; *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003) (noting that a party need not "preserve every

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

shred of paper, every e-mail or electronic document, and every backup tape" because "[s]uch a rule would cripple large corporations . . . .").  Instead, a party is only required to take "reasonable steps" to preserve ESI, which courts have equated to a "negligence" standard.  *See, e.g.*, *Leidig v. Buzzfeed, Inc.*, No. 16-cv-0542(VM)-(GWG), 2017 WL 6512353, at *10 (S.D.N.Y. Dec. 19, 2017).

Additionally, "the ***routine, good-faith operation of an electronic information system would be a relevant factor*** for the court to consider in evaluating whether a party failed to take reasonable steps to preserve lost information . . . ."  2015 Advisory Comm. Notes (emphasis added).  Rule 37(e) "is inapplicable when . . . information the party has preserved [is] destroyed by events outside the party's control — the computer room may be flooded, ***a 'cloud' service may fail***, a malign software attack may disrupt a storage system, and so on."  *Id.* (emphasis added); *see also Cramton v. Grabbagreen Franchising LLC*, No. CV-17-04663-PHX-DWL, 2019 WL 7048773, at *14 (D. Ariz. Dec. 23, 2019) (citing same).

Resolute has not and cannot satisfy its burden to show that Defendants failed to take reasonable steps to preserve ESI because: (1) Defendants did take reasonable steps; and (2) the primary cause of any data loss appears to have been a system-wide Skype Cloud issue outside of Defendants' control.  On the first point, the record establishes that Defendants well satisfied their obligation to preserve data by issuing litigation holds, ensuring that custodians understood not to delete ESI (even from their personal accounts), utilizing cloud-based systems to retain data, and— during discovery—painstakingly collecting Skype from multiple repositories (including both the Cloud and physical devices) to obtain every available Skype message.[13]  Indeed, Defendants promptly circulated litigation holds both after receiving Resolute's cease-and-desist letter and after the filing of the lawsuit—informing staff of their need to preserve relevant data, including all

---

[13] Defendants Greenpeace, Inc. and Greenpeace International dispute that they had an obligation to preserve Skype data at all on behalf of the entities because employees used their ***personal*** Skype accounts to communicate, which are outside of these Defendants' possession, custody, and control. *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2015 WL 8482256, at *3–4 (N.D. Cal. Dec. 10, 2015) (denying motion to compel a company's production of emails from its employees' personal email accounts, finding that the company did not have "possession, custody, or control" over such emails).  Nonetheless, these Defendants informed employees of the need to preserve their own ESI and have cooperated to maximally collect all possible Skype data.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

"electronic records."  Mot., Ex. 6 at 2-3; *see also Colonies Partners, L.P. v. Cty. of San Bernardino*, No. 5:18-CV-00420-JGB (SHK), 2020 WL 1496444, at *8 (C.D. Cal. Feb. 27, 2020) ("A litigation hold, or preservation order, is often the most appropriate mechanism to ensure potentially relevant documents and information are not lost deliberately or unintentionally"), *report and recommendation adopted*, 2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).

Defendants consistently confirmed in depositions that they understood the litigation hold to apply to their personal Skype accounts and did not delete Skype data.  *See* Koonce Decl., Ex. B at 314:6-11; Ex. D at 16:7-15.  And when one custodian realized he inadvertently had an auto-deletion setting on his personal Skype account, he immediately disabled it.  *Id.*, Ex. E at 330:12-15.  During discovery, Defendants took meticulous care to thoroughly collect, review, and produce all available Skype data from the relevant custodians, spending *over $300,000* in the process.  Koonce Decl. ¶ 5; *see also* 2015 Advisory Comm. Notes ("Another factor in evaluating the reasonableness of preservation efforts is proportionality").  Such steps are more than sufficient to qualify as "reasonable" under Rule 37.

On the second point, as demonstrated through the declaration of Bobby Williams, to the extent that any historical Skype data was lost at all—which Defendants do not concede—the main explanation for such loss appears to be a system-wide data loss issue that occurred due to a Skype upgrade around April 2017.  *See* Williams Decl., Ex. D (Skype's Customer Service website, stating: "[Skype m]essages, videos, video messages, and pictures are available until they are deleted *or dated back to April 2017* . . . ." (emphasis added)).  Thus, even where Defendants had appropriately de-activated any auto-deletion settings (as confirmed in deposition), it appears that Skype's system upgrade unilaterally purged data prior to April 2017, unbeknownst to Defendants.  This explains why most of the custodians' Skype Cloud data cuts off in April 2017, even though Defendants were able to recover some of the prior data from thoroughly collecting Skype directly from the individuals' devices.  Koonce Decl. ¶ 9.  And the fact that some custodians' devices appear to have retained more historical Skype data than others could potentially be explained by data loss caused by synchronizing the Skype account on the device with the Cloud account after the April 2017

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

upgrade.  Williams Decl. ¶¶ 41-42.  In fact, Mr. Williams found no setting that would allow a user to intentionally mass delete messages before a certain date. *Id.* ¶ 29.  Mr. Williams further confirmed that he saw no evidence that the data collections were incomplete or improper.  *Id.* ¶ 43.   These facts alone foreclose a finding that ESI was lost "***because*** [Defendants] failed to take reasonable steps to preserve it . . . ."  Fed. R. Civ. P. 37(e) (emphasis added); *see also* 2015 Advisory Comm. Notes (Rule 37(e) "is inapplicable when . . . information the party has preserved [is] destroyed by events outside the party's control . . . [such as because] . . . ***a 'cloud' service . . . fail[ed]***"); *Med. Lab. Mgmt. Consultants v. Am. Broad. Co.*, 306 F.3d 806, 824 (9th Cir. 2002) (an adverse inference instruction may be rejected when relevant evidence is lost for an innocent reason or by accident). Resolute barely addresses the fact that Defendants repeatedly informed them of the Skype upgrade issue; and they fail to argue how any loss of Skype data prior to April 2017 can be attributed to Defendants' preservation efforts.

### 2. There Is No Evidence that Skype Messages Were Actually "Lost," and Not Collected from Other Custodians.

Rule 37(e) also requires a moving party to satisfy the threshold issue of proving that ESI has actually been "lost" and "cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e); *see also Fiteq Inc v. Venture Corp.*, No. 13-CV-01946-BLF, 2016 WL 1701794, at *2–3 (N.D. Cal. Apr. 28, 2016) (denying plaintiff's motion in limine for a spoliation instruction where plaintiff failed to show that ESI sought was not "'restored or replaced through additional discovery'" and failed "to prove that other responsive documents ever existed"); *Busch v. Dyno Nobel, Inc.*, 40 F. App'x. 947, 963 (6th Cir. 2002) (explaining that there can be no spoliation if the moving party "fail[s] to identify with any degree of precision the alleged missing documents").  To prevail on their motion, Resolute must establish that the so-called "missing documents" are, in fact, missing. *Orbit One Commc'ns, Inc. v. Numerex Corp.,* 271 F.R.D. 429, 431 (S.D.N.Y. 2010) ("No matter how inadequate a party's efforts at preservation may be, ... sanctions are not warranted unless there is proof that some information of significance has actually been lost.")  "[S]imply cit[ing] facts that ***suggest*** evidence ***may have*** been destroyed" is not sufficient.  *Kinnally v. Rogers Corp.*, No. CV-06-2704-PHX-JAT, 2008 WL 4850116, at *5 (D. Ariz. Nov. 7, 2008) (emphasis in original); *Hugler*

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

*v. Sw. Fuel Mgmt., Inc.*, No. 16 CV 4547-FMO (AGRx), 2017 WL 8941163, at *9 (C.D. Cal. May 2, 2017) (denying spoliation motion on this basis).

Here, Resolute incorrectly contends that Defendants have not produced a single Skype message between May 31, 2016 and December 2016; and alleges that such messages have been lost or destroyed.  Mot. at 3.  This is categorically untrue.  Defendants produced at least ***2,852*** pages of Skype conversations covering this time period, including conversations with all three of the named Defendants.  Koonce Decl. ¶ 10.  Six of Defendants' eight custodians' Skype accounts (including two of the three named Defendants) contained at least some data falling between May and December 2016—the so-called "Critical Messages Period."[14]  *Id.*  Additionally, Resolute also obtained Skype data from this time period from third-party Greenpeace-Canada.  *See* Mot. at 7.

Thus, even if particular conversations from May-December 2016 are no longer available from certain custodians' Skype accounts, there is no evidence to suggest that the same conversations have not been produced from the other custodians' Skype accounts that contain data from this time period.  While, for example, Defendants no longer have access to Amy Moas's Skype data during this period—through no fault of her own, as she testified to never deleting Skype data and believing that her Skype history was intact—Defendants nonetheless collected and produced her Skype conversations from this time frame from the personal accounts of Rodrigo Estrada, Maik Marahrens, and Vicky Wyatt.  Koonce Decl. ¶ 10.  And Greenpeace-Canada, ***which handled the response to the Lessard Statement***, likewise produced any relevant Skype conversations with Ms. Moas from before December 2016.  Mot. at 7.

---

[14] Thus, the following statements by Plaintiffs are simply false: (1) "Defendants do not have a single message from defendant Amy Moas, the co-author of the December 16, 2016 letter . . . until *three days after* that publication was issued"; (2) "no Skype messages have been produced between May 31, 2016 . . . until December 2016;" (3) "Plaintiffs are still left without the benefit of any Skype messages about the Challenged Statements or Defendants' claims about Resolute's putative operations in the Montagnes Blanches that was not sent from, to, or copied a Greenpeace Canada custodian"; and (4) "Skype messages were finally preserved just days after the December 2016 letter . . . ."  Mot. at 3, 7-8, 16.  And Resolute ***knew*** these statements were untrue as Resolute itself used ***the very Skype messages proving this point*** as exhibits in depositions.  *See, e.g.*, Koonce Decl., Ex. N (Ex. 6 to Eugenie Mathieu Dep.; Ex. 5 to Annie Leonard Dep.).  Defendants reserve the right to seek Rule 11 sanctions against Plaintiffs for presenting to the Court a written motion containing allegations that Plaintiffs knew to be false when filed.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

Accordingly, Resolute cannot identify any ESI that has actually been "lost" within the meaning of Rule 37(e).[15]  *See Radiologix, Inc. v. Radiology & Nuclear Med., LLC*, No. 15-4927-DDC-KGS, 2019 WL 354972, at *15–16 (D. Kan. Jan. 29, 2019) (denying spoliation sanctions where defendant's employee did not realize that his internet provider automatically deleted old emails to keep the email account under the cloud storage limit, but plaintiff nonetheless obtained discovery of the same **"emails sent by or to [the employee] in other custodians' email accounts**." (emphasis added)); *see also Sanchez v. Jiles*, No. CV-10-09384-MMM (OPx), 2012 WL 13005996, at *14 (C.D. Cal. June 14, 2012) ("The fact that other evidence exists that duplicates or serves the same function as the evidence that was purportedly lost therefore weighs further against the admission of evidence of the spoliation and against giving the jury a spoliation instruction").  It also bears noting that Resolute abandoned its third-party subpoena to Microsoft to attempt to collect Defendants' Skype data directly from the source, despite the fact that Defendants fully cooperated with Resolute's efforts to do so.  *See Med. Lab. Mgmt. Consultants*, 306 F.3d at 825 ("The availability of other evidence to [plaintiff] to challenge the broadcast's statement regarding the three missing slides, *and [plaintiff's] failure to pursue this evidence*, also formed proper bases for the district court's exercise of its discretion [to deny spoliation sanctions]" (emphasis added)).

## C.      Sanctions Are Not Appropriate in This Case.

### 1.      Resolute Suffered No Prejudice, Foreclosing Sanctions Under Rule 37(e)(1).

A court may "resort to [Rule 37](e)(1) measures only 'upon finding prejudice to another party from loss of the information.'"  *Hoover v. NCL (Bahamas) Ltd.*, No. 19-22906-CIV, 2020 WL 4505634, at *9 (S.D. Fla. Aug. 5, 2020); *see also* Fed. R. Civ. P. 37(e).  "An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation."  2015 Advisory Comm. Notes.  "[A] dispute as to whether or not a potentially relevant document ever existed does not establish prejudice . . . ."  *Wai Feng Trading Co. Ltd v. Quick Fitting, Inc.*, C.A. No. 13-33WES, 2019 WL 118412, at *6 (D.R.I. Jan. 7, 2019).  Additionally, a

---

[15] Defendants notably also failed to retain a qualified forensic consultant or first seek a forensic analysis before requesting the most draconian of spoliation sanctions, all contrary to forensic industry standards.  Williams Decl. ¶¶ 45-46.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

party's bare speculation or "blanket and conclusory statements" that missing ESI might have contained "some type of 'smoking gun'" evidence does *not* establish prejudice under Rule 37(e). *Burns v. Medtronic, Inc.*, No. 8:15-CV-2330-T-17TBM, 2017 WL 11633269, at *6 (M.D. Fla. Aug. 9, 2017); *see also Exp.-Imp. Bank of Korea v. ASI Corp.*, No. CV 16-2056-MWF (JPRx), 2018 WL 3203038, at *4 (C.D. Cal. June 28, 2018) (denying spoliation motion, noting "no ***nonspeculative basis to find that any relevant, material evidence has been lost*** as a result of Plaintiff's evidence destruction" (emphasis added)); *HCC Ins. Holdings, Inc. v. Flowers*, No. 1:15-CV-3262-WSD, 2017 WL 393732, at *5 (N.D. Ga. Jan. 30, 2017) (denying spoliation motion where plaintiff "offer[ed] only bare speculation that" any of the relevant data it sought had ever existed on the defendant's personal laptop).

Here, Resolute has not been prejudiced for two reasons.  First, as discussed *supra*, it cannot establish that any Skype conversations that may have been lost from a select few custodians' accounts were not later produced from other accounts.  *See FTC v. Lights of Am. Inc.*, No. SACV 10-1333 JVS (MLGx), 2012 WL 695008, at *5 n.8 (C.D. Cal. Jan. 20, 2012) ("To the extent that the [plaintiff] failed to produce any of these documents . . . , the fact that these emails were available through other sources lessens the likelihood of prejudice to Defendants"); *see also Radiologix, Inc.*, 2019 WL 354972, at *15–16 (finding no prejudice where plaintiff obtained discovery of the same "emails sent by or to [the employee] in other custodians' email accounts").

Second, there is *no* evidence to suggest that any Skype conversations have been lost that would have been helpful—or even relevant—to Resolute's claims.  Resolute's motion hinges on the bare speculation that, despite the plethora of Skype communications produced by Defendants and Greenpeace-Canada, other Skype conversations existed in which Defendants admitted that they knew the Montagnes Blanches boundaries they had been using were ***incorrect***, because the only "true" boundaries of the "Montagnes Blanches" were set forth in the Lessard Statement.  But such messages would not and cannot exist because, to this day, the words "Montagnes Blanches" do not have just one definition or set of boundaries in Quebec.  *See, e.g.*, Koonce Decl., Ex. H at 73:16-74:2; 287:15-22 (Francis Forcier of the Quebec Ministry of Forests, Wildlife, and Parks testifying

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

that the Montagnes Blanches mountain range extends far beyond the boundaries of both the 2008 Montagnes Blanches biodiversity preserve and the 2016 Montagnes Blanches caribou reserve, even though all three areas use the ***same name***).  Additionally, discovery has established that Defendants either disagreed with the Lessard Statement or were unaware of it; and that ***Greenpeace-Canada*** took the lead on responding to the letter.  *See, e.g.*, *id.*, Ex. I at 229:22-230:1; *see also id.*, Ex. B at 121:7-125:23; *id.*, Ex. J at 53:23-54:7; *id.*, Ex. L (sole email from Defendants' accounts in which they appear to be discussing the Lessard Statement and the fact that Greenpeace-Canada employees would be handling the response thereto).  *See also supra* Section II.E.

Accordingly, the record makes clear that the "smoking gun" Skype messages that Resolute seeks from Defendants would not have existed because there is no single definition for the "Montagnes Blanches" in Quebec; and Greenpeace-Canada (who has separately produced its own Skype data to Resolute) handled any response to the Lessard Statement.  *See Int'l Bus. Machines Corp. v. Naganayagam*, No. 15 CIV. 7991 (NSR), 2017 WL 5633165, at *6 (S.D.N.Y. Nov. 21, 2017) (denying spoliation motion upon finding no prejudice where defendant had the opportunity to depose plaintiff's employee about the content of allegedly spoliated emails and "failed to provide the Court with any deposition testimony by [the employee] to the effect that the e-mails contained [relevant discussions]"); *see also Burns*, 2017 WL 11633269, at *6 (denying spoliation motion where "Plaintiff's assertion of prejudice is far too speculative" as "Plaintiff fail[ed] to identify any crucial piece of information that has not been produced" despite "ample opportunity to depose the custodians and the decision-makers in this case about their motivations . . . ."); *Aircraft Fueling Sys., Inc. v. Sw. Airlines Co.*, No. 08-CV-414-GKF-FHM, 2011 WL 4954250, at *2 (N.D. Okla. Oct. 18, 2011) (overruling objections to report and recommendation denying spoliation motion where "Plaintiff has not identified anything in particular within [produced] e-mails, or within any deposition, or within other discovery that indicates anything relevant to the issues is missing").

Resolute identifies two produced Skype conversations for its argument that there might be other Skype communications in which Defendants "admit" to using the "wrong" boundaries of the Montagnes Blanches.  But neither of these conversations support Resolute's argument in the

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

slightest.  First, Plaintiffs point to a Skype conversation in which Greenpeace International employee Maik Marahrens was assisting Defendant Amy Moas with the Clearcutting Report, and checked with Ms. Moas regarding whether it was ok to continue using the boundaries of the "Montagnes Blanches Endangered Forest," given that Greenpeace-Canada had, by then, stopped referring to the "endangered forest" concept.  *See* Mot., Ex. 1.  For context, the "Montagnes Blanches Endangered Forest" map was created in 2010 when Greenpeace-Canada, together with Global Forest Watch Canada, identified and mapped an area in this region of Quebec containing the most significant ecological value, based on an analysis of 12 weighted values.[16]  *See* Koonce Decl., Ex. O (GPDEFS00009957: Boreal Alarm Report).  The Greenpeace Defendants later stopped using the phrase "Endangered Forest" due in part to perceived issues that the phrase might raise with First Nations indigenous communities.  *Id.*, Ex. B at 101:9-103:1.  Neither of the two statements still at issue in the case referred to the Montagnes Blanches as an endangered forest.

Ms. Moas responded to Mr. Marahrens by saying that she thought they should continue to use the same boundaries as before for the sake of consistency and simplicity.  *See* Mot., Ex. 1.  When asked about this response in her deposition, Ms. Moas further confirmed that she "felt strongly that the high conservation values that were mapped and that originated the Montagnes Blanches boundaries in the first place still stood and were the best tool for us because we had used it over time."  Koonce Decl., Ex. B at 261:3-7.  Notably, this conversation had nothing to do with the Lessard Statement or any other Quebec government definition of the "Montagnes Blanches."

Second, Plaintiffs selectively quote from an August 2017 Skype conversation between Ms. Moas and Greenpeace International employee Eugenie Mathieu.  Mot. at 3.  In that conversation, Ms. Moas and Ms. Mathieu are discussing Resolute's criticism that the Greenpeace Defendants "redrew the maps" of the Montagnes Blanches.  Ms. Moas explains that—consistent

---

[16] Other environmental organizations in Quebec, such as SNAP (Society for Nature and the Parks of Canada) similarly campaigned for the protection of this general region and developed their own boundaries based on slightly different conservation criteria—but with the same goal of preventing unsustainable forestry in this unique region. *See* Montagnes Blanches Interactive Map, *Society for Nature and Parks of Canada ("SNAP")*, available at https://www.arcgis.com/apps/Cascade/index.html?appid=532fb77e7a1f48369d5110794685633c.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

with the history set forth *supra*:

> The boundaries of the MB that we use were drawn by several groups in Quebec around the highest conservation value forests. So it is entirely our concept, it is not really a geographical one.  And there is a Montagnes Blanches forest that also exists above the northern limit. So because we use the same name, they are claiming we redrew the maps.  ***But there is nothing illegal about us as a conservation organization drawing a line around the highest conservation values forests and saying[] we need to protect this***.  Which is what we did.

Mot., Ex. 2 at GPDEFS00034553 (emphasis added).  Thus, contrary to Plaintiffs' argument, this conversation show that Defendants ***did not*** believe that it was incorrect for them to continue using the term "Montagnes Blanches" to refer to the high-conservation eco-region, just because the term was also used to refer to certain geographical structures.  This document also shows that Defendants have already produced Skype data in which they are candidly discussing their use of the "Montagnes Blanches" term.

This statement is also consistent with testimony from the Greenpeace Defendants that: (1) in referring to the "Montagnes Blanches"—they were discussing the same eco-region that Greenpeace-Canada had been campaigning on since 2010, and were not referring to any caribou reserve already protected by the Quebec government; and (2) they did not believe the Lessard Statement rendered their map of this eco-region incorrect, as the two were discussing entirely separate concepts.  *See* Koonce Decl., Ex. P (Dep. Tr. of Amy Moas as Greenpeace, Inc. 30(b)(6) Corporate Representative) at 271:22-272:4 ("We made it very clear [in the Clearcutting Report] that Resolute was not logging in the Montagnes Blanches caribou reserve.  We would never make the claim that they were logging in . . . otherwise protected areas that were already delineated for caribou or any other conservation purposes"); *see also id.*, Ex. I at 215:8-219:7, 223:4 (Rolf Skar testifying that the Lessard Statement was "talking past the issues that . . . we were trying to address," and "seemed to be talking about something else, like mentioning areas that were not allocated for logging, . . . In the reports, . . . we are clear that we're pushing for new conservation measures to be

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

taken . . . . ").[17]

### 2.    Defendants Did Not Intentionally Destroy Evidence, Foreclosing Severe Sanctions Under Rule 37(e)(2).

There is no basis for the more severe sanctions that Resolute seeks, including default judgment and adverse inference.  It is beyond cavil that the imposition of default and/or adverse inference instructions are "draconian sanctions."  *Sekisui Am. Corp. v. Hart*, No. 12 CIV. 3479 (SAS) (FM), 2013 WL 2951924, at *9 (S.D.N.Y. June 10, 2013).  They are "among the most severe sanctions a court can administer." *Bobrick Washroom Equip., Inc. v. Am. Specialties, Inc.*, No. CV 10-6938 SVW (PLA), 2012 WL 3217858, at *6 (C.D. Cal. Aug. 8, 2012).  The law strongly disfavors such sanctions because they "interfere with the overriding policy of deciding cases on their merits."  *Pall Corp. v. 3M Purification Inc.*, 279 F.R.D. 209, 213 (E.D.N.Y. 2011).  As such, these "harsh sanctions . . . are available only upon a finding that [a party] acted with the intent to deprive [the opposing party] of its use of the information in the litigation."  *Gaina v. Northridge Hosp. Med. Ctr.*, No. CV 18-00177-DMG (RAOx), 2018 WL 6258895, at *5 (C.D. Cal. Nov. 21, 2018), *aff'd*, No. CV 18-177-DMG (RAOx), 2019 WL 1751825 (C.D. Cal. Feb. 25, 2019).

"Negligent or even grossly negligent behavior" is insufficient to show "intent" under this rule, as necessary to impose either default judgment or adverse inference.  2015 Advisory Comm. Notes (noting that the amended Rule 37 "rejects cases . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence").  One reason for this is that "[i]nformation lost through negligence may have been favorable to either party, including the party that lost it and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have."  *See id.*  Instead, to impose such severe sanctions, a court must

---

[17] Plaintiffs also cite a handful of Skype messages that were produced from Greenpeace-Canada for the proposition that Defendants used Skype prior to December 2016 to communicate about the Montagnes Blanches.  Mot. at 7.  But Defendants never denied that they used Skype for that purpose, and indeed have produced a plethora of Skype data from this time frame.  To the extent that Greenpeace-Canada produced any messages that were no longer in Defendants' possession, custody, or control, such fact even further demonstrates that the evidence Plaintiffs seek does not exist.  None of the messages produced by Greenpeace-Canada even remotely demonstrate that Defendants believed it was inaccurate to continue using the term "Montagnes Blanches" to refer to the high-conservation region they wanted to protect, after the Lessard Statement came out.

---

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

find that "the evidence shows or it is reasonable to infer that the party ***purposefully destroyed evidence to avoid its obligations in litigation***."  *John*, 2020 WL 3630391, at *5 (emphasis added).

Resolute has not identified ***any*** evidence that Defendants purposefully destroyed Skype data to avoid their obligations in this case; nor can it.  To the contrary, Defendants promptly issued litigation holds, ensured that relevant custodians knew not to delete Skype data, and then painstakingly collected, reviewed, and produced Skype data from multiple repositories, spending over $300,000 in the process.  Koonce Decl. ¶ 5 .  The record indicates that, to the extent any Skype data loss occurred, the primary cause would have been a system-wide Skype upgrade around April 2017 that appears to have resulted in widespread loss—not any action taken by Defendants.  And even still, Defendants were able to recover some custodians' data from before this timeframe by carefully collecting Skype from both personal physical devices and the Cloud, rendering Resolute unable to prove that any relevant Skype communications were, in fact, lost.

Resolute provides no foundation for its speculation that Defendants intentionally destroyed evidence "beyond its disappointment with its failure to find evidence" helpful to its claims.  *Wai Feng Trading Co. Ltd*., 2019 WL 118412, at *14 (denying request for adverse inference where defendant recycled his laptop but plaintiff presented no evidence that "the recycling of the laptop was not done in the ordinary course of business, that the failure to do more to preserve its electronic content was intentional or that [plaintiff] is prejudiced because specific relevant material was actually lost.").  Thus, the severe sanctions it seeks find no support under federal precedent.

To the contrary, the vast majority of the authority relied upon by Resolute in support of its request for entry of default involves effective admissions of specific intent and largely ***pre-dates*** the amended and heightened standards required to impose severe sanctions under the 2015 amended version of Rule 37(e):  *Roadrunner Transp. Servs., Inc. v. Tarwater*, No. SACV 10-1534 AG (MLGx), 2012 WL 12918366, at *3 (C.D. Cal. May 31, 2012) (finding willful spoliation where party admitted that it failed to take any action to preserve data in connection with litigation); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (imposing dismissal sanction where party acted in bad faith and admitted to intentionally destroying information, including pornographic files, to

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST

"protect his privacy"); *Gutman v. Klein*, No. 03 CIV. 1570 (BMC), 2008 WL 5084182, at *1 (E.D.N.Y. Dec. 2, 2008) (devoid of any factual analysis of the underlying sanctions motions and discussing the applicable standard of review for a magistrate decision).

The cases that Resolute relies on for its alternative request for entry of an adverse inference are likewise inapposite.  Mot. at 15–16.  In *Oppenheimer v. City of La Habra*, No. SACV 16-00018 JVS (DFMx), 2017 WL 1807596, at *13 (C.D. Cal. Feb. 17, 2017), parties again ***admitted*** to deleting ESI after imposition of preservation obligations.  In *Blumenthal Distributing, Inc. v. Herman Miller, Inc.*, No. ED CV 14-1926-JAK (SPx), 2016 WL 6609208, at *19 (C.D. Cal. July 12, 2016), "automatic purging protocols remained in effect, and apparently manual deletion of email bodies occurred" and the opposing party failed to conduct actual searches of computer systems for ESI for months into the litigation.  Likewise, in *Colonies Partners, L.P. v. Cty. of San Bernardino*, No. 5:18-CV-00420-JGB (SHK), 2020 WL 1496444, at *10 (C.D. Cal. Feb. 27, 2020), the district court found that the opposing party "continued deleting text messages that pertained to the ligation and deleted his campaign email account from which he corresponded about work and personal matters after litigation commenced and long after litigation was reasonably foreseeable."  No such facts are present here.  In the absence of such egregious conduct, the severe sanctions sought by Resolute are simply unwarranted.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion.

Dated:  April 13, 2022

Respectfully submitted,

/s/ Thomas R. Burke
Thomas R. Burke
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111
Telephone:(415) 276-6500
Facsimile: (415) 276-6599
Email:      thomasburke@dwt.com

*Attorneys for Defendants Greenpeace*
*International, Greenpeace, Inc., Daniel*
*Brindis, Amy Moas, and Rolf Skar*

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS
Case No. 4:17-cv-02824-JST