THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111
Telephone:(415) 276-6500
Facsimile: (415) 276-6599
Email:     thomasburke@dwt.com

LAURA HANDMAN (appearing *pro hac vice*)
CHELSEA T. KELLY (appearing *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, DC 20005
Telephone:(202) 973-4200
Facsimile: (202) 973-4499
Email:     laurahandman@dwt.com
           chelseakelly@dwt.com

LACY H. KOONCE, III (appearing *pro hac vice*)
KLARIS LAW
29 Little West 12th Street
New York, NY 10014
Telephone:   (917) 612-5861
Email:     lance.koonce@klarislaw.com

Attorneys for Defendants
GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING
COUNCIL"), GREENPEACE, INC., DANIEL BRINDIS, AMY MOAS, and
ROLF SKAR

DAVIS WRIGHT TREMAINE LLP

## IN THE UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA:  OAKLAND DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., RESOLUTE FP US, INC., RESOLUTE FP AUGUSTA, LLC, FIBREK GENERAL PARTNERSHIP, FIBREK U.S., INC., FIBREK INTERNATIONAL INC., and RESOLUTE FP CANADA, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GREENPEACE INTERNATIONAL (aka "GREENPEACE STICHTING COUNCIL"), GREENPEACE, INC., GREENPEACE FUND, INC., FORESTETHICS, DANIEL BRINDIS, AMY MOAS, MATTHEW DAGGETT, ROLF SKAR, TODD PAGLIA, and JOHN AND JANE DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 4:17-cv-02824-JST <br><br> **DEFENDANTS' MOTION FOR SANCTIONS** <br><br> Complaint Filed:  May 31, 2016 <br> Amended Complaint Filed:  November 8, 2017 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 3

    A.    Plaintiffs Obscure the Bases for Their Alleged Damages; and the Court
        Orders Them to Disclose This Information ..................................................... 3

    B.    Plaintiffs Violated the Court's January 2021 Order by Waiting Until the
        Eve of the Fact Discovery Cut-off—After Almost All Depositions and
        Third-Party Discovery Were Complete—to Disclose Fourteen New
        Damages Claims .............................................................................................. 6

    C.    Plaintiffs Failed to Institute a Litigation Hold in This Case. .................................. 8

    D.    Plaintiffs Failed to Oversee Proper Preservation of Evidence or
        Compliance with Production of Relevant Documents. .......................................... 10

        1.    *Plaintiffs Failed to Identify, Collect, Search, and Produce
            Documents From Key Custodians* ................................................................ 10

        2.    *Plaintiffs Failed to Identify, Collect, Search, and Produce
            Documents from Relevant ESI Sources; and Improperly Allowed
            Custodians to Direct Their Own Collections.* ............................................. 11

        3.    *Plaintiffs Failed to Adequately Preserve Evidence, Causing
            Spoliation.* ................................................................................................. 13

    E.    Plaintiffs' Failure to Produce Relevant Evidence, as Well as Their
        Significant Delay in Producing Over 14,000 Documents in a Fragmented
        Process on the Eve of Relevant Depositions, Has Resulted in Increased
        Costs and Substantial Prejudice to Defendants. ....................................................... 14

III.  ARGUMENT .............................................................................................................. 15

    A.    Sanctions Are Warranted Under Rule 37(b) Because Plaintiffs Violated a
        Court Order. ....................................................................................................... 15

    B.    Sanctions Are Warranted Under Rule 37(e) Because Plaintiffs Spoliated
        Evidence. ............................................................................................................ 21

    C.    Monetary Sanctions Are Warranted Under the Court's Inherent Authority
        Because Defendants Have Been Prejudiced by Plaintiffs' Extremely
        Belated and *Ad Hoc* Productions, Often on the Eve of, or After,
        Depositions. ....................................................................................................... 24

IV.   CONCLUSION .......................................................................................................... 25

DAVIS WRIGHT TREMAINE LLP

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*,
  No. 11-cv-04001, 2013 WL 4511925 (N.D. Cal. Aug. 23, 2013) .............................................22

*Apple Inc. v. Samsung Elecs. Co.*,
  881 F. Supp. 2d 1132 (N.D. Cal. 2012) ..................................................................................21

*Choudhuri v. Wells Fargo Bank, N.A.*,
  No. 15-CV-03608-VC (KAW), 2017 WL 5598685 (N.D. Cal. Nov. 21, 2017).......................19

*Compass Bank v. Morris Cerullo World Evangelism*,
  104 F. Supp. 3d 1040 (S.D. Cal. 2015) ..................................................................................25

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  482 F.3d 1091 (9th Cir. 2007)................................................................................................18

*Cooley v. Leonard*,
  No. 4:18-CV-00719-YGR (KAW), 2019 WL 6250964 (N.D. Cal. Nov. 22,
  2019)......................................................................................................................................22

*Gibson v. Chrysler Corp.*,
  261 F.3d 927 (9th Cir. 2001)..................................................................................................15

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003)..................................................................................................18

*JTS, LLC v. Nokian Tyres PLC*,
  No. 3:14-CV-00254 JWS, 2017 WL 68615 (D. Alaska Jan. 6, 2017)................................20, 21

*Keithley v. Homestore.com, Inc.*,
  629 F. Supp. 2d 972 (N.D. Cal. 2008) ....................................................................................21

*Knickerbocker v. Corinthian Colls.*,
  298 F.R.D. 670 (W.D. Wash. 2014)........................................................................................23

*Leon v. IDX Sys. Corp.*,
  464 F.3d 951 (9th Cir. 2006)..................................................................................................24

*Markey v. Lapolla Indus., Inc.*,
  No. CV 12-4622(JS)(AKT), 2015 WL 5027522 (E.D.N.Y. Aug. 25, 2015) ...........................22

*Optrics Inc. v. Barracuda Networks Inc.*,
  No. 17-CV-04977-RS (TSH), 2021 WL 411349 (N.D. Cal. Feb. 4, 2021) ..............................22

DAVIS WRIGHT TREMAINE LLP

*Oracle USA, Inc. v. SAP AG*,
    264 F.R.D. 541 (N.D. Cal. 2009) ..................................................................................17, 19

*Payne v. Exxon Corp.*,
    121 F.3d 503 (9th Cir. 1997)....................................................................................................19

*Rodman v. Safeway Inc.*,
    No. 11-cv-03003-JST, 2016 WL 5791210 (N.D. Cal. 2016)..............................................22, 23

*Sanchez v. Rodriguez*,
    298 F.R.D. 460 (C.D. Cal. 2014) .............................................................................................18

*Sas v. Sawabeh Info. Servs.*,
    No. CV11-4147-MMM(MANx), 2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) ....................19

*SiteLock LLC v. GoDaddy.com LLC*,
    No. CV-19-02746-PHX-DWL, 2021 WL 2895503 (D. Ariz. July 9, 2021).......................18, 20

*Toppan Photomasks, Inc. v. Park*,
    No. 13-CV-03323-MMC (JCS), 2014 WL 2567914 (N.D. Cal. May 29, 2014) .....................24

*UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc.
    Copyright Litig.)*,
    462 F. Supp. 2d 1060 (N.D. Cal. 2006) ...................................................................................21

*United States v. Sumitomo Marine & Fire Ins. Co.*,
    617 F.2d 1365 (9th Cir. 1980).................................................................................................16

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*,
    No. 10CV541-GPC (WVG), 2014 WL 6851607 (S.D. Cal. June 16, 2014) ...........................24

**Rules**

Federal Rules of Civil Procedure
    Rule 26(a)................................................................................................................................20
    Rule 26(a)(1)(A)(iii)................................................................................................................20
    Rule 30(b)(6)..............................................................................................................................8
    Rule 34 ....................................................................................................................................20
    Rule 37 ....................................................................................................................................20
    Rule 37(b)...............................................................................................................15, 16, 19, 20
    Rule 37(b)(2)(A)......................................................................................................................15
    Rule 37(b)(2)(C)................................................................................................................15, 20
    Rule 37(c).................................................................................................................................20
    Rule 37(e).....................................................................................................................15, 21, 22
    Rule 37(e)(1)......................................................................................................................21, 24

DAVIS WRIGHT TREMAINE LLP

# I.    INTRODUCTION

From the filing of this litigation in 2016, Plaintiffs' purpose has been clear: to hobble the environmental advocacy of Defendants Greenpeace International, Greenpeace Inc., Daniel Brindis, Amy Moas, and Rolf Skar (the "Greenpeace Defendants" or "Defendants") with nuisance litigation designed to chill their speech and burn through their resources.  This Court already concluded that Plaintiffs' lawsuit "arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech"—namely, "Defendants' speech activities regarding the important public matter of environmental sustainability."  ECF No. 246 at 31 (granting Defendants' anti-SLAPP motion as to all dismissed state tort claims).

But six years of litigation and approximately three years of fact discovery have firmly established that not only did Plaintiffs intend to silence and bankrupt Defendants—they sought to do so without complying with their own discovery obligations, even when that meant explicitly violating this Court's discovery orders.  Indeed, it is now clear that Plaintiffs failed to undertake the most basic document preservation, collection, and production work necessary to litigate this action.

*First*, after being ordered by this Court to disclose the factual bases for their damages no later than February 10, 2021, Plaintiffs waited until *April 2022*, approximately two weeks before the (repeatedly extended) close of fact discovery, to amend their damages interrogatory responses to include *fourteen* new damages claims.  Plaintiffs disclosed these damages claims after Defendants had already deposed almost all of Plaintiffs' sales team and representatives of Plaintiffs' third-party publishing customers—*i.e.*, some of the most important damages witnesses.  And while the Court expressly forbade Plaintiffs from waiting until expert discovery to disclose the bases for their damages claims, Plaintiffs' 30(b)(6) corporate representative Richard Garneau testified at his deposition that he could not provide any facts to support Plaintiffs' damages theories, but that their expert witness would certainly do so.

*Second*, Plaintiffs failed to initiate a litigation hold pertaining to this case, resulting in the inevitable destruction of relevant documents.  While Plaintiffs initiated a litigation hold in April 2014 for their separate lawsuit against Greenpeace-Canada in a Canadian court, that litigation hold

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

certainly cannot satisfy Plaintiffs' preservation obligations in this case, especially because the Canadian case involved entirely different statements, claims, time frames, and parties.

*Third*, while Plaintiffs represented they completed their document production in December 2020, the first depositions of their fact witnesses revealed serious issues with their collection and production process, resulting in spoliated documents.  These depositions revealed that Plaintiffs had, up until then, only collected and searched the documents of *six custodians of the 16 witnesses* originally identified in their initial disclosures and interrogatory responses as individuals with relevant knowledge.  Additionally, Plaintiffs failed to direct preservation and collection from multiple known sources (including text messages and personal emails), and failed to search Plaintiffs' email archives until nearly *five years* into this litigation.  And while Plaintiffs made additional productions in late 2021 and early 2022 (only after Defendants pointed out their serious shortcomings), there are still entire categories of ESI and relevant documents missing from Plaintiffs' production—as confirmed by both witness testimony and comparison to third-party productions.[1]

Plaintiffs' years of malfeasance violated their discovery obligations, prejudiced Defendants, and abused the judicial process—consistent with Plaintiffs' SLAPP goals in bringing this case.  Fact discovery has now closed, and expert reports are a few weeks away.  Defendants and their experts have been unable to review highly relevant evidence pertaining to the Challenged Statements[2] at issue, as well as Plaintiffs' purported damages because of Plaintiffs' misconduct, evasion, and contempt of this Court's orders.  In addition, Plaintiffs have repeatedly ambushed Defendants on the eve of depositions, with evidence that was inexplicably withheld for years—or produced such evidence after the depositions already occurred.  Because of the grave harm posed by Plaintiffs'

---

[1] Indeed, aware that Defendants would be filing the instant motion, Plaintiffs attempted to divert the Court's attention by rushing to file, without consulting Defendants, their own motion for sanctions based on readily-disproven allegations.  ECF No. 444 at 11-12.

[2] The "Challenged Statements" are defined as Defendants' December 2016 letter to the publishers and May 2017 Clearcutting Report—the only two relevant statements remaining in the case after the Court's Order Granting in Part Defendants' Motion to Dismiss.  *See* ECF No. 246 (the "MTD Order").  In the MTD Order, the Court dismissed Plaintiffs' defamation claims based on 294 other statements—ruling that the two Challenged Statements were the only ones where Plaintiffs had plausibly pleaded actual malice.  *See generally id.*

litigation tactics—including their express violation of this Court's Order—Defendants respectfully request an award of terminating sanctions, or in the alternative, a combination of preclusionary, evidentiary, and monetary sanctions.

## II.     FACTUAL BACKGROUND

### A.     Plaintiffs Obscure the Bases for Their Alleged Damages; and the Court Orders Them to Disclose This Information.

On September 5, 2019, Defendants served Plaintiffs with their first set of interrogatories, which sought, *inter alia*, information regarding the bases for Plaintiffs' damages claims.  Plaintiffs resisted providing such information, stating generally that such requests sought "premature expert discovery" and Plaintiffs would provide this information in its expert reports.  *See* Ex. 1 (Pls.' Oct. 16, 2019 Interrog. Resps.).[3]  Upon objection from Defendants, Plaintiffs eventually agreed to provide some limited bases for their damages claims,[4] but continued to defer responding to key damages interrogatories until expert discovery. Ex. 2 (Pls.' Aug 12, 2020 Second Suppl. Interrog. Resps.).

On December 2, 2020, Defendants filed a joint discovery letter to compel Plaintiffs to respond to the outstanding damages interrogatories.  ECF No. 372.  The Court ruled in Defendants' favor on January 20, 2021, concluding that Plaintiffs could ***not*** defer addressing such interrogatories until expert discovery.  ECF No. 381 at 2 (noting "Plaintiffs cannot defer responding to such inquiries until an expert report; Plaintiffs have alleged that they suffered damages based on the actionable statements. Plaintiffs presumably made such allegations based on facts in their possession").  The Court further found that the "fact that damages can, in theory, be difficult to

---

[3] The Declaration of Lacy H. Koonce, III ("Koonce Decl.") in support of this motion is filed concurrently herewith.  All exhibits referenced herein are provided with the Koonce Declaration. Some of the exhibits include documents that were originally designated as Confidential by Plaintiffs; however, Plaintiffs have agreed to de-designate these particular documents.  The exhibits also include documents designated as Confidential by third party CounterPoint Strategies Ltd. and so have been filed under seal with an accompanying Motion to Determine Confidentiality, in accordance with the Local Rules.

[4] Namely, Plaintiffs identified several customers who allegedly contacted Plaintiffs or whom Plaintiffs allegedly contacted regarding the Challenged Statements; and identified three customers whose relationships were allegedly hindered by the Challenged Statements (Hachette Livre, Macmillan, and Penguin Random House). Ex. 2.

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

calculate does not mean Plaintiffs are permitted to not identify and explain the information that they do possess"; and while "specific calculations of damages may require expert reports, Plaintiffs must still identify and provide the underlying information." *Id.* at 2-3.  The Court therefore ordered Plaintiffs by February 10, 2021 to submit supplemental interrogatory responses specifically to identify "all facts supporting Plaintiffs' allegations that their reputation had been damaged," and to provide "the amount of each element of damage" and describe "the source of each calculation of each element of damage." *Id.* at 1-2.

Accordingly, on February 10, 2021, Plaintiffs served Defendants with their Third Supplemental Responses and Objections to Defendants' First Set of Interrogatories.  Ex. 3 (Pls.' Feb. 10, 2022 Third Suppl. Resps. & Objs. to Defs.' First Set of Interrogs.).  In those responses, Plaintiffs did not identify any additional customer relationships that they claim were directly impacted by the Challenged Statements in December 2016 and May 2017, beyond the handful identified in their first interrogatory responses.  *See id.*  Instead, they identified certain lost volumes and sales between April *2014* and December 2017, "a portion of which" they claimed was "attributable to the time frame from December 2016 through December 2017."[5]  *Id.* at 5.  These alleged lost volumes and sales involved the following customers: UPM, Burrows, Fibermark, Finch Paper, P&G, Clearwater, and West Linn.  *See id.*

Throughout the course of discovery, Defendants deposed 11 Resolute employees, including the sales team, and reviewed all documents produced by Plaintiffs.  Koonce Decl. ¶ 5.  However, Plaintiffs never produced *any* documents or witness testimony in discovery indicating that any of the seven above-referenced customers named by Plaintiffs in their Third Supplemental Responses received the Challenged Statements, much less altered their purchasing from Plaintiffs as a result thereof.  *Id.*  Nor did Plaintiffs identify the amount of any damages related to any such customer. *Id.*  Defendants also sought third-party discovery from HarperCollins, Macmillan, Penguin Random House, and some of Plaintiffs' other publishing customers.  *Id.* ¶ 6.  Each of the publisher witnesses

---

[5] Defendants contest the validity of this damages theory, but will address that argument at the expert discovery phase.

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

who was deposed confirmed that these customers did not decrease or cease buying paper products from Plaintiffs due to the Challenged Statements.  *Id.*

Defendants repeatedly asked Plaintiffs about the fact that they had not provided any proof for their alleged damages theories throughout the course of discovery.  *Id.* ¶ 7.  On June 15, 2021, they sent a letter pointing out that Plaintiffs had failed to produce documents sufficient to support their allegations that the Challenged Statements caused a diminution in the value of any business relationship, because they had not produced documents showing their overall sales to any particular customers.  Ex. 4.  Then again, on February 7, 2022, as the parties approached the close of fact discovery, Defendants sent another letter to Plaintiffs.  Ex. 5.  Defendants requested confirmation that "Plaintiffs do not intend to base their damages claims on relationships with any ***other*** customers other than those identified in their interrogatory responses," and if not, asking Plaintiffs to identify them within seven days of receipt of this letter, as such information would be clearly responsive to Defendants' First Set of Interrogatories.  *Id.*  Defendants also noted that "withholding any such information until the expert discovery phase would violate Magistrate Judge Westmore's Order."  *Id.* at 2 (citing ECF No. 381).

On March 1, 2022, after receiving no response from Plaintiffs to the February 7 letter, Defendants inquired regarding the status of Plaintiffs' Response.  Ex. 6 (C. Kelly Mar. 1, 2022 email).  At that time, the parties were in the process of negotiating a proposed extension of the case schedule, and Defendants noted that their "agreement to the [proposed] case schedule remains contingent on both: (1) the fact that Plaintiffs' productions are truly complete; and (2) Plaintiffs' response to the [February 7] . . . letter."  *Id.*  On March 9, 2022, Defendants followed up yet again, noting that "if Plaintiffs contend there is . . . a basis [for alleged damages involving customers aside from Resolute's publishing customers] and refuse to produce the relevant documents, then [Defendants] may be forced to engage in further third-party subpoena practice . . . [which] may well impact the case schedule . . . ."  Ex. 7 (C. Kelly Mar. 9, 2022 email).  Given the time-sensitive nature of expanding the case schedule, the parties filed their joint motion to extend the case schedule on March 10, 2022.  *See* ECF No. 434.

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

Plaintiffs went silent for the following month on this issue.  Koonce Decl. ¶ 12.  On April 8, 2022, Plaintiffs proposed another extension of the case schedule—predominantly to allow the parties to comply with the Court's Order regarding the Counterpoint joint discovery letter.  Ex. 8 (M. Baldwin Apr. 8, 2022 email).  Plaintiffs did not mention at this point they intended to significantly expand the scope of their damages claims—despite the fact that Defendants had previously stated that any such expansion would require more time for fact discovery for Defendants to probe the validity of these claims through third-party discovery and other means.  Koonce Decl. ¶ 14.  Lacking this knowledge, Defendants agreed to a limited three-week extension, which the Court granted.  ECF No. 450; *see also* Ex. 9 (C. Kelly Apr. 8, 2022 email).

**B.      Plaintiffs Violated the Court's January 2021 Order by Waiting Until the Eve of the Fact Discovery Cut-off—After Almost All Depositions and Third-Party Discovery Were Complete—to Disclose Fourteen New Damages Claims.**

Defendants did not hear anything further from Plaintiffs regarding their alleged damages until April 19, 2022.  On this date, Plaintiffs served a Fourth Set of Responses and Objections to Defendants' First Set of Interrogatories.  Ex. 10 (Pls.' Apr. 19, 2022 Fourth Suppl. Resps. & Objs. to Defs.' First Set of Interrogs.).  In those responses, Plaintiffs added *fourteen* entirely new damages theories *two weeks* before the (repeatedly extended) close of fact discovery, *one week* before Defendants' scheduled deposition of Plaintiffs' 30(b)(6) witness on damages, and *months after* Defendants' depositions of Plaintiffs' key sales witnesses and third-party publishing customers, in clear contravention of both their discovery obligations as well as Magistrate Judge Westmore's Order issued more than a year earlier.  ECF No. 381.  In particular, Plaintiffs added the following new damages claims to their Fourth Set of Responses:

- "[T]he decrease in demand for Plaintiffs' paper products resulting from the Challenged Statements,[6] caused Resolute to offline certain paper operations

---

[6] It should be noted that Plaintiffs have, for the first time, expanded *their* definition of "Challenged Statements" to "include all statements by Defendants from December 2016 forward that Resolute was harvesting in the Montagnes Blanches and/or adversely impacting the region," despite the fact that this Court has repeatedly ruled that the only two statements left at issue in this case are the December 2016 letter to the publishers and the May 2017 Clearcutting Report.  *See* Ex. 10 at 3; *see also* ECF No. 341 at 2 ("Again, as previously noted, this case is **very** limited: it is based only on

during this period." Ex. 10 at 5-6 (referring to "paper machine No. 9 at Alma, which allegedly was idled in 2015—before the statements at issue in this case—and later brought back online); *see also id.* at 6 (referring to shutting down the P-3 and P-5 paper machines at Calhoun and associated costs thereto);

- "Resolute's EBITDA during the relevant period did not exceed $500 million, which is due in large part to the Challenged Statements" (*id.* at 14);

- "Resolute's depressed share price limited Resolute's ability to finance capital investments or other projects" (*id.* at 8);

- "Resolute's board of directors cautioned management not to take on additional debt to finance capital projects or other investments" (*id.* at 8-9);

- "The Challenged Statements [allegedly] impaired Resolute's access to credit and financing because potential financers conducting due diligence raised questions about the Challenged Statements" (*id.* at 9);

- "Certain book publishing customers like Simon & Schuster declined to publish their prominent authors on Resolute paper" (*id.* at 17);

- "Even those customers that maintained their pre-existing business with Resolute declined to grow their relationship with Resolute during late 2016/2017" (*id.*);

- "Certain pulp customers, like Kimberly Clark, UPM, and P&G, who previously contracted with Resolute to source from the Saguenay Lac St. Jean region . . . and terminated their contractual relationships with Resolute prior to 2016 continued to decline to contract with Resolute on an annual basis"[7] (*id.* at 17-18);

- The Challenged Statements allegedly contributed to the failure of "a merger between Eacom and Resolute in 2017 and the purchase of the Gilman sawmills that same year" (*id.* at 19);

- Alleged failure of Resolute's potential combination of Cascades' tissue sector business with Calhoun tissue and Florida tissue assets (*id.* at 20);

- Alleged failed business venture in 2013 with Western Forest Products (*id.* at 20-21);

---

Defendants' December 2016 and May 2017 statements that Plaintiffs were operating in the Montagnes Blanches. . . .").

[7] Many of these damages claims should also be struck because they run afoul of the MTD Order by seeking damages allegedly arising from statements made ***before*** the two Challenged Statements.

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

- Resolute's 2016 decision not to purchase more sawmills in Quebec/Ontario regions and to focus business on U.S. mills (*id.* at 21);

- Resolute's failure to acquire Temple Inland (*id.*);

- "Resolute was also foreclosed from pursuing the purchase of certain sawmills owned by Suwanee in Florida and Simpson in the Southeastern region of the U.S." (*id.* at 21-22).

A few days later, Plaintiffs made a document production of several dozen additional documents without explanation, that appear to relate to the new damages claims.  Koonce Decl. ¶ 18.  Defendants immediately asked Plaintiffs to explain this belated production, but Plaintiffs have refused to provide any explanation. Ex. 11 (C. Kelly Apr. 23, 2022 email).

The week after Plaintiffs served their amended interrogatory responses, Defendants deposed Plaintiffs' Rule 30(b)(6) representative on damages, Richard Garneau.  Koonce Decl. ¶ 20.  But when questioned about the alleged facts supporting these new damages claims, Mr. Garneau repeatedly stated that he did not know and that *Plaintiffs' damages expert* would make it clear in his expert report. Ex. 12 (30(b)(6) Dep. Tr. of R. Garneau) at 148:25-149:9 (stating "[a]ll the facts are going to be provided to the damage expert" and "[i]t is one of the tasks that the damage expert is going to address"); *see also id.* at 175:6-8 (noting the damages expert "is going to be able to respond to your question").

## C.    Plaintiffs Failed to Institute a Litigation Hold in This Case.

In addition to violating the Court's discovery order, Plaintiffs recently revealed—many years after the complaint was filed in May 2016—that they did not institute a litigation hold in this case. Koonce Decl. ¶ 22.  Instead, Plaintiffs instituted a litigation hold in April 2014, two years before the instant case was filed, in connection with a *different* litigation brought by some of the Plaintiffs against Greenpeace-Canada raising different facts, claims, timeframes, and involving different statements and custodians than the instant litigation.  *See* Ex. 13.

On its face, the April 2014 litigation hold did not cover the claims in this litigation, including the remaining defamation claims based on the two Challenged Statements, and thus did not require custodians to preserve documents related to this litigation.  *See id.*  That litigation hold lists six general areas of relevance:

DAVIS WRIGHT TREMAINE LLP

1.  False allegations that Resolute is harvesting in the Broadback Valley Forest
2.  False allegations concerning Resolute's pensions
3.  False allegations concerning Resolute's Align family of paper products
4.  False allegations concerning Resolute's use of recycled content in its products
5.  Initial Defamation: Greenpeace's December 2012 publications
6.  Greenpeace communications with Resolute's customers/stakeholders/investors

*Id.*  The first five of these categories have no relation to this case, and the sixth, "Greenpeace communications with Resolute's customers/stakeholders/investors," logically related only to communications with Greenpeace-Canada, not between Defendants—who were not parties to the Canadian case—and the relevant customers in this case.  Indeed, the litigation hold made no reference to the two Challenged Statements—nor could it, given that it pre-dated these Statements' existence.  Instead, it only references Greenpeace-Canada's publications, beginning on December 6, 2012, alleging that Resolute was "harvesting in breach of the Canadian Boreal Forest Agreement" and subsequent statements involving "a) Resolute's operations in the Broadback Valley Forest; b) Resolute's commitment to pensions; c) Resolute's Align paper line; and d) Resolute's use of recycled fibre."  *Id.* at 3.  Notably, nothing in this litigation hold mentions the "Montagnes Blanches," the underlying geographic area that is at the heart of the instant litigation.

Nor did this litigation hold cover the time frame relevant to this litigation.  It identified the relevant records as those "prepared or generated in the period between 2009 to present [April 2014]," whereas this litigation commenced in May 2016 and at the current stage, focuses on the two Challenged Statements made in December 2016 and May 2017, both long after the end date of Plaintiffs' litigation hold.  *Id.* at 4.  Additionally, this litigation hold was not sent to the full group of Plaintiffs' custodians with relevant knowledge for this litigation.  It was only sent to twelve employees and did not include all of the persons with knowledge named in Plaintiffs' initial disclosures and answers to interrogatories.  *Id.* at 1.

Based on testimony from Jacques Vachon, Plaintiffs' corporate designee on their document collection, preservation, and technology practices, Plaintiffs claim that—while they did not update the 2014 litigation hold in any way—they circulated a "questionnaire" to various custodians.  Yet, the questionnaire too only related to the ***Canadian litigation*** and was only circulated in 2014.  Ex.

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

32 (questionnaire); Ex. 33 (Dep. Tr. of J. Vachon) at 33:10-20.  This questionnaire, for instance, asked about the location of documents "regarding the Montagne [sic] Blanches region and Greenpeace's false allegation that Resolute built logging roads in violation of the Canadian Boreal Forest Agreement (CBFA)"—*i.e.*, one of the main arguments in the Canadian litigation, entirely unrelated to the Challenged Statements at issue in the U.S. action.  Ex. 32 at 7.  Despite Defendants' requests, Plaintiffs have provided no evidence of when these "questionnaires"—which do not themselves explicitly impose document retention obligations—were completed or the responses that they received from any relevant custodians.  Koonce Decl. ¶ 25.  Nonetheless, these questionnaires in no way pertain to the U.S. litigation and/or the only two remaining Challenged Statements in that case—the December 2016 letter to the publishers and the May 2017 Clearcutting Report.  Additionally, Plaintiffs have produced no evidence of a written retention policy.  *Id.* ¶ 26

**D.   Plaintiffs Failed to Oversee Proper Preservation of Evidence or Compliance with Production of Relevant Documents.**

**1.   *Plaintiffs Failed to Identify, Collect, Search, and Produce Documents From Key Custodians*.**

Defendants initially became aware of troubling holes in Plaintiffs' discovery process after their first deposition of Plaintiffs' witness Kevin Goulding on August 26, 2021.  Koonce Decl. ¶ 27.  Mr. Goulding identified several categories of documents that Plaintiffs did not produce, including documents essential to Plaintiffs' damages theories, as articulated at the time.  *Id.*  Defendants promptly raised this issue with Plaintiffs, both by email and at a September 10, 2021 meet-and-confer.  *See* Ex. 14 (L. Koonce Sept. 9, 2021 email); *see also* Ex. 15 (L. Koonce Sept. 13, 2021 email).

On October 7, 2021, shortly before Defendants' next scheduled deposition of Plaintiffs' witness Jeff Romeo, Plaintiffs produced 1,200 documents without warning.  Koonce Decl. ¶ 30.  Defendants initially assumed that these documents were the damages documents requested following Mr. Goulding's deposition, but at a meet-and-confer the next day, on October 8, 2021, and only upon Defendants' inquiry, Plaintiffs informed Defendants that these documents were from Mr. Romeo.  *Id.* ¶ 31.  After Defendants pressed further, Plaintiffs disclosed for the first time that,

DAVIS WRIGHT TREMAINE LLP

up to that point, they had only previously collected and searched the documents of *six custodians of the 16 witnesses* originally identified in their initial disclosures and in interrogatory responses as individuals with relevant knowledge, despite having long ago declared their document production complete. *Id.* ¶ 32.  As a result, from the start of discovery in 2019 until the fall of 2021, Plaintiffs had failed to collect or search the documents from over half of the persons they had identified as relevant, including five of the individuals whom Defendants identified for depositions in July 2021: Mr. Romeo, Mr. Goulding, Carolyn Pinto, Rob Hilbrink, and Breen Blaine.  *Id.* ¶ 33.  Seriously concerned by this admission, Defendants requested that Plaintiffs provide a list of all custodians whose documents Plaintiffs searched, and when.  Ex. 16 (L. Koonce Oct. 8, 2022 email).  Only after Defendants' request did Plaintiffs propose collecting and searching documents for those remaining witnesses Defendants intended to depose that were not previously included as custodians (at that point, Ms. Pinto, Mr. Hilbrink, and Mr. Blaine).  Koonce Decl. ¶ 35.  As a result, the parties agreed to postpone both Mr. Romeo and Ms. Pinto's depositions so that Plaintiffs could produce their documents.  *Id.*

Although Plaintiffs have since produced additional documents—only after Defendants realized their shortcomings and pressed for them—these productions often came mere days before depositions, resulting in significant prejudice to Defendants, who then had to review copious documents shortly before depositions and revise their questions accordingly.  *Id.* ¶ 36.  For Mr. Goulding, Plaintiffs produced the vast majority of his documents *after* Defendants had deposed him. *Id.*  As demonstrated *infra*, it is also clear that Plaintiffs still have not produced all relevant documents from their custodians.

**2.** ***Plaintiffs Failed to Identify, Collect, Search, and Produce Documents from Relevant ESI Sources; and Improperly Allowed Custodians to Direct Their Own Collections.***

Several of Plaintiffs' key custodians have testified that no one had asked them which devices they used to transact Resolute business or told them to preserve or collect materials from those devices.  For example, Carolyn Pinto testified that she sent emails to her personal Gmail account

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

attaching work documents[8] to edit on her personal computer, but was never asked to review her Gmail or her personal devices for documents. *See* Ex. 18 (Dep. Tr. of C. Pinto) at 88:17-89:3; 140:11-143:23. Likewise, Mr. Goulding testified to using his personal devices for work, but those were never preserved. Ex. 19 (Dep. Tr. of K. Goulding) at 406:1-7.

Two witnesses testified to printing out hard copies, but were never asked to retain or produce them; both also testified they used text messaging for work, including in connection with key events related to this litigation, but failed to retain or produce any texts. *Id.* at 331:23-333:21, 326:6-327:7, 329:5-331:7; Ex. 20 (Dep. Tr. of J. Romeo) at 107:12-110:9, 199:3-200:10, 106:10-107:6, 96:23-101:23. One witness confessed to ***burning and shredding*** his paper documents, including ones associated with key customers. Ex. 21 (Dep. Tr. of C. DelVecchio) at 56:5-12, 56:24-57:7. Witnesses asked to identify dates—even just which year—when hold requests were made and documents were collected, have been unable to do so. *See*, *e.g.*, Ex. 22 (Dep. Tr. of B. Blaine) at 30:17-31:12; 257:21-258:1; Ex. 21 at 54:5-56:4; Ex. 20 at 103:23-104:20. Mr. Goulding also testified that he interpreted Plaintiffs' litigation hold notice only to require preservation of emails, and that it was left to employees' individual discretion which emails were responsive and needed to be preserved. Ex. 19 at 327:18-330:6.

In addition, on February 10, 2022, Plaintiffs disclosed for the first time the existence of large email "archives" not previously searched, totaling nearly 4,000 documents. Koonce Decl. ¶ 43. Although Plaintiffs claimed ignorance of the archives until recently, email and testimony show that at least two key custodians discussed with their IT department archiving of emails in the context of litigation in late 2018, two years after this case was filed and before any documents were produced in discovery. Ex. 18 at 257:9-261:13. Apparently neither employee—nor other custodians nor Plaintiffs' IT department—were ever asked about archives, which only came to light after pressure from Defendants. *Id.*; Ex. 23 (Dep. Tr. of S. Kursman) at 240:23-241:20. Additionally, the

---

[8] These documents included ones clearly material to the issues in this litigation. *See, e.g.*, Ex. 17 (apparent task list kept by Ms. Pinto describing Resolute's researched "intel" on "new forest campaigner" for Greenpeace; noting work to be done for a reporter researching a feature article about the dispute between Plaintiffs and Greenpeace; and describing in detail the work Plaintiffs had asked public relations firm Counterpoint to do to counter Greenpeace's speech).

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

"questionnaire" that Plaintiffs allegedly circulated to custodians regarding the Canadian litigation asks whether the custodian has "archived any emails" and if so, where they are saved—which further diminishes Plaintiffs' claim that they had no prior knowledge of these archives.  Ex. 32 at 2.

Finally, only recently have Defendants pieced together through forensic review that Plaintiffs produced almost no documents from key custodian Kevin Goulding during the relevant time periods in the case surrounding the Challenged Statements made in December 2016 and May 2017.  Koonce Decl. ¶ 44; *see also* Ex. 34 (charts prepared by Bobby R. Williams, Jr., a Senior Managing Consultant at iDiscovery Solutions, Inc., analyzing Plaintiffs' productions).   Mr. Goulding was the direct supervisor of the salespeople who interacted with the publishing customers Plaintiffs allege received the Challenged Statements.  Koonce Decl. ¶ 44.  Additionally, Plaintiffs initially produced hardly any documents from key custodian Seth Kursman during these time periods.  *Id.*  ¶ 45; Ex. 34.  At his deposition, Mr. Kursman was unable to explain this gap.  Ex. 23 at 230:13-231:2 ("If there was some kind of snafu, it doesn't make sense. . . .  I would venture to say there's not a day that goes by where I'm not sending emails and working on documents of some sort.").   Although Plaintiffs finally produced some Kursman documents during this period on February 19, 2022, his production remains anemic given his centrality to this litigation and given that he testified that with respect to Greenpeace, "I've sent on this subject probably tens of thousands of emails."  *Id.* at 147:13-16; *see also* Ex. 34.

### 3.     *Plaintiffs Failed to Adequately Preserve Evidence, Causing Spoliation.*

While fact discovery has closed, Plaintiffs' productions still have significant gaps in terms of time, information sources, and custodians, including: (i) omission of entire ESI sources such as texts, personal email accounts, and locally stored documents; (ii) a dearth of custodial documents for key persons, including Mr. Kursman and Mr. Goulding; (iii) missing swaths of key documents, including email blasts sent by Plaintiffs to customers and documents related to damages; and (iv) failure to produce highly relevant documents, which were produced by third parties but not by Plaintiffs (further confirming Defendants' concerns about Plaintiffs' spoliation).  Koonce Decl. ¶

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

47. A chart describing in detail Plaintiffs' missing documents is attached to the Declaration of Lance Koonce as Exhibit 24.

### E. Plaintiffs' Failure to Produce Relevant Evidence, as Well as Their Significant Delay in Producing Over 14,000 Documents in a Fragmented Process on the Eve of Relevant Depositions, Has Resulted in Increased Costs and Substantial Prejudice to Defendants.

Defense counsel have spent countless hours and resources identifying the numerous flaws in Plaintiffs' discovery issues and raising them with Plaintiffs. Koonce Decl. ¶ 59. This process has been severely hampered by Plaintiffs' piecemeal and fragmented document productions, requiring Defendants to puzzle and piece together documents to assess whether Plaintiffs have complied with their basic discovery obligations. *Id.*

Plaintiffs initially produced 10,564 documents. *Id.* ¶ 60. Roughly 1,000 documents lack custodian metadata and nearly 700 contain no date metadata. *Id.* Troublingly, nearly half of the documents also lack hash value metadata, indicating the records were pulled not from a search of relevant custodians' files but likely from a production in the Canadian litigation and simply copied and produced here.[9] *Id.* After Plaintiffs' revelations regarding their failure to search and collect relevant custodians' documents, Plaintiffs belatedly made new productions beginning in October 2021 through February 2022 totaling 14,362 additional documents.[10] *Id.* ¶ 62. It then became routine for Plaintiffs to produce large tranches of a deponent's custodial documents on the eve of key depositions, prejudicing Defendants by requiring them to last-minute reschedule depositions or scramble to review new documents, sometimes hours before a deposition. *Id.* ¶ 63. In some instances, Plaintiffs produced a substantial number of documents from custodians ***months after*** their depositions, as in the case of Mr. Goulding, further prejudicing Defendants' ability to defend this

---

[9] Despite many requests, Plaintiffs have still not produced these documents with proper metadata. Koonce Decl. ¶ 60. Metadata is significant because it allows a party to assess important information such as when a document was created and who created, sent, or received it.

[10] Plaintiffs ultimately revealed that the search terms they used were also deficient, critically not including a catch-all search term for "Montanges Blanches" plus Greenpeace, a type of term Plaintiffs insisted Defendants use for *their* collection. Koonce Decl. ¶ 61. In the parties' communications, Plaintiffs attempted to shift blame, claiming it was Defendants' obligation to detect that Plaintiffs only searched six custodians and used flawed terms. *Id.* Yet the missing metadata in and piecemeal nature of the productions initially obscured these issues. *Id.*

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

1   case.  *Id.*  These tardy and voluminous productions, which should have been properly produced

2   months, if not years ago, have significantly prejudiced Defendants' position in this lawsuit.

### III.   ARGUMENT

4   Sanctions are warranted under Federal Rule of Civil Procedure 37(b) because Plaintiffs

5   violated this Court's Order requiring disclosure of the bases for its damages claims.  Sanctions are

6   also warranted under Rule 37(e) because Plaintiffs did not take reasonable steps to preserve ESI by

7   failing to institute a litigation hold specific to the facts of this case and failing to preserve or collect

8   whole categories of ESI from any custodians.  This flawed process resulted in the undeniable loss

9   of relevant ESI, which has prejudiced Defendants in their defense of this case.  The Court may also

10  grant monetary sanctions under its inherent authority for Plaintiffs' extremely belated and ad hoc

11  document productions (often on the eve of, or after, depositions) and the severe prejudice it caused

12  Defendants.

### A.   Sanctions Are Warranted Under Rule 37(b) Because Plaintiffs Violated a Court Order.

14  Under Federal Rule of Civil Procedure 37(b), a district court can issue sanctions against a

15  party who "fails to obey an order to provide or permit discovery."  Fed. R. Civ. P. 37(b)(2)(A).

16  These sanctions can include, *inter alia*: (1) "prohibiting the disobedient party from supporting or

17  opposing designated claims or defenses, or from introducing designated matters in evidence;" (2)

18  "striking pleadings in whole or in part;" (3) "dismissing the action or proceeding in whole or in

19  part;" or (4) "treating as contempt of court the failure to obey any order except an order to submit

20  to a physical or mental examination."  *Id.; see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 948

21  (9th Cir. 2001) ("It is true that an appropriate discovery sanction for refusing to respond to discovery

22  requests on jurisdictional facts can be an adverse finding on the factual issue.").  The Rule further

23  provides that: "Instead of or in addition to the orders above, the court ***must*** order the disobedient

24  party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's

25  fees, caused by the failure, unless the failure was substantially justified or other circumstances make

26  an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

27

28

DAVIS WRIGHT TREMAINE LLP

The Ninth Circuit has held that Rule 37(b) sanctions are warranted where, as here, a party fails to disclose the bases for their damages, even after the trial court orders them to do so.  *See United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1366 (9th Cir. 1980).  In that case, the trial court had granted the defendants' motion to compel the government-plaintiff to answer their damages interrogatories.  *See id.*  Even after the government answered the interrogatories, "it did not provide the damages evidence which it had promised," after which the trial court again ordered the government to provide "a complete statement of the damages which it claims . . . together with copies of all the documents which support such claimed damages."  *Id.* at 1368.  The government eventually provided this statement, but announced that it was "not yet finalized" and "subject to revision."  *Id.*  Defendants moved for sanctions, which the trial court granted, finding that the "government had willfully disregarded its . . . order requiring the government to produce evidence of its damage," and ordering that "the government would be precluded from introducing any evidence of its damages."  *Id.*  On appeal, the Ninth Circuit affirmed the sanctions, noting that "the prejudice to [Defendants] was unmistakable;" and "[s]evere sanctions were also necessary to . . . generally deter[] flagrant disobedience and callous disregard of court discovery orders."  *Id.* at 1370.

This case could not be more similar.  Over 16 months ago, this Court found it was insufficient for Plaintiffs to respond to Defendants' interrogatory requests regarding Plaintiffs' alleged damages claims by "stat[ing] that they 'will be relying on an expert to aggregate relevant data points and calculate the precise amount of damage Plaintiffs suffered.'"  ECF No. 381 at 1-2.  It expressly ordered Plaintiffs to identify "all facts supporting Plaintiffs' allegations that their reputation had been damaged," and to provide "the amount of each element of damage" and describe "the source of each calculation of each element of damage, " ***by February 10, 2021***.  *Id.* at 1-2, 5.

Plaintiffs directly violated this Court Order.  They waited until April 19, 2022—about ***two weeks*** before the (repeatedly extended) close of fact discovery, ***one week*** before Defendants' scheduled deposition of Plaintiffs' 30(b)(6) witness, and ***months after*** several of Defendants'

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

depositions of Plaintiffs' key sales witnesses, to disclose **_fourteen_** entirely new damages claims.[11] Plaintiffs cannot argue that these new damages claims were based on new information learned through discovery because all of these theories are premised on either Resolute's own internal corporate decision-making or communications that Resolute had with its own customers. Such information would have been in Plaintiffs' possession since the start of discovery, and certainly by January 2021 when the Court ordered them to disclose the bases for their damages claims. *See Oracle USA, Inc.*, 264 F.R.D. at 548 (ordering sanctions for failure to timely disclose damages theories, noting, "this is not a situation where Plaintiffs were unable to develop their full damages theories until later in the case after they received discovery from Defendants or third parties"). Indeed, Plaintiffs have no explanation for their failure to disclose these claims—suggesting that the claims are an attempt to throw out new speculative theories for damages because their initial theories were not borne out in discovery.

The 30(b)(6) deposition of Resolute former CEO Richard Garneau strongly supports this suggestion. Despite the fact that Mr. Garneau was designated by Plaintiffs to testify on damages, he: (1) could not say whether Plaintiffs contend that they suffered damages related to publishing customers during a particular time period because "[a]ll the facts are going to be provided to the damage expert" and "[i]t is one of the tasks that the damage expert is going to address," (Ex. 12 at 148:25-149:9); (2) could not say whether Plaintiffs' access to credit facilities was affected by the Challenged Statements, and that instead the damages expert "is going to be able to respond to your question" (*id.* at 175:6-8); (3) said an expert would provide information about a system Resolute had to track customers who stopped purchasing based on the Challenged Statements, though he could not (*id.* at 148:5-22); and (4) said that it was the expert, not him, who would explain how

---

[11] The fact that Plaintiffs ultimately disclosed their new damages theories shortly before the close of fact discovery (as opposed to after) does not decrease the need for sanctions. *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 554 (N.D. Cal. 2009) (precluding plaintiffs from presenting evidence of damages theories that they failed to timely disclose even where "fact discovery does not close for several more months," because "the expansion in damages discovery that would be necessitated by Plaintiffs' new categories of damages would prejudice Defendants and almost certainly derail the trial schedule").

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

Plaintiffs' market share compared to other companies', despite the Court's order to the contrary. *Compare id.* at 107:10-109:11, *with* ECF No. 381 at 4 (ruling that information related to Plaintiffs' claims that they lost market share must be produced in fact discovery). Additionally, that the new theories rely in large part on alleged damages that originated **before** the first Challenged Statement was made further demonstrates Plaintiffs' desperation.

Plaintiffs' disclosure of novel damages theories—and failure to produce any documents supporting those theories—on the eve of key depositions and the fact discovery cut-off severely prejudiced Defendants' ability to litigate this case, especially given that Defendants repeatedly queried Plaintiffs regarding their damages theories for years. This is particularly true given that Plaintiffs disclosed these damages claims **after** Defendants had already deposed almost all of Plaintiffs' sales team as well as the following third-party publishing customers: Macmillan, Penguin Random House, Simon & Schuster, and HarperCollins—and thus had no opportunity to question these witnesses about such claims. Koonce Decl. ¶ 17; *see also SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2021 WL 2895503, at *11 (D. Ariz. July 9, 2021) (finding that defendant was prejudiced by plaintiffs' late disclosure of damages theory where it would have pursued other categories of evidence in discovery "had it been aware of [plaintiff's] intent to pursue [the new] theory of damages"). Defendants also twice agreed to discovery schedules based on their understanding that Plaintiffs would not be disclosing entirely new damages theories that would—as they informed Plaintiffs—undoubtedly require additional time to probe via third-party discovery of the companies named for the first time in Plaintiffs' Fourth Responses. Koonce Decl. ¶ 14.

### 1. *Plaintiffs' Violation of the Court's Order Warrants Terminating Sanctions, But at the Very Least Merits Evidentiary Preclusion and Monetary Sanctions.*

Plaintiffs' violation of the Court's Order is serious enough to warrant terminating sanctions. Terminating sanctions are justified where a party exhibits willfulness, bad faith, or fault. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault," *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003); and these elements do not require "wrongful intent," *Sanchez v. Rodriguez,* 298 F.R.D. 460, 463 (C.D. Cal.

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

2014).  Plaintiffs' belated disclosure of damages claims that were within their knowledge at the start of discovery was not outside of their control, and terminating sanctions are warranted.  Further, "[b]elated compliance with discovery orders does not preclude the imposition of [terminating] sanctions."  *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997) (holding that dismissal was warranted where plaintiffs served their court-ordered discovery responses "only as the discovery period was drawing to a close, or after it had already closed[; and the defendants] were therefore deprived of any meaningful opportunity to follow up on that information, or to incorporate it into their litigation strategy").

In the alternative, at a minimum, Plaintiffs should be precluded from being able to present to the jury the new claims disclosed for the first time in their extremely belated Fourth Supplemental Responses, and introducing documents and testimony supporting such theories, including the recent document production made on April 22, 2022.  *See Sas v. Sawabeh Info. Servs.*, No. CV11-4147-MMM(MANx), 2015 WL 12711646, at *5–7 (C.D. Cal. Feb. 6, 2015) (concluding that any sanction less than evidentiary preclusion would not adequately remedy prejudice caused by defendants' violation of discovery order).  Such sanctions are necessary to serve the "three general purposes" of Rule 37(b) preclusion sanctions, as noted by the Ninth Circuit: "to ensure that a party does not profit from its own failure to comply; to seek to secure compliance with court orders in a particular case; and to serve as a general deterrent in both the case at hand and other cases."  *Id.*

Indeed, courts in this Circuit have ordered preclusion sanctions under the same facts at issue here.  *See Choudhuri v. Wells Fargo Bank, N.A.*, No. 15-CV-03608-VC (KAW), 2017 WL 5598685, at *9 (N.D. Cal. Nov. 21, 2017) (plaintiff was "not permitted to present information or documents that has not been previously provided to Defendant in response to discovery requests on . . . damages" where plaintiff failed to comply with court order requiring supplemental discovery responses on damages and other topics); *Oracle USA, Inc.*, 264 F.R.D. at 556-57 ("Plaintiffs' discovery responses failed without substantial justification for over two years to inform Defendants that Plaintiffs were seeking [certain] lost profit damages . . . .  Further, Plaintiffs failed to timely supplement their initial disclosures to update their damages theory until May 2009, even though

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

facts supporting such damages were known to Plaintiffs before filing this lawsuit . . . .  In addition, expanding the damages case significantly as Plaintiffs belatedly attempt to do would severely prejudice the Court's ability to manage this case to resolution in anything approaching a just, speedy, and inexpensive manner. Thus, Rule 37 mandates preclusion sanctions...."); *see also JTS, LLC v. Nokian Tyres PLC*, No. 3:14-CV-00254 JWS, 2017 WL 68615, at *2-3 (D. Alaska Jan. 6, 2017) (where plaintiff violated court's order to serve defendant by a certain date "with a proper computation of its damages, including any supporting documentation, and with responses to [defendant's] discovery requests," ordering that the plaintiff would be "prohibited from using on any motion, at any hearing, or at trial, any evidence that it has failed to disclose to [defendant]")[12]; *SiteLock LLC*, 2021 WL 2895503, at *8 (sanctioning plaintiff by excluding its "lost profits from direct sales" theory of damages where plaintiff did not timely disclose this theory to defendants).

If the Court finds that Plaintiffs have violated its discovery Order, then the Court "***must*** order [Plaintiffs, their attorneys] . . . or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).  As established *supra*, Plaintiffs' violation of the Court's Order was not at all justified — let alone substantially justified.  Nor are there any other circumstances here that render an award of expenses unjust.  Accordingly, the Court should order Plaintiffs to pay the attorney's fees and costs that Defendants incurred in bringing the instant motion and in repeatedly contacting Plaintiffs to clarify the nebulous bases for

---

[12] The *JTS* Court based this ruling on the fact that the plaintiff's failure to disclose damages information violated Rule 26(a)'s requirement to disclose "a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  But the Court also noted that it was "well within its discretion to conclude that [plaintiff's] repeated failure to disclose its damages computations, failure to disclose any documents that support those computations, and its refusal to obey this court's order constitutes willfulness, fault, or bad faith" in violation of Rule 37(b).  *JTS, LLC*, 2017 WL 68615, at *3.  Defendants note that Rule 26(a)—and Rule 37(c), which provides that a party that fails to provide information required by Rule 26(a) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"—is therefore another vehicle for granting sanctions based on Plaintiffs' conduct at issue here.  *Id*. at *2.

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

their alleged damages. *See JTS, LLC*, 2017 WL 68615, at *4 (awarding attorney's fees caused by plaintiff's failure to comply with court order).[13]

**B.      Sanctions Are Warranted Under Rule 37(e) Because Plaintiffs Spoliated Evidence.**

Federal Rule of Civil Procedure 37(e) provides that if "electronically stored information ["ESI"] that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court . . . upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). If the Court further finds that the spoliating "party acted with the intent to deprive another party of the information's use in the litigation," it may terminate the action or enter an adverse inference. *Id.* at 37(e)(2). Plaintiffs' conduct constitutes spoliation under this Rule for the following reasons:

**1.      *Plaintiffs Failed to Take Reasonable Steps to Preserve ESI.***

**a.      Plaintiffs Failed to Conduct the Basic Step of Implementing a Litigation Hold.**

Failure to implement a litigation hold at the commencement of a litigation warrants sanctions under Rule 37(e). *See Keithley v. Homestore.com, Inc.*, 629 F. Supp. 2d 972, 977 (N.D. Cal. 2008) (overruling objections to magistrate judge's order granting sanctions for party's failure to implement litigation hold); *Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1150 (N.D. Cal. 2012) (granting adverse inference sanction upon finding that "Samsung's failure to issue sufficiently distributed litigation hold notices on August 23, 2010, and . . . failure to monitor its custodial employees' preservation efforts in the face of its biweekly destruction policy once litigation holds issued, warrants sanctions"); *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*, 462 F. Supp. 2d 1060, 1074 (N.D. Cal. 2006) ("[disobedient party] was grossly negligent in executing its duties to preserve evidence, by failing to implement a litigation hold and instead relying on [another party] to preserve [its] emails");

---

[13] To the extent this Court is inclined to grant monetary sanctions, Defendants request the opportunity to brief the appropriate amount of those sanctions, at a date convenient to this Court.

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

*Cooley v. Leonard*, No. 4:18-CV-00719-YGR (KAW), 2019 WL 6250964, at *4 (N.D. Cal. Nov. 22, 2019) ("destruction of the emails was willful based on the failure to initiate a litigation hold, even if that failure to initiate was not done in bad faith").

Indeed, when a party fails to put in place a litigation hold, there "is a strong possibility that it lost potentially relevant documents as a result," especially where the party "initially put its own people in charge of collecting data to be produced." *Optrics Inc. v. Barracuda Networks Inc.*, No. 17-CV-04977-RS (TSH), 2021 WL 411349, at *6 (N.D. Cal. Feb. 4, 2021). That is precisely what happened here. Plaintiffs never instituted a litigation hold for this litigation. Nor can Plaintiffs conceivably rely on the fact that they instituted a litigation hold for a separate lawsuit against Greenpeace-Canada two years before this litigation commenced—especially where that lawsuit involved entirely different statements, claims, parties, and timeframes from the instant case. And while Plaintiffs claim that they also circulated alleged "questionnaires" to various custodians in 2014, these questionnaires still pertained to the Canadian litigation and never mentioned the Challenged Statements or Minister Lessard's May 2016 statement—all of which took place years after the Canadian litigation was filed. *See* Ex. 32.

### b. Plaintiffs Failed to Collect Relevant Information from Key Custodians or to Properly Supervise Document Collection.

Plaintiffs' flawed document collection process further demonstrates that they failed to take reasonable steps to preserve ESI, justifying sanctions under Rule 37(e). In particular, Plaintiffs' process lacked sufficient legal and IT supervision and was demonstrably unreasonable in scope as to custodians, subject matter, and data sources. *See, e.g.*, *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST, 2016 WL 5791210, at *3 (N.D. Cal. 2016) (finding that an attorney made an "unreasonable inquiry" where the attorney did not question the thoroughness of the client's search for relevant documents and emphasizing "attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search"); *Abadia-Peixoto v. U.S. Dep't of Homeland Sec.*, No. 11-cv-04001, 2013 WL 4511925, at *2 (N.D. Cal. Aug. 23, 2013) ("In the era of e-discovery, attorneys must take responsibility for ensuring that their clients conduct a

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

DAVIS WRIGHT TREMAINE LLP

comprehensive and appropriate document search."); *Markey v. Lapolla Indus.*, *Inc.*, No. CV 12-4622(JS)(AKT), 2015 WL 5027522, at *19-20 (E.D.N.Y. Aug. 25, 2015) (imposing sanctions in part because counsel was "required to conduct a more thorough investigation of the discovery in Plaintiffs' possession prior to [service]" and "failed to adequately oversee Plaintiff's document production . . . ."); *Knickerbocker v. Corinthian Colls.*, 298 F.R.D. 670, 678 (W.D. Wash. 2014) ("Counsel bear responsibility for coordinating their clients' discovery production" and failure to do so may warrant sanctions.).

Here, several key custodians testified at deposition that no one—neither from Resolute nor outside litigation counsel—had ever asked them which devices they used to transact Resolute business or told them to preserve or collect materials from those devices. *See, e.g.*, Ex. 18 at 89, 140-41 (testifying that she sent emails to her personal Gmail account attaching work documents to edit on her personal computer, but was never asked to review her Gmail or her personal devices for documents). Messrs. Goulding and Romeo testified to using text messaging for work and printing out hard copy-documents, but conceded that Plaintiffs never asked or directed them to retain or produce such texts or documents. Ex. 19 at 331:23-333:21; 326:6-327:7; 329:5-331:7; Ex. 20 at 107:12-110:9; 199:3-200:10; 106:10-107:6; 96:23-101:23. Even more egregious, Mr. DelVecchio confessed to ***burning and shredding*** his paper documents, including ones associated with key customers at issue in Plaintiffs' damages claims here. Ex. 21 at 56:5-12; 56:24-57:7.

Further, as in *Rodman*, Plaintiffs' counsel failed to adequately preserve documents from their email archive. 2016 WL 5791210, at *3 ("[T]here is no indication that Safeway's counsel guided or monitored Mr. Guthrie's search of the legacy drive in any significant way"). Here, Plaintiffs waited until six years into the litigation to purportedly "discover" and search email "archives" containing thousands of relevant documents—despite the fact that Plaintiffs' own documents and testimony indicate they had known about these archives for years. Additionally, the fact that about half of the documents in Plaintiffs' initial productions lack hash value metadata—and contain what appear to be old redactions for which Plaintiffs have never produced privilege logs—indicate the records were pulled not from a search of relevant custodians' files but likely from a production in

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

the Canadian case and simply copied and produced here.[14]  Koonce Decl. ¶ 59.

### 2. *Plaintiffs' Flawed Preservation Processes Resulted in Lost Relevant ESI, Which Has Prejudiced Defendants, Warranting Sanctions.*

An analysis of the documents that Plaintiffs did produce reveals large holes of missing relevant documents, caused by Plaintiffs' flawed preservation and collection process.   As demonstrated in the chart at Ex. 24, Plaintiffs' productions: (i) are missing entire ESI sources such as texts, personal email accounts, and locally stored documents—which custodians testified contained relevant information; (ii) contain a dearth of custodial documents for key custodians, including Mr. Kursman and Mr. Goulding; (iii) lack swaths of key documents, including email blasts sent by Plaintiffs to customers and documents related to damages, and other highly relevant documents, which were produced by third parties but not by Plaintiffs.  Koonce Decl. ¶ 47.

Plaintiffs' failure to undertake basic preservation methods such as instituting a litigation hold and properly collecting documents from relevant custodians and ESI sources has resulted in this loss of relevant documents.  Plaintiffs' conduct has prejudiced Defendants by depriving them of the ability to rely on such documents in establishing their defenses; and the Court should order an appropriate sanction to "cure the prejudice" suffered by Defendants.  Fed. R. Civ. P. 37(e)(1). Defendants contend that monetary sanctions or an evidentiary ruling prohibiting Plaintiffs from benefiting from their misconduct would be appropriate.

### C. Monetary Sanctions Are Warranted Under the Court's Inherent Authority Because Defendants Have Been Prejudiced by Plaintiffs' Extremely Belated and *Ad Hoc* Productions, Often on the Eve of, or After, Depositions.

"Pursuant to its inherent powers, a district court may award monetary sanctions in the form of attorney's fees against a party or counsel who acts 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  *Toppan Photomasks, Inc. v. Park*, No. 13-CV-03323-MMC (JCS), 2014 WL 2567914, at *11 (N.D. Cal. May 29, 2014); *see also Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (noting that federal courts maintain "inherent power . . . to levy sanctions in response to abusive litigation practices"); *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, No. 10CV541-

---

[14] Despite many requests, Plaintiffs have still not produced these documents with proper metadata. Koonce Decl. ¶ 60.

DAVIS WRIGHT TREMAINE LLP

GPC (WVG), 2014 WL 6851607, at *17 (S.D. Cal. June 16, 2014) (monetary sanctions appropriate under inherent authority where a party engaged in "delay, disruption of the discovery process and this litigation, gamesmanship, and repeatedly vexatious discovery abuses . . . .").

In addition to the prejudice that Defendants have suffered from being deprived of Plaintiffs' relevant ESI, Defendants have also been grossly prejudiced by the belated and *ad hoc* manner in which Plaintiffs produced documents only after Defendants first became aware of Plaintiffs' serious production deficiencies through depositions.  While Plaintiffs represented they completed their document production in December 2020, when Defendants raised Plaintiffs' significant shortcomings in October 2021, they then produced more than ***double*** the amount of documents previously produced within a couple months—requiring Defendants' counsel to scramble to review these documents in time to prepare for ongoing depositions and the upcoming close of fact discovery.  Koonce Decl. ¶ 64.  Plaintiffs' counsel, by contrast, had the benefit of having received almost the entirety of Defendants' productions close to a year before depositions even began.  *See id.*

This unfair gamesmanship warrants sanctions under the Court's inherent authority.  *See Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1061–62 (S.D. Cal. 2015) (finding "monetary sanctions to be appropriate under the Court's inherent authority due to the evidence presented which demonstrates Plaintiff's delay, disruption of the discovery process and this litigation, gamesmanship, and discovery abuses . . . . To be clear, the Court finds that Plaintiff's willful disregard of its discovery obligations, failure to issue a litigation hold, failure to comply with this Court's prior Order, and cavalier approach to try to remedy the situation and reduce the resulting prejudice to Defendant, 'constituted or was tantamount to bad faith.'")

## IV.    CONCLUSION

For the foregoing reasons, Defendants request that this Court grant terminating sanctions, or in the alternative, a combination of preclusionary, evidentiary, and monetary sanctions, against Plaintiffs, as well as an award of attorneys' fees to the Greenpeace Defendants for the cost of bringing this Motion.

DAVIS WRIGHT TREMAINE LLP

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST

Dated:  May 20, 2022

Respectfully submitted,

/s/ *Laura Handman*
Laura Handman (admitted *pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500
Washington, DC 20005
Telephone:    (202) 973-4200
Facsimile:    (202) 973-4499
Email: laurahandman@dwt.com

*Attorneys for Defendants Greenpeace*
*International, Greenpeace, Inc., Daniel*
*Brindis, Amy Moas, and Rolf Skar*

DAVIS WRIGHT TREMAINE LLP

26

DEFENDANTS' MOTION FOR SANCTIONS
Case No. 4:17-cv-02824-JST