BROWN RUDNICK LLP
LEO J. PRESIADO (State Bar No. 166721)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: lpresiado@brownrudnick.com

Michael J. Bowe (admitted *pro hac vice*)
mbowe@brownrudnick.com
Lauren Tabaksblat (admitted *pro hac vice*)
ltabaksblat@brownrudnick.com
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>GREENPEACE INTERNATIONAL, *et al.*,<br><br>Defendants. | CASE NO. 4:17-CV-02824-JST (JST)<br><br>**PLAINTIFFS' AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SPOLIATION SANCTIONS** |

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION..................................................................................................... 2

BACKGROUND...................................................................................................... 5

ARGUMENT ....................................................................................................... 10

I.     DEFENDANTS' LOSS OF THE CRITICAL PERIOD MESSAGES CONSTITUTES
SPOLIATION ................................................................................................. 10

II.     APPROPRIATE RELIEF ............................................................................... 13

    A.    Sanctions for Intentional Spoliation are Warranted ............................... 13

         1.    Entry of Default Judgment is Warranted.................................... 13

         2.    In The Event Default Judgment Does Not Enter As it Should, An Adverse
Inference Instruction is Warranted ............................................. 16

    B.    In Addition to Monetary Sanctions against Defendants, Resolute Should be
Permitted to Make Arguments to the Jury Regarding the Loss of Skype Messages
................................................................................................................. 17

CONCLUSION ...................................................................................................... 20

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SANCTIONS**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
888 F Supp 2d 976 (N.D. Cal. 2012) ............................................................... 11, 12

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
2016 WL 6609208 (C.D. Cal. July 12, 2016) ........................................................ 15

*Brewer v. Leprino Foods Co., Inc.*,
2019 WL 356657 (E.D. Cal. Jan. 29, 2019) .......................................................... 15

*Carl Zeiss Vision Intern. GmbH v. Signet Armorlite, Inc.*,
2010 WL 743792 (S.D. Cal. Mar. 1, 2010) ............................................................ 11

*Colonies Partners, L.P. v. County of San Bernardino*,
2020 WL 1496444 (C.D. Cal. Feb. 27, 2020) ....................................................... 15

*Compass Bank v. Morris Cerullo World Evangelism*,
104 F. Supp. 3d 1040 (S.D. Cal. 2015) ........................................................... 10, 18

*CTC Glob. Corp. v. Huang*,
2019 WL 2610971 (C.D. Cal. Apr. 15, 2019) ....................................................... 13

*CTC Glob. Corp. v. Huang*,
2019 WL 6357271 (C.D. Cal. July 3, 2019) .................................................... 13, 14

*Ericksen v. Kaplan Higher Educ., LLC*,
2016 WL 695789 (D. Md. Feb. 22, 2016) ............................................................. 18

*Gutman v. Klein*,
2008 WL 5084182 (E.D.N.Y. Dec. 2, 2008), *aff'd*, 515 F. App'x 8 (2d Cir.
2013) ...................................................................................................................... 15

*Keen v. Bovie Med. Corp.*,
2013 WL 3832382 (M.D. Fla. July 23, 2013) ........................................................ 18

*Keithley v. Homestore.com, Inc.*,
2008 WL 4830752 (N.D. Cal. Nov. 6, 2008) ......................................................... 11

*Leon v. IDX Sys. Corp.*,
464 F.3d 951 (9th Cir. 2006) .................................................................................. 14

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
2016 WL 2957133 (N.D. Cal. May 23, 2016) ................................................... 16, 18

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

*McQueen v. Aramark Corp.*,
  2016 WL 6988820 (D. Utah Nov. 29, 2016) ............................................................... 18

*In re Napster Inc.*,
  462 F. Supp. 2d 1060 (N.D. Cal. 2006) ........................................................... 10, 11

*Nuvasive, Inc. v. Madsen Med., Inc.*,
  2016 WL 305096 (S.D. Cal. Jan. 26, 2016) ..................................................... 16, 17

*Oppenheimer v. City of La Habra*,
  2017 WL 1807596 (C.D. Cal. Feb. 17, 2017) ....................................................... 15

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  328 F.R.D. 543 (N.D. Cal. 2018) ........................................................................ 10

*Roadrunner Transportation Servs., Inc. v. Tarwater*,
  2012 WL 12918366 (C.D. Cal. May 31, 2012), *aff'd sub nom. Roadrunner
  Transp. Servs., Inc. v. Tarwater*, 642 F. App'x 759 (9th Cir. 2016) ...................... 14

*S.E.C. v. Mercury Interactive LLC*,
  2012 WL 3277165 (N.D. Cal. Aug. 9, 2012) ................................................... 16, 18

*Zubulake v. UBS Warburg LLC*,
  220 F.R.D. 212 (S.D.N.Y.2003) ........................................................................ 11

**Other Authorities**

Fed. R. Civ. P. 37(e) ......................................................................... 10, 12, 15, 16

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek US, Inc., Fibrek International, Inc., and Resolute FP Canada, Inc. (collectively, "Resolute" or "Plaintiffs") respectfully submit this memorandum of law in support of their Motion for Spoliation Sanctions against Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, and Rolf Skar (collectively, "Defendants" or "Greenpeace").

## INTRODUCTION

Defendants admit that critical Skype messages exchanged by and between key Greenpeace witnesses during one of the most important time periods in this litigation have been destroyed. They also admit that these Skype messages were the principal mode of communication among Defendants and other Greenpeace personnel when it came to developing and disseminating the actionable publications that are the subject of this litigation. And they admit that this critical evidence was destroyed *months after* this litigation was commenced and *years after* they were on notice of their duty to preserve these highly relevant communications. Thus, there is no dispute that Defendants had a duty to preserve the Skype messages in question. That, along with the critical time-period during which the Skype messages were lost can lead to only one conclusion: Defendants deliberately destroyed these messages.

By order dated January 22, 2019, this Court held that Defendants' December 2016 Letter and their subsequent statements that Resolute was harvesting in the Montagnes Blanches and jeopardizing the survival of the endangered caribou and the last remaining intact forest landscapes in that region were actionable (the "Challenged Statements"). In so ruling, the Court relied on the May 31, 2016 statement by Quebec's Minister of Forests, Wildlife, and Parks, Laurent Lessard, criticizing Defendants' definition of the Montagnes Blanches as misleading and inconsistent with the government's definition. Based on this public statement by Minister Lessard, the Court concluded that Defendants knew or reasonably should have known that their subsequent allegations that Resolute was harvesting in the Montagnes Blanches and causing adverse impacts there were false.

1   / / /

2       Critically, Defendants have failed to preserve a single Skype message following Minister

3   Lessard's May 2016 statement. Even more egregious, Defendants do not have a single message

4   from defendant Amy Moas, the co-author of the December 16, 2016 letter, the first actionable

5   publication, until *three days after* that publication was issued.  Thus, no Skype messages have been

6   produced between May 31, 2016, when Minister Lessard publicly stated that Resolute was not

7   harvesting in the region officially recognized by the Quebec government as the Montagnes

8   Blanches, until December 2016, *days after* Defendants sent a letter to Resolute customers which

9   falsely claimed that Resolute was harvesting in this region (the "Critical Period Messages").  The

10  Critical Period Messages would, of course, reflect directly on Defendants' knowledge of the falsity

11  of the December 16, 2016 statement when it was published.

12      Indeed, Skype messages produced by Defendants dated after December 19, 2016 reflect that

13  Defendants used Skype prolifically to correspond and transmit data regarding the development and

14  dissemination of the Challenged Statements.  They also reflect that Defendants knew and

15  intentionally misrepresented in their subsequent May 2017 Clearcutting Free Speech report that

16  Resolute was harvesting in the Montagnes Blanches, despite evidence to the contrary.  Thus, for

17  example, in the month leading up to the publication of the Clearcutting Report, Maik Marahrens, an

18  employee of defendant Greenpeace International raised "concerns" about Greenpeace's boundaries

19  of the Montagnes Blanches.  (Ex. (1) (GPDEFS00036541 at-542).)[1]   In response, defendant Moas

20  stated, "I think we have to stick to the MB boundaries we have always used.  Just a year ago we put

21  out a report using those boundaries, so it is not new. If we change it that would look funny.  So lets

22  just keep things simple and use the boundary we have always used."  (*Id.*)  Likewise, in another

23  Skype message, dated August 17, 2017, Amy Moas admits to Eugenie Mathieu that "[t]hey said we

24  redrew the maps. And to some extent we did . . . ."  (Ex. (2) (GPDEFS00034530).)

25      Defendants' intentional destruction of the Critical Period Messages is further evidenced by

26

27     [1] Exhibits to the Declaration of Lauren Tabaksblat shall hereinafter be cited as "Ex. ___."

28

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

their stonewalling and other efforts to avoid discovery and disclosure into how this key discovery was destroyed.  First, Defendants failed to disclose the lost Skype messages for more than a year after Plaintiffs first served discovery demands for Defendants' Skype communications.  Then Defendants reneged on their agreement to have the parties' respective forensic experts meet and confer to determine how the Skype data was lost and whether it could be recovered.  Instead, Defendants for the first time insisted that Plaintiffs serve formal discovery requests.  When Resolute proceeded to serve that formal discovery, Defendants again stonewalled, and claimed, in part, that Resolute's interrogatories sought "information concerning or generated by forensic experts, which is appropriately reserved for expert discovery," Ex. 3 at Responses 1-7, or that Resolute's document requests seeking information concerning the investigation (or lack thereof) with respect to how the Critical Period Messages were lost sought "attorney-client privileged or work-product protected information." Ex. 4 at Responses 1-2.  Even more egregious, defense counsel directed the corporate representative for Defendant Greenpeace International not to answer deposition questions on this topic on the putative basis of an attorney-client privilege.

Given the central role of the Skype platform in generating evidence relevant to the claims and defenses in this case, the vital importance of the Critical Period Messages, the mysterious circumstances under which the Skype messages were inexplicably lost, and the fact that this critical information was lost long after a litigation hold was put into place and this litigation commenced, the severest possible sanctions are warranted. This Court should immediately enter default judgment against Defendants.[2]

---

[2] For the purposes of Resolute's Motion for Spoliation Sanctions, Resolute relies exclusively on the destruction of the Critical Period Messages.  Defendants, however, also appear to destroyed relevant Skype messages that pre-date the Critical Period Messages, dating back to 2013 when Defendants were on notice of potential litigation arising from Greenpeace's campaign against Resolute as a result of Resolute's initiation of litigation against Greenpeace Canada over this same campaign, which the Magistrate held were discoverable and relevant to the inquiry of actual malice. (ECF No. (302).)   Resolute reserves the right to seek sanctions related to the loss of Skype data from these earlier time periods.

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

**BACKGROUND**

On May 21, 2015, Resolute's counsel sent Greenpeace USA (which includes Defendant Greenpeace, Inc.) and Defendant Daniel Brindis a cease and desist letter demanding that Greenpeace USA halt its malicious campaign against Resolute.  (Declaration of Lauren Tabaksblat ("Decl."), Ex. 5 (Cease & Desist Letter).).  Shortly after receipt of this letter, on June 9, 2015, counsel for Greenpeace Inc. sent a litigation hold notice to Defendants Daniel Brindis and Rolf Skar and former defendant Matthew Daggett, directing the recipients to preserve "any information (whether in electronic, digital or paper form) that pertains to this matter."  (Ex. 6 at 3 (Feb 4, 2021 Letter from L. Koonce).)  The notice directed the recipients to forward the litigation hold to other employees who would have relevant information.  Consistent with this directive, the notice was also forwarded to Defendant Amy Moas.  *Id.*  Then, on May 31, 2016, Plaintiffs commenced the present action against Defendants in the U.S. District Court for the Southern District of Georgia asserting, *inter alia*, claims for defamation arising from Defendants' false claim that Resolute was harvesting in the Montagnes Blanches.  ECF No. 1.  After this lawsuit was filed, counsel for Defendant Greenpeace Inc. sent a second litigation hold notice to all Greenpeace Inc. on June 8, 2016.  Ex. 6 at 3. Additionally, counsel for Defendant Greenpeace International sent a litigation hold to the organization's management team, program functions unit heads, the "Forest Leadership Group," and a number of other individuals identified as relevant document custodians.  *Id.*

This case was subsequently transferred from Georgia to this Court.  ECF No. 105.  On November 8, 2017, Plaintiffs filed an amended complaint, which added, *inter alia*, claims based upon Defendants' conduct after the filing of the initial complaint in May 2016.  ECF No. 185.  By Order dated January 22, 2019, this Court sustained Resolute's defamation claims predicated, in part, on Defendants' assertions in a December 16, 2016 letter, the May 17, 2017 Clearcutting Report, both co-authored by Defendant Amy Moas, that Resolute was harvesting in the Montagnes Blanches and negatively impacting the region as a result (the "Challenged Statements").  (ECF No. 246.)  In sustaining the legal viability of Plaintiffs' claims based on the Challenged Statements, the Court specifically cited to the critical fact that, "[o]n May 31, 2016, Laurent Lessard, Quebec's Minister

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

1   of Forests, Wildlife, and Parks issued a statement explaining that the map that Greenpeace featured

2   in [an earlier] report to show Resolute logged in the Montagnes Blanches was misleading." *Id.*

3   Based on this statement by Minister Lessard, the Court concluded that Plaintiffs plausibly alleged

4   that Defendants knew the Challenged Statements about Resolute harvesting in the Montagnes

5   Blanches were false when they published them. *Id.*

6        After the Court sustained Plaintiffs' defamation claims based on the Challenged Statements,

7   Plaintiffs served their Amended First Set of Requests for Production of Documents ("RFPs") on

8   March 28, 2019.  Among other things, Defendants objected to Plaintiffs requests for the production

9   of documents from the time period prior to the publication of the first Challenged Statement in

10  December 2016.  By Order dated January 24, 2020, Magistrate Judge Westmore confirmed that

11  Plaintiffs are entitled to discovery concerning Defendants' earlier claims that Resolute was

12  wrongfully harvesting in the Montagnes Blanches and ordered Defendants to produce relevant

13  documents back to June 1, 2012.  ECF No. 302 ("Plaintiffs are allowed to seek documents related

14  to the Montagnes Blanches beginning in June 1, 2012.").  On September 18, 2020, over a year after

15  Resolute served its RFPs, Defendants produced Skype messages for four custodians, all of whom

16  were or still are named Defendants in this action (the "Skype Production").  Decl. at ¶ 8.  The Skype

17  Production consisted of Skype messages from only a one-year period, from December 20, 2016 to

18  December 21, 2017.  *Id.* In connection with the Skype Production, Defendants' counsel disclosed

19  *for the first time* that Defendants were only able to retrieve Skype data for these four custodians for

20  the following date ranges: (i) Amy Moas, 12/19/2016-11/29/2017; (ii) Rolf Skar, 9/23/2016-

21  10/15/2019; (iii) Daniel Brindis, 4/20/2017-10/31/2019; and (iv) Matthew Daggett, 4/20/2017-

22  1/31/2020.  (Ex. 7 at 2 (August 28, 2020 Letter from L. Koonce).)  The earliest message produced

23  to Plaintiffs  is a message received by Defendant Amy Moas on December 20, 2016 – *four days*

24  *after the Challenged Statement that Ms. Moas co-authored was published on December 16, 2016*,

25  and six months after Resolute commenced this action and a second litigation hold notice was sent.

26  (Decl. at ¶ 8.)

27       The Skype Production confirmed that Skype was *the* primary source of communication for

28

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

Greenpeace employees, including concerning the Challenged Statements.  The sheer volume of responsive Skype messages produced for the one-year period from December 20, 2016 to December 21, 2017 alone — over 9,600 Skype messages — pales in comparison to the number of responsive emails produced by Defendants for the same time period, which total only approximately 3,000.  *Id.* That Skype was Defendants' primary and preferred mode of communication for business purposes is further underscored by the fact that Greenpeace email signature blocks include the author's Skype handle.  Further, the content of the Skype messages themselves evidence that Defendants utilized Skype to communicate about the central issues in the case.  For example, in the month leading up to the publication of the May 2017 Clearcutting Report, a Greenpeace International employee, Maik Marahrens, specifically raised his "concerns" about the boundaries of the so-called Montagnes Blanches Endangered Forest. (Ex. 1 (GPDEFS00036541 at -542).)  In this chain of Skype messages, Amy Moas stated, "I think we have to stick to the MB boundaries we have always used.  Just a year ago we put out a report using those boundaries, so it is not new. If we change it that would look funny.  So lets just keep things simple and use the boundary we have always used." *Id.*    In another Skype message, dated August 17, 2017, Amy Moas admits in a Skype chat to Eugenie Mathieu that "[t]hey said we redrew the maps. And to some extent we did. . . ."  (Ex. 2 (GPDEFS00034530 at -553).)

Moreover, Skype messages produced by third party, Greenpeace Canada, confirm that Defendants and other Greenpeace personnel used Skype prior to December 2016 to communicate about their false claim that Resolute was harvesting in the Montagnes Blanches.  For example, on February 16, 2016, defendant Moas and Shane Moffatt (of Greenpeace Canada), specifically discussed the purported "connection" between Resolute and the "Montagnes Blanches," specifically, "(ah, FYI – the connection is to the Montagnes Blanches (Alma mill), rather than the Thunder Bay mill)," (Ex. 12 (SKY00021492)), and that such proof, if tied to one of Resolute's customer's sourcing, "would sink the mill without em . . . yeh . . . its BIG." (Ex. 12 (SKY00021532-534)).  Further, on May 10, 2016, defendant Moas and Shane Moffatt discussed the Montagnes Blanches further, namely, "oh AND re: sourcing from MB – we know it comes from the

suspended/temrianted [sic] FMUs but [don't] specifically knwo [sic] it comes from the MB in north of those units so just have to be careful how we phrasie [sic] that." (Ex. 13 (SKY00034931)). Defendant Brindis also communicated with Moffatt on October 6, 2015, noting "just to confirm – we are explicitly askign [sic] for total protection of MB or heightened level of sustainability?" and that "I am editing the customer MB report and trying to figure out how to rewrite it," and that it "depends on who [you're] spinning it to." (Ex. 14 (SKY00007935-942).) Of course, while the Greenpeace Canada production confirms the prolific use and reliance on Skype as the primary mode of communication, Plaintiffs are still left without the benefit of any Skype messages about the Challenged Statements or Defendants' claims about Resolute's putative operations in the Montagnes Blanches that was not sent from, to, or copied a Greenpeace Canada custodian.

Beyond the volume of the produced Skype messages alone, Greenpeace witnesses have all confirmed their reliance on Skype as a primary mode of communication while drafting Greenpeace publications and developing the Challenged Statements. Defendant Brindis testified that "[w]e communicated through – a lot thought e-mail, videoconference, and – and Skype." (Ex. 15 (Brindis Nov. 4, 2021 Tr. 331:10-12).) Likewise, employees of Greenpeace International confirmed the regularity of Skype communication. (*See* Ex. 16 (Marahrens Nov. 10, 2021 Tr. 140:25-141:5 ("Q. And was it – was it routine, when you worked for Greenpeace, to send messages through Skype? A. Yeah. Q. That's something you did on a regular basis? A. Correct."); (Ex. 17 (Daggett Jan. 27, 2022 Tr. 15:3-10 ("There was often use of Skype during the period. I've learned, though this, that that's less common now, that there's a new messaging service in the last few years that – in the last like, year, they switched to Slack as the kind of a managed messaging service. *But during that period, it's my understanding that many Greenpeace International folks used their personal Skypes*.") (emphasis added).) Indeed, the corporate representative for Greenpeace International conceded at his deposition what is clear from the content of the Skype messages: "Skype functioned as the equivalent of – if you're in the same office looking over your shoulder and asking a quick question, that was, you know – that was often replaced by Skype if you weren't in the physical same office space." (Ex. 17 (Daggett 30(b)(6) Jan. 27, 2022 Tr. 16:2-6).)

8

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

1    Indeed, in ordering Defendants to produce Skype messages for four additional Greenpeace

2    custodians, the Court explicitly recognized the central role Skype played in Defendants'

3    communications relevant to this action, finding that "the Skype messages would go directly to what

4    information Defendants had when authoring or distributing the publications, including the

5    boundaries of the Montagnes Blanches" and that "such information also does not appear to be

6    discoverable from other sources."  (ECF No. 391.)  Notwithstanding the importance of the Critical

7    Period Messages, Defendants' counsel has offered little more explanation than "[i]t is unclear why

8    Skype content/data does not exist for earlier time frames, although it is suspected that changes or

9    upgrades to the Skype platform of which Defendants and the custodians were unaware may be

10   responsible."  (Ex. 6 at 3 (Feb 4, 2021 Letter from L. Koonce).)

11   After learning of the loss of critical Skype data for Defendants Amy Moas, Rolf Skar, and

12   Daniel Brindis and former defendant Matthew Daggett from the period prior to December 2016 (the

13   "Lost Skype Data"), Plaintiffs' counsel attempted to work with Defendants' counsel to determine

14   what happened to the Lost Skype Data and whether it could somehow be located and recovered.  To

15   date, Defendants have stonewalled those efforts.  Defendants' counsel proposed that the parties'

16   respective forensic technology experts speak telephonically, with lawyer supervision, to discuss the

17   efforts that had been undertaken to investigate and recover the lost Skype data.  *See* Decl. at ¶ 9.

18   Plaintiffs' counsel agreed to the meeting.  *Id.*  In response to Defendants' request, Plaintiffs provided

19   a requested list of written questions to Defendants' counsel on January 29, 2021 and requested a

20   date for the contemplated conference call with the experts.  *Id.*  Defendants' counsel provided

21   written responses to some of these questions on February 4, 2021, but then reneged on the agreed

22   upon meeting between the parties' forensic experts.  *Id.*  Plaintiffs sent a response and follow up

23   questions to Defendants' counsel on February 10, 2021 and then followed up with Defendants after

24   not receiving a response for over a month. *Id.*; Ex. 8.  The parties eventually arranged a meet and

25   confer for April 2, 2021, at which time Defendants' counsel confirmed that no meeting among the

26   parties' experts would be arranged and that, if Plaintiffs wanted any additional information

27   concerning the Lost Skype Data, they would have to pursue it through formal discovery.  *Id.* at ¶ 9.

28

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SANCTIONS**

1    Plaintiffs, accordingly, propounded spoliation-related discovery requests upon Defendants

2    in an effort to get to the bottom of what actually happened to the Lost Skype Data (the "Spoliation

3    Discovery Requests").  Exs. 9, 10.[3]  As of the date of this Motion, however, Defendants have not

4    meaningfully responded to Plaintiffs' interrogatories on these subjects, and have even gone so far

5    as to conceal the steps that Greenpeace International took to research the Skype data loss by claiming

6    attorney client privilege, and instructing the witness not to answer even basic fact questions.  *See*

7    Ex. 17 (Daggett 30(b)(6) Jan. 27, 2022, Tr. 21:15-25 (Q: Well, if you look at that deposition notice,

8    one of the specific topics relates to 'Any investigation by Greenpeace International concerning the

9    loss or deletion of any Greenpeace International's electronically-stored information.' . . .

10   Notwithstanding that very specific topic, is – are you not going to tell me the nature and scope of

11   the investigation that was undertaken to retrieve these very important Skype messages? Ms. Kelly:

12   Objection. The witness has testified that the investigation was undertaken by counsel, not by GPI,

13   and therefore that investigation is privileged.").)

14   Defendants' actions, to date, make clear that the Lost Skype Data is part of a much broader

15   effort to thwart discovery in this action.  Defendants' inexplicable loss of highly relevant

16   communications and stonewalling against any investigation into how this occurred is, unfortunately,

17   emblematic of Defendants' conduct throughout the discovery process.  Defendants seem to hide or

18   destroy what one can only assume is harmful.  This smacks of bad faith and is an egregious abuse

19   of the discovery process that must have meaningful consequences.

20                                   **ARGUMENT**

21   **I.    DEFENDANTS' LOSS OF THE CRITICAL PERIOD MESSAGES CONSTITUTES**

22   **      SPOLIATION**

23   Under Rule 37(e) of the Federal Rules of Civil Procedure, a party is guilty of spoliation

---

[3] In addition, and of further concern, Plaintiffs have learned through correspondence with Microsoft, whom Plaintiffs subpoenaed as an alternative means to recover the Lost Skype Data, that as to Skype "groups" utilized by Greenpeace, several such groups were "not found in our systems and no data was preserved." Ex. 11 at 1 (Email, dated March 1, 2021).

CASE NO. 4:17-CV-02824-JST (KAW)

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

where "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because [the] party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Thus, "[t]he threshold inquiry" turns on "a showing (a) that discoverable ESI existed when a duty to preserve arose but was not preserved due to a party's negligent failure to take reasonable steps to preserve it *and* (b) that it cannot be restored or replaced." *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018). There is no dispute here that the materials in question existed and were destroyed after there was a duty to preserve those materials. Defendants' failure to preserve these critical materials was much worse than garden-variety negligence; it smacks of intentional misconduct. Further, this Court has already determined that the materials at issue are not available from an alternative source. Finally, Defendants have frustrated Resolute's efforts to determine whether the materials can be restored.

A duty to preserve the Critical Period Messages arose long before those messages were even created. "A party must preserve evidence it knows or should reasonably know is relevant to a claim or defense of any party and the duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1055 (S.D. Cal. 2015) (citations omitted); *accord In re Napster Inc.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Thus, not only does the duty to preserve arise upon the initiation of a lawsuit, but also earlier, as soon as a "potential claim is identified." *In re Napster Inc.*, 462 F. Supp. 2d at 1067.

Defendants had an absolute duty to preserve the Critical Period Messages. Indeed, there is no dispute that: on May 21, 2015, Resolute sent Greenpeace Inc. the Cease and Desist Letter (Ex. 5); Greenpeace's counsel issued a litigation hold notice to Defendants Daniel Brindis, Rolf Skar, and former defendant Matthew Daggett on June 6, 2015 and that Defendant Amy Moas was forwarded that notice shortly thereafter; and on May 31, 2016, Resolute filed this lawsuit (ECF No. 1) and a second litigation hold notice was circulated to these same parties and Greenpeace International. *See Apple Inc. v. Samsung Elecs*. Co., 881 F. Supp. 2d 1132, 1145 (N.D. Cal. 2012)

CASE NO. 4:17-CV-02824-JST (KAW)

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

(circulation of litigation hold evidence that duty to preserve had arisen).  Yet, notwithstanding their clear duty to preserve evidence, Defendants allowed the wholesale destruction of the Critical Period Messages between May 31, 2016 and December 19, 2016.

While Defendants' loss of the Critical Period Messages appears intentional, it was at least negligent.  "[O]nce the duty to preserve attaches, any destruction of documents is, at a minimum, negligent."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y.2003) ("inadvertent recycling" of back up tapes at least grossly negligent for purposes of spoliation).  A party's loss of data that must be preserved without explanation is likewise at least negligent.  *See Carl Zeiss Vision Intern. GmbH v. Signet Armorlite, Inc.*, 2010 WL 743792, at *15 (S.D. Cal. Mar. 1, 2010) (loss of documents — *i.e.*, inability to locate them — sufficient to find negligence for spoliation); *Keithley v. Homestore.com, Inc.*, 2008 WL 4830752, at *8 (N.D. Cal. Nov. 6, 2008) (loss of documents, as opposed intentional destruction of them, constitutes negligence, as opposed to willfulness, for purposes of spoliation).  Defendants have admitted that the Critical Period Messages existed after the date their duty to preserve was triggered (indeed, even after this action was filed), and are now lost and unrecoverable.  Despite Defendants' purported internal investigation, they have been unable to offer any explanation whatsoever as to how years of Skype messages were lost.  *E.g.,* Ex. 6 at 1-4.  Moreover, other than asserting it issued a hold notice, Defendants have failed to provide any evidence (or allegation) that it took specific steps to preserve Skype messages or follow up with employees to ensure that they were complying with their obligations to preserve Skype messages despite that this was the central form of communication for their business dealings generally and specifically with respect to the Challenged Statements.  *See Apple Inc. v. Samsung Elecs. Co.*, 888 F Supp 2d 976, 992 (N.D. Cal. 2012) (affirming finding of spoliation where, "[a]lthough Samsung did make some efforts to preserve documents," including sending hold notices, it failed, among other things, to confirm compliance with that hold notice by employees).  The vital nature of the Critical Period Messages, the fact that they were regularly used by Defendants as a method to conduct their business activities, the suspicious timing of their loss, and the fact that those messages were apparently destroyed even after a litigation hold notice was sent and this litigation had

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

commenced—and without any explanation as to how or why—all reinforce that Defendants failure to preserve the Lost Skype Data was at a very minimum, negligent (if not far worse).

Finally, as the Court already noted in connection with ordering that Defendants produce Skype messages from additional custodians, "such [Skype] information also does not appear to be discoverable from other sources."  ECF No. 391. The fact that Skype was Defendants' primary method of communicating and the sheer volume of responsive Skype messages produced for a one-year period alone (over 9,600) confirms as much.  *Supra* at 6-8.

Given the foregoing, it is beyond cavil that Defendants' mysterious loss of years of Skype messages otherwise subject to discovery in this case constitutes spoliation.

## II.    APPROPRIATE RELIEF

Rule 37(e) provides for two types of sanctions for the spoliation of ESI.  The first seeks to remedy any prejudice to the non-spoliating party and the second, more sever, type is appropriate when there is an intent to deprive.  We address each below.

### A.    Sanctions for Intentional Spoliation are Warranted

If a court finds that the spoliating party "acted with the intent to deprive another party of the information's use in the litigation," it may (i) "presume that the lost information was unfavorable to the spoliating party;" (ii) "instruct the jury that it may or must presume the information was unavailable to the party" through either a permissive or mandatory adverse inference instruction; or (iii) "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

### 1.    Entry of Default Judgment is Warranted

Resolute does not dispute that the entry of a default judgment is an extreme remedy.  Here, however, the circumstances warrant such an extreme remedy.   "Terminating sanctions are appropriate when the Court finds 'willfulness, fault, or bad faith.'  A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed." *CTC Glob. Corp. v. Huang*, 2019 WL 6357271, at *6 (C.D. Cal. July 3, 2019) (citations omitted).  "The Ninth Circuit has instructed courts to weigh five factors before imposing terminating sanctions. They are '(1) the

public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Id.* (quoting *Anheuser-Busch Inc., v. Natural Beverage Distrib.*, 69 F.3d 337, 348 (9th Cir. 1995)).  Given "the weight" of allegations of intentional spoliation and the "serious potential consequences," the "'court may conduct hearings . . . when, to enter or effectuate [default] judgment, it needs to' further investigate the allegations or evidence."  *CTC Glob. Corp. v. Huang*, 2019 WL 2610971, at *6 (C.D. Cal. Apr. 15, 2019) (quoting Fed. R. Civ. P. 55(b)(2)).

Here, there are several factors that mandate entry of default judgment.  First, this action and Defendants' conduct that gave rise to it have received significant media attention.  That media attention – by Defendants' own design – tarnished Resolute's reputation.  Resolute is entitled to an expeditious resolution of these issues, all of which is in the public interest. The prejudice Resolute faces as a result of Defendants' spoliation of evidence (both to its claims and its effort to exonerate itself in the eyes of the public and its customers) is significant.  *Supra* at 10-11.  Indeed, there is no dispute that Skype was Defendants' primary source of communication, including as is relevant to the specific claims in this action.  Similarly, there is no dispute that Defendants were acutely aware of its duty to preserve Skype messages.  Yet, with respect to critical witnesses in this action (including Ms. Moas, the co-author of the December 16, 2016 letter) Defendants failed to take any actions to preserve the Critical Period Messages.  Then, mysteriously three days after the December 16, 2016 letter was published, the Skype messages were preserved.  This smacks of bad faith and gamesmanship.  It is no coincidence that the Skype messages were apparently allowed to be destroyed for the critical six-month between Minister Lessard's public statement and the dissemination of the December 2016 letter, when such messages would have made clear whether and to what extent Defendants knew, based on Minister Lessard's statement, that the claims about Resolute harvesting in the Montagnes Blanches contained in the December 2016 letter were false. Moreover, the fact that the availability of the lost Skype data varies from custodian to custodian suggests that it was not deleted as a result of some innocent, enterprise-wide event.

To make matters worse, Defendants have cavalierly sought to dismiss their misconduct as just one of those things.  Defendants have rebuffed Plaintiffs' efforts to work together to try to determine what caused the loss and to locate and recover the Critical Period Messages; and Defendants have failed to respond to most of Plaintiffs' Spoliation Discovery Requests. Defendants' convenient and unexplained loss of the Critical Period Messages, along with their efforts to thwart Plaintiffs' attempts to investigate this loss, constitutes willful conduct.  *See CTC Glob. Corp.*, 2019 WL 6357271, at *6 ("A party's destruction of evidence qualifies as willful spoliation if the party has some notice that the documents were potentially relevant to the litigation before they were destroyed").  At the very least, the Court should order an evidentiary hearing into whether the spoliation was willful.  *See id*. (ordering evidentiary hearing to determine whether spoliation was willful).

The importance of the lost material cannot be overstated. Indeed, Defendants' willful spoliation has resulted in the loss of a significant amount of potentially critical evidence thereby causing significant prejudice to Resolute, which lesser sanctions will not be able to fully remedy. *Supra* at 4-5, 7-9.  In a defamation lawsuit, there simply is no replacement for, or full remedy for the loss of, months of Defendants' primary source of written communication during the most critical period of time for establishing actual malice.  As a result, entry of default judgment is appropriate. *See Roadrunner Transportation Servs., Inc. v. Tarwater*, 2012 WL 12918366, at *2 (C.D. Cal. May 31, 2012), *aff'd sub nom. Roadrunner Transp. Servs., Inc. v. Tarwater*, 642 F. App'x 759 (9th Cir. 2016) (where evidence establishes willful spoliation of evidence and substantial prejudiced as a result, default judgment is appropriate); *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 955 (9th Cir. 2006) (affirming terminating sanction where party deleted 2,200 files from laptop during pendency of litigation; and noting "'less drastic sanctions are not useful' because a ruling excluding evidence would be 'futile,' and fashioning a jury instruction that creates a presumption in favor of [non-spoliating party] 'would leave [such party] equally helpless to rebut any material that [spoliating party] might use to overcome the presumption.'"); *Gutman v. Klein,* 2008 WL 5084182, at *1 (E.D.N.Y. Dec. 2, 2008) (entering default judgment after defendant claimed laptop with missing

1   evidence was stolen from vehicle and "the destroyed evidence was potentially relevant to all aspects

2   of the case"), *aff'd*, 515 F. App'x 8 (2d Cir. 2013).

3              **2.      In The Event Default Judgment Does Not Enter As it Should, An**

4                       **Adverse Inference Instruction is Warranted**

5              A moving party need only establish the spoliating party's intent to deprive the other party of

6   evidence in order to allow the Court to "presume that the lost information was unfavorable to the

7   [spoliating] party" and issue an adverse inference instruction to that effect.  Fed. R. Civ. P. 37(e)(2).

8   Courts in this Circuit have held that the intent required for an adverse inference instruction can be

9   found where the spoliating party deleted emails, but "did not provide any other reason for why it

10  deleted the emails" other than "cit[ing] its e-mail policy" (*Oppenheimer v. City of La Habra*, 2017

11  WL 1807596, at *13 (C.D. Cal. Feb. 17, 2017) (emphasis added)) or acted with "a conscious

12  disregard towards its [preservation] obligations" (*Blumenthal Distrib., Inc. v. Herman Miller, Inc*.,

13  2016 WL 6609208, at *25 (C.D. Cal. July 12, 2016), *report and recommendation adopted*, 2016

14  WL 6901696 (C.D. Cal. Sept. 2, 2016)).

15             An inference of intent may also be inferred "based on the timing and circumstances" of the

16  "document loss."  *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *12

17  (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted*,  2020 WL 1491339 (C.D. Cal. Mar.

18  27, 2020) (finding intent based on failure to take "reasonable steps to preserve electronic evidence"

19  coupled with the "timing of the deletion of emails"); *see also Brewer v. Leprino Foods Co., Inc*.,

20  2019 WL 356657, at *10 (E.D. Cal. Jan. 29, 2019) (finding intent where party unconvincingly

21  claimed phone with relevant text messages was lost and failed to cooperate in helping ascertain what

22  was in the lost text messages).  Here, Defendants have offered no explanation or reason whatsoever

23  for their deletion of years of Skype messages that they had an absolute duty to preserve.  They have

24  provided no information as to what, if any, steps they took to preserve that lost data, other than

25  simply emailing a hold notice.  Yet, they knew Skype was their principal communication platform

26  and the lost time periods were critical to this case.  Indeed, the fact that Skype messages were finally

27  preserved just days after the December 2016 letter is more than enough to infer Defendants' intent

28

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SANCTIONS**

to spoliate and, thus, an adverse inference is warranted.

**B.     In Addition to Monetary Sanctions against Defendants, Resolute Should be Permitted to Make Arguments to the Jury Regarding the Loss of Skype Messages**

To the extent a default judgment does not enter, Plaintiffs are also entitled to monetary sanctions against Defendants and to present evidence to the jury about Defendants' spoliation and to have the jury consider that evidence in rendering its decision.  Plaintiffs must only show that they were prejudiced by the loss of the Critical Period Messages to be entitled to this relief.  Specifically, if the Court finds "prejudice to another party from the loss of the information, [it] may order measures no greater than necessary to cure the prejudice," such as allowing a party to present evidence and argument to the jury regarding the loss of information and instructing the jury that it may consider the evidence of spoliation in rendering its decision, as well as levying monetary sanctions against the spoliating party (through both "cost-shifting" and "fines").  Fed. R. Civ. P. 37(e)(1); *see also, e.g., Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at *5 (N.D. Cal. May 23, 2016) (allowing non-spoliating party to present evidence and argument to jury on spoliation and awarding attorney's fees, among other relief); *Nuvasive, Inc. v. Madsen Med., Inc.*, 2016 WL 305096, at *3 (S.D. Cal. Jan. 26, 2016) (allowing non-spoliating party to present evidence to jury on spoliation and providing for jury instruction that jury may consider such evidence in rendering decision in case); *S.E.C. v. Mercury Interactive LLC*, 2012 WL 3277165, at *10 (N.D. Cal. Aug. 9, 2012) (noting that "courts should choose a sanction that penalizes improper conduct, deters parties from engaging in such conduct, shifts the risk of an erroneous judgment to the culpable party, and 'restores the prejudiced party to the same position he would have been in absent' evidence spoliation" and that any monetary sanctions for spoliation should "seek to either punish the spoliating party or compensate the prejudiced party").

There can be no doubt that Resolute has suffered prejudice as a result of Defendants' spoliation; and significant prejudice at that.  As recognized by the Court, Skype was a primary platform for Greenpeace communications, including with respect to the claims and defenses in this

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

action, and discovery has shown that it presumably would have yielded thousands (if not tens of thousands) of messages from the missing years concerning the key issues in this case. *Supra* at 6-8. Yet Skype messages from huge swaths of time are now mysteriously unavailable.  And, those swaths of time include perhaps the most critical period for discovery in this case — the time between Minister Lessard's statement and the publication of the December 16, 2016 letter.  *Supra* at 5-7; ECF No. 299, at 2-3 ("Defendants argue that such information is not discoverable because the presiding judge dismissed claims based on statements made prior to the Quebec Minister's May 2016 statement. . . . That, however, does not mean all prior information is irrelevant. . . . [H]ow Defendants define Montagnes Blanches is discoverable, even if it predates the May 2016 statement.").

Indeed, without the Critical Period Messages, Resolute—and indeed, the jury—is deprived of evidence directly relevant to the actual malice inquiry, namely what Defendants knew and considered when they published the Challenged Statements.  Plaintiffs assert that Defendants published the Challenged Statements with actual malice because they knew, based on Minister Lessard's May 31, 2016 statement, among other reasons, that Resolute was not harvesting in the region officially recognized by the Quebec government as the Montagnes Blanches.  The time period after Minister Lessard's May 31, 2016 statement leading up to Defendants' publication of the first Challenged Statement on December 16, 2016 is precisely when communications acknowledging Minister Lessard's statement and its impact on Defendants' campaign against Resolute presumably would have occurred.  But Defendants' Skype messages from this time period are inexplicably gone. Indeed, the period of loss for Defendant Amy Moas', *the author of the letter*, coincidentally extends to just after three days *after* her distribution of the letter.

As a result, at the very last, in addition to appropriate monetary sanctions,[4] Plaintiffs should

---

[4] Plaintiffs hereby reserve the right to file a motion to recover attorney's fees incurred to investigate the loss of the Critical Period Messages and file this motion. *See Compass Bank v. Morris Cerullo World Evangelism,* 104 F. Supp. 3d 1040, 1062 (S.D. Cal. 2015) (finding monetary sanctions appropriate in connection with spoliation motion.).

be permitted to present evidence and argument to the jury concerning the Critical Period Messages and the Court should instruct the jury that it may consider such evidence in reaching a decision.  *See Nuvasive, Inc.*, 2016 WL 305096, at *3 (where "Court did not make any finding that NuVasive *intentionally* failed to preserve the text messages" but rather "found that NuVasive was at fault for not enforcing compliance with the litigation hold," appropriate relief was to "allow the parties to present evidence to the jury regarding the loss of electronically stored information and the likely relevance of that information, and [to] instruct the jury that the jury may consider such evidence along with all other evidence in the case in making its decision"); *Matthew Enter., Inc.*, 2016 WL 2957133, at *5 (among other things, (i) ordering that non-spoliating party "may present evidence and argument about Stevens Creek's spoliation of customer communications;" (ii) noting that, to avoid prejudice from the spoliation as a result of any evidence or argument presented at trial by the spoliating party, the Court may "giv[e] the jury instructions to assist in its evaluation of such evidence or argument;" and (iii) awarding reasonable attorneys' fees to the non-spoliating party); *see also, e.g., McQueen v. Aramark Corp.*, 2016 WL 6988820, at *4 (D. Utah Nov. 29, 2016) (absent intent, "a lesser sanction is appropriate" and thus, "the parties will be permitted to present evidence to the jury regarding spoliation . . . and to argue any inferences they want the jury to draw"); *Ericksen v. Kaplan Higher Educ., LLC*, 2016 WL 695789, at *1 (D. Md. Feb. 22, 2016) (permitting non-spoliating party to "present evidence related to the loss of evidence and instruct the jury that they may consider the circumstances of the loss, in addition to all other evidence presented at trial"); *Keen v. Bovie Med. Corp.*, 2013 WL 3832382, at *3 (M.D. Fla. July 23, 2013) (denying adverse inference instruction, but holding that the non-spoliating party is "not precluded from presenting evidence of [spoliation] or arguing as part of its closing argument that adverse inferences should be drawn from [that] conduct").[5]

---

[5] In addition, Plaintiffs respectfully reserve the right to file a motion at the appropriate time to exclude any evidence or argument offered by Defendants that would allow Defendants to take advantage of the absence of the spoliated documents.  *See Mercury Interactive LLC,* 2012 WL 3277165, at *11 (contemplating motion *in limine* once it is clear what evidence spoliating party would seek to introduce because, "[f]or example, it would be unfair" to allow spoliating party to (footnote continued)

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**

**CONCLUSION**

Defendants spoliated a significant amount of discoverable, critical, and irreplaceable data. For the reasons set forth above, Plaintiffs respectfully request that their Motion for Sanctions for Spoliation be granted by the entry of default judgment. Alternatively, Plaintiffs ask this Court to instruct the jury to draw an adverse inference, allow Plaintiffs to comment on the lost materials during trial and award monetary sanctions.

DATED: May 31, 2022                     Respectfully submitted,

                                        BROWN RUDNICK LLP


                                        By:   */s/ Lauren Tabaksblat*
                                              LEO J. PRESIADO (State Bar No. 166721)
                                              2211 Michaelson Drive, 7th Floor
                                              Irvine, CA 92612
                                              Telephone: (949) 752-7100
                                              Facsimile: (949) 252-1514
                                              Email: lpresiado@brownrudnick.com

                                              Michael J. Bowe (admitted *pro hac vice*)
                                              *mbowe@brownrudnick.com*
                                              Lauren Tabaksblat (admitted *pro hac vice*)
                                              *ltabaksblat@brownrudnick.com*
                                              7 Times Square
                                              New York, New York 10036
                                              Telephone: (212) 209-4800
                                              Facsimile: (212) 209-4801

                                              *Attorneys for Plaintiffs*

---

argue that a witness is not credible because there are no documents to support his or her testimony or is credible because there are no documents to contradict his or her testimony, where "it appears documents related to that witness . . . are missing").

**RESOLUTE FOREST PRODUCT, INC'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SANCTIONS**