BROWN RUDNICK LLP
LEO J. PRESIADO (State Bar No. 166721)
2211 Michelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: lpresiado@brownrudnick.com

Michael J. Bowe (admitted *pro hac vice*)
mbowe@brownrudnick.com
Lauren Tabaksblat (admitted *pro hac vice*)
ltabaksblat@brownrudnick.com
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>GREENPEACE INTERNATIONAL, *et al.*,<br><br>                    Defendants. | CASE NO. 4:17-CV-02824-JST (JST)<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

# TABLE OF CONTENTS

Page

**INTRODUCTION** ........................................................................................................ 1

**FACTUAL BACKGROUND** ...................................................................................... 3

    **A.**    Resolute Issues Broad Litigation Hold Notice  Calling For Preservation of All Relevant Evidence. ................................................................................................ 3

    **B.**    Plaintiffs' Comprehensive Collection And Production Of Relevant Evidence. ....... 5

    **C.**    Plaintiffs' Supplemental Interrogatory Responses, .................................................. 9

**STANDARD** .............................................................................................................. 10

**ARGUMENT** ............................................................................................................ 12

I.    SANCTIONS ARE NOT WARRANTED BECAUSE PLAINTIFFS HAVE COMPLIED WITH THEIR DISCOVERY OBLIGATIONS AND DEFENDANTS HAVE NOT IDENTIFIED ANY EVIDENCE THAT WAS LOST OR DESTROYED. ...................... 12

    **A.**    Plaintiffs Complied With Their Preservation Obligations. ..................................... 13

    **B.**    Plaintiffs Document Collection And Production Processes  Were Reasonable And Consistent With The Federal And Local Rules. .................................................... 15

    **C.**    Plaintiffs' Interrogatory Responses Were Timely And In Compliance With This Court's Orders. ................................................................................................... 21

II.    DEFENDANTS HAVE FAILED TO DEMONSTRATE PREJUDICE. .......................... 24

**CONCLUSION** .......................................................................................................... 25

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Carlson v. FedEx Ground Package System, Inc.*,
   2012 WL 4762113 (D. Mont. Sept. 12, 2012) ....................................................................... 24

*Chin v. Port Auth. of New York & New Jersey*,
   685 F.3d 135 (2d Cir. 2012) ................................................................................................... 15

*CTC Global Corp. v. Huang*,
   SACV 17-02202, 2019 WL 6357271, at * (C.D. Cal. July 3, 2019) ...................................... 14

*Dolzhenico v. City of L.A. Cal.*,
   2016 WL 10587935 (C.D. Cal. Oct. 28, 2016) ..................................................................... 11

*Fast v. GoDaddy.com LLC*,
   340 F.R.D. 326 (D. Ariz. 2022) ........................................................................................... 10

*Fiteq Inc v. Venture Corp.*,
   No. 13-CV-01946-BLF, 2016 WL 1701794 (N.D. Cal. Apr. 28, 2016) ................................ 10

*Gonzales v. City of San Jose*,
   2014 WL 6687138 (N.D. Cal. Nov. 25, 2014) ...................................................................... 10

*Haynes v. Dart*,
   2010 WL 140387 (N.D. Ill. Jan. 11, 2010) .......................................................................... 15

*Hernandez v. Polanco Enters., Inc.*,
   19 F. Supp. 3d 918 (N.D. Cal. 2013) ................................................................................... 23

*Hugler v. Sw. Fuel Mgmt., Inc.*,
   No. 16 CV 4547-FMO, 2017 WL 8941163 (C.D. Cal. May 2, 2017) ................................... 10

*John v. Cty. of Lake*,
   No. 18-CV-06935-WHA (SK), 2020 WL 3630391 (N.D. Cal. July 3, 2020) ....................... 10

*JTS, LLC v. Nokian Tyres PLC*, JWS, 2017 WL 68615, at *2-3 (D. Alaska Jan. 6,
   2017)) .....................................................................................................................................24

*Kinnally v. Rogers Corp.*,
   No. CV-06-2704-PHX-JAT, 2008 WL 4850116 (D. Ariz. Nov. 7, 2008) ............................ 10

*Maxlite, Inc. v. ATG Elecs., Inc. & David Wyatt*,
   No. 82001056MCSADSX, 2022 WL 2176511 (C.D. Cal. Mar. 21, 2022) ........................... 11

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

*Newberry v. County of San Bernardino*,
750 Fed. App'x 534 (9th Cir. 2018) ...................................................................... 11

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
328 F.R.D. 543 (N.D. Cal. 2018) ........................................................................ 10

*Oracle USA Inc. v. SAP AG*,
264 F.R.D. 541 (2009) ........................................................................................ 24

*Porter v. City and Cnty. of San Francisco*,
2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ..................................................... 10

*Reinsdorf v. Skechers U.S.A., Inc.*,
296 F.R.D. 604 (C.D. Cal. 2013) ........................................................................ 21

*Sanchez v. Rodriguez*,
298 F.R.D. 460 (C.D. Cal. 2014) ........................................................................ 24

*Sas v. Sawabeh Information Sewrvices*, 2015 WL 12711646 (C.D. Cal. Feb. 6,
2015)……………………………………………………………………………24

*United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*,
617 F.2d 1365 (1980) .......................................................................................... 24

*Woods v. Google, Inc.*,
2014 WL 1321007 (N.D. Cal. Mar. 28, 2014) .................................................... 23

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................... 17, 23, 24

Fed. R. Civ. P. 37 ................................................................................. 10, 11, 12, 11

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

Plaintiffs respectfully submit this memorandum of law in opposition to the motion for sanctions, ECF No. 459, filed by Defendants.

## INTRODUCTION

Three months after Plaintiffs filed for sanctions against Greenpeace for the undisputed destruction of critical Skype communications about the actionable statements in this case, (ECF No. 435, amended ECF No. 461), Defendants attempt to level the playing field with their own sanctions motion which, curiously, seeks the identical relief Plaintiffs requested months earlier.[1] But the similarities end there.  While Plaintiffs' motion demonstrates the loss of relevant evidence, the centrality of that evidence, and Plaintiffs' exhaustive, but unsuccessful, efforts to retrieve the lost evidence from other sources, <u>Defendants fail to identify a single document or category of discovery that have been lost or destroyed, or otherwise unavailable</u>. Defendants' 11-hour effort to manufacture discovery violations and prejudice are predicated on gross misrepresentations of the record and their own abject failure to take the most basic steps standard in every litigation and should be rejected.

First, Defendants argue that Plaintiffs failed to implement a proper litigation hold notice for this action which resulted in the "inevitable destruction" of documents.  In fact, Plaintiffs sent comprehensive preservation instructions in 2014 shortly after Defendants and Greenpeace Canada began disseminating the 2012 and 2013 false claims that Resolute was harvesting in the Montagnes Blanches, which this Court previously held were part of the same campaign that gave rise to the actionable statements in this action.  The 2014 hold notice was sent to all the custodians in this case and directed them to preserve all documents related to "Greenpeace's false and defamatory statements about Resolute," from all sources, "until further notice."  Each of the custodians in this action certified that they received the preservation notice and testified under oath to their compliance.  Not only do

---

[1] Defendants disingenuously contend that Plaintiffs attempted to preempt this motion with their own motion.  *See* Mot. at 2.  In fact, Plaintiffs first raised the loss of Skype data in January 2021, met and conferred with Defendants for months thereafter in an effort to resolve the issue without court intervention, served subpoenas on Skype and Greenpeace Canada to try and retrieve the data from other sources, and only then filed a motion after Plaintiffs exhausted all other avenues to obtain the critical records.  *See* ECF No. 435, as amended ECF No. 461.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

1  Defendants ignore these facts, they fail to identify any relevant evidence that is missing or was

2  destroyed as a result of putative preservation failures.

3      Second, Defendants contend that Plaintiffs intentionally obstructed discovery by failing to

4  produce documents from relevant custodians and sources and then sand-bagged Defendants with

5  thousands of documents just months before the close of fact discovery.  The actual facts tell a very

6  different story.  In fact, Defendants failed to respond to Plaintiffs' multiple requests for search metrics

7  at the outset of discovery —a request that is standard in every litigation and consistent with the federal

8  and local rules—and then failed to raise any issues with the documents Plaintiffs did produce, based

9  on search terms and custodians Plaintiffs themselves selected, for more then a year after Plaintiffs

10 substantially completed that production.   Although Plaintiffs' search criteria were more than

11 sufficient under Rule 26, when Defendants belatedly raised issues with Plaintiffs' search metrics,

12 Plaintiffs promptly addressed Defendants' concerns and produced additional documents and

13 information.  All of this information was produced before relevant depositions proceeded, and

14 Plaintiffs consented to multiple adjournments of depositions and the fact discovery deadline to give

15 Defendants additional time to prepare.  Not only was Plaintiffs' conduct entirely reasonable, it could

16 have all been avoided had Defendants' engaged in the most basic discovery efforts.

17     Finally, Defendants claim that Plaintiffs' supplemental responses to certain damage

18 interrogatories prior to the deposition of Plaintiffs' corporate representative on damages and other

19 critical fact witnesses is a sanctionable violation of this Court's prior order.  In support of this

20 position, they misrepresent that Plaintiffs' responses included 14 new categories of damages.

21 Nothing could be farther from the truth.  As set forth below, Plaintiffs fully complied with the Court's

22 January 2021 order based on information available at that time.  Their subsequent supplementation

23 to certain categories of previously disclosed damages, after review of more than 30,000 documents

24 exchanged in this action, 30 depositions, and substantial expert analysis in anticipation of the

25 upcoming disclosure deadline is not only appropriate, it is required under the federal rules.  More

26 importantly, Defendants fail to identify any prejudice here, where it is undisputed that the information

27 was provided prior to the close of fact discovery, relevant depositions, and expert disclosures.

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

For these reasons, and those set forth below, Defendants' motion should be denied.

**FACTUAL BACKGROUND**

By order dated January 22, 2019, the Court sustained Plaintiffs' defamation and unfair competition law claims based on Defendants' dissemination of the false claim that Resolute was harvesting in the Montagnes Blanches and endangering threatened caribou and the last intact forest landscapes in that region. ECF No. 246. As this Court previously recognized, Defendants' claims about Resolute's putative activities in the Montagnes Blanches at issue in this action "appear to be part of a campaign [  ] going back to 2012. For example, a 2013 report by Greenpeace Canada accusing Plaintiffs of violating the CBFA—and later distributed by Defendant Brindis— contained claims that Plaintiffs were logging in the Montagnes Blanches." ECF No. 269 at 7.

**A.    Resolute Issues Broad Litigation Hold Notice**
     <u>**Calling For Preservation of All Relevant Evidence**</u>.

Shortly after Defendants and Greenpeace Canada began disseminating the false claim that Resolute was harvesting in the Montagnes Blanches in late 2012, Plaintiffs issued a broad litigation hold notice (the "Notice") directing relevant employees to preserve all records related to "[Greenpeace's] [  ] false and defamatory statements about Resolute . . ." Declaration of Lance Koonce ECF No. 459-12, ("Koonce Declaration"), Ex. 11. At the time the Notice was disseminated, Plaintiffs had an ongoing litigation against Greenpeace Canada arising from, among other statements, the December 2, 2012 claim that Resolute was harvesting in the Montagnes Blanches in violation of the CBFA that this Court held was part of the same campaign that led to the actionable conduct in this case. *See* June 17, 2022 Declaration of Jacques Vachon ("Vachon Decl."), ¶ 4. The Notice provided a non-exhaustive list of statements for which records should be preserved including, without limitation, documents relating to "Initial Defamation: Greenpeace's December 2012 publication" and "Greenpeace's communications with Resolute's customers/stakeholders/investors." Koonce Decl., Ex. 11 at 2. Critically, the Notice cautioned recipients not to make relevancy determinations but to preserve all documents that could in any way be related to Greenpeace's ongoing campaign. *Id.*

Consistent with this directive, the Notice defined sources of relevant data broadly, including

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

all "paper documents," and "any data or information in electronic form" including "drafts."  *Id*.  It further directed that steps be taken to preserve "all data on personal devices, including laptops, Blackberries, iPhones, smart-phones, cell phones, PDAs or other electronic devices."  *Id.* at 3. Finally, the Notice explained that Greenpeace's dissemination of misinformation was ongoing and the obligation to preserve was continuing "until further notice."  *Id.* at 1.

In addition to the Notice, all potential custodians were asked to complete a questionnaire about potentially relevant records and their location.  Vachon Decl., ¶ 7-8; Vachon Ex. 1. Consistent with the Notice, the questionnaires enumerated examples of relevant categories of information.  Vachon Decl., ¶ 8. Among the 18 categories in the questionnaire were "[d]ocuments regarding the Montagne Blanches region," documents regarding caribou, "[f]inancial records that relate to lost or decreased sales as a result of Greenpeace's false allegations or communications with customers," and "[a]ny other documents relevant to the dispute involving Greenpeace." *Id*.  Notably, none of the categories were limited by date range or to specific publications.  *Id.*   In addition to seeking information about the location of relevant documents, the questionnaire also asked the responder to identify additional custodians that may have relevant information.  Vachon Decl., Ex. 1.

The Notice and questionnaires were initially sent to 24 employees including, Marc Bedard, Breen Blaine, Francois Dumoulin, Richard Garneau, Seth Kursman, John Lafave, Yves Laflamme, Rob Hilbrink, and Carolyn Pinto.  *See* Koonce Decl., Ex. 11.  Based on the information provided in response to the questionnaires, the Notice and questionnaires were then sent to, an additional 32 employees, including Charles Del Vecchio, Kevin Goulding, and Jeff Romeo.  Vachon Decl., ¶ 13. Thus, each of the 12 individuals from whom Defendants ultimately sought documents in this action received the Notice and the questionnaire in 2014 notifying them of their preservation obligations. Moreover, each employee that received the Notice and questionnaire, including each of the custodians in this action, executed an acknowledgement of their preservation obligations and certified to their intended compliance.  Vachon Decl., Ex. 2.  Thereafter, and continuing through the present, each employee that received the Notice and questionnaire was sent quarterly reminders of their obligation to preserve, and received audit committee reports enumerating pending litigations, including a

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

reference to this litigation after it was filed.  Vachon Decl. ¶ 14.

Numerous Resolute employees testified that they understood their preservation obligations extended to all records relevant to Greenpeace's claims,  and was not limited to the Canadian litigation.  *See* June 17, 2022 Declaration of Lauren Tabaksblat ("Tabaksblat Decl."), Exhibits,[2] 12, 13, and 18 (Romeo Tr. at 103:23-105:2; Blaine Tr. at 257:11-258:22; Goulding Tr. at 327:22-329:2.)  Moreover, the custodians in this action testified that they complied with their preservation obligations, and continue to preserve relevant evidence to this day, including both electronic and other sources of information. *See, e.g.*, Ex. 14 Lafave, Tr. 64:7-21 ("Rather than deleting anything, litigation hold or not, I just got an unlimited quota, if you will, so I didn't run into that.");  Ex. 15 Kursman, Tr. 228:21-229:1 ("So whether it's emails, whether it's documents, I've certainly made an absolute best effort to preserve all of that . . . But I'm just kind of afraid to delete anything.");  Ex. 16 Bedard, Tr. 246: 19-22 ("[B]ecause of the Greenpeace case, I was keeping all the emails, all the attachments, all the maps . . . .");  Ex. 17 Pinto, Tr. 141:12-13 ("[W]e were not allowed to delete anything."); *id.* at 104:21 – 105:2 ("Typically, if it had referenced Greenpeace in any way, shape or form, it was held.");  Ex. 18 DelVecchio Tr. 54:16-17 (only deleted materials that were "not related to any of this.");  Ex. 19 Goulding Tr. 328:25-329:2 ("I avoided deleting emails related to the Greenpeace situation.").

Contemporaneous documents produced in discovery corroborate these witnesses' testimony. *See, e.g.*, Ex. 11.  Executives were given unlimited e-mail storage to preserve relevant records.  *See* June 17, 2022 Declaration of Gord Papps ("Papps Decl."), ¶ 6.  For other employees, when inboxes became too large for the Lotus Notes platform Resolute used during the relevant period, IT created archive folders for additional storage (the "Archives").  *Id.*, ¶ 13-15.  The Archives were backed up annually, and preserved after Resolute migrated its platform to Microsoft Outlook in 2020.  *Id.*, ¶ 17.

**B.   <u>Plaintiffs' Comprehensive Collection And Production Of Relevant Evidence</u>.**

---

[2] Exhibits to the Tabaksblat Declaration filed herewith are hereinafter referred to as "Ex." or "Exs." Exhibits to other declarations are identified by name.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

Defendants served their initial document demands on September 6, 2019, and Plaintiffs served objections and responses on October 16, 2019.  Tabaksblat Decl., ¶ 1; Exs. 1; 2.  Consistent with standard practice in complex e-discovery cases like this one, within weeks of serving their responses to Defendants' discovery demands, Plaintiffs requested input from Defendants on e-discovery metrics, such as search terms.  Tabaksblat Decl., ¶ 2.  Defendants did not respond to Plaintiffs' initial or multiple follow-up requests sent between November 19 and 25, 2019.  Tabaksblat Decl., 5; Ex. 3. Thus, Plaintiffs proceeded to develop their own search criteria.  *Id.*

With respect to custodians, Resolute advised that collecting documents from the supervisor of each relevant department would capture the majority of responsive documents since it was Resolute's business practice to copy or forward all substantive communications to the department supervisor.  Tabaksblat Decl., ¶ 7.  Accordingly, Plaintiffs identified the following initial custodians for collection:  (i) Richard Garneau (CEO during the relevant period); (ii) Yves Laflamme (successor president and CEO to Garneau); (iii) Seth Kursman (Vice President, Communications, Sustainability & Government Affairs with responsibility for customer communications); (iv) John Lafave (Senior Vice President, Pulp and Paper Sales and Marketing); (v)  Marc Bedard (Vice President, Forestry); and (vi) and Francois Dumoulin, (predecessor Vice President, Forestry).  For each of these custodians, IT pulled all e-mails and other electronic information that had been actively preserved since 2014 when the Notice was issues.  Papps Decl., ¶ 7-8.  In addition to collecting electronic files on the company server, Plaintiffs also inquired from each custodian whether and to what extent they utilized shared files, hard copy materials, personal devices, and whether they communicated via text message (or other messaging platform) concerning the issues relevant to the case.  Tabaksblat Decl., ¶ 9.  In those cases where relevant hard copy or shared file documents were identified, they were collected for review.  *Id.*

Once the relevant universe of records were collected, Plaintiffs processed and uploaded the documents to the e-discovery database, Relativity.[3]  The collected documents were subjected to the

---

[3] When Plaintiffs' counsel left their prior firm in February 2020 to join Brown Rudnick, Plaintiffs retained an e-discovery vendor, vDiscovery, to host the Relativity database and process data.  *See*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

industry accepted process of "de-duplication" which maximizes efficiencies by eliminating multiple versions of the same document from multiple custodians.  Blair Decl., ¶ 6.  Thus, if there is an email that six different custodians received, there would initially be six different copies collected to upload into the database.  *Id.*  After de-duplication, only one copy of that e-mail would remain.  *Id.*

Once documents were uploaded to the relativity database, Plaintiffs ran broad search terms across those sources.  Plaintiffs made their first production of documents on January 31, 2020, and substantially completed the production of the initial custodians' responsive, non-privileged documents on December 31, 2020. Tabaksblat Decl., ¶ 10.  The vast majority of the documents in Plaintiffs' productions included metadata fields identifying which custodians the documents originated from.  Blair Decl., ¶¶ 10-11.

At no time during the 12-month period from January through December 2020 or in the following 10 months did Defendants once inquire about Plaintiffs' search metrics or custodians. Tabaksblat Decl., ¶ 13.  Plaintiffs assumed this was because the custodian information was readily available to Defendants and they deemed it sufficient.  *Id.*

Two months after the first deposition in this case, two months before fact discovery was scheduled to close, and nearly one year since Plaintiffs completed their document production, and nearly two years after Plaintiffs first requested input from Defendants on the discovery process, in October 2021, Defendants inquired for the first time about the search metrics Plaintiffs used to collect and produce documents.  Tabaksblat Decl., ¶ 15.  Although Defendants now claim that issues with Plaintiffs' metadata precluded Defendants from ascertaining Plaintiffs' metrics, they readily concede

---

June 17, 2022 Declaration of Arnold Blair  ("Blair Decl."), ¶ 4. The collection and processing was ongoing from the prior firm to vDiscovery, under the supervision of Brown Rudnick.  *Id.*  Because of slight differences in the manner of processing, documents collected and processed by Plaintiffs' prior firm do not have metadata identifying de-duplicated custodians; however, documents processed by vDiscovery do have such information, and all such metadata was made available to Defendants. *Id.* ¶ 5-10.  De-duplicated custodian metadata identifies all custodians that had a single document in their possession.  *Id.* ¶ 6. Without that information, only the initial custodian (i.e. the first custodian uploaded to the database) is identified.  *Id.*  That does not mean, however, that additional custodians did not have such documents, it simply means that there is not a metadata field identifying all custodians of the same document(s). *Id.* Notably, Defendants did not request a specific type of metadata in any Document Requests or e-discovery protocol. Tabaksblat Decl., Ex. 1.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

1  that of the 10,564 documents initially produced by Plaintiffs, 8,864 of those documents contained

2  metadata sufficient to identify custodians. Mot. at 14.  Even worse, despite being aware of the

3  "missing" metadata since no later than 2020, Defendants waited more than 10 months to raise the

4  issue. Tabaksblat Decl., ¶ 13-15.     By contrast, Plaintiffs met and conferred with Defendants on

5  numerous occasions about the custodians Defendants had identified and requested additional

6  custodians be added after reviewing Defendants' preliminary productions.  Tabaksblat Decl., ¶ 16.

7  Plaintiffs similarly sent Defendants search terms for Defendants to run, had several discussions with

8  Defendants to refine those terms, and ultimately, after reviewing Defendants' production, filed a

9  motion to compel application of additional terms.  ECF No. 332.  This is standard litigation practice.

10     But rather than tell Defendants that their efforts were too little too late, when Defendants

11  raised these issues just two months before the then-scheduled close of fact discovery, Plaintiffs agreed

12  to collect documents from additional custodians and agreed to extend the discovery deadlines so that

13  Defendants would have additional time to review the forthcoming documents they claimed they

14  needed.  Plaintiffs also agreed to adjourn all upcoming depositions pending additional productions.

15  ECF No. 418.  Between October and December 2021, Plaintiffs produced documents for each of the

16  additional custodians Defendants requested: Breen Blaine, Charlie Del Vecchio, Kevin Goulding,

17  Rob Hilbrink, Carolyn Pinto, and Jeff Romeo.  Plaintiffs also agreed to run additional search terms

18  against the new and existing custodian's data sets. Tabaksblat Decl., ¶ 19.

19     Then, in November 2021, Defendants raised for the first time that certain e-mails were

20  produced from one custodian but not another.  Tabaksblat Decl., ¶ 20.  Again, this was an issue that

21  Defendants should have identified years or months earlier from the metadata Plaintiffs produced.

22  Blair Decl., ¶ 10.  Although certain of the examples Defendants identified resulted from the de-

23  duplication process, after conducting an extensive investigation, Plaintiffs determined that certain

24  custodians had archive files that were not previously collected. Papps Decl., ¶ 11. These archive

25  folders were created prior to the transition of Plaintiffs' document management systems from Lotus

26  Notes to Outlook to manage large excess file sizes, necessitated, in part, by preservation compliance.

27  Papps Decl., ¶ 13. Although, the direction was given by internal and external counsel at the outset to

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

1   collect all e-mails for review and production, because of the transition of teams in connection with

2   the transfer of platforms, the archives were not collected. Papps Decl., ¶ 11.  Upon identifying these

3   additional files, Plaintiffs immediately determined that archive files existed for five of the twelve

4   custodians, including, specifically: John Lafave, Marc Bedard, Seth Kursman, Kevin Goulding, and

5   Carolyn Pinto. Plaintiffs immediately disclosed the archives to Defendants, and collected, reviewed,

6   and produced all responsive documents from those archives. Tabaksblat Decl., ¶ 21.  Critically, the

7   archive files were comprised almost entirely of duplicates of previously produced documents but

8   from different custodian inboxes. *Id.* Thus, while a large number of additional documents were

9   produced, they did not contain new information not previously produced.  *Id*.

10  Despite Defendants' repeated claim that they were forced to scramble hours before a

11  deposition, in all cases, the parties adjourned the depositions to give Defendants additional time to

12  review the additional custodian and archive files, and Plaintiffs also consented to another adjournment

13  of the discovery deadlines.  Tabaksblat Decl., ¶ 22Other than Mr. Goulding, none of the custodians

14  that had archives had been deposed prior to the production of the files, and Defendants never sought

15  to re-open Mr. Goulding's deposition based on the production of his archive files (likely because they

16  already had the vast majority of the documents from other custodians).  *Id*.

17  **C.**   **Plaintiffs' Supplemental Interrogatory Responses,**

18  Pursuant to this Court's January 2021 order (the "Damages Order") (ECF No. (382)), on

19  February 20, 2021, Plaintiffs served supplemental interrogatory responses to interrogatories 7, 13,

20  and 14 based on information known to Plaintiffs at that preliminary stage in the proceeding.

21  Tabaksblat Decl., ¶ 24.   In April 2022, prior to the depositions of Plaintiffs' corporate representative

22  on damages and other key fact witnesses on damages, and the close of fact discovery, Plaintiffs served

23  supplemental damage responses which expounded on the information provided in prior responses

24  based on new information learned through the course of ongoing discovery and Plaintiffs' extensive

25  work with experts during the intervening year. Tabaksblat Decl., ¶ 25.    Plaintiffs also made a

26  corresponding document production in March 2022.[4]  *Id*.

27  _____

28  [4] Defendants' claim that Plaintiffs have failed to produce any evidence that the Challenged Statements

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

## STANDARD

Defendants seek sanctions pursuant to Federal Rules of Civil Procedures 37(e) and (b).  They fail to meet their burden under either subsection.

Sanctions under Rule 37(e)(1) are warranted only where a party establishes "(1) the ESI 'should have been preserved in the anticipation or conduct of litigation'; (2) the ESI 'is lost because a party failed to take reasonable steps to preserve it'; and (3) '[the ESI] cannot be restored or replaced through additional discovery.'" *Porter v. City and Cnty. of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018); *see also Gonzales v. City of San Jose*, 2014 WL 6687138, at *3 (N.D. Cal. Nov. 25, 2014).[5]  A prerequisite for the imposition of sanctions under Rule 37(e) is that the evidence is actually lost and "cannot be restored or replaced through additional discovery."  *Id.*; *see also Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 552 (N.D. Cal. 2018).  "Information is lost for purposes of Rule 37(e) only if it is irretrievable from another source, including other custodians." *Id.* (internal citations and quotations omitted).  The moving party bears the burden to "come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been."  *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 339 (D. Ariz. 2022) (internal quotations and citations omitted). As Defendants concede in their brief in opposition to Plaintiffs' sanctions motion, it is not enough to simply "cite facts that ***suggest*** evidence may have been destroyed." *Kinnally v. Rogers Corp.*, 2008 WL 4850116, at *5 (D. Ariz. Nov. 7, 2008) (emphasis in original); *Hugler v. Sw. Fuel Mgmt., Inc.*, 2017 WL 8941163, at *9 (C.D. Cal. May 2, 2017); *Fiteq Inc v. Venture Corp.*, 2016 WL 1701794, at *2-3 (N.D. Cal. Apr. 28, 2016) (denying request for spoliation instruction where plaintiff failed to show that ESI was not "'restored or replaced through additional discovery'" and failed "to prove that other responsive documents ever existed"); *cf* Defendants' Sanctions Opp. ECF No. 460, at 16-17.

---

were disseminated to parties other than the book publishers is false. Mot. at 4-5. First, the Court has recognized that the statements were broadly disseminated on Defendants' websites. *See* ECF No. 246.  Second, at a minimum, Defendants produced emails showing they disseminated the Challenged Statements with other Resolute's customers, including Kimberly Clark and P&G. Exs. 9; 10.

[5] Sanctions under Rule 37(e)(2) require an even higher showing of "intent" to destroy evidence. *John v. Cty. of Lake*, No. 18-CV-06935-WHA (SK), 2020 WL 3630391, at *5 (N.D. Cal. July 3, 2020).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

1     Even in those cases where evidence is lost and irretrievable from any other source, the moving

2     party bears the further burden to demonstrate prejudice.   Prejudice exists only when spoliation

3     prohibits a party from presenting evidence that is relevant to its underlying case." *Id.* (internal

4     quotations and citations omitted).   Where lost documents cause no prejudice to the moving party,

5     sanctions are not warranted.  *Newberry v. County of San Bernardino*, 750 Fed. App'x 534, 537 (9th

6     Cir. 2018).  To the contrary, Rule 37(e)(1) mandates that the court may order "measures no greater

7     than necessary to cure the prejudice."

8          Similarly, the burden is on the moving party to demonstrate entitlement to sanctions under

9     Rule 37(b).  Sanctions under 37(b) are only warranted where the moving party demonstrates that the

10    non-moving party failed to comply with a Court order to provide discovery.  Fed. R. Civ. P. 37(b);

11    *Maxlite, Inc. v. ATG Elecs., Inc. & David Wyatt*, 2022 WL 2176511, at *4 (C.D. Cal. Mar. 21, 2022).

12         Moreover, as Defendants argued in attempting to defend against their own sanctionable

13    behavior, terminating sanctions are extremely severe and "are justified only where 'the party's

14    violations of the court's orders [are] due to willfulness or bad faith.'"  *Dolzhenico v. City of L.A. Cal.*,

15    2016 WL 10587935, *6 (C.D. Cal. Oct. 28, 2016), *report and recommendation adopted*, 2017 WL

16    5643140 (C.D. Cal. Jan. 30, 2017).  Willfulness or bad faith requires "repeated" failure to comply

17    with court orders, failure to heed multiple court warnings, or "conduct utterly inconsistent with the

18    orderly administration of justice."  *Id.* (collecting and citing cases).  Even if "willfulness" is

19    established by the party seeking sanctions, the Court still weigh several factors to determine whether

20    a lesser sanction is more appropriate.  *Id.*  (citing *Dreith*, 648 F.3d at 788).  These factors include:

21    (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its

22    docket; (3) the risk of prejudice; (4) the public policy favoring disposition of cases on their merits;

23    and (5) the availability of less drastic sanctions.  *Id.*  "Ultimately, 'the most critical factor to be

24    considered in case-dispositive sanctions is whether a party's discovery violations make it impossible

25    for a court to be confident that the parties will ever have access to true facts.'"  *Id.* at *7 (quoting

26    *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007)).

27         Applying these standards, Defendants' have failed to demonstrate their entitlement to any

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

sanctions under either FRCP 37(e) or (b)—let alone the extreme sanctions they seek—because Defendants have not met their burden to demonstrate that any relevant documents or information have been lost or destroyed, that any court orders have been violated, or that Plaintiffs have deviated from reasonable, good faith practices.  Moreover, Defendants' motion fails for the independent reason that Defendants do not demonstrate that any of the putative issues resulted in prejudice.

## ARGUMENT

**I.     SANCTIONS ARE NOT WARRANTED BECAUSE PLAINTIFFS HAVE COMPLIED WITH THEIR DISCOVERY OBLIGATIONS AND DEFENDANTS HAVE NOT IDENTIFIED ANY EVIDENCE THAT WAS LOST OR DESTROYED.**

Plaintiffs diligently complied with all preservation, collection, and production obligations and did so in a good faith, in a timely manner, and in compliance with all governing rules and orders. Defendants' arguments to the contrary are based on blatant mischaracterizations of the record—all of which are contradicted by deposition testimony and contemporaneous documents and correspondence.  What the record in this case actually shows is that any putative issues Defendants now raise with Plaintiffs' discovery responses are attributed to Defendants' own discovery failures and delays.  And when Defendants belatedly raised claimed deficiencies, Plaintiffs agreed to collect and produce additional documents, and consented to adjourn multiple previously scheduled depositions at the 11th-hour so that Defendants would have additional time to prepare.

Despite Defendants' repeated claims of "destruction" and "malfeasance," they <u>fail to meet their burden to demonstrate that a single document requested has been lost or destroyed</u>, let alone make any showing of an intent to destroy relevant discovery.  They purport to identify four categories of documents that they claim demonstrate Plaintiffs' noncompliance: (1) "entire ESI sources such as texts, personal email accounts, and locally stored drives;" (ii) custodial documents from Seth Kursman and Kevin Goulding; (3) "email blasts sent by Plaintiffs to customers and documents related to damages;" and (4) documents that "were produced by third parties but not by Plaintiffs."  Mot. at 13. As set forth herein, these materials are either not relevant, not responsive to the search terms and criteria the parties agreed to, or duplicative of other discovery Defendants have already received.

First, Defendants simply misrepresent that texts, documents transmitted through personal

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

email accounts, and locally stored drives contain relevant information that was not properly preserved.  As detailed herein, Resolute witnesses testified that they did not use text messages or personal email accounts for substantive work-related communications during the relevant period.  *See supra* at 6-7.  Moreover, locally stored drives were included in the collection and review, when applicable, and documents from those drives were produced to Defendants.  Papps Decl. ¶ 7-10.

Second, Plaintiffs collected tens of thousands of documents from the custodial accounts of Messrs. Kursman and Goulding.  Tabaksblat Decl., ¶ 21.  Defendants' claim that the productions for these two custodians is "anemic," simply ignores the de-duplication processes Plaintiffs employed that are standard in complex, commercial litigations such as this one. *See* Blair Decl., ¶¶ 17-20.

Third, the email blasts Defendants refer to are not missing; they were simply sent from an e-mail addresses  that were not custodians in this action.  *See* Defs. Ex. 24.  Notably, Defendants failed to ever raise this issue prior to this motion.  Had they done so, Plaintiffs would have provided this simple explanation and met and conferred with Defendants to resolve this issue without court intervention.

Finally, while defendants have identified 11 out of the 2,400 documents produced by third parties that were not produced by Plaintiffs, *see* Defs. Ex. 22, this is not sanctionable, it is standard (and expected) in litigations such as this one involving the review and production of tens of thousands of documents. Indeed, the fact that Defendants can only identify less than .04% of the documents produced by third-parties that were not produced by Plaintiffs confirms, rather than undermines, the appropriateness of Plaintiffs' preservation, collection, and production processes.

Thus, Defendants have not identified a single document or category of documents that have been lost or destroyed.  This failure is dispositive of their claim for sanctions under Rule 37.

A.    <u>Plaintiffs Complied With Their Preservation Obligations</u>.

Defendants' motion is predicated on the flawed premise that Plaintiffs failed to institute a litigation hold in this case "resulting in the inevitable destruction of relevant documents." Mot. at 1.[6]

---

[6] Thus, the cases Defendants rely on to argue for sanctions based on the incorrect claim that Plaintiffs did not implement a litigation hold are inapposite.  *See* Mot. at 21 (citing cases).

1   But Resolute did issue a broad hold notice to each of the relevant custodians in this action.

2          As detailed above, in 2014, Resolute issued a Notice to more than 40 potential custodians

3   directing them to preserve all documents and records, from any sources, concerning "[Greenpeace's]

4   [ ] false and defamatory statements about Resolute . . ." *See supra* 4-6.  Moreover, documents

5   accompanying the Notice specifically referenced the basis for the claims in this action, including

6   Defendants' claims about Resolute's putative operations in the Montagnes Blanches, impact on

7   caribou, and Greenpeace's interference with Resolute's customers and critical market constituents.

8   *See id.*  The Notice further stated that Greenpeace's campaign was ongoing and that the requirement

9   to preserve was continuing until "further notice."   *See id.*  Thereafter, regular reminders and updates

10  were sent to each custodian, which included references to this litigation after it was commenced. *Id.*

11         Despite all of this, Defendants argue that the 2014 Notice is not sufficient because it was

12  issued in connection with a different action and concerned "different facts, claims, timeframes, and

13  [] different statements and custodians." Mot. at 8.  This position is flawed for several reason.  First,

14  and most importantly, this Court has already rejected Defendants' argument and recognized that:

15  "[T]he statements regarding the Montagnes Blanches [at issue in this action] appear to be part of a

16  campaign against [Plaintiffs] going back to 2012." ECF No. 269 at 7.  Second, it is undisputed that

17  all of the relevant custodians in this action received the Notice directing preservation of information

18  relevant to this action, acknowledged receipt, and certified to their compliance. *See supra* 4-5.  Third,

19  the Notice itself explained that Greenpeace continued to disseminate false claims and that the

20  obligation to preserve relevant information was ongoing and each of the custodians in this action

21  received quarterly updates and reminders that were specific to this case. *See id.*

22         The fact that the Notice was issued years before this litigation corroborates, rather than

23  undermines, Plaintiffs' preservation efforts.  "The duty to preserve material evidence arises not only

24  during litigation but also extends to that period before the litigation when a party reasonably should

25  know that the evidence may be relevant to anticipated litigation." *CTC Global Corp. v. Huang*, 2019

26  WL 6357271, at * (C.D. Cal. July 3, 2019) (quoting *World Courier v. Barone*, 2007 WL 1119196, at

27  *1 (N.D. Cal. Apr. 16, 2007)).

28

Notably, Defendants do not cite any authority requiring that litigation holds be sent in a specific form or within a certain proximity to the filing of a complaint.  This is because no such requirement exists.  The only requirement is that the Notice informs the potential custodians of the categories, dates, and sources of materials that need to be preserved, and is implemented once a party reasonably anticipates litigation. There is no dispute that the Notice meets these requirements.

Even if Resolute had not issued an adequate preservation notice—which it did—sanctions are not appropriate here, where it is undisputed that Resolute's employees preserved documents and Defendants have not identified any documents that are loss or missing.  Under federal law, courts look to the totality of the circumstances to determine whether a plaintiff's preservation efforts were reasonable.  *See Haynes v. Dart*, 2010 WL 140387 (N.D. Ill. Jan. 11, 2010) (citing *Danis v. USN Communications, Inc.*, 2000 WL 1694325, at *30 (N.D. Ill. Oct. 23, 2000) ("Given the breadth of Plaintiffs' claims and discovery requests, the court cannot conclude that the absence of a large-scale litigation hold was objectively unreasonable.") *see also Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (" We reject the notion that a failure to institute a "litigation hold" constitutes gross negligence *per se* . . . . 'the better approach is to consider [the failure to adopt good preservation practices] as one factor' in the determination of whether discovery sanctions should issue.") (citations omitted)). Here, in addition to issuing the broad 2014 Notice, Resolute took the following additional steps:  (i) automatically backed up all data annually; (ii) directed employees to execute acknowledgments of their obligations and intentions to comply with same, (iii) solicited information through questionnaires about the location of documents to be preserved, and (iv) and sent quarterly reminders that included references to this action once it was filed.  Defendants cannot contest the reasonableness of these steps, so they simply ignore them.

Under these circumstances, sanctions are not appropriate.

## B.     Plaintiffs Document Collection And Production Processes Were Reasonable And Consistent With The Federal And Local Rules.

Defendants' challenges to Plaintiffs' document collection and production processes likewise misrepresent the actual facts.  At all times, Plaintiffs' processes were reasonable and consistent with standard litigation practices for complex actions. The challenges Defendants raise with Plaintiffs'

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

search metrics resulted from their own failure to participate in the process at the outset of discovery, despite Plaintiffs' multiple requests and standard practices.

### 1. Plaintiffs Complied with Their Collection and Production Obligations

Plaintiffs went to great lengths to solicit search metrics from Defendants at the outset of discovery.  Despite multiple requests, Defendants never responded to Plaintiffs' inquiries. Tabaksblat Decl., ¶ 5.   Thereafter, Plaintiffs constructed their own search terms and identified appropriate custodians that would possess the most relevant information responsive to Defendants' requests, in light of federal rules' proportionality requirements. Tabaksblat Decl., ¶ 5.   Applying the identified search terms, for those six custodians alone, Plaintiffs reviewed more nearly 50,000 documents.  Blair Decl., ¶ 14.  Plaintiffs commenced their production in January, 2020 and made sixteen subsequent rolling productions, substantially completing their production by December 2020, and producing more than 10,000 documents. *Id.*, ¶ 15.  Plaintiffs' productions also included metadata identifying the custodians from whom the produced documents originated.  *Id.*, ¶ 10.  At no time between November 2019, when Plaintiffs' initially requested that Defendants propose search terms, and October 2021, did Defendants once inquire about the search terms Plaintiffs used or the custodians Plaintiffs collected from.  Tabaksblat Decl., ¶ 15.

To the contrary, in a complete abdication of their own responsibilities, Defendants failed to conduct any meaningful review of the documents produced by Plaintiffs before October 2021.[7] However, when they ultimately raised certain putative deficiencies with Plaintiffs' search metrics and production, Plaintiffs explained Defendants' misunderstandings about the collection and production processes, and undertook significant additional work to avoid burdening the court with another discovery dispute. Tabaksblat Decl., ¶ 15.  This effort led to the production of approximately 15,000 additional documents and substantial extensions to the fact discovery schedule to accommodate Defendants' demands. Tabaksblat Decl., ¶ 22.  As a result of this work, all of the challenges

---

[7] Defendants sent Plaintiffs a letter in June 2021 regarding responses to interrogatories.  *See* Koonce Decl., Ex. 2.  While that letter makes reference to certain damages documents that Defendants presumed missing, it failed to provide information sufficient for Plaintiffs to follow-up.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

Defendants raised during the discovery process have been fully addressed, and those that Defendants claim are still outstanding are based on misrepresentations of the record, or were raised for the first time in this motion:

**Custodians:** Without citation to a single case, Defendants claim that Plaintiffs were required to collect documents from every individual with any information potentially relevant to the case. Mot. at 10.    The Federal Rules require no such thing. Rather, they direct that discovery shall be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).  This is consistent with the Northern District of California's Guidelines for E-Discovery which recognize the need to limit the number of custodians and recommend that parties meet and confer about e-discovery at the commencement of discovery, in part, to avoid issues like the ones raised by Defendants here.  *See* Guidelines for the Discovery of Electronically Stored Information, Guideline 2.03 (Cooperation and Informal Discovery Regarding ESI) ("("The Court strongly encourages an informal discussion about the discovery of ESI (rather than deposition) at the earliest reasonable stage of the discovery process.").  Of course, that is exactly why Plaintiffs solicited input from Defendants prior to reviewing documents, and consistent with Plaintiffs' practice of providing Defendants with proposed search terms and custodians for Defendants' production, meeting and conferring about additional custodians once Plaintiffs reviewed Defendants' productions, and seeking early court intervention when the parties reached an impasse on Defendants' search metrics.  *See supra* at 8. Moreover, as Defendants concede, when they belatedly sought to meet and confer nearly two years after Plaintiffs first requested their input, Plaintiffs agreed to collect and produce documents for additional custodians and run supplemental search terms, and responsive documents have been produced.  Mot. at 11.  Thus, although Defendants go to great lengths to argue that they have been prejudiced by Plaintiffs' decision to limit the number of initial custodians, it is beyond dispute that Plaintiffs have now produced documents from all 12 custodians Defendants requested.   Moreover, Defendants likewise misrepresent that they were prejudiced in having to review a large number of documents produced hours before depositions.  Mot. at 14.  In all cases, Plaintiffs agreed to adjourn existing depositions, and consented to multiple extensions of the fact discovery deadline.  Tabaksblat Decl., ¶ 22.  Ultimately, any claimed prejudice

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

1   from receiving additional documents so late in the discovery process is due to Defendants' own

2   failures to timely pursue discovery, not any malfeasance on the part of Plaintiffs.[8]

3       **Text messages:**  Defendants misrepresent that Plaintiffs spoliated purportedly relevant text

4   messages.  In fact, all witnesses testified that it was "not [their] practice" to exchange text messages

5   about substantive business issues and that any messages strictly related to immediate, non-substantive

6   procedural issues.  *See* Ex. 12 Romeo Tr. 199:17-20 (noting the use of texts were limited to non-

7   substantive messages such as "hey, I'm running late . . . . "); Ex. 19, Goulding Tr. 326:11 – 327:7).[9]

8       **Hard Copy Documents:**  Defendants likewise misrepresent that Plaintiffs failed to preserve,

9   collect, and produce relevant hard copy documents.  Plaintiffs collected and produced hard copy files

10  where they existed, including from Messrs. Garneau and Dumoulin.  Tabaksblat Decl., ¶ 9, n.1.  In

11  the case of other witnesses, they testified that they only used electronic files, or their hard copy files

12  were simply exact duplicates of electronic documents in the production.  *See*, *e.g.*, Ex. 19, Goulding

13  Tr. 332:21-22 ("I do most of my work on a laptop"); Ex. 15 Kursman Tr. 232:17-18 ("So my notes

14  would – you would see them in the form of emails or in a Word document."). Here too, Defendants

15  resort to cherry-picking testimony, out of context.  For example, Defendants falsely claim that Mr.

16  Romeo conceded to purging relevant evidence.  In fact, Mr. Romeo testified that he did not "purge

17  stuff that had to be held," (Ex. 12, Romeo Tr. 103:13-22), and that "[t]ypically, if it had referenced

18  Greenpeace in any way, shape of form, it was held, (*see id.* 104:21 – 105:2).  Similarly, while

19  Defendants contend that Mr. DelVecchio burned and shredded relevant evidence, he testified that this

20  was limited to documents that were "not related to any of this."  Ex., 18, DelVecchio Tr. 54:16-17.

21      **Personal Email Accounts:**  Defendants' claim that Plaintiffs failed to collect relevant

22

---

23  [8] Defendants' claim that Plaintiffs allowed the custodians to conduct their own document collection
    is false.  As detailed in the accompanying Declarations, Resolute's in house counsel and IT

24  department worked closely with an outside vendor and outside counsel collect all email accounts,
    back-ups, shared drives, personal drives, hard copy documents, and other locations where relevant

25  documents were identified. Accordingly, Defendants' reliance on cases granting sanctions on that
    basis provide no support for Defendants' arguments.  *See* Mot. at 22-23 (citing cases).

26
    [9] While Defendants claim that certain witnesses testified that they did not recall being asked the

27  location of relevant documents, the documentary evidence demonstrates that each custodian received
    questionnaires about the location of relevant documents.  *See* Vachon Decl., Ex. 2.

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

documents from personal devices is likewise predicated on mischaracterizations of the record.  Ex. 17, Pinto Tr. 75:24-76:8.   Plaintiffs produced a limited number of documents showing that Ms. Pinto occasionally sent emails from her professional email address to her personal account, which Ms. Pinto testified only happened in the limited cases where she had technical difficulties, and even then emailed all drafts and versions back to her Resolute account, and did not save documents locally on her personal computer.  *See* Pinto Tr. 89:9-11.  Any documents that Ms. Pinto sent back to her professional address would have been captured in the search and review.  Tabaksblat Decl., Ex. 7. Notably, of the 5,156 documents produced that Ms. Pinto was a recipient or sender of the email only 39 of them (approximately 0.76%) included her personal email address; evidencing that it was a rare occurrence when Ms. Pinto used her personal email address. Blair Decl., ¶ 18; Tabaksblat Decl., Ex. 7.[10]

**Metadata**: Plaintiffs produced metadata for the vast majority of the documents produced, which specifically identified Plaintiffs' custodians.   Blair Decl., ¶¶ 10-11. Indeed, Defendants themselves concede that of the approximately 11,000 documents initially produced only 700 (less than (7%) percent) did not have metadata.  Mot. at 14.  Those documents are from hard copy files or other sources for which metadata is not available.  Blair Decl., ¶ 11.  In any event, Defendants did not raise any issues about the lack of metadata for these limited files until October 2021, more than 10 months after Plaintiffs substantially completed their initial document production.

**Goulding and Kursman productions**:   Defendants go to great lengths to argue that Plaintiffs' production of documents from the custodial files of Messrs. Kursman and Goulding are disproportionate to their roles in responding to Defendants' claims and thus contend that the only logical explanation is that Plaintiffs failed to properly preserve or collect documents.  Mot. at 13, 23. Neither conclusion is correct.  In fact, while Plaintiffs properly preserved and collected tens of thousands of documents for each custodian, of the approximately 25,000 documents produced by

---

[10] Defendants contend that Francois Dumoulin also used a personal email address, but he testified to the exact opposite:  "Q: Did you use that personal email address for work when you were working at Resolute?  A:  No.  And, in fact, I barely use it.  This was probably one of the last few times I used it for work . . . ." Ex. 20., Dumoulin Tr. At 175:2-19.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

1  Plaintiffs, Kevin Goulding was the custodian of more than 1,600 of them (which is consistent with

2  the amount of documents produced for all custodians), and Seth Kursman was the custodian of more

3  than 3,700 of them.[11] Blair Decl., ¶ 20. Moreover, Kevin Goulding was not a custodian prior to

4  October 2021, so Defendants' analysis of documents from him as custodian prior to that date are

5  irrelevant. Additionally, when he was added as a custodian, the de-duplication process removed

6  documents that had been produced by another custodian. .  *Id.* ¶ 19. Finally, while Defendants claim

7  that there are "almost no documents" from Mr. Goulding from December 2016 through the period

8  after the May 2017 Clearcutting Report, there are actually 216 documents with Mr. Goulding as the

9  custodian or the de-duped custodian from December 16, 2016 through June 30, 2017.  *Id.*  Similarly,

10  Plaintiffs produced more than 400 documents with Mr. Kursman as the custodian, de-duped (or

11  presumed de-dupe custodian) custodian for that same period.  *Id.* ¶ 20.

12    **Third Party Documents**: Defendants' claim that Plaintiffs' failure to produce certain

13  documents produced by third parties likewise demonstrates deficiencies in Plaintiffs' preservation

14  and collection processes (Mot. at 13, 23), is similarly flawed.[12]  As detailed in the annexed Exhibit 7

15  to the Tabaksblat Declaration, the identified exhibits were either (a) produced, (b) were collected but

16  a small number inadvertently not produced.

17    **E-mail Archives**: Defendants argue that the Plaintiffs intentionally withheld thousands of

18  relevant documents stored in an e-mail archive.  Mot. at 12, 23.  In fact, the failure to produce the

19  archives was an oversight attributed to the transition of personnel when Resolute transitioned from

20  Lotus Notes to Outlook, which Plaintiffs immediately investigated and addressed when Defendants

21  raised it.  More importantly, the vast majority of documents in archive folders were duplicates of

22

23

24  [11] The number of documents for which Mr. Kursman is the custodian is likely even more than 3,700

25  because of the inability to identify documents for which Mr. Kursman was a de-duped custodian for
documents processed by Plaintiffs' prior firm.  Blair Decl., ¶ 18-20.

26  [12] Notably, Defendants are only able to identify 11 of such documents in the over 2,400 documents

27  produced by third parties, which represent only 0.0045%.  This actually demonstrates the
reasonableness of Plaintiffs' search metrics and processes.  *See* Ex. 7.

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

documents previously produced months earlier by Plaintiffs.  (See *supra* at 9, 18).)[13]

Taken together, Defendants fail to identify any missing or destroyed evidence, let alone sanctionable conduct.  At best, Defendants have identified some deficiencies that Plaintiffs promptly investigated and addressed.  This is standard practice in complex cases.  Indeed, federal courts routinely recognize that document discovery, and e-discovery in particular, is not a "perfect" process. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013) ("[W]hile parties must . . . conduct a reasonable search when responding to the requests, the Federal Rules do not demand perfection.").  It is not only common, but expected and acceptable, that supplemental productions are made, issues raised and addressed, and some potentially relevant documents may not be produced. *Id.* ("The rules of discovery do not demand perfection, clairvoyance, or miracle workings in the production of documents. Crying foul and casting aspersions whenever there's a hole in Defendants' document productions or whenever some small number of documents (even crucial documents) are found relatively late in the process does not advance Plaintiffs' cause and is not conducive to the timely, efficient resolution of this litigation.").  Indeed, "[a] party may comply in good faith with its discovery obligations and yet there may be supplemental productions or even additional responsive documents that were inadvertently omitted. Such supplemental productions or responses do not necessarily equate to discovery misconduct." *Id.*

### C.     Plaintiffs' Interrogatory Responses Were Timely And In Compliance With This Court's Orders.

Finally, Defendants' challenges to Plaintiffs' damage disclosures suffer from the same flaws as their prior arguments.  Here too, Defendants' claims are predicated on mischaracterizations of Plaintiffs' interrogatory responses, this Court's order, the governing rules, and the record in this case.

By Order dated January 20, 2021, this Court directed Plaintiffs to provide supplemental responses to three Interrogatories:  Numbers 7, 13, and 14.  ECF. No. 299. The Court did not require further answers to any other interrogatory responses.  *Id.*   In so ruling, the Court recognized that

---

[13] Defendants make much of the fact that during certain depositions, witnesses mentioned documents Defendants thought should have been produced. Mot. at 23.  In response, Plaintiffs promptly located such documents, if they existed, and produced them.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

damage calculations in defamation cases are complex and generally require expert analysis. *Id.* The Court reasoned "Plaintiffs have alleged that they suffered damages based on the actionable statements. Plaintiffs presumably made such allegations based on facts in their possession. Plaintiffs are now obliged to provide that information pursuant to their duty to respond to discovery." (Order at 2 (internal citations omitted).) The Court did not foreclose the possibility that additional information could be discovered, expounded upon, or changed, during the course of discovery. Nor did the Court foreclose the possibility that expert discovery could impact these responses. Instead, the Court directed Plaintiffs to reveal all information available to Plaintiffs as of the date of the Order in response to the three identified interrogatories. Plaintiffs complied on February 20, 2021.

More than a year later, after over 30,000 documents were exchanged and 30 depositions were conducted, Plaintiffs supplemented certain interrogatory responses—including responses 6 and 10, that were not addressed by the Damages Order—to provide additional details regarding previously disclosed categories of damages and to provide additional information learned in discovery.

In a thinly veiled effort to manufacture a basis for this sanctions motion, Defendants now claim that Plaintiffs' April 2022 supplemental responses include "fourteen new damages claims." Mot. at 1, 6-7. Nothing could be farther from the truth. In fact, the majority of information that was set forth in the April 2022 responses were previously disclosed, and the limited new information is merely additional examples of the categories of damages (lost profits, lost opportunities, and loss of market share) that were previously identified. *See* Ex. 5 (February 2021 Interrogatories, No. 7; Ex. 23, August 2020 Interrogatories, No. 10.) Moreover, much of the information set forth in the April 2022 responses were reflected in documents produced between 2020 and 2021 and expounded on through depositions, including margin and ASF reports which detail customer transactions over the span on multiple years.[14] With respect to lost opportunities and loss of market share, Plaintiffs

_____

[14] As further evidence of Defendants' egregious misrepresentations, Defendants claim that it was "new" information that certain customers declined to grow their relationships with Resolute, or that certain book publishing customers declined to promote or use Resolute paper for prominent authors. These facts are at the heart of Plaintiffs' lost profits which was disclosed as a category of damage in the February 2021 Interrogatories (*see* Ex. 5 at No. 7)and discussed during numerous depositions. Moreover, Kimberly Clark, P&G, and UPM are named in Plaintiffs February 2021 Interrogatory

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

repeatedly represented that they are claiming damages for these losses.  Exs. 5, 6, 22.  The supplemental responses merely provided further examples of these damages based on information learned during discovery.

Among other things, during the intervening year between Plaintiffs' February 2021 and April 2022 disclosures, Plaintiffs worked diligently with experts to refine their damage theories and calculations, Plaintiffs undertook significant work to prepare for the deposition of their corporate representative on damages, including numerous meetings with Resolute witnesses and countless hours of preparation with Resolute's former CEO, Richard Garneau. Tabaksblat Decl., 25.  Thus, after compiling this information, reviewing operative documents, and preparing witnesses, Plaintiffs supplemented their interrogatory responses prior to the deposition of Mr. Garneau in his personal capacity or as the corporate representative, and prior to the close of fact discovery.  *Id.*

These supplemental responses are not only allowed under the rules, they are required.  Rule 26(e) states that a party responding to an interrogatory "must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, . . . ."  Moreover, the Advisory Committee Notes to the 1993 Amendment explains that the obligation is ongoing and is not limited by any discovery cut off period: "Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches . . . ."  *See also Woods v. Google, Inc.*, 2014 WL 1321007, at *4 (N.D. Cal. Mar. 28, 2014) ("The Court can definitively state that the Rule 26(e) duty to supplement or correct incomplete or incorrect responses does, in fact, extend beyond the discovery cutoff date."); *Hernandez v. Polanco Enters., Inc.*, 19 F. Supp. 3d 918, 933 (N.D. Cal. 2013) (same). Revising damages theories in conjunction with expert analysis and with information learned during the fact discovery process is standard practice in litigation.  *Id.*  Theories of damages when a complaint is filed are not necessarily the same after fact development.  In light of this necessarily iterative process, Court have declined to

---

Responses.  (*See id.*, at 5; *compare* Mot. at 7 (claiming information about those customers is "new.")).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

impose discovery sanctions, where as here, the interrogatory responses "expand[ed] . . . previous response[s]" within the scope of the prior responses and/or that "the 'new' information is what is requested and what is required by the discovery Rules." *Carlson v. FedEx Ground Package System, Inc.*, 2012 WL 4762113 (D. Mont. Sept. 12, 2012).  Indeed, recognizing the fluidity of damages theories and the right to supplement throughout discovery, Defendants demanded that Plaintiffs' corporate representative on damages be deferred until the end of fact discovery.[15]

For all of these reasons, Defendants' request for any sanctions related to the damage disclosures are inappropriate, let alone the extreme terminating sanctions they seek.  Their heavy reliance on *United States v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 617 F.2d 1365 (1980) to support their request for termination sanctions is misplaced, since that case involved violations of  four separate court orders to respond to damage interrogatories, the failure to heed multiple court warnings, and the prior imposition of monetary sanctions that were not successful to compel compliance with discovery obligations.  The factual circumstances could not be more different here.[16]

## II.    DEFENDANTS HAVE FAILED TO DEMONSTRATE PREJUDICE.

Even if Defendants had met their burden to demonstrate missing or destroyed evidence,

---

[15]  As further evidence that Defendants were aware that Plaintiffs' damage analysis was ongoing, in February 2022, Defendants requested additional information concerning Plaintiffs' damages.  *See* Koonce Dec. Ex. 3, at 2-3. In March 2022, Plaintiffs responded that instead of engaging in discovery via letter, Plaintiffs would supplement their interrogatories to address, in part, the questions posed. Ex. 22. Thus, Defendants were aware even when negotiating an extension of the fact discovery schedule to May 2022, that Plaintiffs supplement would be forthcoming.

[16] The remaining cases Defendants rely on are similarly inapposite.  *See, e.g, Sanchez v. Rodriguez*, 298 F.R.D. 460 (C.D. Cal. 2014) (imposing sanctions where plaintiff failed to respond to discovery requests *at all*, even after plaintiff was warned that his continued failure to do so would result in sanctions, including dismissal); *Sas v. Sawabeh Information Sewrvices*, 2015 WL 12711646 (C.D. Cal. Feb. 6, 2015) (awarding sanctions because discovery that was *repeatedly* ordered to be produced by the Court was not produced until after discovery cut-off and *after* the Court-scheduled depositions of the Rule 30(b)(6) witnesses); Here, the Court recognized that certain information *was not* required to be produced at this stage. *Compare* Mot. at 19 (citing *Choudhuri v. Wells Fargo Bank, N.A.*, No. 15-cv-03608-VC (KAW), 2017 WL 5598685 (N.D. Cal. Nov. 21, 2017); *JTS, LLC v. Nokian Tyres PLC*, No.: 3:14-cv-00254 JWS, 2017 WL 68615, at *2-3 (D. Alaska Jan. 6, 2017)).  Cases precluding evidence of damages *categories* that were never even mentioned similarly are irrelevant, where Plaintiffs have repeatedly put Defendants on notice of the categories of damages they seek.  *Cf. Oracle USA Inc. v. SAP AG*, 264 F.R.D. 541 (2009).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

1   discovery malfeasance, or violations of a court order—which they have not—their request for

2   sanctions must still be denied because they have failed to establish any prejudice.

3        While Defendants go to great lengths to challenge Plaintiffs' initial production, they readily

4   concedes that each time they belatedly raised a putative issue, Plaintiffs immediately addressed it.

5   *See* Mot. at 10-14.

6   Their claims of prejudice from late productions and disclosures are likewise belied by the record.  In

7   every case other than Mr. Goulding, all relevant documents from the witnesses custodial file was

8   produced prior to the witnesses' deposition, and where appropriate, the deposition was adjourned

9   until Defendants had adequate time to prepare. Ex. 4.  Plaintiffs also consented to multiple extensions

10  of the discovery deadline. ECF No. 418.  Far from prejudice to Defendants, the multiple fire-drills,

11  adjournments, and delays constitute prejudice to Plaintiffs.    Likewise, in the case of Plaintiffs'

12  damage disclosures, Plaintiffs supplemented their responses prior to the depositions of key damage

13  witnesses, namely Mr. Garneau, Plaintiffs' corporate representative on damages,[17] and Mr. Lafave,

14  the director of marketing and sales.  Tabaksblat Decl., ¶ 26. Moreover, at no point did Defendants

15  ever claim that they were unable to examine a witness on certain discovery produced after that

16  witness's deposition, nor did they ever make a request to recall a witness—a request that Plaintiffs

17  would have accommodated without court intervention.  Under these circumstances, Defendants

18  cannot establish the requisite prejudice required to warrant the imposition of sanctions.

19                                  **CONCLUSION**

20        For the foregoing reasons, defendants have not demonstrated spoliation, nor have they

21  demonstrated bad faith, as required by Rule 37 of the Federal Rules of Civil Procedure.  Accordingly,

22  Plaintiffs their motion should be denied in its entirety.

23

24  [17] Defendants claim that Mr. Garneau did not adequately testify to the content of the Fourth
    Interrogatories, and that he instead deferred questions to expert discovery, is taken out of context.

25  For example, Mr. Garneau covered, among others, topics relating to the refinement of Plaintiffs'
    damages  claims.  *See, e.g.*, Ex. 21 Garneau 30(b)(6) Tr. 127:9-128:7 (explaining impact of

26  Greenpeace campaign on ability to generate business);  *Id.* Tr. 129:15-25 (explaining impact of
    Greenpeace campaign on strategic opportunities); *Id.* Tr. 155:6-14 (concerning mill closures and

27  impact of Greenpeace campaign).

28

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**

DATED: June 17, 2022

Respectfully submitted,

BROWN RUDNICK LLP

By:   */s/ Lauren Tabaksblat*

LEO J. PRESIADO (State Bar No. 166721)
2211 Michaelson Drive, 7th Floor
Irvine, CA 92612
Telephone: (949) 752-7100
Facsimile: (949) 252-1514
Email: lpresiado@brownrudnick.com

Michael J. Bowe (admitted *pro hac vice*)
*mbowe@brownrudnick.com*
Lauren Tabaksblat (admitted *pro hac vice*)
*ltabaksblat@brownrudnick.com*
7 Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801

*Attorneys for Plaintiffs*

CASE NO. 4:17-CV-02824-JST (KAW)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS (ECF NO. 459)**