UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESOLUTE FOREST PRODUCTS, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> GREENPEACE INTERNATIONAL, et al., <br><br> Defendants. | Case No. 17-cv-02824-JST <br><br> **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING MOTION TO AMEND COMPLAINT AS MOOT** <br><br> Re: ECF Nos. 501, 506, 518 |

Before the Court is Defendants Greenpeace International, Greenpeace, Inc., Daniel Brindis, Amy Moas, and Rolf Skar's (collectively, "Greenpeace") motion for summary judgment. ECF Nos. 501, 506.[1] The Court will grant the motion. The Court will also deny Plaintiffs Resolute Forest Products, Inc., Resolute FP US, Inc., Resolute FP Augusta, LLC, Fibrek General Partnership, Fibrek U.S., Inc., Fibrek International, Inc., and Resolute FP Canada, Inc.'s (collectively, "Resolute" or "Resolute Plaintiffs") pending motion to amend the complaint, ECF No. 518, as moot.

I.  **BACKGROUND**

The facts of this long-running dispute are well known to the parties, and the Court has summarized them in detail in other orders, ECF Nos. 173, 185, so it does not elaborate them here.

In summary, Resolute Plaintiffs are corporate entities in the forest products industry.

---

[1] When Greenpeace filed its motion for summary judgment, ECF No. 501, it also filed an administrative motion to consider whether certain materials of Resolute's contained in the motion and supporting exhibits should be sealed, ECF No. 502. In response to the motion Resolute indicated that it did "not object to unsealing" certain exhibits and portions of the motion for summary judgment. ECF No. 504 ¶¶ 4-5. The Court ordered Greenpeace to file unredacted versions of the materials that Resolute did not seek to maintain under seal, ECF No. 505, which Greenpeace did on January 10, 2023, ECF No. 506. Accordingly, this order addresses ECF Nos. 501 and 506.

Resolute contends that Greenpeace made false and defamatory misrepresentations regarding Resolute's logging practices in Canada, which persuaded its customers to stop doing business with it. ECF No. 185 ¶¶ 5-18.

Resolute initially filed its case in the Southern District of Georgia on May 31, 2016 against Greenpeace International, Greenpeace, Inc., Greenpeace Fund, Inc., Stand (formerly known as ForestEthics) and their employees Moas, Skar, Brindis, and Todd Paglia. ECF No. 1. Following transfer to this Court, the Court granted Greenpeace's motions to dismiss and strike Resolute's complaint in its entirety. ECF No. 173. Resolute then filed an amended complaint, which brought nine causes of action.

On January 29, 2018, Greenpeace moved to dismiss and strike the first amended complaint, ECF Nos. 197-199, which motion the Court granted in part and denied in part on January 22, 2019, ECF No. 246. The Court's order dismissed with prejudice Resolute's complaint, except for its claims for defamation and violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, regarding two statements and certain transmissions of those statements.[2] ECF No. 246 at 8-34.

The first statement is: "in the Montagnes Blanches Forest in Quebec, there are three caribou herds, and in the Caribou Forest in Ontario there is an additional herd where habitat disturbance, including some from Resolute's operations, is jeopardizing their survival." ECF No. 185-2 at 2. This statement appears in a December 16, 2016 letter written by Moas that was distributed to Macmillan Publishers, Holtzbrinck Publishing Group, Penguin Random House, Hachette Book Group, and Scholastic. ECF Nos. 185 ¶¶ 304, 360, 369, 185-2 at 1-2. The second statement is: "Resolute has acquired three harvest blocks through auction sales inside the Montagnes Blanches. . . . All three sites have been logged[.]" ECF No. 185-4 at 1. This statement appeared in a May 2017 report titled "Clearcutting Free Speech: How Resolute Forest Products is

---

[2] In its first amended complaint, Resolute identified a series of allegedly defamatory statements, and for each statement identified the "publication[s]" where those statements appeared. ECF No. 210-1. This resulted in 296 alleged incidents of defamatory statements. The Court dismissed with prejudice claims regarding 288 of these statements. ECF No. 246 at 8-34.

2

going to extremes to silence critics of its controversial logging practices." *Id.* In June 2017, Brindis, Moas, and Skar distributed this report during the 2017 Book Exposition at the Jacob Javits Center in New York. ECF No. 185 ¶ 311. The Court refers to these statements and transmissions collectively as the "2016 and 2017 Montagnes Blanches Statements" or the "Statements."[3]

The Court found that Resolute adequately alleged that the portion of the Statements noting that Resolute was logging in the "Montagnes Blanches" was false and defamatory. ECF No. 264 at 17-19. It also found that Resolute sufficiently alleged that Greenpeace acted with actual malice because it continued to state that Resolute logged in the Montagnes Blanches well after Quebec's Minister of Forests, Wildlife, and Park's Laurent Lessard publicly stated on May 31, 2016 that Greenpeace's map showing such logging inaccurately the area known as the Montagnes Blanches (the "Lessard Statement"). *Id.* The Court also found that the rest of the words, phrases, and/or clauses in the Statements were not actionable. *Id.* at 12-20, 34.

On December 19, 2022, Greenpeace moved for summary judgment. ECF No. 501. Resolute filed an opposition to the motion on February 9, 2023, ECF No. 513,[4] and Greenpeace filed a reply in support of the motion on March 9, 2023, ECF No. 526. The Court held a hearing on Greenpeace's motion on April 20, 2023.

## II.  LEGAL STANDARD

A party is entitled to summary judgment "only if, taking the evidence and all reasonable inferences in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (quoting *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019)). A dispute is genuine only if there is sufficient evidence "such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material only if

---

[3] The Court considers only the statements that survived the Court's order on Greenpeace's motion to dismiss.

[4] Resolute's opposition initially contained redactions of some of Greenpeace's material, but Greenpeace indicated that it did not oppose the unsealing of the material. *See* ECF No. 522. Accordingly, the Court ordered that the redacted material in the opposition be unsealed. *Id.* Resolute publicly filed an unredacted version of the opposition on March 9, 2023. ECF No. 525.

3

it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Because Greenpeace is the moving party and does not bear the ultimate burden of persuasion at trial, it bears "both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Cos.*, *Ltd. v. Fritz Cos.*, *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to carry its initial burden of production, Greenpeace "must either produce evidence negating an essential element of [Resolute's] claim[s] . . . or show that Resolute does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* In order to carry its ultimate burden of persuasion, Greenpeace "must persuade the court that there is no genuine issue of material fact." *Id.* If Greenpeace carries its burden of production, Resolute must produce evidence to support its claim, *id.* at 1103, and "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).

It is not the duty of the district court "to scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards*, 55 F.3d at 251). "[A] mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, [Plaintiffs] must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (quoting *Liberty Lobby*, 477 U.S. at 252, 249). If Resolute fails to make this showing, then Greenpeace is entitled to summary judgment. *Nissan Fire*, 210 F.3d at 1103.

**III.   DISCUSSION**

   **A.   Defamation Claim**

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010) (citing *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007)). The parties agree that Resolute is a limited public figure, and therefore, it must also prove that Greenpeace acted with actual malice as to each defamatory statement. *Makaeff v. Trump Univ.*,

4

1 *LLC*, 715 F.3d 254, 265 (9th Cir. 2013).

2   Greenpeace argues that the 2016 and 2017 Montagnes Blanches Statements are "(1) not defamatory; (2) substantially true and/or protected opinion incapable of being proven true or false; [and] (3) not made with actual malice; and (4) [that Resolute has] not suffered any special damage as a result of the Statements." ECF No. 506 at 27. It further argues that Resolute's UCL claim fails as a matter of law because it is predicated upon its defamation claim. *Id.* at 47.

### 1. Defamatory Meaning

Greenpeace argues that the 2016 and 2017 Montagnes Blanches Statements "are incapable of defamatory meaning because they in no way imply that Resolute was operating illegally or in an area that was off-limits to logging." *Id.* at 28. Resolute counters that "the record is replete with evidence that [the 2016 and 2017 Montagnes Blanches Statements] – viewed in context – were intended to and did mislead Resolute's customers that Resolute was harvesting in the off-limits, ecologically sensitive Montagnes Blanches." ECF No. 525 at 35.

The California Supreme has "said that libel includes 'almost any language which, upon its face, has a natural tendency to injure a person's reputation.'" *Slaughter v. Friedman*, 32 Cal. 3d 149, 153 (1982) (quoting *Forsher v. Bugliosi*, 26 Cal.3d 792, 803 (1980)). A statement has a defamatory meaning if it "exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, *or which has a tendency to injure him in his occupation*." *Id.* (quoting Cal. Civ. Code § 45 (emphasis in original) (alternation in original)). "A corporation may recover for defamatory statements having 'a tendency to directly affect (its) property . . . or occasion it pecuniary injury.'" *Trans World Accts., Inc. v. Associated Press*, 425 F. Supp. 814, 818 (N.D. Cal. 1977) (quoting *Western Broad. Co. v. The Times-Mirror Co.*, 14 Cal. App. 2d 120, 124 (1936)).

"In determining whether a publication is libelous or not it must be considered as a whole and must not be divided into segments and each portion treated as a separate unit." *Megarry v. Norton*, 137 Cal. App. 2d 581, 582 (1955). "In determining whether words are capable of defamatory meaning, the courts will construe them according to the fair and natural meaning that will be given them by reasonable persons of ordinary intelligence . . . ." *Id.* at 583; *see also*

5

*Balzaga v. Fox News Network, LLC*, 173 Cal. App. 4th 1325, 1338 (2009) ("The defamatory character of language is measured according to the sense and meaning . . . which such language may fairly be presumed to have conveyed to those to whom it was published." (quoting *Savage v. Pac. Gas & Elec. Co.*, 21 Cal. App. 4th 434, 447 (1993) (alteration in original)).

Where the allegedly defamatory statements have an "ambiguous meaning, or [are] innocent on their face and defamatory only in the light of extrinsic circumstances, the plaintiff must plead and prove that as used, the words had a particular meaning, or 'innuendo,' which makes them defamatory." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999), *as modified* (June 23, 1999). And "[w]here the language at issue is ambiguous, the plaintiff must also allege the extrinsic circumstances which show the third person reasonably understood it in its derogatory sense (the inducement)." *Id.* When analyzing the allegedly defamatory statements, "the court must first determine as a question of law whether the statement is reasonably susceptible of a defamatory interpretation[.]" *Bently Rsrv. L.P. v. Papaliolios*, 218 Cal. App. 4th 418, 428 (2013) (quoting *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1608 (1991), *reh'g denied and opinion modified* (Sept. 6, 1991)). And "if the statement satisfies this requirement, it is for the jury to determine whether a defamatory meaning was in fact conveyed to the listener or reader." *Id.* (quoting *Kahn*, 232 Cal. App. 3d at 1608).

Here, Resolute has introduced evidence that statements that a company is logging in Montagnes Blanches are susceptible of a defamatory interpretation: that the company is logging in an area that is inaccessible to the forest products industry and "has protection status." *E.g.*, ECF Nos. 514-41 at 7 ( "The Montagnes Blanches sector currently has protection status covering 5,300 km$^2$");[5] 514-43 at 5 (noting that it "was the common knowledge that Montagnes Blanches was either north of the northern limit unaccessible [sic] to the industry, or a protected area that was –

---

[5] Greenpeace argues that even if Resolute's customers understood the 2016 and 2017 Montagnes Blanches Statements to refer to the Montagnes Blanches area identified in the Lessard Statement, "there would still be no defamatory meaning" because the area includes "part of the Massif de Manouanis" that "is below the northern limit and available for logging operations." ECF No. 506 at 29-30. The Court rejects this argument. The Lessard Statement creates a dispute of fact by defining Montagnes Blanches as a "sector" that "currently has protection status." ECF No. 514-41 at 7.

6

where logging was prohibited"). Greenpeace argues that read in context, the Statements are not susceptible of this meaning. It points to the word "forest" after the phrase "Montagnes Blanches" in the 2016 Statement, ECF No. 526 at 10 (emphasis omitted), and language in the 2017 Statement that the areas at issue were acquired by Resolute at government auction and had "high conservation values that local organizations have for years sought to protect—and thus was not already protected,'" *id.* (emphasis omitted) (quotation marks and citation omitted), as evidence that readers of these statements would not conclude that Resolute was engaged in impermissible logging activity.

Certainly, this language is susceptible to the interpretation Greenpeace gives it. But that means only that the language is susceptible to more than one meaning – a dispute of fact that must be resolved by a jury. *See Bently Rsrv. L.P.*, 218 Cal. App. 4th at 428. Moreover, Greenpeace's arguments are refuted by evidence that some readers interpreted the Statements in their defamatory sense. Certain of Resolute's customers requested further information after receiving the 2016 and 2017 Montagnes Blanches Statements, indicating that they found Greenpeace's statements concerning. *E.g.*, ECF No. 515-15 at 5 ("Macmillan ask[ed] for a tour he wanted to see for himself and see the map and see the operation into the government-approved forest management unit and have understanding."); *see also* ECF Nos. 515-17 at 2-3, 515-19 at 2-3, 515-22 at 6-7, 515-25 at 2. Also, a Resolute employee testified that Resolute's customers "were really, really, really concerned about [Greenpeace's] attacks, and they believed that [Resolute was] doing something that was basically – that we were not compliant with our obligation, that we were not basically compliant with the laws and regulations." ECF No. 515-15 at 6. Accordingly, the Court finds that there is a dispute of fact regarding whether the 2016 and 2017 Montagnes Blanches Statements are susceptible of a defamatory meaning.

### 2. Falsity

Greenpeace argues that because the phrase "Montagnes Blanches" is "capable of multiple meanings," the 2016 and 2017 Montagnes Blanches Statements are "a matter of opinion, incapable of being proven true or false." ECF No. 506 at 32-33. And even if the Statements matters of opinion, they are still not actionable because they true. *Id.* at 36-39. Resolute contends that the

7

2016 and 2017 Montagnes Blanches Statements are statements of fact, not opinion, because "defendants intended their reports as assertions of fact based on 'best available science.'" ECF No. 525 at 38. Resolute also contends that the Statements are false, including because they are based on incorrect facts. *Id.* at 33-38.

The Court first addresses whether the 2016 and 2017 Montagnes Blanches Statements constitute statements of opinion or fact. When determining whether a statement can reasonably be interpreted as a factual assertion, the Court must examine the totality of the circumstances in which it was made. *Knievel v. ESPN*, 393 F.3d 1068, 1074-75 (9th Cir. 2005). In making this determination, courts look to the following factors:

> First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work. Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

*Id.* at 1075 (quoting *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995)).

"[I]t is a question of law for the court whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact." *Bently Rsrv. L.P.*, 218 Cal. App. 4th at 428 (quoting *Kahn*, 232 Cal. App. 3d at 1608). "If that question is answered in the affirmative, the jury may be called upon to determine whether such an interpretation was in fact conveyed." *Id.* (quoting *Kahn*, 232 Cal. App. 3d at 1608); *see also Good Gov't Grp. of Seal Beach, Inc. v. Superior Ct.*, 22 Cal. 3d 672, 682 (1978) ("Where . . . the allegedly libelous remarks could have been understood by the average reader in either sense, the issue must be left to the jury's determination."); *Rodriguez v. Panayiotou*, 314 F.3d 979, 985-86 (9th Cir. 2002) ("If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury." (quoting *Campanelli v. Regents of Univ. of Cal.*, 44 Cal. App. 4th 572, 578 (1996)).

The Court finds that both Statements are likely to be taken as statements of fact that Resolute was harvesting in the Montagnes Blanches region. The Statements were included in

8

publications that were held out as ones based on science and evidence without any cautionary language, which the readers, Resolute's customers, reasonably could have read as factual. *See Piping Rock Partners v. David Lerner Assocs.*, 946 F. Supp. 2d 957, 971 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015); *Knievel*, 393 F.3d at 1074-75.

Additionally, the term "Montagnes Blanches" "is sufficiently factual to be susceptible of being proved true or false," *Knievel*, 393 F.3d at 1075, because there is evidence that it "was the common knowledge that Montagnes Blanches was either north of the northern limit unaccessible [sic] to the industry, or a protected area that was – where logging was prohibited." ECF No. 514-43 at 5.[6] The evidence submitted by Greenpeace to demonstrate that Montagnes Blanches does not have a fixed meaning does not make the term incapable of being proven true or false. Instead, it creates a factual dispute as to the term's meaning.[7] Accordingly, the Court cannot conclude that the "only reasonable interpretation of the statements at issue," *Manufactured Home Communities, Inc. v. County of San Diego*, 544 F.3d 959, 964 (9th Cir. 2008), is that they are statements of opinion.

The Court next addresses whether the 2016 and 2017 Montagnes Blanches Statements are unactionable because they are true. "Substantial truth is a defense to defamation . . . claims." *Glob. Plasma Sols., Inc. v. IEE Indoor Env't Eng'g*, 600 F. Supp. 3d 1082, 1097 (N.D. Cal. 2021). "[W]hen substantial truth is not evident to the court," the question of substantial truth is one for the jury. *D.A.R.E Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1288 (C.D. Cal. 2000), *aff'd sub nom. D.A.R.E. Am. v. Rolling Stone Mag.*, 270 F.3d 793 (9th Cir. 2001); *see also Maheu v. Hughes Tool Co.*, 569 F.2d 459, 466 (9th Cir.1977) ("Applying [the substantial truth] standard,

---

[6] Greenpeace criticizes Resolute's evidence on this point as "self-serving." The Ninth Circuit "[has] previously acknowledged that declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). The credibility of this evidence is for a jury.

[7] Because of this factual dispute, the caselaw Greenpeace relies upon for the proposition that "word[s] that lack[] precise meaning" cannot be "actionable under defamation type claims" is inapposite. *See Skidmore v. Gilbert*, No. 20-cv-06415-BLF, 2022 WL 464177, at *9 (N.D. Cal. Feb. 15, 2022), *appeal dismissed*, No. 22-15394, 2023 WL 2552349 (9th Cir. Feb. 8, 2023); *Experian Info. Sols., Inc. v. Carfax, Inc.*, No. 11 CV 08927, 2012 WL 2597915, at *5 (N.D. Ill. July 5, 2012); *Rosen v. Am. Israel Pub. Affs. Comm., Inc.*, 41 A.3d 1250, 1258 (D.C. 2012).

1  after a careful review of the record, we conclude that there were sufficient disputed facts to require
2  the case to go to the jury"). The Court finds that there is a dispute of fact as to whether it is
3  substantially true that Resolute was logging in the Montagnes Blanches for the same reasons it
4  finds that there is a factual issue as to whether the Statements are statements of fact, i.e., there is a
5  dispute as to whether the term "Montagnes Blanches" is commonly known to be a protected
6  region.

In sum, the Court finds that there is a genuine issue of fact as to whether the 2016 and 2017 Montagnes Blanches Statements are provably false.

### 3. Actual Malice

Greenpeace argues that Resolute cannot prove that the 2016 and 2017 Montagnes Blanches Statements were made with actual malice because the evidence demonstrates that Greenpeace "(1) believed [its] map of the Montagnes Blanches was an accurate and scientifically credible depiction . . . ; and (2) did not believe the Lessard Statement rendered their map inaccurate or misleading, as Minister Lessard was talking about entirely different issues, comparing apples to oranges, and was also politically biased in favor of Resolute."[8] ECF No. 506 at 40. Resolute counters that the evidence demonstrates Greenpeace acted with actual malice because (1) Defendants "conceded . . . that they reviewed Minister[] Lessard's statement"; (2) "defendants failed to preserve, and in the case of defendant Brindis, actively deleted critical Skype messages despite pending litigation, litigation hold notices and obligations to preserve"; and (3) "each of the tactics and misrepresentations set forth above were carried out in furtherance of an explicit, documented plan to falsely accuse Resolute of harvesting in off-limits forests[.]" *Id.* at 40, 42.

As with any claim, the summary judgment standard for defamation actions is "whether the record, construed in a light most favorable to the party against whom the judgment has been entered, demonstrates there are genuine issues of fact which, if proven, would support a jury verdict for that party." *Reader's Dig. Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 252 (1984). But

---

[8] Greenpeace also argues that there is no actual malice because the 2016 and 2017 Montagnes Blanches Statement were statements of opinion and not fact. However, as discussed above, the Court finds that there is a factual dispute as to whether the Statements are opinions.

10

because actual malice must be "shown by clear and convincing evidence, rather than by a preponderance of evidence as in most other cases, the evidence and all the inferences which can reasonably be drawn from it must meet the higher standard." *Id.* (citation omitted). "In other words, the court is responsible for determining not only whether an issue of fact exists with respect to the existence of actual malice, but whether a reasonable jury could find actual malice by clear and convincing evidence." *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 66 F. Supp. 2d 1117, 1124 (C.D. Cal. 1999). "The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989). "The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind." *Copp v. Paxton*, 45 Cal. App. 4th 829, 846 (1996) (citation and quotation omitted).

Actual malice requires that the defendant acted either "with knowledge that the statement was false or with reckless disregard as to whether or not it was true." *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 667 (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 56 (1988)). "And although the concept of 'reckless disregard' 'cannot be fully encompassed in one infallible definition,'" the Supreme Court has made clear that the defendant must either have made the false publication with a high degree of awareness of its probable falsity or have entertained serious doubts as to the truth of the publication. *Id.* (quoting *St. Amant v. Thompson*, 390 U.S. 727, 730 (1968)) (additional citations omitted); *see also United States v. Alvarez*, 567 U.S. 709, 719 (2012) ("Even when considering some instances of defamation and fraud, moreover, the Court has been careful to instruct that falsity alone may not suffice to bring the speech outside the First Amendment. The statement must be a knowing or reckless falsehood."). "Actual malice is a subjective standard that must be determined on a case-by-case basis. Plaintiff, however, is entitled to prove the defendant's state of mind through circumstantial evidence." *Isuzu Motors Ltd.*, 66 F. Supp. 2d at 1124.

In its opposition, Resolute argues that there is a "universal understanding" that "the term Montagnes Blanches is synonymous with [the] protected area of intact forest and woodland

caribou" identified by the Canadian government in the Lessard Statement.  ECF No. 525 at 8.  From that premise, it argues that Greenpeace's actions in continuing to publish statements that Resolute was harvesting in the Montagnes Blanches after reviewing the Lessard Statement show actual malice.  But Resolute's premise is not supported by the facts.  The record shows that "[i]n Quebec, the area known as the 'Montagnes Blanches' has been the subject of many environmental protection campaigns by various environmental groups," and that "[o]ver time, this area has been the subject of several boundary definitions by environmental groups or the government."  ECF No. 501-2 at 6-7.  As Daniel Kneeshaw, a Canadian biology professor, states,

> Greenpeace provides a map to show where their area is.  And Montagnes Blanches are the mountains themselves.  The Montagnes Blanches Endangered Forest is an area that's around the Montagnes Blanches.  So Greenpeace takes the opportunity to present people with a map, who probably aren't so familiar with this northern region, to show them what the area that they're talking about, the forest that they're interested that's up in the Montagnes Blanches region.

ECF No. 514-30 at 4.  Thus, the term "Montagnes Blanches" has acquired more than one meaning and does not universally refer to one fixed geographic area.  The Montagnes Blanches "are not limited to a specific government or ministerial designation (Minister Lessard) or protected area, but rather to a much larger area with many conservation values that are important to protect for the conservation of boreal biodiversity."  ECF No. 501-2 at 21.  "This diversity of boundaries used to designate the sector is most probably due to the fact that most environmental groups used the geographical name *Montagnes Blanches* primarily for communications purposes, in order to publicize this area of the boreal forest of great ecological importance and to mobilize them to ensure its protection."  *Id.* at 7 (italics in original).

Not surprisingly, given the diversity of meanings attached to the phrase "Montagnes Blanches," the evidence does not show, as Resolute contends, that Defendants shared the "universal understanding that "Montagnes Blanches" had only the meaning ascribed to it by the Lessard Statement.  To the contrary, it shows that Greenpeace was aware that was one possible meaning among several.  *See* ECF No. 525-2 at 25 ("They said we redrew maps.  And to some extent we did.  The boundaries of the MB that we use were drawn by several groups in Quebec

12

around the highest conservation value forests. So it is entirely our concept, it is not really a geographical one. And there is a Montagnes Blanches forest that also exists above the northern limit. So because we use the same name, they are claiming we redrew the maps."). Accordingly, when the Greenpeace Defendants reviewed the Lessard Statement, they did not conclude that their prior statements were false or that future statements would need to conform to the Lessard definition. For example, when asked what conclusions she drew after reading the Lessard Statement, defendant Moas replied, "The conclusions that we drew were that the Montagnes Blanches Endangered Forest and the Montagnes Blanches sector based on Quebec's definition were different." ECF No. 514-29 at 36. She continued,

> Yes, that's right, just because our Montagnes Blanches Endangered Forest is different than the Montagnes Blanches sector, two different things can use the same name as long as you are clear about which one you are talking about, as long as a map is included, as long as boundaries are highlighted. We saw absolutely no problem with utilizing the general region's name for our endangered forests.

*Id.* In short, the evidence does not show that Greenpeace "harbored serious subjective doubts as to the validity of [its] assertions," *Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1239 (N.D. Cal. 2014), much less believed them to be false, *Harte-Hanks Commc'ns*, 491 U.S. at 667.[9]

For this reason, Greenpeace is entitled to summary judgment on Resolute's defamation claims.[10]

---

[9] That a *jury* could conclude that the statements were false does not show that *Greenpeace* knew they were false or harbored doubts about their veracity. *See, e.g.*, *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, No. C10-861 RSM, 2015 WL 3407882, at *8 (W.D. Wash. May 27, 2015) ("Dr. Reitman's testimony could permit the jury to determine the falsity of Cascade's statements that KFI's yarns lacked milk fiber protein. Yet, neither proof of falsity, nor proof of failure to investigate before publishing, are sufficient to show malice." (citations omitted)).

[10] Resolute makes two other arguments regarding actual malice that require only brief discussion. Defendant Brindis's "failure to turn off the auto-delete setting on his personal Skype account," ECF No. 486 at 3, is not "the intentional destruction of critical documents" showing liability that other courts have equated with malice. *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119, 1134 (7th Cir. 1987). Nor does the evidence of historical ill will between the parties show malice. *Isuzu*, 66 F. Supp. 2d at 1124 (citing *Harte-Hanks Commc'ns*, 491 U.S. at 666). "As the Supreme Court has repeatedly held, the phrase 'actual malice' as used in the defamation context 'has nothing to do with bad motive or ill will.'" *Welsh v. City & County of San Francisco*, No. C-93-3722 DLJ, 1995 WL 714350, at *6 (N.D. Cal. Nov. 27, 1995) (quoting *Harte-Hanks Comm'cns*, 491 U.S. at 666 n.7).

13

### 4.     Damages[11]

The parties dispute whether the 2016 and 2017 Montagnes Blanches Statements are libel per se,[12] *compare* ECF Nos. 506 at 43-44, 526 at 28-29 *with* ECF No. 525 at 43, and whether Resolute has adequately proven special damages, *compare* ECF Nos. 506 at 44-47, 526 at 29 *with* ECF No. 525 at 43-45.

"Under Cal. Civ. Code § 45a, a plaintiff may only prevail on a claim for libel if the publication is libelous on its face or if special damages have been proven." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 (9th Cir. 1998). An allegedly defamatory statement is "libelous on its face" – or constitutes libel per se – "[i]f . . . a reader would perceive a defamatory meaning without extrinsic aid beyond his or her own intelligence and common sense."[13] *Barnes-Hind, Inc. v. Superior Ct.*, 181 Cal. App. 3d 377, 386 (1986). "But if the reader would be able to recognize a defamatory meaning only by virtue of [their] knowledge of specific facts and circumstances, extrinsic to the publication, which are not matters of common knowledge rationally attributable to all reasonable persons," the allegedly defamatory statement constitutes "libel per quod." *Id.* If a statement constitutes "libel per quod," then the plaintiff must prove special damages. Cal. Civ. Code § 45a.

A statement can be libel per se "even if it is susceptible of the innocent interpretation." *MacLeod v. Trib. Pub. Co.*, 52 Cal. 2d 536, 548 (1959).[14] "Courts have viewed false

---

[11] Although the Court has already determined that Greenpeace is entitled to summary judgment, it nonetheless addresses the question of damages to comprehensively adjudicate the issues before the Court for the benefit of the parties and any reviewing court.

[12] Without citing authority, Greenpeace argues that Resolute must prove special damages because Resolute pleaded a claim for defamation and not "libel per se." ECF No. 506 at 43. Whether Resolute's complaint labels the claim as one for "defamation" or one for "libel per se" is irrelevant because one of the elements of a defamation claim considers whether the statement "has a natural tendency to injure," i.e., is libelous per se, and if it is not, then it must have "cause[d] special damage." *Wong*, 189 Cal. App. 4th at 1369.

[13] Courts use the phrases "defamatory on its face," "defamation on its face," "defamation per se," "defamatory per se," "libelous on its face," and "libel per se" interchangeably.

[14] Greenpeace argues the opposite. ECF No. 506 at 43 (arguing that "a statement cannot constitute libel per se where, as here, it is susceptible of an innocent interpretation" (quotation marks and citation omitted)). However, "[i]t is error for a court to rule that a publication cannot be defamatory on its face when by any reasonable interpretation the language is susceptible of a

statements . . . tending directly to injure a plaintiff in respect to [their] profession by imputing dishonesty or questionable professional conduct [to be] defamatory per se." *Balla v. Hall*, 59 Cal. App. 5th 652, 686 (2021), *review denied* (Apr. 14, 2021) (quotation marks and citation omitted). "Whether a statement is 'reasonably susceptible of [a defamatory per se] interpretation is a question for the court'; whether it 'was so understood is a question for the jury.'" *Id.* (quoting *MacLeod*, 52 Cal. 2d at 546 (alteration in original)); *see also Patton v. Royal Indus., Inc.*, 263 Cal. App. 2d 760, 765 (1968) ("The court must determine as a matter of law whether the publication is libelous per se. If it is determined that the publication is susceptible of a defamatory meaning and also of an innocent and nondefamatory meaning it is for the jury to determine which meaning would be given to it by the average reader.").

Here, the Court finds that the 2016 and 2017 Montagnes Blanches Statements are susceptible of an interpretation that would make them libelous per se. As discussed above, Resolute has presented evidence that it is "common knowledge" that the Montagnes Blanches region is inaccessible to those in the forestry products industry and is an area protected from logging. *See Medifast, Inc. v. Minkow*, 577 F. App'x 706, 708 (9th Cir. 2014) (statements constituted libel per se because they accused defendant of "operating an illegal enterprise"). Whether it is common knowledge that the Montagnes Blanches region is inaccessible to the industry and therefore protected, such that the average reader would not need extrinsic evidence to understand the statements' defamatory meaning, is a question for the jury. Accordingly, the Court finds that there is a factual dispute as to whether Resolute can establish the damages element of defamation.[15]

### B.     Unfair Competition Law Claim

Because, as the parties agree, Resolute's UCL claim is based on its defamation claim, the Court also grants Greenpeace's motion for summary judgment as to Resolute's UCL clam. *See*

---

defamatory meaning." *Selleck v. Globe Int'l, Inc.*, 166 Cal. App. 3d 1123, 1131 (1985). Accordingly, the "inquiry is not to determine whether the publication may have an innocent meaning but rather to determine if it reasonably conveys a defamatory meaning." *Id.*

[15] In light of this conclusion, the Court need not address whether Resolute has introduced sufficient evidence of special damages.

*Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016) ("Plaintiff's UCL claim is tethered to the allegations stated for his other claims . . . .   As those claims fail, so does the one for violation of the UCL."), *aff'd*, 700 F. App'x 588 (9th Cir. 2017).

## CONCLUSION

For the foregoing reasons, the Court grants Greenpeace's motion for summary judgment. The clerk shall enter judgment for Defendants.  Resolute's motion to amend its complaint, ECF No. 518, is denied as moot.

**IT IS SO ORDERED.**

Dated:  April 21, 2023



JON S. TIGAR
United States District Judge